IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA, N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HESS KENNEDY CHARTERED, LLC; | : | CASE NO.: |
| LAURA L. HESS; EDWARD T. KENNEDY; | : | |
| LAURA HESS & ASSOCIATES, P.A.; | : | |
| HESS KENNEDY HOLDINGS, LTD.; | : | |
| HESS KENNEDY COMPANY CHARTERED | : | |
| BWI; THE CONSUMER LAW CENTER, LLC; | : | |
| THE CONSUMER LAW CENTER OF | : | |
| DELRAY BEACH, LLC; THE CONSUMER | : | |
| LAW CENTER OF BOCA RATON, INC.; | : | |
| THE CAMPOS CHARTERED LAW FIRM; | : | |
| JEFF CAMPOS, P.A.; JEFFREY S. CAMPOS; | : | |
| LEGAL DEBT CENTER, LLC; | : | |
| JOHN DOES 1-50, | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiff, CHASE BANK USA, N.A. ("Chase"), for its Complaint against

Defendants HESS KENNEDY CHARTERED, LLC, LAURA L. HESS, EDWARD T.

KENNEDY, LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY HOLDINGS, LTD.,

HESS KENNEDY COMPANY CHARTERED BWI, THE CONSUMER LAW CENTER, LLC,

THE CONSUMER LAW CENTER OF DELRAY BEACH, LLC, THE CONSUMER LAW

CENTER OF BOCA RATON, INC., THE CAMPOS CHARTERED LAW FIRM, JEFF

CAMPOS, P.A., JEFFREY S. CAMPOS, LEGAL DEBT CENTER, LLC and JOHN DOES 1-

50 (collectively "defendants"), alleges as follows:

## INTRODUCTION

1.      More than 3,800 Chase cardmembers have failed to pay more than $25 million dollars of legitimate debt owed to Chase under their credit card accounts due to an unlawful debt elimination scheme and other related schemes devised and operated by defendants and others acting in concert with them. Defendants' unlawful schemes are the subject of lawsuits brought earlier this month by the Attorneys General of Florida and North Carolina alleging unfair and deceptive business practices and of an on-going investigation by the Attorney General of West Virginia.

2.      Under the guise of providing "legal services," "debt elimination services" and/or "debt management services" for which Chase cardmembers are charged substantial fees, defendants advise, encourage and enable these cardmembers to initiate, allegedly under the Fair Credit Billing Act ("FCBA"), 15 USC §§1666 *et seq.*, "billing error disputes" against Chase which defendants know to be without any basis in law or fact. Defendants mislead cardmembers into believing that under the FCBA they can validly challenge their entire Chase credit card account balances that have accrued over years of use and can legally withhold any and all payments until Chase investigates and resolves the purported "billing error disputes" to their satisfaction. However, as defendants know, Chase has no obligation to deem these cardmembers' account balances eliminated based upon these sham billing error disputes. Even in the case of valid billing error disputes (which these are not), Chase is obligated only to conduct a timely and reasonable investigation to determine, to its satisfaction, whether a billing error occurred.

3.      In furtherance of this scheme, defendants, *inter alia*, fabricate legally insufficient form letters which they and Chase cardmembers send to Chase and cause Chase cardmembers to assert frivolous claims and counterclaims against Chase in court and in

2

arbitrations commenced by Chase to collect on delinquent credit card balances owed by the cardmembers. At or around the time these letters are delivered to Chase, the cardmembers who have paid defendants cease making payments on their account balances, presumably at defendants' direction. Defendants' conduct is entirely in bad faith and serves no legitimate purpose. Defendants' ulterior goals are to extract fees from cardmembers who should be paying the money to Chase to satisfy their debts and to maliciously harass Chase in an improper (albeit unsuccessful) attempt to coerce the elimination of their clients' legitimate debts.

4.    By their unlawful conduct, defendants are improperly interfering with Chase's contractual relations with its cardmembers, abusing civil process, violating Delaware statutory law and unlawfully conspiring, entitling Chase to declaratory and injunctive relief, compensatory and punitive damages and the recovery of its attorneys' fees and costs.

5.    Pursuant to 18 U.S.C. §1344, one who knowingly executes or attempts to execute a scheme or artifice "to defraud a financial institution" or "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises" is punishable by a fine of not more than $1 million or imprisonment for not more than 30 years, or both. Among other things, in some instances Chase's cardmembers pay defendants for their "services" using Chase credit cards. Defendants accept such payments knowing that they will advise the cardmembers that they do not have to make any payments to Chase because of the alleged billing error disputes which defendants know to be sham.

## PARTIES

6.    Plaintiff Chase is a national banking association with its main office in Newark, Delaware. Chase is also the successor to Bank One, Delaware, N.A., a national banking association, by merger on October 1, 2004.

3

7.    Defendant HESS KENNEDY CHARTERED, LLC ("Hess Kennedy")
is a Florida limited liability company with its principal place of business at 210 N. University
Drive, Suite 900, Coral Springs, Florida 33071. The managing member of Hess Kennedy is
Hess Kennedy Company Chartered BWI, Walker House, 87 Mary Street, Georgetown, Grand
Cayman, KY1-9001, Cayman Islands. Prior to August 31, 2007, Hess Kennedy was organized
as a corporation known as "Hess Kennedy Company Chartered" and its director was Laura L.
Hess. This organizational change occurred shortly after attorneys for Chase met with certain of
the defendants to demand that they cease their unlawful activities.

8.    Defendant LAURA L. HESS ("Hess") is a citizen of the state of
Florida with an address at 210 N. University Drive, Suite 900, Coral Springs, Florida 33071.

9.    Defendant EDWARD T. KENNEDY ("Kennedy") is a citizen of the
state of Florida with an address at 210 N. University Drive, Suite 900, Coral Springs, Florida
33071. Upon information and belief, Kennedy may also use the aliases "Edward Cherry" or
"Edward Kennedy Cherry."

10.    Defendant LAURA HESS & ASSOCIATES, P.A. ("LH&A") is a
Florida corporation with its principal place of business at 210 N. University Drive, Suite 900,
Coral Springs, Florida 33071.

11.    Defendant HESS KENNEDY HOLDINGS, LTD. ("HKH") is a
Florida limited liability company with its principal place of business at 210 N. University Drive,
Suite 209, Coral Springs, Florida 33071. The managing member of HKH is Hess Kennedy
Company Chartered BWI, Walker House, 87 Mary Street, Georgetown, Grand Cayman, KY1-
9001, Cayman Islands. Prior to August 31, 2007, the managing members of HKH were Laura
Hess, Inc., Jeff Campos, P.A., David Kleiman, P.A. and Edward Cherry. This organizational

4

change occurred shortly after attorneys for Chase met with certain of the defendants to demand

that they cease their unlawful activities.

        12.      Defendant HESS KENNEDY COMPANY CHARTERED BWI

("BWI") is a corporation with its principal place of business at Walker House, 87 Mary Street,

Georgetown, Grand Cayman, KY1-9001, Cayman Islands.

        13.      Defendant THE CONSUMER LAW CENTER, LLC ("CLC") is a

Florida limited liability company with its principal place of business at 210 N. University Drive,

Suite 209, Coral Springs, Florida 33071.  The manager of CLC is The Consumer Law Center

Partners, 210 North University Drive, Suite 901, Coral Springs, Florida 33071.  Prior to October

4, 2007, the managing members of CLC were Laura Hess, Inc., Jeff Campos, P.A., David

Kleiman, P.A., David Lipman, P.A., Lee Stein, Esq., Mavrides, Moyal & Associates, LLP,

Edward Cherry and Walter Chen.  This organizational change occurred shortly after attorneys for

Chase met with certain of the defendants to demand that they cease their unlawful activities.

        14.      Defendant THE CONSUMER LAW CENTER OF DELRAY

BEACH, FLORIDA, LLC ("CLCDB") is a Florida limited liability company with its principal

place of business at 14590 S. Military Trail, E2, Delray Beach, Florida 33484.  The managing

member of CLCDB is "Jeff Gombos," 14590 S. Military Trail, E2, Delray Beach, Florida 33484.

        15.      Defendant THE CONSUMER LAW CENTER OF BOCA RATON,

INC. ("CLCBR") is a Florida corporation with its principal place of business at 160 West

Camino Real, 240, Boca Raton, Florida 33432.

        16.      Defendant THE CAMPOS CHARTERED LAW FIRM ("CCLF") is a

Florida corporation with its principal place of business at 3200 N. University Drive, 210, Coral

Springs, Florida 33065.

5

17.     Defendant JEFF CAMPOS, P.A. ("JCPA") is a Florida corporation with its principal place of business at 3200 North University Drive, 210, Coral Springs, Florida 33065.

18.     Defendant JEFFREY S. CAMPOS ("Campos") is citizen of the state of Florida with an address at 10224 Vestal Court, Coral Springs, Florida 33071.  Campos has also signed letters on the stationary or letterhead of a purported entity called "The Consumer Protection Law Center."  Chase has found no legal entity formed or incorporated under that name.

19.     Defendant LEGAL DEBT CENTER, LLC. ("LDC") is a Florida limited liability company with its principal place of business at 210 N. University Drive, #905, Coral Springs, Florida 33071.  The managing member of LDC is Edward Cherry, 210 N. University Drive, #905, Coral Springs, Florida 33071.  LDC also conducts business at 210 N. University Drive, Suite 900, Coral Springs, Florida 33071.

20.     Defendants JOHN DOES 1-50 are persons and entities, presently unknown, who have conspired with and/or aided and abetted the unlawful activities of defendants.

21.     Upon information and belief, defendants Hess and Hess Kennedy control, orchestrate, direct and/or participate in the unlawful activities of the other defendants as described herein as well as the activities of the so-called "National Network of Consumer Attorneys" or "The Attorney Network" whose members are hand-picked by Hess and Hess Kennedy and promise to help consumers who are "drowning in debt" to "dramatically lower or eliminate your debt" by using the sham letters and other devices devised by defendants.  (Exhibit

6

A).[1] Defendants may also conduct their unlawful activities under the guise of other names and aliases, including but not limited to "The Consumer Protection Law Center," "Hess-Kennedy & Company, Inc." and "Hess Kennedy & Company."

22.     Each of the defendants acts and has acted as an agent for or alter ego of the other defendants in carrying out the schemes described herein, and each is liable for the unlawful conduct of the other defendants.

## JURISDICTION AND VENUE

23.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

24.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because a substantial part of the events, acts and omissions giving rise to the claims herein have taken place in this District.

## FACTS

25.     In recent years, fraudulent debt elimination schemes have flourished throughout the country, spread by the Internet and other mass-marketing routes. Promoters of these schemes generally claim that, for an up-front fee, they will eliminate or substantially reduce a consumer's debt obligations to creditors without any further material payment to the consumer's creditors. These schemes, however, have no valid basis in either law or fact, fail to provide any of the promised relief to the consumers who fall victim to them and ultimately result in consumers who are deeper in debt with severely damaged credit scores. These schemes have become so varied and prevalent that the federal Office of the Comptroller of the Currency and

---

[1]     In the attached Exhibits, personal cardmember information has been redacted for privacy reasons.

the Federal Deposit Insurance Corporation now warn consumers about such schemes on their

websites and through a formally-issued Alert to other regulators and banks.  (Exhibit B).

      26.      Defendants are the source of one or more fictitious debt elimination

schemes.  In addition to the conduct alleged herein: (a) the Florida Attorney General's Office

sued Laura L. Hess, Esq., Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC and The

Consumer Law Center, LLC on February 21, 2008 for violating state consumer protection laws

in connection with their debt elimination and/or debt management schemes; (b) the North

Carolina Attorney General's Office sued Hess Kennedy Chartered, LLC, The Consumer Law

Center, LLC, Laura L. Hess and Edward Cherry on February 11, 2008 for engaging in unfair and

deceptive practices and has obtained temporary and/or preliminary injunctions against their

unlawful activities; and (c) the West Virginia Attorney General's Office is reportedly

investigating Hess Kennedy for deceptive and unfair practices in debt management services.

(Collectively Exhibit C).  Moreover, according to its website, the Better Business Bureau of

Southeast Florida received 138 complaints from consumers concerning Hess Kennedy, as a

result of which it assigned the company a grade of "F," meaning that: "We strongly question the

company's reliability for reasons such as that they have failed to respond to complaints, their

advertising is grossly misleading, they are not in compliance with the law's licensing or

registration requirements, their complaints contain especially serious allegations, or the

company's industry is known for its fraudulent business practices."  (Exhibit D).  Other Internet

websites reveal strong consumer dissatisfaction with and complaints concerning Hess Kennedy.

(Exhibit E).

      27.      On or about February 11, 2008, The Florida Bar filed a Petition for

Contempt ("Petition") against defendant Laura Hess with the Florida Supreme Court reciting that

(a) on January 27, 2005 the Florida Supreme Court publicly reprimanded Hess and placed her on

probation for three years and (b) Hess had eight new complaints filed with The Florida Bar

during her probationary period which resulted in a finding of probable cause of misconduct.  The

Petition asks the Florida Supreme Court to suspend Hess from the practice of law for 91 days.

(Exhibit F).  All but one of the complaints referenced in the Petition involved consumers who

alleged that Hess, Hess Kennedy and/or other defendants were paid fees by the consumers but

failed to deliver promised services involving the consolidation, reduction, management and/or

elimination of credit card and other debts owed to creditors including Chase.

        28.      Hess Kennedy maintains a website, www.hesskennedycompany.com,

which promotes and solicits clients for the debt elimination scheme and other related schemes

described herein.  The website states in pertinent part:

> Hess/Kennedy Chartered is a professional association.  Managing
> Partner of Hess/Kennedy Chartered is Laura Hess.  She is admitted
> for practice in Florida only.  For cases outside of Florida
> Hess/Kennedy Chartered lawyers will request assistance from and
> associate with one of our hand-picked affiliate attorneys located
> throughout the country.

(Exhibit G).

        29.      Consumers are asked to supply their names, addresses and other

information over the Internet and are told that a Hess Kennedy representative will contact them

promptly.  The Hess Kennedy website contains a "drop-down menu" listing all of the 50 states,

thereby permitting, and indeed inviting, consumers from every state to supply their contact

information and ultimately seek Hess Kennedy's services.  Delaware is expressly included on

this list of states.  (*See* Exhibit G).

        30.      The terms of Chase's contracts with its cardmembers are set forth in

written Cardmember Agreements, under which Chase extends credit privileges to cardmembers,

and cardmembers agree to make payments to Chase on the balances owed. The Cardmember Agreements state that they are entered into in Delaware and are governed by Delaware law. (A representative Cardmember Agreement is attached as Exhibit H).

31.     Defendants have interfered and continue to interfere with the contractual relations between Chase and its cardmembers and have engaged in tortious conduct by soliciting Chase cardmembers to commence and pursue frivolous and legally invalid billing error disputes challenging the enforceability of their credit card debt to Chase.

32.     Defendants mislead cardmembers into believing that, without even conducting so much as a cursory review of their account agreements and credit card statements, the cardmembers can lawfully challenge their entire credit card debts owed to Chase and accrued over years of use by sending form letters to Chase which purport to commence a "billing error dispute" that will trigger Chase's obligations under the FCBA to investigate the alleged dispute, provide documentation requested by the cardmember and refrain from taking action to collect the disputed amount. *See* 15 U.S.C. §§1666(a), (c), (d).

33.     To further their scheme, defendants advise Chase's cardmembers that by retaining defendants for a fee and sending Chase form letters supplied by defendants, or authorizing defendants themselves to send form letters to Chase, the cardmembers can eliminate or substantially reduce their entire credit card debts. Defendants' letters -- including those either provided to cardmembers or sent by defendants on their behalf -- are directed and mailed to Chase in Delaware.

34.     The form letters used by defendants do not vary in any material respect from person to person or account to account, but (excluding name, address, account number, statement date and total account balance) follow essentially identical formats. The form letters

10

do not reflect any individualized, fact-based claims specific to a given credit card account or credit card customer. Even the same typographical error ("I may also assert claims ob [sic] behalf of my client") appears in each letter. The form letters challenge the customer's entire then-existing account balance under the guise of a "billing error". The form letters request numerous boilerplate categories of legally irrelevant documentation and threaten a laundry list of litigation against Chase if it continues its efforts to collect the balance due on the credit card account. Examples of form letters used by defendants are attached as Exhibits I, J, K and L.

       35.      Defendants' form letters, on their face, do not constitute valid, proper or legally sufficient written notices of billing errors under Section 1666 of the FCBA. The letters do not allege any type of billing error, as defined in the FCBA, much less identify the reasons for the belief that such a billing error exists, or even the date and the amount of the error. In fact, the letters are extremely amorphous, general and vague. Moreover, under the FCBA a creditor's obligation to investigate a disputed billing statement is triggered only when the consumer has sent a written notice within 60 days of the creditor's transmission of the first statement containing the alleged error. 15 U.S.C. §1666(a). Nevertheless, defendants' form letters challenge the cardmember's entire account balance, regardless of the period of time over which it has accrued. Thus, the form letters on their face are not timely under the FCBA and plainly invalid. A typical form letter sent by Hess Kennedy to Chase states in pertinent part:

> My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements that my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account.

<div align="center">*       *       *</div>

<div align="center">11</div>

> [T]he remedy I seek is the complete elimination and/or discharge
> of the entire balance of the account referenced above, and the
> complete removal of my client's name from your records. I also
> request a zero balance due statement showing that no further
> monies are owed and no balance is due.

*See* Exhibit I. In addition, some form letters are unsigned or have electronic signatures that do

not match up with the names at the top of the letters. Because defendants' form letters are

legally deficient on their face and do not state proper, valid or timely billing errors, they do not

trigger Chase's billing error obligations under the FCBA and do not alter the cardmembers'

obligations to repay the balances owed on their respective credit card accounts.

      36.     In addition, in many instances in which Chase has commenced

arbitration proceedings against cardmembers to recover on delinquent account balances, as

authorized by the Cardmember Agreements, defendants have directly or indirectly interposed

frivolous and invalid counterclaims and other defenses to Chase's claims for payment. The

responses and counterclaims interposed in different arbitrations are materially the same and

apparently reflect forms used by defendants solely to delay and obstruct the arbitration

proceedings and make them more expensive for Chase. Illustrative of the types of "defenses"

raised by or on behalf of the cardmembers in these arbitrations are the following:

> In this case, the CLAIMANT [Chase] does not allege that it
> extended anything of value, nor conferred anything of value on the
> RESPONDENT [cardmember]. Given a fundamental
> understanding of Modern Money Mechanics and GAAP,
> CLAIMANT, created the money and credit upon its own books by
> bookkeeping entry as the consideration for RESPONDENT'S
> alleged "promise to pay." Each time RESPONDENT allegedly
> used the credit card account, the banks [sic] assets were expanded,
> not contracted. Thus, any failure to "pay as agreed" caused no
> damage to the Plaintiff.

Exhibit M.

> As its thirteenth affirmative defense, the Respondent shows that
> when a credit card account is established in the name of a holder of

<div align="center">12</div>

> a credit card, no United States currency (Federal Reserve Notes)
> are lent or transferred to the holder of the credit card, but instead
> the card holder is given access to an electronic bookkeeping ledger
> wherein the issuing bank makes credits and debit entries in equal
> amounts in accordance with General Accepted Accounting
> Principles. Accordingly, no consideration is given and the contract
> fails for lack of consideration.

Exhibit N. This nonsensical gibberish -- referred to in case law as "vapor money" or "no money lent" theories -- does not assert a valid defense and is purely dilatory in nature.

37.     Some Chase cardmembers represented by Hess and Hess Kennedy have commenced lawsuits against Chase (and other creditors) seeking actual and statutory damages under the FCBA based upon sham billing error disputes. (Exhibit O). In these lawsuits defendants fabricated frivolous claims under the FCBA in an attempt to coerce the elimination or reduction of debts for their clients. These lawsuits were brought in bad faith and for the purpose of maliciously harassing Chase.

38.     Defendants are also apparently operating a sham debt consolidation scheme. Under this scheme a cardmember provides money to defendants, who are supposed to make payments to his or her creditors once defendants have entered into a debt consolidation plan with the creditors to reduce and pay off the amount owed by the cardmember. Upon information and belief, defendants, however, are apparently retaining the cardmember's money without making the promised arrangements for the cardmember or paying the creditors. For example, in an arbitration which Chase commenced against one of its cardmembers, a resident of Wilmington, Delaware, to recover amounts due on her account, the cardmember filed a counterclaim alleging that she had not failed to pay Chase because she had been sending money to Hess Kennedy to pay to her creditors (including Chase), and Hess Kennedy had supposedly arranged a debt consolidation plan with said creditors. (Exhibit P). Chase, however, never

13

received any payments from Hess Kennedy on behalf of said cardmember. In fact, Defendants never attempted to make any arrangements with Chase on the cardmember's behalf.

39.     Defendants are brazenly taking fees from unwitting Chase cardmembers in exchange for providing phony debt consolidation services and for manufacturing bogus and frivolous billing error disputes against Chase under the pretense of assisting cardmembers in asserting their rights under the FCBA, all of which knowingly interferes with the relationship between Chase and its cardmembers. One cardmember wrote to Chase in May 2007:

> I would like to get the matter resolved regarding the cancelled service through Campos Chartered Law Firm in the amount of $1500. They may also be known as Hess Kennedy Company, or even The Attorney Network. I have no trust in these companies and have mailed back my cancellation of service requests ....
> [T]hese companies are costing me ... time, effort and money ....

*See* Exhibit A.

40.     In some instances Chase's cardmembers pay defendants for their "services" using Chase credit cards. Defendants accept such payments knowing that they will advise the cardmembers that they do not have to make any payments to Chase because the debt will be "forgiven." These charges demonstrate that defendants are operating in concert and as a single enterprise or scheme, in that Chase's records show one entity may bill the cardmembers for the scheme on the cardmembers' Chase credit card accounts, while the purported "services" are provided by a different entity.

41.     Chase has been damaged by the unlawful conduct of defendants. As a result of the false advice provided to Chase's cardmembers by defendants, Chase's cardmembers have ceased making payments to Chase and have defaulted on their obligations, in breach of the Cardmember Agreements between Chase and its cardmembers. Chase has also been forced to

14

expend substantial sums defending frivolous claims and counterclaims and other defenses in court actions and arbitrations, paying legal fees that would not have been required but for defendants' unlawful scheme. Chase has also suffered the loss of reputation and goodwill.

42.    To date, Chase has received correspondence from defendants and its cardmembers for defendants' various schemes, including the billing error scheme, affecting over 3,800 accounts. These cardmembers reside in Delaware and virtually every other state, and their aggregate credit card balances exceed $25 million dollars. Moreover, at least 60 Chase cardmembers have interposed frivolous claims and counterclaims and other defenses against Chase in court actions and arbitrations.

43.    Chase has demanded, in correspondence and in-person, that defendants cease their unlawful activities but defendants have failed and continued to refuse to do so.

## COUNT I

### (Declaratory and Preliminary and Permanent Injunctive Relief)

44.    Chase repeats and realleges each of the foregoing allegations as though fully set forth herein.

45.    The debt elimination scheme operated by defendants is unlawful because the assertions which defendants make either directly to Chase or indirectly through letters provided to Chase by its cardmembers have no basis in fact or law and do not reflect bona fide violations of the FCBA. Defendants' theories provide no legal or bona fide basis for Chase's cardmembers to cease making any payments to Chase on their account balances.

46.    Chase has a substantial likelihood of success on the merits of its claims against defendants.

47.    Chase is suffering and will continue to suffer immediate and irreparable harm to its business as a result of defendants' unlawful actions, in that (a) Chase is

15

being required to expend substantial time and excessive resources addressing each of these bogus disputes and related litigations or arbitrations; (b) Chase's cardmembers have been induced to breach their Cardmember Agreements with Chase by failing to pay balances due on their accounts and (c) Chase is suffering harm to its goodwill and reputation.

48.     Defendants will not be irreparably harmed if injunctive relief is granted because the conduct that Chase seeks to enjoin is unlawful.

49.     An injunction enjoining defendants from continuing their unlawful conduct will benefit Chase's cardmembers and the public interest.  Many if not most of the Chase cardmembers who are solicited by defendants to participate in this sham billing error dispute scheme and other related schemes are themselves victims of defendants' unlawful conduct.

50.     Chase has no adequate remedy at law to stop defendants from continuing their unlawful conduct.

51.     As a result of the foregoing acts of defendants, Chase is entitled to:

(a)     Declarations that (i) the billing error disputes asserted by Chase's cardmembers who are represented or assisted by defendants are sham and do not assert valid billing error disputes under the terms of the FCBA or impose any duties on Chase under the FCBA, (ii) the billing error disputes asserted by Chase's cardmembers who are represented or assisted by defendants do not provide any legal or valid basis for these cardmembers to cease making payments to Chase, and (iii) the claims, counterclaims and other defenses interposed against Chase by cardmembers who are represented or assisted by defendants are frivolous and legally insufficient to prevent Chase from collecting delinquent balances due on its credit card accounts under the terms of the Cardmember Agreements;

16

DMEAST #9990528 v1

(b)    Injunctive relief preliminarily and permanently restraining defendants, their representatives, heirs, assigns, agents, successors, and related entities, and those acting in concert or participating with any of the foregoing from: (i) assisting Chase's cardmembers in asserting bogus billing error disputes against Chase or representing them in such disputes; (ii) assisting Chase's cardmembers in asserting sham or frivolous claims, counterclaims or other defenses against Chase in any court or arbitration forum or representing them in such disputes; (iii) improperly interfering in any way with any of Chase's relationships with its cardmembers under the Cardmember Agreements, including, but not limited to, interfering with Chase's right to receive payments from its cardmembers; (iv) advertising unlawful debt elimination services, and any related services, in print, on the Internet, through e-mail or through any other form of media or other communications, and from authorizing or allowing others to do so on their behalf; (v) destroying any documents or data retention devices containing information related to Chase and/or its cardmembers; and (vi) assisting, advising, aiding and abetting or otherwise indirectly participating in any of the foregoing; and

(c)    Permanent injunctive relief requiring defendants to notify each cardmember whom defendants have previously advised, assisted or represented that (i) billing error disputes asserted against Chase do not state proper, valid or timely billing errors under the FCBA and do not alter the cardmembers' obligations to repay the balances owed on their respective credit card accounts under the terms of their Cardmember Agreements and (ii) claims, counterclaims and other defenses asserted against Chase by cardmembers represented or assisted by defendants are not legally sufficient and do not alter the cardmembers' obligations to repay the balances owed on their respective credit card accounts under the terms of their Cardmember Agreements.

17

52.      Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## COUNT II

### (Tortious Interference with Contractual Relations)

53.      Chase repeats and realleges each of the allegations contained in paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.      Pursuant to its written Cardmember Agreements, Chase extends credit privileges to cardmembers, and the cardmembers agree to make payments on the balances owed to Chase.

55.      Defendants at all time had knowledge of the existence of the Cardmember Agreements which exist between Chase and its cardmembers.

56.      Defendants knowingly, intentionally and improperly, without privilege or justification, have interfered with and disrupted the contractual relationships between Chase and its cardmembers by soliciting cardmembers to assert sham billing error disputes against Chase and to stop making payments to Chase on their account balances. By stopping payment on their account balances, Chase's cardmembers have breached their Cardmember Agreements as a result of, and in reliance on, defendants' unlawful actions. Defendants have further interfered with Chase's right to receive payments from its cardmembers, as defendants have taken funds from Chase's cardmembers which these cardmembers intended to be used to pay Chase, but failed to make the arrangements and payments that defendants promised they would.

57.      Defendants' wrongful and intentional interference with Chase's cardmembers has diminished the payments Chase receives from its cardmembers and has required Chase to defend against frivolous litigation initiated by cardmembers and frivolous

18

counterclaims and other defenses asserted by cardmembers in collection actions commenced by

Chase. The unlawful activities of defendants have caused a decrease in the market value of the

credit card accounts affected by defendants' improper and unjustified interference.

58.    As a proximate result of the foregoing intentional interference by

defendants, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

59.    The actions of defendants were fraudulent, malicious, reckless and/or

oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for

punitive and exemplary damages in an amount to be proven at trial.

60.    Chase has been required to retain the services of attorneys to prosecute

this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred

herein.

61.    Chase is further entitled to declaratory and injunctive relief to prevent

defendants from continuing their unlawful conduct.

## COUNT III

## (Abuse of Process)

62.    Chase repeats and realleges each of the allegations contained in

paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63.    Defendants have encouraged and enabled Chase's cardmembers to

assert sham billing error disputes, claims and counterclaims and other defenses against Chase to

avoid payment of account balances lawfully due Chase. Defendants' actions had and have no

legitimate purpose, but rather were and are being taken for the ulterior purposes of furthering

defendants' unlawful schemes and extracting fees from the cardmembers in exchange for bogus

"legal" advice.

DMEAST #9990528 v1

64.    Defendants' bad faith conduct has spawned frivolous litigation by cardmembers and caused delay in legitimate collection actions commenced by Chase to recover delinquent account balances owed to Chase.  Defendants have unreasonably and vexatiously multiplied the proceedings in these actions by their dilatory unlawful conduct.

65.    As a proximate result of the foregoing abuse of process, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

66.    The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase.  Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

67.    Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

68.    Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT IV

### (Delaware Deceptive Trade Practices Act)

69.    Chase repeats and realleges each of the allegations contained in paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.    The Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. Code §§2531 *et seq.*, was enacted to "address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993).

71.    Defendants have violated the DTPA in the course of their business, vocation or occupation by, *inter alia*:

20

(5) Represent[ing] that [their] ... services have ... characteristics ..., uses, [or] benefits ... that they do not have ....;

\*          \*          \*

(7) Represent[ing] that [their] ... services are of a particular standard, quality, or grade ....;

(8) Disparag[ing] the ... services, or business of another [Chase] by false or misleading representation of fact; [and]

(9) Advertis[ing] ... services with intent not to sell them as advertised.

6 Del. Code § 2532(a) (v), (vii)-(ix).

72.       Acts by defendants which caused the violation of the DTPA took place in and/or were directed to the state of Delaware. The Chase credit card accounts in question are opened in and maintained by Chase in Delaware, where Chase has its main office, and defendants' letters are directed to Chase in Delaware.

73.       Defendants' persistent pattern of conduct has grossly interfered with the promotion and conduct of Chase's business, namely the management of its consumer credit card business pursuant to its Cardmember Agreements with its cardmembers.

74.       As a proximate result of the foregoing violations of the DTPA, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

75.       The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

76.       Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

DMEAST #9990528 v1

77.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT V

### (Delaware Consumer Fraud Act)

78.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79.     The Delaware Consumer Fraud Act ("CFA"), 6 Del. Code §§2511 *et seq.*, was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices." 6 Del. Code §2512. It is intended to remedy "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby ...." 6 Del. Code §2513(a). The statute's definition of "merchandise" includes "services." *Id.* §2511(2).

80.     In carrying out the aforesaid unlawful schemes, defendants have engaged in unfair, deceptive and fraudulent conduct directed to Chase's cardmembers and to Chase itself.

81.     Defendants' taking of cardmembers' money under false pretenses makes Chase a victim of the fraud and deception through its inability to collect on valid account balances due Chase.

82.     Upon information and belief, defendants Hess, Kennedy and Campos actively and directly participated in and had control over the deceptive and unfair practices of the other defendants and had knowledge and awareness of the deceptive and unfair conduct. Among

22

other things, said defendants drafted and/or disseminated documents to Chase cardmembers which were known by them not to raise legitimate billing error disputes against Chase under the FCBA.

83.     As a proximate result of the foregoing violations of the CFA, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

84.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

85.     Chase is entitled to an award of costs incurred herein.

86.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT VI

### (Conspiracy)

87.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.     In connection with the unlawful activities described herein, defendants knowingly, willfully, or tacitly and recklessly conspired and agreed among themselves to engage in one or more unlawful schemes designed and intended to damage Chase. In furtherance of the conspiracy, defendants, *inter alia*, drafted and/or disseminated documents to Chase cardmembers which were known by them not to raise legitimate billing error disputes against Chase under the FCBA.

89.     Hess Kennedy has taken payment from Chase's cardmembers using Chase credit cards. The charges were billed to CCLF, although Hess Kennedy was the name on the corresponding papers and provided the purported "services" related to the scheme.

23

Defendants take payment and provide services interchangeably and in common, further evidencing the unlawful conspiracy between and among them.

90.     As a proximate result of this wrongful civil conspiracy by and among defendants, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

91.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase.  Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

92.     Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

93.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## Prayer for Relief

WHEREFORE, Chase prays for relief as follows:

1.     For declaratory and preliminary and permanent injunctive relief against defendants, as described above;

2.     For damages against defendants in an amount in excess of $75,000;

3.     For punitive damages against defendants sufficient to deter defendants from engaging in similar wrongful and outrageous conduct;

4.     For an award of its reasonable attorneys' fees and costs of suit incurred herein;

5.     For an award of interest on such sums at the highest rate allowed pursuant to law; and

DMEAST #9990528 v1

6.    For such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 29, 2008
       Wilmington, Delaware

                                        Respectfully submitted,

                                        *Beth Moskow-Schnoll*

                                        Beth Moskow-Schnoll (No. 2900)
                                        BALLARD SPAHR ANDREWS
                                          & INGERSOLL, LLP
                                        919 N. Market Street, 12th Floor
                                        Wilmington, DE 19801
                                        Telephone: (302) 252-4465
                                        Facsimile: (302) 252-4466
                                        Email: moskowschnollb@ballardspahr.com

                                        Attorneys for Plaintiff
                                        Chase Bank USA, N.A.

OF COUNSEL:

David H. Pittinsky, Esquire
Alan S. Kaplinsky, Esquire
Mark J. Levin, Esquire
BALLARD SPAHR ANDREWS
  & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500

25

# EXHIBIT A



B███ B██████
Neenah, WI 54956

May 28, 2007

Cardmember Services
Post Office Box 15299
Wilmington, DE 19850-5299

To Vincent Segovia
Financial Service Advisor
Or to whom it may concern,

I would like to get the matter resolved regarding the cancelled service through Campos
Chartered Law Firm in the amount of $1500. They may also be known as Hess Kennedy
Company, or even The Attorney Network. I have no trust in these companies and have
mailed back my cancellation of service requests, which I have enclosed in the additional
documentation to Chase. I have mailed this information, along with the copies of all the
information I received from these aforementioned companies, to you on April 16, 2007.
I have mailed you duplicates of all this information to you again in this response, which I
have sent to you certified mail this time. I hope you can get this matter resolved, for
these companies are costing me more time, effort, and money with each time I have to
send more correspondences out to both you and them. I thank you in advance for
resolving this matter.

Sincerely,

B███ A. B█████



# Dramatically lower or eliminate your debt

- Pay off your debt quicker
- Reduce balances up to 75%
- Stop late and over-limit fees
- Stop harassing phone calls
- Avoid bankruptcy
- Enroll in Credit Improvement program
- Fix Your Credit Report
- Free Financial & Legal Info for 10 Years
- You can start right away
- No minimum financial requirement



The Attorney Network Can Save You Thousands!

**FREE Consultation**
**866-432-DEBT**

**Call Us at: 866-432-DEBT**

THE ATTORNEY NETWORK

THEATTORNEYNETWORK.COM
465 NE Spanish River Blvd. Boca Raton, FL 33431
Tel: 866-432-DEBT | Fax: 561.314.2219
www.theattorneynetwork.com



THE ATTORNEY NETWORK

We will put you in touch with an attorney who will work to reduce or eliminate your debt.

debt relief assistance

Dramatically lower or eliminate your debt

# Drowning in debt?



## Who We Are

The Attorney Network refers clients to a network of attorneys that provide confidential debt repayment assistance for people who want quick, convenient access to help with their financial concerns. We provide our professional assistance to anyone who feels that may need some help.

The Attorney Network's lawfirms and its affiliated companies have relationships with thousands of creditors whom we consolidate and/or settle with daily. No matter what your current situation is, we can help you.

## What We Do

The Attorney Network has helped thousands of consumers, just like you, by using a combination of debt consolidation and settlement methods to get you out of debt quick and easy.

Our services are for people who have:
a) Credit cards, accounts in collections, medical bills, or any other type of unsecured debt.
b) Bad credit and too much debt and need a "way out".
c) A need to lower their monthly bill payments.
d) Seek to consolidate their bills and save money.

## How do we do it?

a) Attorney-based debt elimination with 2-3 year settlement arrangements.
b) Lump sum (immediate) debt settlement for pennies on the dollar.
c) A combination of the above

### The bottom line is that we can help anyone who has debt and the motivation to get rid of it.

## Debt Settlement

If you are having debt problems, you may feel overwhelmed and powerless. During periods of financial hardship, you may not have the resources to pay pressing debts, to meet family needs, and to get legal help. You may feel helpless to fight debt collectors pressing you for payment or threatening to seize your home, car, or other possessions.

Your attorney will help you make the best choices possible despite difficult financial circumstances. Your attorney will help you decide whether there are debts you can ignore and what your options are when you cannot ignore a particular debt. Most important, your attorney will make sure that your rights as a consumer are protected.



FREE
NO Obligation Information
Call Now! 866-432-DEBT

Many state and federal laws are designed to help people facing financial problems. Most people in financial distress will first want to deal with the worst symptoms of a deteriorating financial situation.

However, you should never make a decision based upon what a debt collector tells you.

If you have an issue, have the debt collector call your attorney three-way to confirm what they have just said. Or, tell the debt collector that you need to call your attorney first, or better yet, ask the debt collector to contact your attorney directly.

When your financial condition is such that you cannot meet your monthly payment requirements, your attorneys are here to develop a long-term strategy to deal with your debt problems. This strategy involves figuring out those debts that you need to repay, and understanding the likely consequences if you cannot pay certain debts.

THE ATTORNEY NETWORK
WWW.THEATTORNEYNETWORK.COM



# Congratulations!

We have referred your application to an Attorney that has approved you for a debt elimination program at zero percent interest.

## You have 72 hours to return your application

The attorney is also offering a **60 Day Money Back Guarantee.**

Please follow instructions included in the package.

If you are unable to return paperwork in that time frame to please contact your representative for further assistance.



# Instruction Sheet

**Congratulations,** You've been approved for the Debt Elimination Program. Please follow the instructions below.

1. Please Sign & Date **Contract to Employ - page 2.**

2. Please Fill out **Limited Power of Attorney - Page 3.**

3. Please fill out **Electronic Payment Authorization - Page 4.**

4. Please fill out **Applicant Personal Information - Page 5.**

5. Please fill out your **Budget Analysis - Page 6.**

6. Please fill out your **Creditor (Credit Card)** Info - **Page 7 & 8.**

7. Please review **Exhibit A** with your Fee Payment and Savings.

**Please Call your counselor now at 866-532-3835
to guarantee your spot in the program.**

# Client Response to an Original Creditor
## Use this if you are being harassed by Credit Companies

1. I need the following from your company:

    a. Your name:                              _____

    b. Who you represent:                      _____

    c. Your telephone number:                  _____

    d. Your facsimile number:                  _____

    e. Your address:                           _____

    f. My account number:                      _____

    g. Total amount of debt owed to this date: _____

2. I am currently disputing a billing error on my account.

3. I have hired an attorney to represent me in this matter.

4. The Law Firm is called **Hess Kennedy Company** and their phone number is **954-345-7848.**

5. My attorney has notified your organization of this billing error. I would like to forward you the letter that he has sent to your legal department.

6. The Fair Credit Billing Act prohibits you from contacting me until such time as this billing error has been resolved. Please do not call me again.



## THE ATTORNEY NETWORK

## REFERRAL PROGRAM

**Share names of neighbors, family or friends who might be interested in:**

• Paying off their debt quicker

• Reducing their balances

• Stop late fees

• Stop harassing phone calls

• Avoid bankruptcy

• Fix your credit report

• Eliminate their debt

Have them call us and mention your name as a referral and **receive 3 FREE months of processing. That's over $100 Savings!**



## REFERRAL SHEET

**Please fill out and return with your package.**

### Referral 1

Name: _____

Address: _____

_____

Phone: _____

Relationship: _____

### Referral 2

Name: _____

Address: _____

_____

Phone: _____

Relationship: _____

### Referral 3

Name: _____

Address: _____

_____

Phone: _____

Relationship: _____

# EXHIBIT B

Case 1:08-cv-00121-JJF   Document 1-3   Filed 02/29/2008   Page 2 of 13

OCC: Consumer Complaints and Assistance: National Bank Fraud Resource Center Consumer Information   Page 1 of 8
Case 2:07-cv-00975-ECR-GWF   Document 1-2   Filed 07/23/2007   Page 2 of 21



Search    Advanced Search | Subject Index | Site Map | Directory | Contact the OCC

Home
What's New
About the OCC
Banker Education
Careers at the OCC
Community Affairs
Corporate Applications
CRA Information
Consumer Complaints and Assistance [En Español]
Mission Statement
OCC Consumer Protection News
Customer Assistance Brochure (PDF) [En Español (PDF)]
Ombudsman Report (PDF)
Information Quality (Section 515) (PDF)
Anti-Fraud Resources
Counterfeit Reporting Form (PDF)
Electronic Banking
FOIA
Issuances
Legal and Regulatory
National Bank Appeals
News Releases
Publications
Public Information
Related Sites
Speeches

**National BankNet**
Username
Password
Login
What is BankNet?

**Consumer Complaints and Assistance:**
**National Bank Anti-Fraud Resource Center Consumer Information**

Advanced Fee Scheme Overview
- Receipt of Unsolicited Checks
- Understanding Regulation CC
- Fictitious Correspondence from US Government Agencies
- Lottery Scam
- Mystery Shopper Scam
- Money Transfer Agent
- Overpayment for Goods/Services
Banking Concerns
Debt Elimination
Fictitious Banking
Phishing, Spoofing & Pharming
Spam

**Advanced Up-Front Fee Scheme Overview**

Advanced up-front fee fraud was previously referred to as either 419 fraud or Nigerian fraud, both named after Section 419 of the Nigerian Penal Code. This fraud first originated out of Nigeria but is now rampant in many other countries. Potential victims of this fraud may receive correspondence related to estate monies, contest/lottery winnings, sale of goods, found monies, or employment opportunities. While the topics differ, they all work under the same premise to scam consumers out of their money. The originator of the document may offer to transfer a large sum of money into the victim's personal bank account, which would necessitate the victim providing the con artist with personal information such as: address, telephone number, bank account number, as well as copies of a passport and/or driver's license. Other schemes may include a counterfeit check along with the correspondence. The recipient will be instructed to deposit the check into their bank account and immediately wire a portion of the money to a third party outside of the country. Many of these scams involve counterfeit official instruments such as cashier's checks, official checks or money orders.

The following steps should be taken if you have received a solicitation but have **NOT** lost funds:

1. Do NOT respond to the message! According to the United States Secret Service (USSS), those who respond in any manner to these messages will continue to be harassed for months.

2. Forward the correspondence to your local USSS field office http://www.ustreas.gov/usss/field_offices.shtml.

3. Forward the scam e-mail to the 419 scammer's e-mail provider's abuse center to report the abuse. Ensure that you include the scammer's message with its headers. Alert the provider that the e-mail address is being used to solicit illegal activities and that it should be shut down. Most providers have specific abuse mailboxes set up to handle such problems. Some examples include: abuse@yahoo.com; uk-lmail-abuse@yahoo-inc.com; abuse@hotmail.com; etc.

If you have already lost funds in pursuit of the above described scheme, please follow these steps:

1. STOP corresponding with the scammers immediately!

2. United States citizens and residents should contact the nearest USSS Field Office http://www.secretservice.gov/field_offices.shtml by telephone to report their loss.

3.  File a Financial Loss complaint form online with the Internet Crime Complaint Center
    http://www.ic3.gov, which is a partnership between the National White Collar Crime Center and the
    Federal Bureau of Investigation.

**Receipt of Suspicious Checks / Verifying Authenticity**

Anytime a scam involves a cashier's check, official check, or money order from a financial institution and
you believe that it could be counterfeit, you should contact the issuing bank directly to report receipt of the
check and to verify authenticity. Only the issuing bank can verify the authenticity of the item. When
contacting the bank, do NOT use the telephone number provided on the instrument, as this number is
generally not associated with the financial institution but rather with the scam artist.

To locate a bank's contact information, you can check the FDIC's website at:
http://www2.fdic.gov/idasp/main_bankfind.asp

**Understanding Regulation CC**

When depositing items other than cash, it is important for consumers to understand the difference
between **available funds** and **collected funds**.

Under Regulation CC, when an official instrument is deposited into a consumer's bank account, the bank
must make those funds **available** to the consumer on the next business day. It takes approximately ten
days for a check to go through the clearing process:

1.  The payee deposits the check.
2.  The depositary bank sends the check for collection.
3.  The check is sent from the depositary bank to the Federal Reserve Bank or clearinghouse and
    then to the paying bank (Drawee).
4.  The check is presented to the paying bank for payment.
5.  If the check is good, the paying bank sends payment (**collected funds**); however, if the check is
    bad, the paying bank returns the item as unpaid (**uncollected funds**).
6.  If the item is returned as unpaid, the depositary bank then debits the payee's account for the
    amount of uncollected funds.

**Fictitious Correspondence from US Government Agencies**

On several occasions, con artists have counterfeited the letterheads of US Government Agencies in an
effort to financially scam consumers. The correspondence generally contains forged signatures of agency
officials and fictitious telephone numbers. The letters are sent to potential victims via mail, fax, or e-mail.

These scams usually claim that the purported agency is holding payments owed by foreign governments
or foreign organizations but that the recipient must first pay a large fee to have the funds released. Should
consumers receive such correspondence, they should not respond, because the contact information
contained within is generally associated with the con artist.

The OCC has issued the following Alerts, which address this particular situation:

Fraudulent E-mails Purportedly from U.S. House of Representatives, Committee on Financial Services -
http://www.occ.treas.gov/ftp/alert/2007-12.html

Fraudulent Correspondence Attributed to Officials of the Office of the Comptroller of the Currency -
http://www.occ.treas.gov/ftp/alert/2006-68.html

Fraudulent E-mails Attributed to Officials of the Office of the Comptroller of the Currency -
http://www.occ.treas.gov/ftp/alert/2005-12.doc

## Lottery Scams

A letter arrives in your mailbox stating that you have won a great deal of money in an international lottery program, one that you never entered or heard of. Along with the notification letter is an official instrument drawn on a legitimate bank. The letter will indicate that the check is to be used to pay taxes and transfer fees before the remainder of funds may be disbursed. You are instructed to call a telephone number to obtain additional information on how to proceed. During this call, the con will tell you to deposit the check into your bank account and then immediately wire out the proceeds using Western Union or Money Gram. The problem is that the check is counterfeit, a fact that won't be revealed for approximately ten days (please refer to sections: Receipt of Unsolicited Checks and Regulation CC).

In the meantime, the money associated with the counterfeit item will be available to you on the next business day. As such, you follow the con's instructions and wire the funds out. When the check is returned as **uncollected** because it is counterfeit, you have already sent the money out and will now be in a loss situation.

In addition to contacting the appropriate financial institutions as outlined in the *Receipt of Suspicious Checks / Verifying Authenticity* section, there are others who you should notify as well if you are in receipt of a counterfeit item and associated lottery material. They include:

- US Postal Inspection Service - by telephone at 1-888-877-7644, by mail at U.S. Postal Inspection Service, 222 S. Riverside Plaza, Suite 1250, Chicago, IL 60606-6100 or via e-mail at http://www.usps.com/postalinspectors/fraud/MailFraudComplaint.htm
- Federal Trade Commission (FTC): by telephone at 1-877-FTC-HELP or by filing an electronic complaint via their internet site at www.ftc.gov
- Royal Canadian Mounted Police (Canadian Scams): by telephone at 1-888-495-8501 or via e-mail at [info@phonebusters.com]. Their website, www.phonebusters.com , provides additional contact numbers.
- Spanish Embassy in the US - Spanish Lottery Scam: www.spainemb.org/ingles/indexing.htm

Most importantly, do NOT make contact with the con artist; they can be extremely dangerous. If at anytime, you feel physically threatened, you should contact your local police department immediately.

## Mystery Shopping Scam

Lucky you! You have been selected to be a mystery shopper for XYZ Company! They have even sent you a cashier's check to be used to make purchases at the chosen store locations. This sounds great! You get to shop, grade each store location, keep the merchandise you purchase, plus get paid a fee for your services. It must be real; they have even included a Code of Ethics disclosure! How can this be a scam? First of all, the check is counterfeit. You will be asked to deposit the counterfeit item into your bank account and then immediately begin your mystery shopping assignment. The majority of the funds provided to you in the counterfeit check will be wired out using a nationally-known wire service (Western Union or Money Gram), with the ploy that this is one of the merchants you are to grade.

As with the lottery scam, once the check is deemed to be counterfeit (about ten days after you deposit the item), the check is returned as **uncollected**, and your bank debits your account for the full amount of the check. Since you have already spent or wired the funds out, you are now in a loss situation and left to deal with a mess.

In addition to contacting the appropriate financial institutions as outlined in the *Receipt of Suspicious Checks / Verifying Authenticity* section, there are others who you should notify as well if you are in receipt of a counterfeit item and associated mystery shopping material. They include:

- US Postal Inspection Service - by telephone at 1-888-877-7644, by mail at U.S. Postal Inspection Service, 222 S. Riverside Plaza, Suite 1250, Chicago, IL 60606-6100 or via e-mail at http://www.usps.com/postalinspectors/fraud/MailFraudComplaint.htm
- Federal Trade Commission (FTC): by telephone at 1-877-FTC-HELP or by filing an electronic complaint via their internet site at www.ftc.gov
- Royal Canadian Mounted Police (Canadian Scams): by telephone at 1-888-495-8501 or via e-mail at [info@phonebusters.com]. Their website, www.phonebusters.com , provides additional contact

numbers.

Most importantly, do NOT make contact with the con artist; they can be extremely dangerous. If at anytime, you feel physically threatened, you should contact your local police department immediately.

**Money Transfer Agent**

You are contacted via e-mail or telephone in response to a resume you have posted on-line. The person solicits you for a job as an international money transfer agent. They will send you official bank instruments to deposit into your personal bank account. You will then be required to immediately wire the proceeds out to a variety of international locations, keeping an agreed-upon amount for your services. It sounds easy enough, so you agree. As such, you follow the con's instructions and deposit the checks and then wire the funds out. When the checks are returned as **uncollected** because they are all deemed counterfeit, you are left with a gaping hole in your bank account.

In addition to contacting the appropriate financial institutions as outlined in the *Receipt of Suspicious Checks / Verifying Authenticity* section, there are others who you should notify as well if you are in receipt of a counterfeit item and associated e-mails or correspondence regarding this "job opportunity." They include:

- Federal Bureau of Investigation (FBI) Internet Fraud Complaint Center (Scams that may have originated via the internet): www.ic3.gov
- US Postal Inspection Service - by telephone at 1-888-877-7644, by mail at U.S. Postal Inspection Service, 222 S. Riverside Plaza, Suite 1250, Chicago, IL 60606-6100 or via e-mail at http://www.usps.com/postalinspectors/fraud/MailFraudComplaint.htm
- Federal Trade Commission (FTC): by telephone at 1-877-FTC-HELP or by filing an electronic complaint via their internet site at www.ftc.gov
- Royal Canadian Mounted Police (Canadian Scams): by telephone at 1-888-495-8501 or via e-mail at [info@phonebusters.com]. Their website, www.phonebusters.com , provides additional contact numbers.
- Originator's Mailbox Provider: If the correspondence was received in the form of an e-mail, notify the originator's mailbox provider that the originator's email address is being used to solicit illegal activities. For example, Yahoo and Hotmail have the following email addresses set up: abuse@yahoo.com; abuse@hotmail.com.
- On-line Job Search Database Service: Notify the on-line service you utilize to post your resume of this scam.

Most importantly, do NOT make contact with the con artist; they can be extremely dangerous. If at anytime, you feel physically threatened, you should contact your local police department immediately.

**Overpayment for Goods or Services**

You have advertised a car in an on-line market and are contacted by someone who is interested in making the purchase. They agree to pay the advertised amount, but, oops, they made the check out for $3,000 more than the asking price. Because you seem to be such an honest individual, they trust you with these extra funds and ask you to simply deposit the check into your bank account and wire the excess to their shipper, who is arranging for pickup of the vehicle. As it turns out, they are not so trusting. The check is counterfeit. As with the other 419 scams, once the check is returned as uncollected, the money is already gone, and you are left with a loss.

In addition to contacting the appropriate financial institutions as outlined in the *Receipt of Suspicious Checks / Verifying Authenticity* section, there are others who you should notify as well if you are in receipt of a counterfeit item and associated e-mails and correspondence regarding the overpayment. They include:

- US Postal Inspection Service - by telephone at 1-888-877-7644, by mail at U.S. Postal Inspection Service, 222 S. Riverside Plaza, Suite 1250, Chicago, IL 60606-6100 or via e-mail at http://www.usps.com/postalinspectors/fraud/MailFraudComplaint.htm
- Federal Trade Commission (FTC): by telephone at 1-877-FTC-HELP or by filing an electronic complaint via their internet site at www.ftc.gov

- Federal Bureau of Investigation (FBI) Internet Fraud Complaint Center (Scams that may have originated via the internet): www.ic3.gov
- Royal Canadian Mounted Police (Canadian Scams): by telephone at 1-888-495-8501 or via e-mail at [info@phonebusters.com]. Their website, www.phonebusters.com , provides additional contact numbers.
- Originator's mailbox provider: If the correspondence was received in the form of an e-mail, notify the originator's mailbox provider that the originator's email address is being used to solicit illegal activities. For example, Yahoo and Hotmail have the following email addresses set up: abuse@yahoo.com; abuse@hotmail.com.

Most importantly, do NOT make contact with the con artist; they can be extremely dangerous. If at anytime, you feel physically threatened, you should contact your local police department immediately.

**Banking Concerns**

Should you have a specific problem with a bank, you will want to contact the regulator(s) responsible for ensuring the safety and soundness of that institution. Following are the different types of institutions and links to their regulators' customer assistance groups.

- National Banks (OCC & FDIC)
- Credit Unions (NCUA)
- State Banks (State Banking Department, FDIC, or Federal Reserve)
- Thrifts and Trust Companies (OTS)

**Debt Elimination**

The Office of the Comptroller of the Currency ("OCC") continues to see an increasing volume and variety of fictitious debt elimination schemes being perpetrated against financial institutions. These fictitious schemes are not to be confused with debt consolidation or debt workout programs presented by legitimate entities.

The object of legitimate programs is to assist the borrower to repay the debt in a responsible manner. The fictitious schemes claim to be able to "eliminate" or to "cancel" various types of debt from banks and non-banks without a material further amount of payment by the obligor. The fictitious schemes take various forms, including those that:

- claim to pay out the debt in some way, but don't;
- transfer the debt to some wealthy benevolent entity, that does not exist or has no financial capacity; or,
- falsely claim to be able to have the debt declared invalid for the reason that the financial company is not permitted to lend money or the documentation **used by the lender is not valid.**

The fictitious, fraudulent schemes are being marketed to everybody, not just the wealthy or sophisticated, including borrowers who are current and those approaching foreclosure. The underlying fraudulent claim in all these fictitious schemes is:

- US Postal Inspection Service - by telephone at 1-888-877-7644, by mail at U.S. Postal Inspection Service, 222 S. Riverside Plaza, Suite 1250, Chicago, IL 60606-6100 or via e-mail at http://www.usps.com/postalinspectors/fraud/MailFraudComplaint.htm

These schemes are promoted: via the Internet; in seminars throughout the United States; and, directly by persons known to the victim by way of group affiliation, particularly religious and fraternal groups. These fraudulent schemes claim to "eliminate" or to "cancel" various types of debt, including mortgages, credit card balances, student loans, auto loans, and small business loans. All of them are simply designed to take an individual's money, and are just the modern version of the old "up-front-fee" scheme. The schemes charge an up-front fee, or membership fee, that currently ranges from $400 to $7,500.

As a result of using a fraudulent scheme, individuals will lose money, could lose property, will damage their credit rating, and possibly incur additional debt. In addition, a creditor may take legal action against

an individual to resolve a fraudulent attempt to eliminate debt. It is also possible for the victim to have identity theft occur by participating in a fraudulent scheme. The perpetrators of these schemes are known to steal identities and create substantial new debts in the victim's name before they are even aware that it has occurred. It is extremely difficult and time-consuming to resolve the issues pertaining to identity theft.

These fraudulent debt elimination and cancellation schemes have no substance in law or finance. In statements and sometimes in the guise of education, the perpetrators of the schemes provide inaccurate or distorted information about applicable laws and real financial operations. The following are examples of inaccurate information the OCC has seen from these schemes:

- Secret information or laws, known only to a select few, can be used to eliminate debt;
- Banks and other creditors do not have the authority to lend money, to advance credit, or to charge interest;
- An individual's debt is a asset of the creditor that the creditor owes to the individual;
- A debt owed to a bank is the same as a deposit in a bank;
- Creditors will not pursue debt collection after an individual participates in one of these schemes;
- The United States Department of Treasury or some other Federal agency establishes a trust account when an individual is born;
- Arbitration need not meet the terms of the credit agreement;
- Individuals can create their own arbitration companies that can create and certify arbitration awards that eliminate, cancel or reduce debt;
- An individual does not have to pay the debt because the contract or note is illegal and may even deserve a compensatory award; and,
- Results are guaranteed.

There are unlimited variations to these schemes. The basic idea of these schemes, however, is to fool individuals into paying money to have a debt eliminated or cancelled, or to obtain false documents and the instructions on how to submit the false documents to creditors. The following are some variations of the false documents used:

- A fake arbitration award from an arbitrator not authorized under the debt agreement;
- A worthless debt instrument issued by some company, group, trust, benevolent society, or wealthy individual, quite often of foreign origin, as a substitute for the creditor's note;
- A record of a fictitious account or "trust account" supposedly held in an individual's name at the United States Department of the Treasury or other Federal agency;
- A fictitious U. S. Government debt instrument issued as a substitute for the creditor's note, payable through an agency or by an authorized agency person;
- A notice, usually voluminous, to the creditor stating that the contract or note is illegal or the creditor does not have authority to "advance credit" and has violated the law; or,
- The issuance of a false payoff certificate from the original lender, combined with the borrower's authorization for the perpetrator to obtain a new mortgage, using the proceeds to pay the perpetrator's fee. This "new debt" is stated to be a new first lien, but it is really just a second mortgage, thereby increasing the victim's debt and monthly payment requirements.

Any information that you have concerning fraudulent debt elimination or debt cancellation schemes should be brought to the attention of appropriate local or Federal law enforcement personnel.

If the fraudulent scheme is presented via the Internet or e-mail, contact the Internet Crime Complaint Center (IC3). Please go to the IC3 Web site at http://www.ic3.gov and follow the instructions for filing a complaint (IC3 was f/n/a the Internet Fraud Complaint Center- IFCC). Contacts from other sources, such as individual contacts or seminars, should be reported to the local office of the FBI and your local financial fraud law enforcement organization.

If any portion of the offering or subsequent portions of the transaction are processed through the United States Postal System (USPS), the Criminal Investigation Division of the USPS should be contacted. Contact information can be obtained from your local U.S. Post Office.

Any group, individual or company that states that they can eliminate, remove or cancel your debt by having you pay them a relatively small fee, and without you providing sufficient funds to pay off the debt, is perpetrating a fraud. This is commonly known as an "up-front-fee scam."

Case 1:08-cv-00121-JJF    Document 1-3    Filed 02/29/2008    Page 8 of 13

OCC: Consumer Complaints and Assistance - National Bank Fraud Resource Center Consumer Information    Page 7 of 8
Case 2:07-cv-00975-ECR-GWF    Document 2    Filed 07/23/2007    Page 8 of 21

**This is not a legitimate process for paying off your mortgage, installment loan, or credit card.**

This Office does not maintain a list of companies engaging in such fraudulent activities. Many of these groups portray themselves as clubs or investment advisors. These schemes are not new, just the latest version of the up-front-fee scam, perpetrated with the speed and broad coverage of the internet.

If you have lost money as a result of this scheme, you should file a complaint with the local FBI office, or if you are in the same state as the originators, your state law enforcement.

You should also file a complaint with both the IC3, and the State consumer complaint organization or department of financial institutions for the state where the originators are located.

If any portion of the offering or subsequent portions of the transaction are processed through the United States Postal System (USPS), the Criminal Investigation Division of the USPS should be contacted. Specific contact information can be obtained from your local U.S. Post Office.

### Fictitious/Unauthorized Banking

Banks operating without a license or charter in the US or any other country are operating in an unauthorized manner. When we are notified of a fictitious bank, we may issue an Alert. The individual Alerts can be found on our internet site. Click here to view the consolidated listing. If you have information pertaining to such an institution, please notify us via email at: OCCAlertResponses@occ.treas.gov, via mail at: Office of the Comptroller of the Currency, Enforcement & Compliance Division, MS 8-10, 250 E Street, SW, Washington, DC 20219 or via fax at: (202) 874-5214.

### Phishing, Spoofing & Pharming

An industry organization, the Anti-Phishing Working Group (http://www.antiphishing.org), reports that identity theft known as "phishing" attacks have increased significantly over the last year. Phishing, spoofing and pharming are terms used for criminals' attempts to steal personal financial information through fraudulent e-mails and Websites designed to appear as though they were generated from legitimate businesses, financial institutions, and government agencies. These scams are contributing to a rise in identity theft, and credit card and other Internet-based frauds. E-commerce customers, including bank customers, have fallen victim to these scams.
If you receive an e-mail or pop-up message requesting verification of personal and/or financial information, chances are that someone is trying to lure you into a phishing scheme. These con artists use letterheads, e-mail and website addresses of what would appear to be legitimate companies. However, while convincing, they do not represent the entities at all. They are simply attempting to gather your personal and financial information to be used to steal your identity and ruin your name and credit. Legitimate companies will not use e-mail to obtain confidential information.
Should you receive such an e-mail, follow these steps:

1. Do NOT click on the link provided in the message nor respond in any way.
2. NEVER provide any personal information using the contact information provided in the e-mail or in the bogus website link! Instead, locate a genuine telephone number for the company and make contact with them.
3. Forward the e-mail to the Federal Trade Commission (FTC) at spam@uce.gov by attaching the message to a new e-mail. This will ensure that all original headers are included. When sending the e-mail to the FTC, copy your local internet service provider's abuse center as well as the legitimate company (if you can obtain that information). For example, eBay has an e-mail reporting box set up at spoof@ebay.com

Please refer to OCC Bulletin 2005-24 (PDF), OCC Bulletin 2004-42 (PDF), and the OCC's Anti-Phishing Brochure for further information.

### Spam

What is spam? Spam is unsolicited commercial email (UCE), which is sent out in mass mailings, thus flooding the internet and user mailboxes with unwanted e-mail. Most spam mail is sent to individuals by con artists advertising a questionable product or service or touting some fabulous get-rich-quick scheme. There are generally three steps to take when you receive spam:

1. Forward the e-mail to the Federal Trade Commission (FTC) at spam@uce.gov by attaching the message to a new e-mail. This will ensure that all original headers are included.
2. Never respond to spam mail, which includes clicking on "unsubscribe" or "remove" option buttons. By responding in any way will notify the scammers that they have reached an active e-mail address, and they will continue to send unwanted mail.
3. Delete the message.

Many times, individuals who respond to spam are later victimized in a scam or through identify theft.

 The Office of the Comptroller of the Currency was created by Congress to charter national banks, to oversee a nationwide system of banking institutions, and to assure that national banks are safe and sound, competitive and profitable, and capable of serving in the best possible manner the banking needs of their customers.

Accessibility | Web Privacy Policy |
Contact Us
Department of the Treasury | USA.gov |
No Fear Act | Get Acrobat Reader |
HelpWithMyBank.gov |

 

FEDERAL DEPOSIT
INSURANCE CORPORATION

| HOME | DEPOSIT INSURANCE | CONSUMER PROTECTION | INDUSTRY ANALYSIS | REGULATION & EXAMINATIONS | ASSET SALES | NEWS & EVENTS | ABOUT FDIC |

Home > Consumer Protection > Consumer Resources > FDIC Consumer News

## FDIC Consumer News

### Winter 2003/2004

### Beware of Bogus Debt Elimination Scams

If an Internet site or other advertisement offers to sell you a document you can use to "legally" eliminate an outstanding credit card balance or other debt, don't believe it.

U.S. government and banking industry reports indicate a variety of schemes on the Internet and elsewhere promoting programs that, for a significant fee (sometimes thousands of dollars), fraudulently claim to enable borrowers to stop payments on a debt simply by giving the lender a specially-prepared document. Many of these offers also cite false claims about the Federal Reserve System, U.S. currency or other federal or state government programs as the legal justification for their debt elimination program.

The bottom line: These documents are bogus and a waste of money. If you come across this scam on the Internet or elsewhere, consider reporting the details to the FBI by calling the regional office listed in your phone book or contacting the Internet Crime Complaint Center at www.ifccfbi.gov. If you want more information about legitimate ways to get out of debt safely and avoid debt-related scams, see "Weathering a Financial Storm" in the Winter 2001/2002 issue of *FDIC Consumer News*, online at www.fdic.gov/consumers/consumer/news/cnwin0102/cvrstry.html.

Previous Story          Table of Contents          Next Story

Last Updated 03/08/2004                                                communications@fdic.gov

**Home   Contact Us   Search   Help   SiteMap   Forms**
Freedom of Information Act (FOIA) Service Center    Website Policies    USA.gov



**ALERT 2007-55**

# OCC ALERT

Comptroller of the Currency
Administrator of National Banks

Subject: **Debt Elimination Fraud**      Description: **Fraudulent Schemes to Eliminate Mortgage, Credit Card, or Small Business Debt**

Date: September 5, 2007

**TO:** Chief Executive Officers of All National Banks; All State Banking Authorities; Chairman, Board of Governors of the Federal Reserve System; Chairman, Federal Deposit Insurance Corporation; Director, Office of Thrift Supervision; Conference of State Bank Supervisors; Deputy Comptrollers (districts); Assistant Deputy Comptrollers; District Counsel; and All Examining Personnel

**RE:**

Fraudulent Debt Elimination Schemes

The Office of the Comptroller of the Currency (OCC) is aware that the volume and variety of fraudulent schemes supposedly designed to "eliminate" debt is increasing. These schemes are being promoted via the Internet and in seminars throughout the United States. The fraudulent schemes are being marketed to ordinary people, not just the wealthy or sophisticated, including borrowers who are current on their payments and those approaching foreclosure.

The persons perpetrating the fraudulent schemes claim that they can eliminate borrowers' various types of debt, including mortgages, credit card balances (including balances on cards issued by nonbank companies), student loans, auto loans, and small business loans. The variations on these schemes are endless.

A recent variation includes the fraudulent use of the OCC's 3-page Customer Complaint Form (form). The form is included in the package of documents provided to the victim, falsely adding another pretense of legitimacy to the worthless program. The victim is told to sign only the third page of the form, not to date it or complete any other information requested on the form. The date, customer, and financial institution information will be completed by the perpetrators. The form is subsequently completed and filed with the OCC falsely stating that the financial institution has acted improperly with regard to the victim's account.

These schemes are designed to defraud victims of an up-front fee, which typically ranges from $400 to $7,500. As a result of using a fraudulent scheme, victims could lose money and property, and damage their credit record. In addition, the creditor may take additional legal action against a borrower to resolve a fraudulent attempt to eliminate a borrower's debt.

A second, extremely harmful, potential result of participating in any of these illegal schemes is **the theft of a victim's identity** . Based upon the information provided to the perpetrators in a scheme, they may be able to steal a person's identity and run up substantial new debts before the victim is aware of the theft. Resolving identity theft issues is an extremely difficult and time-consuming matter.

The following are sample variations of the fraudulent processes used to fool borrowers into paying money to "eliminate" debt:

- A phony arbitration award from an arbitrator not authorized under the debt agreement;
- The use of a nonexistent "trust account" supposedly held in a person's name at the United States Department of the Treasury or some other part of the federal government;
- The substitution of a debt instrument issued by a company, group, trust, or person for the obligor's original note or account at the creditor;
- The substitution of a fictitious U. S. government debt instrument, which claims to be payable or authorized by the United States Department of the Treasury or a related person or entity, for the obligor's original note or account at the creditor;
- The substitution of a fictitious U. S. government financial instrument, which references an account located at the United States Department of the Treasury or with a related person or entity, for the obligor's original note or account at the creditor;
- The substitution of a fictitious U. S. government debt instrument, which requires an official to authorize or refute the authenticity of the instrument, for the obligor's original note or account at the creditor;
- A notice to the creditor that the contract or note is illegal and, therefore, the borrower does not have to pay the debt and may even be entitled to a compensatory award; and
- A notice to the creditor that the creditor does not have authority to "lend its credit" to the obligor and has violated the law, and therefore, the borrower does not have to pay the debt and may even be entitled to a compensatory award.

These schemes have no substance in law or finance. No one can eliminate an obligation to pay a debt, simply by paying someone a small fee, relative to the debt to be eliminated.

In the guise of educating borrowers, these schemes provide inaccurate or distorted information about applicable laws and finance. Some examples of inaccurate information from these schemes include the following:

- Borrowing is a con game whereby a borrower's debt is money "created" by and owed to the borrower.
- A borrower's debt is an asset of the creditor owed to the borrower.
- Secret information or laws can be used to eliminate debt.

- Banks and other creditors do not have the authority to lend money or issue credit.
- Three or more persons can set up individual arbitration companies, create an arbitration award for a fraction of the debt owed, have the award certified by the two other companies, and submit the award and payment to the creditor in satisfaction of the total debt.

Any information that you have concerning these matters should be brought to the attention of appropriate local or federal law enforcement.

If the fraudulent scheme is presented via the Internet or e-mail, contact the Internet Crime Complaint Center (IC3). Please go to the IC3 Web site at: http://www.ic3.gov and follow the instructions for filing a complaint. Other sources, such as individual contacts or seminars, should be reported to the local office of the Federal Bureau of Investigation or local financial fraud law enforcement organization. If the proposal was received via the U.S. Postal Service, please file a complaint with the U.S. Postal Inspector Service by telephone at 1-888-877-7644, by mail at U.S. Postal Inspection Service, 222 S. Riverside Plaza, Suite 1250, Chicago, IL 60606-6100 or via e-mail at http://www.usps.com/postalinspectors/fraud/MailFraudComplaint.htm.

Additional information concerning this matter that you believe should be brought to the attention of the OCC may be forwarded to:

| | |
|---|---|
| E-mail: | occalertresponses@occ.treas.gov |
| Mail: | Office of the Comptroller of the Currency Special Supervision Division, MS 6-4 250 E Street, SW, Washington, DC 20219 |
| Fax: | (202) 874-5214 |

For additional information regarding other types of financial fraud, please visit the OCC's anti-fraud resource at: http://www.occ.treas.gov/fraudresources.htm.


_____/signed/_____

Richard C. Stearns
Director for Enforcement & Compliance

# EXHIBIT C

February 25, 2008



Office of the
**Attorney General of Florida**
**Bill McCollum**

Attorney General Bill McCollum News Release

February 21, 2008                                          en Español
Media Contact: Sandi Copes
Phone: (850) 245-0150

**Attorney General McCollum Warns About Credit Repair Scams, Sues Debt Negotiation
Companies**

TALLAHASSEE, FL - Attorney General Bill McCollum today issued a consumer advisory warning
Floridians about the increasing number of credit repair scams and simultaneously announced
that his office's Economic Crimes Division filed two lawsuits today, one against a Broward
County attorney and one against a Clay County couple. The lawsuits allege the Broward attorney
deceptively marketed misleading debt management services and the Clay County couple
charged egregious fees for debt negotiation services that were never provided.

"Consumers who are trying to reduce or eliminate debt are working toward an admirable goal
and it is unconscionable to take advantage of these efforts," said Attorney General McCollum.
"Florida citizens should always be wary of companies or individuals who are making
unreasonable promises or demands, either to restore credit or reduce debt."

Laura L. Hess of Coral Springs, her Broward County law firm and two other Florida-based
companies she controls are named in the first lawsuit, which states Hess allegedly signed
thousands of credit card debtors up for debt management services, claiming the law firm would
provide legal services to cancel debts for pennies on the dollar. Representatives of Hess
allegedly told consumers that the companies had audited the consumers' accounts and found
numerous violations under the Fair Credit Billing Act, then sent notices to creditors disputing all
charges. Consumers were falsely told that once these notices were issued, the consumers did
not have to pay creditors and creditors could not sue or otherwise take action against them. The
Attorney General's lawsuit alleges Hess's deception led to lawsuits and other actions against
several debtors.

The second lawsuit, filed today in Clay County Circuit Court, alleges John J. Hacker and Christa
L. Caparella, operating as United Debt Solutions, promised consumers that they could reduce
their debts by 50 percent or more and demanded fees that greatly exceeded legal limits for debt
negotiators. According to the lawsuit, Hacker and Caparella instructed customers to stop paying
creditors and instead divert what they would have paid to the couple. Instead of contacting
creditors to negotiate debt reductions, the lawsuit alleges the two simply pocketed the money.
Requests for refunds were ignored and when their business ran short on funds, Hacker and
Caparella debited their customers' accounts without permission. The Attorney General's Office
has received nearly 100 complaints about the pair from all over the United States.

The Attorney General reminded consumers that they are entitled to one free credit report every
12 months, available at https://www.annualcreditreport.com/cra/index.jsp, and should beware of
companies that offer quick solutions for clearing bad credit. Credit repair companies claiming
they can remove negative information from a credit report are not being honest. Accurate
information within seven years of the reporting period, or 10 years if the information relates to a
bankruptcy, cannot be erased from a credit report. The only information that can be changed are
items that are actually wrong or are after the reporting date.

Some credit repair schemes offer to "hide" bad credit by helping consumers establish a new
credit identity. The company may direct the consumer to apply for an Employer Identification

Number (EIN) from the Internal Revenue Service, and to use the EIN in place of his or her Social Security number when applying for credit. This practice, known as file segregation, is a federal crime.

To avoid these and other credit repair scams, Attorney General McCollum offered the following tips for consumers who may be considering credit repair services:

- Contact creditors if scheduled payments will be missed and ask local credit counseling services to develop payment plans. These nonprofit groups offer credit guidance to consumers and their services are available at little or no cost. Your employer, credit union, or housing authority may also offer other no-cost credit counseling programs.

- Request a copy of your credit report and review it for mistakes. You are entitled to a free copy of your credit report if you've been denied credit, insurance or employment and request the report within 60 days of notice, or if you can prove that (1) you're unemployed and plan to look for a job within 60 days, (2) you're on welfare, or (3) your report is inaccurate because of fraud. Otherwise, the credit bureaus may charge you a small fee for a copy of your credit report.

- If there are mistakes on your credit report, contact the credit bureau and request a dispute form. Submit the form with as much information as possible about the inaccurate information. The bureau must reinvestigate the matter and delete or correct any information which they are unable to verify. If the dispute still exists, consumers can file a written explanation which must be included in the credit report.

- Contact the Attorney General's Office at 1-866-966-7226 or online at http://www.myfloridalegal.com to determine if there are complaints or legal actions pending against the company you are considering.

A copy of the lawsuit filed against Laura Hess is available online at:
http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7C2GSH/$file/HessComplaint.pdf

A copy of the lawsuit filed against Hacker and Caparella is available online at:
http://myfloridalegal.com/webfiles.nsf/WF/MRAY-7C2GRC/
$file/HackerandCaparellaComplaint.pdf

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL

CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA


OFFICE OF THE ATTORNEY GENERAL,

DEPARTMENT OF LEGAL AFFAIRS,

STATE OF FLORIDA,

      Plaintiff,                               Case No.:

vs.

LAURA L. HESS, ESQ.,

LAURA HESS & ASSOCIATES, P.A.,

HESS KENNEDY CHARTERED LLC, and

THE CONSUMER LAW CENTER, LLC,

      Defendants.


<u>COMPLAINT</u>


      Plaintiff, **OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA** (hereinafter referred to as "Plaintiff"), sues Defendant **LAURA L. HESS, Esq.,** individually and Defendants **LAURA HESS & ASSOCIATES, P.A.,** a Florida corporation, **HESS KENNEDY CHARTERED LLC**, a Florida limited liability company, and **THE CONSUMER LAW**

**CENTER, LLC**, a Florida limited liability company (hereinafter collectively referred to as Defendants or Hess Kennedy).

<u>JURISDICTION</u>

1.      This is an action for damages and injunctive relief, brought pursuant to Florida's Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (2001).

2.      This Court has jurisdiction pursuant to the provisions of said statute.

3.      Plaintiff is an enforcing authority of Florida's Deceptive and Unfair Trade Practices Act as defined in Chapter 501, Part II, Florida Statutes, and is authorized to seek damages, injunctive and other statutory relief pursuant to this part.

4.      The statutory violations alleged herein occurred in or affected more than one judicial circuit in the State of Florida.  Venue is proper in the Seventeenth Judicial Circuit as the principal place of business of the Defendant entities is Broward County, Florida.

5.      Plaintiff has conducted an investigation, and the head of the enforcing authority, Attorney General Bill McCollum has determined that an enforcement action serves the public interest.  A copy of said determination was attached and incorporated herein as Plaintiff's Exhibit A to the original Complaint and is incorporated herein by reference.

6.      Defendants, at all times material hereto, provided goods or services as defined within Section 501.203(8), Florida Statutes (2001).

2

7.      Defendants, at all times material hereto, solicited consumers within the definitions of Section 501.203(7), Florida Statutes (2001).

8.      Defendants, at all times material hereto, were engaged in a trade or commerce within the definition of Section 501.203(8), Florida Statutes (2001).

## DEFENDANTS

9.      Defendant LAURA L. HESS, an adult over the age of twenty one, resides in and/or has a principal place of business at 210 North University Drive, Coral Springs, Florida, was at all times material an attorney licensed to practice law in the State of Florida and an owner, officer, manager, member and/or director of Defendants LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER LLC.

10.     Defendant LAURA HESS & ASSOCIATES, P.A is a Florida for-profit corporation for the practice of law in the State of Florida, with a principal address of 210 North University Drive, Coral Springs, Florida.

11.     Defendant HESS KENNEDY CHARTERED LLC is a Florida limited liability company, with a principal address of 210 North University Drive, Coral Springs, Florida.

12.     Defendant THE CONSUMER LAW CENTER, LLC is a Florida limited liability company, with a principal address of 210 North University Drive, Coral Springs, Florida.

13.     At all times material, Defendant LAURA L. HESS knew of and controlled the activities of LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE

3

CONSUMER LAW CENTER, LLC.  Defendant LAURA L. HESS had actual knowledge or constructive knowledge fairly implied on the basis of objective circumstances, that the her acts and/or omissions and the acts/or omissions of the employees, agents, members, managers and representatives of Defendants LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC as described below, were unfair or deceptive and/or prohibited by law.

<div align="center">

**DECEPTIVE AND UNFAIR TRADE PRACTICES**

**CHAPTER 501, PART II FLORIDA STATUTES**

</div>

14.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 13 as if fully set forth hereinafter.

15.     Chapter 501.204(1), Florida Statutes, declares that unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

16.     Commencing on a date unknown, but at least subsequent to May 23, 2005, the Defendants engaged in various willful deceptive and unfair trade practices, as set out further herein, in violation of Chapter 501, Part II, Florida Statutes (2001).

17.     Commencing on a date unknown, but at least subsequent to May 23, 2005, the Defendants engaged in a systematic pattern of conduct designed and intended to induce consumers to purchase their services via a series of false and fraudulent representations.

<div align="center">4</div>

<u>COUNT I</u>

*Defendants LAURA L. HESS and LAURA HESS & ASSOCIATES, P.A.*

18.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 17 as if fully set forth hereinafter.

19.     On or about May 23, 2005, Laura L. Hess incorporated a for-profit Florida corporation under the name of Laura Hess, Inc.

20.     The Articles of Incorporation provided that the purpose of Laura Hess, Inc. was "any and all lawful business" but not the rendering of professional legal services as required by F.S. §621.08.

21.     Laura Hess, Inc. was organized under the provisions of Chapter 607 of the Florida Statutes.

22.     On or about May 25, 2007, Articles of Amendment were filed changing the name of Laura Hess, Inc. to Laura Hess & Associates, P.A. but not changing the purpose to conform to the requirements of Chapter 621 of the Florida Statutes, contrary to F.S. §621.13(4).

23.     On or about January 3, 2008, Laura Hess & Associates, P.A. filed an Annual Report listing Edward Cherry as an officer and director.

24.     Edward Cherry is not an attorney licensed to practice law in the State of Florida. Section 621.09 of the Florida Statutes requires a shareholder or member of a professional legal

5

services corporation or limited liability company, respectively, to be an attorney licensed in the State of Florida to practice law.

25.    Laura Hess & Associates, P.A. is the owner of the fictitious names Consumer Law Center and The Consumer Law Center (Coral Springs) filed with the Division of Corporations on or about September 6, 2007 and September 10, 2007, respectively.  Said fictitious names violate the provisions of F.S. §621.12(4) as they are not "identical to [the professional service corporation's] name", i.e. Laura Hess & Associates.

26.    Laura Hess & Associates, P.A. is the owner of the fictitious name Hess|Kennedy Chartered filed with the Division of Corporations on or about September 6, 2007.  Said fictitious name violates the provisions of F.S. §621.12(4) as it is not "identical to [the professional service corporation's] name", i.e. Laura Hess & Associates.

27.    Laura Hess & Associates, P.A. is also the part owner of Hess Kennedy Chartered LLC, in conjunction with a Cayman Islands business company.  Defendants represent Hess Kennedy Chartered LLC to be a corporation responsible for processing consumer payments on behalf of the law firm.  Laura L. Hess has testified that the predecessor in name to Hess Kennedy Chartered LLC  was an international law firm.  This ownership by Laura Hess & Associates, P.A. violates Chapter 621 of the Florida Statutes.

28.    As a result of the foregoing acts and omissions, Laura Hess & Associates, P.A. has not conformed to the requirements of Chapter 621 of the Florida Statutes in order to be

qualified as a professional service corporation to render legal services in the practice of law in the State of Florida.

29.     Defendants Laura L. Hess and Laura Hess & Associates, P.A. have misled and/or misrepresented to the public that Laura Hess & Associates, P.A. is a duly organized professional service corporation and qualified to render legal services in the practice of law in the State of Florida, in violation of the provisions of Chapters 501 and 621 of the Florida Statutes.

30.     Defendants Laura L. Hess and Laura Hess & Associates, P.A. have misled and/or misrepresented to the public, including through internet advertisements, that Hess|Kennedy Chartered is a duly organized professional service corporation and qualified to render legal services in the practice of law in the State of Florida, in violation of the provisions of Chapters 501 and 621 of the Florida Statutes as said fictitious name is not "identical to [the professional service corporation's] name", i.e. Laura Hess & Associates.

## COUNT II
*Defendants LAURA L. HESS, LAURA HESS & ASSOCIATES, P.A.*
*and HESS KENNEDY CHARTERED LLC*

31.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 30 as if fully set forth hereinafter.

32.     On or about December 8, 2005, Laura L. Hess incorporated a for-profit Florida corporation under the name of Hess Kennedy Company.

7

33.     The Articles of Incorporation stated that the purpose of Hess Kennedy Company was "any and all lawful business" but not the rendering of professional legal services as required by F.S. §621.08.

34.     Hess Kennedy Company was organized under the provisions of Chapter 607 of the Florida Statutes.

35.     On or about March 13, 2007, Articles of Amendment were filed changing the name of Hess Kennedy Company to Hess Kennedy Company Chartered and changing the purpose to read that the corporation may engage in or transact any or all lawful business; debt adjustment services incidental to the practice of law; and the practice of law.  The amended purpose does not conform to the requirements of Chapter 621 of the Florida Statutes.  Said Articles of Amendment were signed by the aforesaid Edward Cherry as Director.  Defendant Laura L. Hess has admitted that Edward Cherry is a shareholder.

36.     On or about August 31, 2007, Articles of Amendment were again filed changing the name of Hess Kennedy Company Chartered to Hess Kennedy Chartered LLC but not changing the purpose.  The Articles of Amendment also set forth that the managing member of Hess Kennedy Chartered LLC was the aforesaid Cayman Islands business company.  Said Articles of Amendment were signed by the aforesaid Edward Cherry.  Defendant Laura L. Hess has admitted that Edward Cherry is a shareholder.

37.     For the effective period of January 1, 2007 through December 31, 2007, Hess Kennedy Company, and thus its successors in name, Hess Kennedy Company Chartered and

8

Hess Kennedy Chartered LLC, were licensed by the Florida Office of Financial Regulation as a "Consumer Collection Agency".

38.    Defendants Laura L. Hess, Laura Hess & Associates, P.A. and Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, have misled and/or misrepresented to the public that Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, were attorneys at law licensed to render legal services in the practice of law in Florida, in violation of the provisions of Chapters 501 and 621 of the Florida Statutes.

39.    Hess Kennedy Chartered LLC is owned by Laura Hess & Associates, P.A. in conjunction with a Cayman Islands business company. Defendants represent Hess Kennedy Chartered LLC to be a corporation responsible for processing consumer payments on behalf of the law firm. Laura L. Hess has testified that the predecessor in name to Hess Kennedy Chartered LLC was an international law firm.

40.    Defendants have repeatedly and systematically entered into agreements for the rendering of legal services in the practice of law with residents of Florida and of other states representing the law firm signatory to the agreements as follows: a) Hess Kennedy Company; b) Hess Kennedy Company, Chartered Law Firm; c) Hess Kennedy Company Chartered; d) Hess Kennedy & Company; e) Hess Kennedy & Associates; f) Hess|Kennedy, Attorneys; g) Hess|Kennedy, PLLC; and h) Consumer Law Center.

41.    On or about September 6, 2007, Laura Hess & Associates, P.A. registered the fictitious name Hess|Kennedy Chartered with the Division of Corporations. Said fictitious name

9

violates the provisions of F.S. §621.12(4) as it is not "identical to [the professional service corporation's] name", i.e. Laura Hess & Associates.

42.     Commencing on a date unknown, but at least subsequent to September 6, 2007, Defendants have repeatedly used the name Hess|Kennedy, A Professional Association in its representations to the public.

43.     None of the names set forth in the preceding paragraphs 40, 41 or 42 is or represents professional services corporations or limited liability companies conforming to the requirements of Chapter 621 of the Florida Statutes in order to be professional service corporations or limited liability companies qualified to render legal services in the practice of law in the State of Florida.

44.     Defendants Laura L. Hess, Laura Hess & Associates, P.A. and Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, have misled and/or misrepresented to the public that: a) Hess Kennedy Company; b) Hess Kennedy Company, Chartered Law Firm; c) Hess Kennedy Company Chartered; d) Hess Kennedy & Company; e) Hess Kennedy & Associates; f) Hess|Kennedy, Attorneys; g) Hess|Kennedy, PLLC; h) Hess|Kennedy, A Professional Association; i) Hess|Kennedy Chartered; j) Consumer Law Center; and k) Hess Kennedy Chartered LLC, including its aforesaid predecessors in name,  were attorneys at law licensed to render legal services in the practice of law in Florida, in violation of the provisions of Chapters 501 and 621 of the Florida Statutes.

10

**COUNT III**

*Defendants LAURA L. HESS, LAURA HESS & ASSOCIATES, P.A.*

*and THE CONSUMER LAW CENTER, LLC*

45.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 44 as if fully set forth hereinafter.

46.     On or about December 4, 2006, Laura Hess, Inc., Jeff Campos, P.A. and David Kleiman, P.A. organized a for-profit Florida limited liability company under the name of The Consumer Law Center LC.

47.     The Articles of Organization stated that the purpose of The Consumer Law Center LC was "any and all lawful business" but not the rendering of professional legal services as required by F.S. §621.08.

48.     The Consumer Law Center LC was organized under the provisions of Chapter 608 of the Florida Statutes.

49.     On or about October 4, 2007, Articles of Amendment were filed changing the name of The Consumer Law Center LC to The Consumer Law Center, LLC but not changing the purpose.  The Articles of Amendment also set forth that the manager of The Consumer Law Center, LLC was changed to The Consumer Law Center Partners.  Said Articles of Amendment were signed by the aforesaid Edward Cherry.

50.     Laura Hess & Associates, P.A. is the owner of the fictitious names Consumer Law Center and The Consumer Law Center (Coral Springs) filed with the Division of Corporations on

11

or about September 6, 2007 and September 10, 2007, respectively.  Said fictitious names

violate the provisions of F.S. §621.12(4) as they are not "identical to [the professional service

corporation's] name", i.e. Laura Hess & Associates.

51.     For the effective period of July 23, 2007 through December 31, 2007, The

Consumer Law Center LC, and thus its successor in name, The Consumer Law Center, LLC, was

licensed by the Florida Office of Financial Regulation as a "Consumer Collection Agency".

52.     None of the names set forth in the preceding paragraphs 49, 50 or 51 is or

represents professional services corporations or limited liability companies conforming to the

requirements of Chapter 621 of the Florida Statutes in order to be professional service

corporations or limited liability companies qualified to render legal services in the practice of

law in the State of Florida.

53.     Defendants Laura L. Hess, Laura Hess & Associates, P.A. and The Consumer Law

Center, LLC have misled and/or misrepresented to the public that The Consumer Law Center,

LLC, including its aforesaid predecessor in name, plus Consumer Law Center and The Consumer

Law Center (Coral Springs) were attorneys at law licensed to render legal services in the

practice of law in Florida, in violation of the provisions of Chapters 501 and 621 of the Florida

Statutes.

## COUNT IV

*Defendants LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

12

54.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 53 as if fully set forth hereinafter.

55.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC represent that their clients have entered into client agreements for the law firm (sic) to render debt settlement services. Said agreements also provide that the legal fees are nonrefundable and are to be paid first before any funds are aggregated in trust accounts for payment to creditors.

56.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC represent that they are professional services corporations or limited liability companies conforming to the requirements of Chapter 621 of the Florida Statutes qualified to render legal services in the practice of law in the State of Florida.

57.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC mislead and/or misrepresent to the public that they are professional services corporations or limited liability companies conforming to the requirements of Chapter 621 of the Florida Statutes and qualified to render legal services in the practice of law in the State of Florida, in violation of the provisions of Chapters 501 and 621 of the Florida Statutes

58.     As a result of the foregoing, the individuals who executed client agreements with Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid

13

predecessors in name, and The Consumer Law Center, LLC have been misled and deceived into paying for putative legal services when said Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC were not duly organized professional services corporations or limited liability companies conforming to the requirements of Chapter 621 of the Florida Statutes and qualified to render legal services in the practice of law in the State of Florida.

<u>COUNT V</u>

*Defendants LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

59.    Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 58 as if fully set forth hereinafter.

60.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have entered into client agreements with individuals for putative legal services referred to as debt settlement services.

61.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have also had individuals enter into client agreements with an entity called Debt Settlement of America for payment processing services and for Debt Settlement of America to negotiate with the individual's creditors.

62.    Debt Settlement of America is not a professional legal services corporation or otherwise qualified to render legal services in the practice of law in Florida.

14

63.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have misled and/or deceived the public that debt settlement or debt adjustment is a service that they provide as attorneys or professional services corporations or limited liability companies conforming to the requirements of Chapter 621 of the Florida Statutes and qualified to render legal services in the practice of law in the State of Florida.

## COUNT VI

*Defendants LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

64.    Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 63 as if fully set forth hereinafter.

65.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have represented in the Articles of Amendment of Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, that debt settlement services or debt adjustment services are incidental to the practice of law.

66.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have engaged Debt Settlement of America to use its best efforts to settle debts for individuals.

15

67.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have deceptively foisted client agreements upon the public that provide that said Defendants will provide legal services for contract disputes/debt settlement but, at the same time, said client agreements exclude legal services for defense of creditor claims or litigation.

68.    As a result of the foregoing, Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have engaged in deceptive acts or practices as aforesaid in violation of the provisions of Chapter 501 of the Florida Statutes by inducing consumers to pay for putative legal services in the practice of law when said services are not legal services that are to be performed by professional services corporations or limited liability companies conforming to the requirements of Chapter 621 of the Florida Statutes and qualified to render legal services in the practice of law in the State of Florida.

## COUNT VII

*Defendants LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

69.    Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 68 as if fully set forth hereinafter.

70.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC represent to the public

16

that part of the money that consumers paid to said Defendants was nonrefundable as fees for putative legal services for debt settlement but that a portion of said money would be aggregated in a trust account for payment to the consumers' creditors.

71.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have misled and/or deceived the public by failing to establish a trust account for money to be aggregated for payment to creditors of consumers as expressly and impliedly represented to consumers and by failing to deposit any money of consumers into said trust account for payment to creditors.

**COUNT VIII**

*Defendants LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

72.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 71 as if fully set forth hereinafter.

73.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC represent to the public that part of the money that consumers paid to said Defendants was nonrefundable as fees for putative legal services for debt settlement but that a portion of said money would be aggregated in a trust account for payment to the consumers' creditors.

74.     Notwithstanding the foregoing representation, Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and

17

The Consumer Law Center, LLC have misled and/or deceived the public by establishing that

until and unless a consumer paid his or her entire nonrefundable legal fee, no money would be

aggregated for or paid to the consumer's creditors and by failing to conspicuously disclose this

policy.

## COUNT IX

*Defendants LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

75.    Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 74 as if

fully set forth hereinafter.

76.    Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including

its aforesaid predecessors in name, and The Consumer Law Center, LLC have misled and/or

deceived the public by representing to consumers in correspondence, client contracts and/or

other materials and advertisements, including on the internet, that Defendants Laura Hess &

Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name,

and/or The Consumer Law Center, LLC is an international law firm with offices in jurisdictions

throughout the United States and foreign countries.

77.    It is unethical and improper for Florida licensed attorneys or professional

services corporations or limited liability companies to represent the existence of offices in other

jurisdictions if there are no bona fide offices in such other jurisdictions.

18

78.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have misled and/or deceived the public by representing on letterheads, client contracts and other materials furnished to the public that said Defendants comprise an international law firm with offices in New York, Illinois, New Jersey, Singapore, London, California, Grand Cayman, Washington, DC, South Carolina and Massachusetts.

79.     Defendants Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC admit that, for cases outside Florida, said Defendants "request assistance from ... affiliate attorneys throughout the country". An affiliate attorney by definition is not part of the Defendants' law firm despite the Defendants' misrepresentation to consumers as to locations of offices outside Florida.

## COUNT X

*Defendants LAURA L. HESS, LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

80.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 79 as if fully set forth hereinafter.

81.     Defendants Laura L. Hess, Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have misled and/or deceived the public by engaging in a deceptive and misleading pattern of conduct as hereinafter set forth that subjects consumers to adverse legal consequences arising

19

from consumers' failure to make payment to creditors while the consumers make payments to said Defendants, Debt Settlement of America or other agents of said Defendants.

82.    Said Defendants contact consumers and furnish to consumers, i.e. prospective clients, various materials, consisting principally of client contracts, welcome or introductory correspondence and internet based advertising.

83.    The written contracts that Defendants furnish to prospective clients for signing and engagement of the Defendants are in various formats but are generically similar, except for one factor: the name by which the Defendants are described in the contracts.

84.    Said Defendants are described in the client contracts by various names including, but not limited to, Hess Kennedy Company Chartered; Hess Kennedy & Company; Hess|Kennedy, A Professional Association; Consumer Law Center; Hess Kennedy Company; Hess|Kennedy, Attorneys; and even Debt Settlement of America.   The Defendants' client contracts represent to clients that the law firm (sic) will render legal services referred to as debt settlement services.

85.    The Defendants' client contracts also set forth, but not clearly and conspicuously, that a) the legal fees are nonrefundable and are to be paid first before any funds are aggregated in trust accounts for payment to creditors, b) the legal services are for contract disputes/debt settlement but, that legal services for defense of creditor claims or litigation are excluded, c) part of the money consumers pay to said Defendants is nonrefundable as fees for putative legal services for debt settlement but that a portion of said money would be

20

aggregated in a trust account for payment to the consumers' creditors, and d) until and unless a client paid his or her entire nonrefundable legal fee, no money would be aggregated for or paid to the client's creditors, notwithstanding the representation to the contrary.

86.     Said Defendants also furnish to clients introductory correspondence and materials which represent that the Defendants will issue Fair Credit Billing Act (FCBA) dispute letters to the consumer's creditors, and then the consumer may stop paying the creditor but the creditor cannot take any legal action or other action to collect the credit card balance.

87.     Said Defendants also post on the internet similar representations to consumers that once the Defendants issue Fair Credit Billing Act (FCBA) dispute letters to the consumers' creditors, consumers may stop paying creditors but the creditors cannot take any legal action or other action to collect the credit card balance.

88.     Said Defendants have not clearly and conspicuously disclosed to consumers in any of the foregoing materials that said Defendants will not make payment to creditors of consumers *ab initio,* that is, from the beginning of the Defendants' engagement by consumers.

89.     Said Defendants have not clearly and conspicuously disclosed to consumers in any of the foregoing materials that, as payment to creditors of consumers would not be made *ab initio,* that is, from the beginning of the Defendants' engagement by consumers, consumers would face risks from non-payment, such as litigation or other action to collect the indebtedness.

21

90.    In instances when said Defendants sent, or caused to be sent, form FCBA dispute letters to creditors, said letters disputed the validity of all charges on the consumer's account, irrespective of the time when said charges were incurred, and requested that creditors not place the consumer's account into default.

91.    Said Defendants have deceptively and misleadingly represented to consumers that the form FCBA dispute letters to creditors, disputing the validity of all charges on the consumers' accounts, were legally valid and effective to toll payment on consumers' accounts without placing the consumers into default and to settle outstanding indebtedness at minimal amounts.

92.    Said Defendants have summarized their work as follows in response to a complaint filed by a consumer with the New Mexico Attorney General: "Bernadette retained this firm for ... auditing creditor compliance with the Truth-In-Lending Act, the Fair Credit Billing Act ... it was determined that the consumer's creditors were unlawfully calculating the annual percentage rate, daily periodic rate, and finance charges ... The firm sent notice in accordance with 15 U.S.C. § 1666 ... "

93.    Said Defendants publicly represent that the foregoing audit and FCBA dispute notice work is not done by attorneys licensed to practice in the State of Florida and that a consumer's account is turned over to an attorney when the creditor's violations total $50,000 to $100,000.

22

93.     Said Defendants' foregoing representations that the form FCBA dispute letters to creditors, disputing the validity of all charges on the consumer's account, are legally valid and effective to toll payment on consumers' accounts without placing the consumers into default are deceptive and misleading.

94.     Federal Court decisions have issued which have decided that FCBA dispute letters to creditors, disputing the validity of all charges on the consumer's account, are not valid notices under 15 U.S.C. § 1666 and do not provide the consumer with rights to withhold payment or protection against creditor litigation under 12 C.F.R. 226.13(d).

95.     As a result of said Defendants' deceptive and misleading pattern of conduct, various consumers have suffered financial losses.  Examples of said consumers are as follows:

a. Bernadette Delgado of New Mexico paid said Defendants for three months but was terminated by her employer, Kirtland Federal Credit Union, who was also her credit card issuer, after said Defendants did not contact or make any payment to Kirtland Federal Credit Union during the three months that the consumer made payments to said Defendants.

b. F.R. of New York paid said Defendants for eleven months but whose credit card issuer, Chase Bank, was not contacted by or received any payment from said Defendants during the eleven months that the consumer made payments to said Defendants.

c. Jim Wideman of Wisconsin paid said Defendants for fifteen months but his credit card issuers did not receive any payment from said Defendants during the fifteen months that the consumer made payments to said Defendants, although said Defendants expressly represented

23

to the consumer in an email on April 11, 2006 that "[a]ll your accounts will be settled before money builds up in your escrow account."

d. Sandra Boulon of Florida paid said Defendants for five months in the total amount of $3533.78. Her credit card issuers had minimal or no contact with and received no payments from said Defendants, according to said Defendants' activity log, during the five months that the consumer made payments to said Defendants. After Ms. Boulon complained to the Better Business Bureau, said Defendants refunded $542.10 to her and also offered to refund her one-half of the total "non-refundable retainer and fees" of $2354.34 paid by the consumer. Said Defendants' client agreement with Ms. Boulon represented that 10% of the estimated settlement amount of $19,025.08, that is $1902.50, together with a portion of the fees would be paid upon execution of the agreement and the consumer paid $2354.35 toward the settlement amount and fees as such down payment. Notwithstanding the contractual terms, said Defendants misrepresented that initial payments from consumers are all nonrefundable legal fees. In subsequent correspondence dated August 21 and August 29, 2007, said Defendants deceptively and misleadingly responded that Ms. Boulon's client agreement "indicated that within 24 months, [said Defendants] would negotiate settlements with her creditors" and that "[s]ettlements on her accounts were not being processed because she did not have enough money in the trust account ..."

96.    As a result of the foregoing, Defendants Laura L. Hess, Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The

24

Consumer Law Center, LLC have engaged in deceptive acts or practices as aforesaid in violation of the provisions of Chapter 501 of the Florida Statutes

## COUNT XI

*Defendants LAURA L. HESS, LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

97.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 96 as if fully set forth hereinafter.

98.     As a result of the foregoing and as more specifically set forth in the foregoing Counts I through X, inclusive, Defendants Laura L. Hess, Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have engaged in deceptive acts or practices as aforesaid in violation of the provisions of Chapter 501 of the Florida Statutes.

## COUNT XII

*Defendants LAURA L. HESS, LAURA HESS & ASSOCIATES, P.A.,*

*HESS KENNEDY CHARTERED LLC and THE CONSUMER LAW CENTER, LLC*

99.     Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 98 as if fully set forth hereinafter.

100.    Commencing on a date unknown, but at least subsequent to May 23, 2005, the Defendants engaged in various willful deceptive and unfair trade practices, as heretofore set forth, providing "debt management services" to consumers to "[e]ffect the adjustment,

25

compromise, or discharge of any unsecured account, note, or other indebtedness" in violation of the provisions of Chapter 817 of the Florida Statutes (2007).

101.    As a result of the foregoing and as more specifically set forth in the foregoing Counts I through X, inclusive, Defendants Laura L. Hess, Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, including its aforesaid predecessors in name, and The Consumer Law Center, LLC have engaged in deceptive acts or practices as aforesaid in violation of the provisions of Chapters 501 and 817 of the Florida Statutes.

WHEREFORE, Plaintiff requests this court to enter the following Orders:

1.    Grant permanent injunctions against Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with Defendants who receive actual notice of this injunction, prohibiting such persons from doing the following acts:

a.    Violating the provisions of Chapter 501, Part II, Florida Statutes (2001); and/or

b.    Engaging in any business activity or operations offering, providing or otherwise dealing in or related to debt counseling, debt adjustment, debt settlement, debt consolidation or debt management services for consumers.

2.    Award actual damages to all consumers who are shown to have been injured in this action, pursuant to Section 501.206 (1) (c), Florida Statutes (2001).

26

3.      Assess against Defendants herein civil penalties in the amount of Ten Thousand

Dollars ($10,000.00) for each act or practice found to be in violation of Chapter 501, Part II,

Florida Statutes (2001).

4.      Order the dissolution of **LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY**

**CHARTERED LLC, THE CONSUMER LAW CENTER, LLC,** and all affiliated entities and/or trade

names under which the Defendants do business, including but not limited to a) **Hess Kennedy**

**Company;** b) **Hess Kennedy Company, Chartered Law Firm;** c) **Hess Kennedy Company**

**Chartered;** d) **Hess Kennedy & Company;** e) **Hess Kennedy & Associates;** f) **Hess|Kennedy,**

**Attorneys;** g) **Hess|Kennedy, PLLC;** h) **Hess|Kennedy, A Professional Association;**

i) **Hess|Kennedy Chartered;** j) **Consumer Law Center;** k) **The Consumer Law Center (Coral**

**Springs);** and l) **Debt Settlement of America** .

5.      Award reasonable attorneys fees pursuant to F.S. 501.2075.

6.      Grant temporary relief pursuant to F.S. 501.207.

7.      Waive the posting of any bond by Plaintiff in this action.

8.      Grant such other relief as this Honorable Court deems just and proper.

27

Respectfully Submitted

**BILL McCOLLUM**
**Attorney General**
By:  Fulvio Joseph Gentili

_____

Assistant Attorney General
Fla. Bar No. 0037493
Office of the Attorney General
Department of Legal Affairs
110 S.E. 6th Street, Tenth Floor
Ft. Lauderdale, FL 33301
(954) 712-4600


Dated:  February      , 2008

28



## Roy Cooper
## North Carolina Attorney General

| | |
|---|---|
| For immediate release<br>Date: February 15, 2008 | Contact: Noelle Talley<br>Phone:   919/716-6413 |

# Debt relief firms ordered to stop taking money in NC, says AG

### *Cooper wins order to halt Florida firms' illegal debt adjusting business*

**Raleigh:** Two Florida firms that charged upfront fees but did little to help people get out of debt have been ordered to stop breaking the law and cease taking money from North Carolinians, announced Attorney General Roy Cooper.

"Instead of helping people, these outfits usually drive people deeper into debt," said Cooper. "Now we've stopped them from taking money from North Carolina consumers, and we'll work to stop them for good."

Cooper filed suit this week against Hess Kennedy, The Consumer Law Center, and their owners, Laura L. Hess and Edward Cherry of Coral Springs, Florida seeking to stop their illegal debt relief scheme in North Carolina. At least 220 North Carolina consumers have paid more than $500,000 to the scheme so far, with more victims suspected in the state.

Wake County Superior Court Judge Donald W. Stephens today signed an order at Cooper's request to temporarily halt the defendants from offering debt adjusting or negotiation services in the state and ordered the defendants to stop taking payments or entering into contracts with North Carolina consumers. The Attorney General is seeking to shut down the firms' activities in North Carolina permanently and to win refunds for consumers.

Hess Kennedy and The Consumer Law Center claim to help people reduce their debts by as much as 60 percent. Cooper alleges that the defendants' program actually operates as an advance fee scam designed to take money from financially-strapped consumers. According to the complaint, the defendants rarely negotiate any kind of debt settlement in exchange for the large upfront fees they collect, which are often as much as 15 to 25 percent of a consumer's total debt. Instead of paying off consumers' creditors, the defendants keep most of the money even after consumers cancel the program.

Cooper contends that the defendants claim to be "expert" debt negotiators that can provide legal protection to their clients even though none of their employees are licensed to practice law in North Carolina. Consumers who stopped paying their bills at the defendants' recommendation got little help from the defendants when their creditors sued them for failing to pay.

As outlined in the complaint, the defendants market their services online and through referral agents who get a cut of consumers' fees. One agent, Consumer Credit Counseling of America, used misleading listings in Raleigh and Winston-Salem telephone books to lure people who thought they were calling a non-profit credit counselor. Instead, they got connected to out-of-state telemarketers who pitched the defendants' expensive services.

"During this time of economic uncertainty, people are feeling pinched and looking for ways to save money and get out of debt," said Cooper. "But steer clear of anyone who tells you to stop paying your bills and give them your money instead. For help getting a handle on your debts, turn to a reputable non-profit credit counselor."

To find an accredited counselor, contact the National Foundation for Credit Counseling at 1-800-388-2227 or www.nfcc.org. ###

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

FILE NO: 08CV _____

|  |  |  |
|---|---|---|
| STATE OF NORTH CAROLINA, <u>ex rel.</u><br>ROY COOPER, Attorney General,<br><br>      Plaintiff,<br><br>v.<br><br>HESS KENNEDY CHARTERED, LLC;<br>THE CONSUMER LAW CENTER, LLC;<br>LAURA L. HESS; and EDWARD CHERRY;<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT** |

## I. INTRODUCTION

1.     This is an action for injunctive relief to restrain the defendants from engaging in the illegal business of debt adjusting in violation of North Carolina state law, G.S. § 14-423, <u>et seq.</u>, from engaging in unfair and deceptive practices, G.S. § 75-1.1, and to obtain restitution and further relief.

2.     The defendants are offering a deceptive and illegal debt settlement scheme to consumers in North Carolina. This scheme, which is prohibited by North Carolina law, purports to relieve consumers of their debt burdens by negotiating down their outstanding debt obligations. In fact, the defendants' debt settlement program operates as a classic advance fee scam, designed to extract up-front fees from financially-strapped consumers whether or not any useful services are performed. As shown below, consumers rarely obtain debt settlements

–1–

through the defendants and end up in a far worse financial position.

## II. PARTIES

3.       Plaintiff State of North Carolina is acting through its Attorney General, Roy

Cooper, pursuant to authority granted by Chapters 14, 75, and 114 of the North Carolina General

Statutes.

4.       Defendant Hess Kennedy Chartered, LLC (hereafter "Hess Kennedy") is a Florida

corporation with a principal address at 210 N. University Drive, Coral Springs, Florida 33071.

Hess Kennedy Chartered, LLC was formerly incorporated in the State of Florida under the names

Hess Kennedy Company and Hess Kennedy Company Chartered.

5.       Defendant The Consumer Law Center, LLC (hereafter "TCLC") is a Florida

corporation with a principal address at 210 N. University Drive, Coral Springs, Florida 33071.

The Consumer Law Center, LLC was formerly incorporated in the State of Florida under the

name The Consumer Law Center, LC.

6.       Defendants Hess Kennedy and TCLC share common ownership.

7.       Defendant Laura L. Hess is an attorney and a resident of the State of Florida.

Through various corporate entities, defendant Hess has a significant ownership interest in

corporate defendants Hess Kennedy and TCLC, and defendant Hess has profited substantially

from the defendants' illegal activities.  At all times material to this Complaint, defendant Hess

has directed, controlled, participated in, and had knowledge of the illegal acts and practices of the

corporate defendants and of the corporate defendants' co-conspirators, as alleged in this

Complaint.  Defendant Hess is not licensed as an attorney in the State of North Carolina.  The

State Bar of Florida, where defendant Hess is licensed, has initiated disciplinary proceedings

–2–

against defendant Hess in connection with defendants' debt settlement business, which proceedings are ongoing.

8.    Defendant Edward Cherry is a resident of the State of Florida. Through various corporate entities, defendant Cherry has a significant ownership interest in defendants Hess Kennedy and in TCLC, and defendant Cherry has profited substantially from defendants' illegal activities. At all times material to this Complaint, defendant Cherry has directed, controlled, participated in, and had knowledge of the illegal acts and practices of the corporate defendants and of the corporate defendants' co-conspirators, as alleged in this Complaint.

9.    The defendants are engaged in substantial activities in North Carolina. Among other activities, the defendants have entered into contracts with hundreds of North Carolina consumers – and are continuing to enter into contracts with North Carolina consumers – for the purported performance of illegal debt adjusting services on behalf of such consumers. Toward that end, defendants have collected, and are currently collecting, substantial amounts of money from North Carolina consumers monthly for the performance of illegal debt adjusting services.

## III.  FACTUAL ALLEGATIONS

10.    Since the beginning of 2006, and continuing thereafter, the defendants have purported to offer "debt settlement" or "debt negotiation" services to financially distressed consumers in North Carolina and in other states. As explained more fully below, the defendants and their agents purposefully prey upon unsophisticated North Carolina consumers who are struggling with high amounts of unsecured debt, but who want to pay their creditors in good faith and avoid bankruptcy.

11.    The defendants directly market their services over the Internet at several websites

–3–

including www.hesskennedycompany.com (website for Hess Kennedy) and

www.freelawspace.com (website for TCLC). Examples of the defendants' advertisements on

their websites are attached hereto as Exhibit 1.

     12.    In addition, the defendants knowingly and purposefully market their services

indirectly through numerous third-party "referral agents" that refer consumers to the defendants

for purported debt settlement services. In exchange for referring consumers to the defendants,

the defendants' agents are compensated either by the defendants or by collecting a fee directly

from consumers.

     13.    Upon information and belief, the defendants' employees and the defendants'

"referral agents" have no training, experience or expertise in the areas of credit counseling, debt

management, consumer finance or bankruptcy law. Despite their representations to consumers

that they are acting in consumers' best interests, the defendants and the defendants' "referral

agents" do not provide any meaningful analyses of consumers' financial circumstances; and they

do not engage in any considered screening of consumers' financial circumstances to determine

the optimal solution for consumers' financial difficulties.

     14.    Specific referral agents used by the defendants include, but are not limited to, the

following agents: (a) Consumer Credit Counseling of America, Inc. and (b) Debt Settlement of

America, both of which are owned by an individual named Eric Nabydoski, and are based in

Massachusetts; (c) "The Credit Exchange," with an Internet website at

www.thecreditexchange.com (the website does not reveal the physical location of "The Credit

Exchange"); (d) Consumer Debt Solutions, Inc., d/b/a "Consumer Debt Solutions" with an

Internet website at www.consumerdebtsolutions.net, located in Florida; (e) Rescue Debt, Inc.,

–4–

d/b/a "Rescue Debt," based in California; (f) "The Attorney Network," with an Internet website at www.theattorneynetwork.com; and (g) "Coastal Credit Solutions," with an Internet website at www.coastalcreditsolutions.com, located in California.

15.    The defendants' and their agents' Internet websites invite consumers to contact them by telephone, or to e-mail the defendants with their telephone number so that the defendants can contact the consumers by telephone. In addition, at least one of the defendants' agents (Consumer Credit Counseling of America) placed misleading telephone listings in North Carolina telephone books (including in Raleigh and Winston-Salem Yellow Pages) under the name "Consumer Credit Counseling." The defendants' agent, which had no offices in North Carolina, listed a local telephone number, which, when dialed, actually rang the agent's telemarketing "boiler room" in Massachusetts or Florida. The defendants' and their agents' misleading telephone listings caused many North Carolina consumers to contact the defendants' agent, believing that the agent was a locally-based non-profit agency providing credit counseling, which it was not.

16.    When consumers telephone the defendants or the defendants' agents, the defendants and their agents represent that the defendants are expert "debt negotiators," and that the defendants can drastically reduce consumers' unsecured credit card debts in a very short time period through the defendants' "debt settlement" program. Specifically, the defendants and their agents represent that, through the defendants' program: (a) consumers will be able to reduce their unsecured debts by up to 60 percent; (b) consumers will become completely debt free in as little as 1 to 3 years; and (c) consumers will be able to pay off their creditors and avoid bankruptcy.

17.    The defendants and their agents represent that the defendants are able to

–5–

accomplish such dramatic results through the defendants' purported "expert" debt negotiation skills. The defendants and their agents tell consumers that the defendants will contact consumers' creditors and negotiate substantially reduced settlements of the amounts owed to each creditor. The defendants and their agents project to consumers that the defendants can settle consumers' unsecured debts for, on average, 40 cents on the dollar, reducing a consumer's debts by up to 60 percent.

18.    In many instances, the defendants and their agents further lure consumers into the defendants' debt settlement program by representing to consumers that defendants Hess Kennedy and TCLC are law firms, and that they can supposedly provide a higher level of service to debt-strapped consumers by protecting consumers from creditor harassment, and by providing "legal protection" against creditors.

19.    If a consumer signs up for the defendants' program, the defendants require the consumer to provide the defendants with authorization to debit the consumer's bank account on a monthly basis by automatic bank draft. The defendants and their agents instruct consumers that their monthly payments to the defendants will be accumulated and placed into an escrow or trust account on behalf of the consumer for payment to the consumer's creditors.

20.    When consumers sign up for the defendants' program, the defendants and their agents expressly instruct the consumer to stop making any payments to his or her creditors, even if the consumer has been making timely payments to his creditors.

21.    Upon information and belief, in many instances, the defendants and their agents mislead consumers into believing that the defendants will begin making disbursements to consumers' creditors shortly after consumers enroll in the defendants' program. In a "Client

-6-

Briefing" booklet distributed to consumers who enroll, defendant Laura Hess as "Managing Partner" of defendant Hess Kennedy, promises to "free you[] of the yolk [sic] of crippling debt." In the "briefing," the defendants state that "for the average client enrolled in the Hess-Kennedy Debt Settlement program it can be expected to take from three to six months to accumulate enough funds in escrow to make your first settlement.

22.     In some instances, at the time of enrollment, the defendants' agents and the defendants initially led some consumers to believe that the defendants' program was a credit counseling and debt management program instead of a debt settlement program. In these instances, the defendants' agents and the defendants represented that the defendants would administer a debt management plan for consumers by negotiating reduced interest rates on consumers' credit cards; by seeking waivers of late payment fees; by obtaining lower monthly payments to creditors; and by making monthly payments to consumers' creditors. Further, some of the defendants' contracts expressly provided that "Credit counseling payments are distributed to creditors on a monthly basis...."

23.     Upon information and belief, the defendants have never provided any credit counseling or debt management services on behalf of any North Carolina consumers. The defendants have never administered debt management plans, nor negotiated reduced interest rates or monthly payments; nor have the defendants made scheduled monthly payments to consumers' creditors.

24.     For those consumers who were initially led to believe that the defendants' program was a debt management plan, after the consumers enrolled and had paid money to the defendants, the consumers were then advised by the defendants that the defendants' program was

a debt settlement program, and not a debt management plan.

25.     Once consumers enroll in the defendants' debt settlement program, the defendants and their agents instruct consumers to cease all communications with their creditors.  In addition, the defendants and their agents instruct consumers to change their billing address to the defendants' mailing address in Florida, so that consumers' credit card bills will be mailed to the defendants.

26.     The defendants charge extraordinary fees for their so-called "debt settlement services," and the defendants collect their fees up-front prior to performing any services. Specifically, as their "debt settlement" fee, the defendants typically charge between 15 to 25 percent of the consumer's total unsecured debt in the program.  Thus, for a consumer with $25,000 in unsecured debt, the defendants' fee could easily be as much as $6250.

27.     Unknown to most consumers, before the defendants will commence any so-called "debt negotiation" with a consumer's creditors, the defendants require that consumers pay a substantial portion of the defendants' fee first.  Upon information and belief, in soliciting consumers to enter the program, the defendants and their agents purposefully do not explain to consumers that, at least for the first several months, almost all, if not all of the consumer's monthly payment is devoted solely to the defendants' (and their agents') fees.  As a result, because the defendants collect their fees up-front, a consumer must remain in the defendants' program for often a year or more before any debt negotiation services are performed, if any are performed at all.

28.     In many instances, the defendants fail to contact consumers' creditors as promised.  Upon information and belief, in those instances where the defendants have contacted

–8–

consumers' creditors, the defendants' communications have consisted primarily of poorly-drafted form letters stating that the consumers are represented by the defendants and instructing creditors to contact the defendants with any questions. (See Letter from defendant TCLC to "UWC" [sic] Hospitals, attached hereto as Exhibit 2.)

29.     After consumers enroll in the defendants' program, the defendants have very little further contact with consumers, other than drafting the consumer's bank account monthly. The defendants do not provide consumers with periodic accounting statements nor do they send consumers documentation or other information about communications with consumers' creditors.

30.     Upon information and belief, after consumers enroll in the defendants' program, consumers typically find it very difficult to reach the defendants by telephone or otherwise. When consumers call the defendants for information, or to complain, consumers are often put on hold, disconnected, or given the runaround. When the defendants actually speak with consumers, consumers are told by the defendants not to worry, that the defendants are handling everything, and to keep making the monthly payments.

31.     After consumers enroll in the defendants' program, consumers are at greater risk of being sued by their creditors because – at the direction of the defendants – consumers stop sending payments to their creditors. However, despite leading consumers to believe that they are attorneys and that they can "protect" consumers from creditors and debt collectors, the defendants do not provide legal representation to North Carolina consumers when they are sued. At most, the defendants have sent inapplicable and poorly-prepared advice and pleadings to North Carolina consumers with instructions to the consumers to file the pleadings. (See letter to

–9–

Mary Margaret Haddock and draft "Motion to Dismiss" attached hereto as Exhibit 3.)

32.    None of the defendants are licensed to practice law in North Carolina, and defendants Hess Kennedy and TCLC do not employ or associate any attorneys licensed to practice law in this State. Defendant Hess is licensed as an attorney in the State of Florida, but defendant Hess is currently a subject of disciplinary proceedings before the Florida State Bar in connection with her "debt settlement" practices. Defendant Cherry is not a licensed attorney.

33.    Upon information and belief, no attorney employed or associated with the defendants has ever spoken with, advised, consulted with, prepared legal documents on behalf of, or otherwise had any direct contact or communications with any North Carolina consumer.

34.    Because the defendants fail to render any beneficial services to consumers, many consumers drop out of the defendants' program after a few months.

35.    In most instances, when consumers terminate the defendants' program, the defendants refuse to provide consumers with refunds, and instead retain most, if not all, of consumers' funds.

36.    Despite their claims of being "expert debt negotiators," the defendants have obtained very few settlements on behalf of North Carolina consumers with consumers' creditors. Further, upon information and belief, the defendants have disbursed virtually none of the money collected from North Carolina consumers to consumers' creditors, and have instead retained most consumers' monies for the defendants' benefit.

37.    In addition to illegally collecting large amounts of money from North Carolina consumers for "debt settlement" services and performing no beneficial services, the defendants' misrepresentations and actions have caused North Carolina consumers further substantial harm.

–10–

Because the defendants instruct consumers to stop sending monthly payments to their creditors, the consumers' debts continue to increase due to assessed late charges, over-the-limit fees, and additional interest charges.

    38.    The State has submitted six (6) consumer affidavits in support of its motion for preliminary injunctive relief. As demonstrated by these affidavits, which are incorporated herein by reference:

        (A)    Consumers are routinely misled about the nature of defendants' services. Some consumers belief that they are enrolling in a traditional debt counseling and debt management program.

        (B)    Consumers are not given timely or accurate information about the disposition of their monthly payments. Consumers believe their payments will be promptly applied to their debt obligation.

        (C)    Consumers do not understand that all or most of their initial payments are retained by the defendants as their fees, even if the defendants have performed no debt settlement services.

        (D)    Consumers are misled that the defendants, as purported "law firms" will keep their funds in escrow or in a trust account.

        (E)    None of the consumers received the benefit of any debt settlement services by the defendants.

        (F)    Several of these consumers were sued by creditors after the consumers entered into defendants' program. The defendants offered no assistance other than the preparation of inappropriate boilerplate pleadings that were not relevant or helpful to the

–11–

consumers' situations.

(G)    All the consumers experienced difficulty contacting or communicating with the defendants.

(H)    All the consumers were substantially worse off after enrolling in the defendants' program, and some have now filed, or are considering filing, for bankruptcy.

(I)    The defendants routinely refuse to provide refunds even if they have performed no useful services for the consumers. Only in those instances where the Attorney General's office has interceded have the defendants sometimes paid refunds to consumers.

39.    The State has compelling reason to believe that the defendants have collected large amounts of money from hundreds of North Carolina consumers. On October 18, 2007, the State served a Civil Investigative Demand ("CID") upon the defendants, requesting, among other information, identification of the names of North Carolina consumers from whom the defendants have collected money for "debt settlement" services, and an accounting of monies the defendants had collected from North Carolina consumers. To date, the defendants have failed to produce this information to the State.

40.    Based upon records the State obtained in December 2007 from one particular payment processor that processed some, but not all, electronic payments on behalf of the defendants, the State has identified at least 220 North Carolina consumers that have paid $516,856.78 to the defendants from January 1, 2006 through December 12, 2007. (See Affidavit of David C. Evers, Exhibit A, which contains a listing of these consumers and the amounts illegally collected by the defendants from such consumers.) Upon information and belief, the defendants have retained virtually all of these funds for their own benefit. Based on its

−12−

investigation, the State has reason to believe that the defendants have collected substantial

additional funds from many more North Carolina consumers in addition to those consumers

identified.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### VIOLATIONS OF THE NORTH CAROLINA DEBT ADJUSTING LAW:
### N.C. GENERAL STATUTE § 14-423, et seq.

41.    The State realleges and incorporates herein the allegations of paragraphs

1 through 40 above.

42.    The defendants are engaged in illegal "debt adjusting" services as that

term is defined in Article 56 of Chapter 14 of the North Carolina General Statutes.

Specifically, G.S. § 14-423(2) defines "debt adjusting" in pertinent part:

> "'Debt adjusting' means entering into or making a contract,
> express or implied, with a particular debtor whereby the
> debtor agrees to pay a certain amount of money periodically
> to the person engaged in the debt adjusting business and
> that person, for consideration, agrees to distribute, or
> distributes the same among certain specified creditors in
> accordance with a plan agreed upon.  Debt adjusting
> includes the business or practice of any person who holds
> himself out as acting or offering or attempting to act for
> consideration as an intermediary between a debtor and his
> creditors for the purpose of settling, compounding, or in any
> way altering the terms of payment of any debt of a debtor,
> and to that end receives money or other property from the
> debtor, or on behalf of the debtor, for the payment to, or
> distribution among, the creditors of the debtor.
>
> Debt adjusting also includes the business or practice of debt
> settlement ... whereby any person holds himself or herself
> out as acting for consideration as an intermediary between a
> debtor and the debtor's creditors for the purpose of
> reducing, settling, or altering the terms of the payment of
> any debt of the debtor, whether or not the person distributes

–13–

the debtor's funds or property among the creditors, and
receives a fee or other consideration for reducing, settling, or
altering the terms of the payment of the debt in advance of
the debt settlement having been completed or in advance of
all the services agreed to having been rendered in full."

43.    The activity of "debt adjusting" is prohibited by G.S. § 14-424, which
provides that "[i]f any person shall engage in, or offer to or attempt to, engage in the
business or practice of debt adjusting, or if any person shall hereafter act, offer to act,
or attempt to act as a debt adjuster, he shall be guilty of a Class 2 misdemeanor."

44.    The defendants' offering and purported rendering of "debt settlement" or
"debt negotiation" services to North Carolina consumers is in violation of North
Carolina's debt adjusting statute.  Specifically, the defendants have engaged, and are
engaging in a business or practice in which the defendants hold themselves out as
acting or offering or attempting to act, for consideration, as an intermediary between
North Carolina consumer debtors and their creditors for the purpose of negotiating,
settling, or altering the terms of payment of North Carolina debtors' debts; and the
defendants receive money from consumers for the eventual payment to, or distribution
among, consumers' creditors.

45.    The defendants have also violated in the Debt Adjusting statute by
collecting advance fees for debt settlement or debt negotiation services.

46.    Section 14-426 of the Debt Adjusting law provides for certain, limited
exemptions to the statute, including an exemption for attorneys that are "licensed to
practice in this State who [are] not employed by a debt adjuster."  The defendants do
not qualify for this exemption or any other statutory exemption, as the defendants are
not licensed to practice law in this State.

–14–

47.    Pursuant to G.S. § 14-425, the State is entitled to injunctive relief to restrain the defendants from further violations of the law and to the recovery of all sums unlawfully collected by the defendants from North Carolina debtors.

<div align="center">

COUNT II:
VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE
PRACTICES ACT:
N.C. GENERAL STATUTE § 75-1.1

</div>

48.    The State incorporates herein by reference paragraphs 1 through 47 above.

49.    In the course of soliciting and promoting their "debt settlement" or "debt negotiation" services to North Carolina consumers, in entering into agreements with North Carolina consumers to provide such purported services, and in purporting to render such services, the defendants have engaged in unfair and deceptive acts and practices in trade or commerce in violation of G.S. § 75-1.1.

50.    The defendants are not exempt as attorneys from the coverage of G.S. 75-1.1 because the defendants are not licensed to practice law in North Carolina; the defendants are engaging in an activity expressly prohibited by law in this State; and the defendants do not render legal or professional services to North Carolina consumers.

51.    The defendants' unfair or deceptive acts and practices include, but are not limited to, the following:

(A)    Engaging in illegal debt adjusting activities prohibited by North Carolina law;

(B)    Making deceptive and misleading representations to consumers, including but not limited to the following:

–15–

(i.)  Falsely representing that the defendants' debt settlement program
is highly successful, that the defendants will reduce consumers'
unsecured debts by as much as 60 percent, and that consumers will
able to avoid bankruptcy through the defendants' program – when,
in actuality, the defendants do not settle most consumers' debts,
most consumers' debts are not reduced, very few consumers
successfully complete the defendants' program, and the
defendants' program almost always fails, causing many consumers
to file for bankruptcy;

(ii.)  Representing that the defendants' unlawful debt settlement
program is consumers' best option for debt relief; when, in reality,
other options, such as credit counseling, debt management,
bankruptcy filing, or other options, are far more suitable for
consumers and afford greater debt relief;

(iii.)  Representing that the defendants have special expertise in "debt
settlement" or "debt negotiation," when the defendants have no
such special expertise, and consumers are more likely to obtain
reduced settlements with their creditors through their own efforts
than through the defendants' efforts, if any;

(iv.)  Representing to consumers that they can expect the defendants to
reach settlements with consumers' creditors within 3 to 6 months
after consumers' enrollment; when, in fact, the defendants reach

–16–

very few settlements in this time period due to the defendants'
practice of "front-loading" the collection of defendants' fees,
which prevents consumers from accumulating sufficient funds with
which to pay their creditors;

(v.)   Representing to consumers that the defendants are attorneys and
that they will provide "legal protection" to consumers from
creditors and debt collectors; when the defendants are not licensed
to practice law in North Carolina, the defendants do not provide
"legal protection" to consumers from their creditors, and the
defendants do not render any legal services on behalf of
consumers;

(vi.)  Representing to some consumers that the defendants will make
monthly disbursements to consumers' creditors pursuant to a debt
management plan, when the defendants do not provide debt
management services and do not make monthly disbursements to
consumers' creditors;

(vii.) Representing that the defendants will promptly begin contacting
and negotiating with consumers' creditors shortly after consumers
enroll; when, in fact, the defendants typically do not negotiate with
consumers' creditors until consumers have been in the defendants'
program for many months, if at all;

(viii.) Representing that consumers will have access to their funds that

-17-

are in the defendants' trust or escrow account, when consumers do
not have access to such funds;

(ix.)   Failing to adequately inform consumers of the amount of the
        defendants' fee, and failing to inform consumers that the
        defendants collect their fees up-front before beginning any "debt
        settlement" services on behalf of consumers;

(x.)    Representing to consumers that the defendants will keep
        consumers informed of defendants' actions on consumers' behalf,
        and representing that the defendants are available to respond to
        consumers' inquiries; when the defendants typically do not provide
        consumers with information about consumers' accounts or with
        information about the defendants' actions on consumers' behalf, if
        any;

(xi.)   Failing to inform consumers that some creditors refuse to negotiate
        with the defendants;

(xii.)  Failing to adequately inform consumers that they face a higher
        degree of risk of being sued by their creditors as a direct result of
        their participation in the defendants' program due to the
        defendants' instructions to consumers to cease making payments to
        their creditors;

(xiii.) Failing to adequately inform consumers that their debts may
        significantly increase as a direct result of their participation in the

–18–

> defendants' program because of creditors' assessment of finance charges, late fees, over-the-limit fees, and other fees due to the defendants' instructions to consumers to cease making payments to their creditors;
>
> (xiv.)   Representing to consumers that they will be able to obtain a refund if consumers terminate the program; when, in fact, very few consumers have obtained refunds when they terminated; and
>
> (xv.)   Representing to consumers that they may obtain a refund of monies placed in the defendants' escrow or trust account which has been set aside to pay consumers' creditors; when, in fact, the defendants often fail to disburse such funds to consumers when consumers terminate the program.

(C)   Offering and engaging in a "debt settlement" or "debt negotiation" program, that, in substance, is grossly unfair and injurious to consumers, in that, among other things:

> (i.)   The defendants charge an extraordinarily high fee for their purported "services," which fees the defendants collect up-front and retain for their own benefit, without providing any services for consumers;
>
> (ii.)   The defendants purport to be attorneys and to offer legal services in order to gain consumers' confidence and trust in order to sell a program that is extremely harmful to consumers, when the

defendants are not licensed attorneys in this State, and do not

provide any legal services in this State;

(iii.)    The defendants advise consumers to cease paying legal

obligations to their creditors; and

(iv.)    The defendants perpetrate a program that is substantially

deleterious to the credit standing and the economic and legal

standing of consumers.

## PRAYER FOR RELIEF

WHEREFORE, the State of North Carolina prays the Court for the following

relief:

A.    That the defendants, their members, officers, employees, and agents be

temporarily restrained and preliminarily and permanently enjoined from:

(1)    Advertising, offering, soliciting, or entering into contracts with North

Carolina consumers for unlawful debt adjusting, including debt

settlement or debt negotiation services, in violation of North

Carolina's Debt Adjusting law, N.C. Gen. Stat. " 14-423, 14-424;

(2)    Soliciting or collecting any monies from North Carolina consumers

for debt adjusting services, in violation of the Debt Adjusting law,

N.C. Gen. Stat. § 14-423, 14-424;

(3)    Engaging in unfair or deceptive trade practices in the offering or

conduct of their debt settlement or debt negotiation services, in

violation of N.C. Gen. Stat. § 75-1.1;

–20–

B.    That a receiver be appointed pursuant to G.S. § 14-425 to gain control of assets received and retained by defendants as a result of their unlawful debt adjusting activities in this State;

C.    That the defendants be ordered to refund all sums collected from North Carolina consumers resulting from the defendants' violations of the Debt Adjusting law and N.C. Gen. Stat. ' 75-1.1, pursuant to N.C. Gen. Stat. " 14-425 and 75-15.1;

D.    That the defendants' existing agreements or contracts with North Carolina consumers be cancelled pursuant to N.C. Gen. Stat. " 75-1.1 and 75-15.1;

E.    That the defendants be ordered to pay appropriate civil penalties pursuant to N.C. Gen. Stat. ' 75-15.2;

F.    That the State be awarded costs of this action and reasonable attorneys fees; and

G.    That the Court award such other and further relief as may be just and proper.


This the _____ day of February 2008.



_____
M. Lynne Weaver
N.C. Bar No. 19397


_____
Philip A. Lehman
N.C. Bar No. 6721

Assistant Attorneys General

–21–

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Tel: 919-716-6000
Fax: 919-716-6050
E-mail: lweaver@ncdoj.gov
          plehman@ncdoj.gov


Attorneys for STATE OF NORTH CAROLINA
ex rel. ROY COOPER, Attorney General

STATE OF NORTH CAROLINA

COUNTY OF WAKE

### VERIFICATION

David C. Evers, being first duly sworn, deposes and says:

That he is a Consumer Protection Specialist employed by the North Carolina

Department of Justice and that he is authorized to make this Verification; that he

assisted in the Department of Justice's investigation of the named defendant; that he

has read the foregoing Complaint, and that upon his information and belief, the matters

and things alleged therein are true.


–

_____

David C. Evers          Date
Consumer Protection Specialist


Sworn and subscribed before me

this _____ day of February, 2008.


–22–

_____
Notary Public

My Commission Expires: _____

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

FILE NO: 08CV 002310

|  |  |  |
|---|---|---|
| STATE OF NORTH CAROLINA, ex rel. ROY COOPER, Attorney General, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **PRELIMINARY INJUNCTION ORDER** |
| HESS KENNEDY CHARTERED, LLC; THE CONSUMER LAW CENTER, LLC; LAURA L. HESS; and EDWARD CHERRY; | ) ) ) ) | |
| Defendants. | ) ) | |

THIS CAUSE came on to be heard before the undersigned judge on the Plaintiff State of North Carolina's motion for a preliminary injunction to continue the terms of the Temporary Restraining Order in effect. From the record herein and argument of counsel, the Court finds as follows.

1.     The State filed its complaint along with its motion for a temporary restraining order on 11 February 2008. The State also filed seven affidavits in support of its complaint and motion.

2.     On 14 February 2008, at the time of the hearing on the State's motion for a temporary restraining order, the defendants appeared through counsel and filed a motion to dismiss for lack of personal and subject matter jurisdiction and for insufficiency of service of process. The defendants filed affidavits executed by the two individual defendants, Laura L.

1

Hess and Edward Cherry.

3.     The Court, Hon. Donald W. Stephens presiding, conducted a hearing on the defendants' motion to dismiss and the State's motion for a temporary restraining order. In written orders dated 15 February 2008, Judge Stephens denied the defendants' motion to dismiss and entered a temporary restraining order against the defendants. Judge Stephens found that the State had established that there was good cause to believe: (a) that the defendants were advertising, offering and engaging in illegal debt adjusting, in violation of North Carolina's Debt Adjusting law, G.S. § 14-423, *et seq.*; (b) that the defendants had collected, and were continuing to collect, money from North Carolina consumers for the defendants' purported performance of debt settlement services, and that such moneys are being collected in violation of G.S. § 14-423(2); and (c) that the defendants were continuing to violate the laws of North Carolina and that the State had established its right to temporary relief pursuant to G.S. §§ 14-425 and 75-14.

4.     The Temporary Restraining Order, *inter alia*, restrained the defendants from offering or contracting for debt settlement or debt adjusting services in North Carolina, in violation of G.S. § 14-423, *et seq.*, and from collecting fees for such services. The Order also required the defendants to produce, prior to the preliminary injunction hearing, account statements identifying their North Carolina customers and the amounts such customers had paid to the defendants. The defendants have not yet produced the required records as mandated by the Order but their counsel indicated that the defendants are endeavoring to do so.

5.     By its terms, the Temporary Restraining Order expired after 10 days, on 25 February 2008, and the matter was calendared for hearing on 25 February.

6.     On 21 February 2008, four days before the scheduled hearing of this matter, the defendants filed a notice of appeal from the entry of the Temporary Restraining Order and the Order denying the defendants' motion to dismiss for lack of personal and subject matter jurisdiction and for insufficiency of service of process. The appeal has not yet been perfected and filed with the North Carolina Court of Appeals.

7.     The defendants contend that the filing of their notice of appeal divests this Court of jurisdiction to further hear this matter. The State contends that this Court retains jurisdiction because the defendants' appeal is interlocutory, does not implicate any substantial rights, and that the order regarding personal jurisdiction was entered for the purpose of establishing the Court's authority to issue a temporary restraining order and to overcome the defendants' objections to the Court hearing the State's motion for a temporary restraining order.

8.     This Court finds that, notwithstanding the defendants' notice of appeal, it retains jurisdiction over this matter, including hearing the motion for preliminary injunction, and that the defendants have failed to demonstrate that their unperfected interlocutory appeal bars this Court from continuing to exercise jurisdiction.

9.     This Court further finds that the State has made a sufficient showing that good and sufficient cause exists for the entry of a preliminary injunction to prevent further violations of the law and to prevent further harm to the consuming public in this State.

IT IS THEREFORE ORDERED that the State's motion for a preliminary injunction is granted, and the terms of this Court's Temporary Restraining Order dated 15 February 2008 are continued in effect. The defendants, their agents, employees, and all persons acting in concert with them are hereby preliminarily enjoined from:

3

(1)    Advertising, soliciting, offering, or providing any debt settlement, debt

negotiation, or debt adjusting services to North Carolina consumers, in

violation of G.S. § 14-423, *et seq.*;

(2)    Entering into contracts with any North Carolina consumers for the

performance of debt settlement, debt negotiation, or debt adjusting

services, in violation of G.S. § 14-423, *et seq.*;

(3)    Charging, collecting, or receiving any further fees directly or indirectly,

from any North Carolina consumers for the performance of debt

settlement, debt negotiation, or debt adjusting services, in violation of G.S.

§ 14-423, *et seq.*; provided that if the defendants receive any future

payments from North Carolina consumers, such payments shall be

segregated in a trust or escrow account and shall be accounted for

separate and apart from other funds received by the defendants, and shall

not be disbursed except in accordance with subparagraph (4) below;

(4)    Transferring, concealing, or disposing of any money or funds received,

directly or indirectly, from any North Carolina consumers in connection

with the defendants' debt settlement program, except to pay money to

consumers' creditors or to return funds to consumers; and

(5)    Destroying, removing, transferring, erasing, or otherwise disposing of any

business or financial records relating to the defendants' debt settlement or

debt negotiation services, including but not limited to any business or

financial records relating to moneys obtained from any North Carolina

consumer in connection with the defendants' debt settlement or debt

4

negotiation program.

Notwithstanding the foregoing, to the extent that any of the defendants are representing any North Carolina residents in pending litigation filed in the courts of another state, such  defendant shall be permitted to continue such representation without being subject to the prohibitions of this Order.

IT IS FURTHER ORDERED that the defendants shall, within seven (7) days of the date of this Order, produce the following business records to the State:

(I.)     The name and address of every North Carolina consumer from whom the defendants (or the corporate predecessors of defendants Hess Kennedy and The Consumer Law Center) have collected or received, directly or indirectly, any money for the performance of debt settlement or debt negotiation services since January 1, 2006; and

(II.)    An individual accounting for each North Carolina consumer from whom the defendants have collected, directly or indirectly, money for debt settlement or debt negotiation services, including:

(A.)    The date and amount of each consumer payment,

(B.)    The date and amount of any disbursements by the defendants on the consumer's behalf, including any disbursements made to the consumer's creditors, and identification of the name(s) of such creditor(s);

(C.)    Identification of any and all amounts collected or retained by the defendants as fees or compensation for the defendants' purported services; and

(D.)    Identification of any and all amounts currently held in the

defendants' trust or escrow account for the purpose of

payment to the consumer's creditors.

THIS ORDER shall remain in effect until final resolution of this cause or until

further

order of this Court.


This the _____ day of February, 2008.


_____
Robert H. Hobgood
Superior Court Judge

6

Back to 2007 Releases    View PDF Version



**STATE OF WEST VIRGINIA**
**OFFICE OF THE ATTORNEY GENERAL**
**DARRELL V. MCGRAW, JR.**          **Press Release**
**CONSUMER PROTECTION DIVISION**
**1-800-368-8808 or 304-558-8986**

FOR IMMEDIATE RELEASE

Contact: Douglas L. Davis
Phone: (304) 558-8986

# Florida Attorneys Prevented From Continuing Debt Settlement Business in WV Until They Comply With Attorney General's Investigation

Florida attorneys employed by Hess Kennedy Company Chartered have been temporarily forbidden from settling West Virginia consumers' debts until they comply with an investigation under way by Attorney General Darrell McGraw as the result of an order signed by the Circuit Court of Kanawha County, December 14, 2007.

Hess Kennedy, of Coral Springs, Florida, claims to assist consumers who are struggling financially to make payments to their creditors. This increasingly common, and sometimes controversial business of debt settlement has arisen as consumer credit card debt has ballooned in the past few years. Debt settlers such as Hess Kennedy make repayment plans to help consumers repay outstanding debts, at a deep discount, to avoid being sued or filing for bankruptcy. Monthly payments are then made by consumers to the debt settlers in turn for which the debt settlers claim to negotiate with creditors to reduce the amount of debt owed.

Although debt settlement services are unrestricted in some states, West Virginia's law regarding debt settlement only permits for-profit companies to charge a monthly service fee of two percent of the payments made by consumers. Although Attorney General McGraw's investigation is incomplete, it appears that Hess Kennedy was charging more than the two percent fee allowed by state law.

Attorney General McGraw said, "Although the debt settlement approach to debt relief may work for some persons, the service has legal consequences and should only be offered by persons licensed to practice law in West Virginia. My office will continue to scrutinize the debt relief industry in an effort to protect consumers who are already facing dire financial circumstances from paying excessive fees for services that may leave them in worse shape than before."

Anyone wishing to file a complaint about a consumer matter or to let the Attorney General know about unfair or deceptive practices may do so by calling the Consumer Protection Hotline at 1-800-368-8808 or by obtaining a complaint form from the Consumer web page at www.wvago.gov.

# EXHIBIT D

**Better Business Bureau**
2924 North Australian Ave.
West Palm Beach, FL 33407
**Phone:** (561) 842-1918
**Fax:** (561) 845-7234
www.bbbsoutheastflorida.org

# Company Report

## Hess Kennedy & Company

210 N. University Dr., #209
Coral Springs, FL 33071
**Contact:** Laura Hess
**Phone:** (954) 345-7848



**Rating Explanation:**
The rating the Better Business
Bureau assigns a business is
determined by our composite
score of such factors as its type of
business, length of time in
business, compliance ...

## Company Profile

|  |  |
|---|---|
| **DBA:** | **Hess Kennedy & Company** |
| **Address:** | 210 N. University Dr., #209<br>Coral Springs, FL 33071 |
| **Primary Phone:** | (954) 345-7848 |
| **Primary Fax:** | (954) 344-8438 |
| **Primary Contact:** | Laura Hess<br>Director |
| **Website:** | http://www.hesskennedycompany.com |
| **Company ID:** | 9001883 |
| **Business Start Date:** | 8/31/2004 |
| **BBB Created Record on:** | 3/20/2006 |

## Nature of Business:

This company's nature of business is Financial Planning and Management Services

## Bureau Membership

**Join Date:**

This company is not a member of the Better Business Bureau. This fact does not disparage the company in any way.

## Licensing and Bonding Information

This company is in an industry that may require licensing, bonding or registration in order to lawfully do business. The Bureau encourages you to check with the appropriate agency to be certain any requirements are currently being met.

## BBB Comments and Analysis

We have no further comment about this company's business practices or analysis of its offer that may assist you in your consideration of this company.

## Complaint Closing Statistics

The following grid displays the number and responses to complaints over the last 36 months:

| No. of Cmpl | Type of Response |
|---|---|
| 19 | Making a full refund, as the consumer requested |
| 10 | Making a partial refund |
| 97 | Agreeing to perform according to their contract |
| 1 | Refusing to make an adjustment |
| 0 | Refuse to adjust, relying on terms of agreement |
| 4 | Unanswered |
| 7 | Unassigned |
| 138 | Total |

## Complaint Experience

## Government Actions

We know of no government action taken against this company.

## Advertising Review

No question about the truth of this company's advertising has come to our attention.

## Other Considerations

Based on Better Business Bureaus files this company has responded to any complaints brought to their attention by the Better Business Bureau, however one complaint remains unresolved.

## Other Company Profiles

| Other DBAs | • Hess Kennedy Company Chartered<br>• Hess Kennedy, LLC |
|---|---|
| Other Addresses | • Mary Street, 4th Floor<br>Georgetown<br>• 1800 Pembrook Drive, Ste. 290<br>Orlando, FL 32810 |
| Other Phone Numbers | • (888) 867-3135<br>• (954) 752-1950 |
| Other Fax Numbers | |
| Other Contacts | • Nishat Azam, Esq.<br>Legal Department<br>Email:<br>• Edward Cherry<br>Director<br>Email:<br>• Eric Siversen<br>Office Manager<br>Email:<br>• Walter Chen<br>Director<br>Email: |
| Other Websites | |

*You need to check the "Print background colors and images" option under the Advanced tab of the internet options menu of your browser in order to have a proper print out of this page.

[ Print ]    [ Done ]

Company Report - Details                                          Page 3 of 3

© Copyright 2004-2006 The Better Business Bureau of the Southland, Inc. All Rights Reserved.

Contact Us | FAQs | Log-In | SEARCH

Home    Consumer    Business    Agency    Media

# Company Report

## Rating Explanation

## Summary

The rating the Better Business Bureau assigns a business is determined by our composite score of such factors as its type of business, length of time in business, compliance with competency licensing requirements, complaint volume, complaint history, seriousness of complaints, how the company responds to complaints, and our experience with the company's industry in general. The scoring system takes into account the importance we feel each factor is to the company's reliability.

The highest rating assigned to a company is A+; the lowest is F. Between those two ratings are nine others in order from higher to lower. The ratings are defined as follows:

Our rating of a company and our reliability report on a company reflect our conclusions and opinion about the company based upon information in our files and our experience with the company. Neither the rating nor the report is a guarantee of reliability. Readers should not rely solely upon a company's rating, but should read and consider the entire report, including complaint and response details, before deciding whether or not to do business with the company.

| Company Rating A+ | A+ An exemplary rating. This means that nothing in our files causes us to have any doubt about the company's reliability. |
| Company Rating A | A An extremely high rating. The condition that lowers this grade from AAA is not what we believe to be a significant one. |
| | A- An excellent rating. A company with this rating may not rate higher |

Company Reports
Reports by Category
↳ File a Complaint
↳ Consumer Services
↳ Business Services
↳ Agency Services
↳ Media Services
Newsletter & Archives
↳ Topics of Special Interest
↳ BBB Membership
↳ Arbitration Services
↳ Advertising
↳ Contact Us
Member Directory

www.bbbsoutheastflorida.org
Southeast Florida and the
Caribbean

Rating Explanation



| | |
|---|---|
| Company Rating **A-** | because of a greater number of rate-lowering factors, but we do not consider them to be factors that would likely adversely affect consumer transactions. |
| Company Rating **B+** | B+ A very high rating. A company with this rating would not have a significant number of complaints or other considerations that could pose a problem to consumers. |
| Company Rating **B** | B A high rating. The company would generally have demonstrated good business-consumer relations, and we would expect any consumer complaints not to be of a serious nature and to be satisfactorily handled by the company. |
| Company Rating **B-** | B- A good rating that still implies reputability. The rating may relate to length of time in business, a past problem that's been corrected, or something else that does not cause problems for consumers. We believe a company with this rating would generally conduct business and respond to any complaints satisfactorily. |
| Company Rating **C+** | C+ A good rating. We would expect nothing less than a satisfactory business transaction, but read our full report to determine if you have any questions or concerns. |
| Company Rating **C** | C Average rating. We would expect consumer transactions to be satisfactory. Since each transaction is individual, read our full report to determine if you have questions or concerns. |
| Company Rating **C-** | C- Acceptable rating. We know of no reason not to do business with this company. If the level of this rating relates to anything specific that we know might be of concern to consumers, it is stated in this report. Read our full report to determine if you have questions or concerns. |
| Company Rating **D** | D We have enough concerns about this company (for example, their offer, customer complaints, advertising, etc.) that we recommend caution in doing business with it. |
| | F We strongly question the company's reliability for reasons such as that they have failed to respond to complaints, their advertising is grossly misleading, they are not in compliance with the law's licensing or registration requirements, their complaints contain especially serious |

| | |
|---|---|
|  | allegations, or the company's industry is known for its fraudulent business practices. |
|  | **NR** "NR" is displayed when the Bureau is conducting system maintenance. |

Back

© Copyright 2004-2006 The Better Business Bureau of the Southland, Inc. All Rights Reserved. - Designed by emago.com

# EXHIBIT E

*by consumers, for consumers*

# Ripoff Report.

Don't let them get away with it... let the truth be known!

# Search Results: Hess Kennedy

You     Legend

(NEW) New     (UPDATE) Updated     (REBUTTAL) Rebuttal     PHOTOS Photos

searched for: **Hess Kennedy**
Approximately **38** Reports Found
Showing 1 - 15



what



*Ripoff Report Legal Ads*

| Date | Title | City, State |
|------|-------|-------------|
| 1. 2/15/2008<br>7:23:00 PM<br>(NEW) | Hess & Kennedy Debt consolidators BEWARE! Coral Springs Florida<br><br>Credit & Debt Services :<br>**Hess & Kennedy**<br>Florida | **Author:** Milwaukee, Wisconsin |
| 2/11/2008<br>2:35:00 PM<br>(NEW) | Hess Kennedy Law Office I paid over 1,500.00 for<br><br>Credit & Debt Services :<br>**Hess Kennedy Law Office**<br>Florida | **Author:** Boise, Idaho |
| 3. 2/3/2008<br>4:18:57 PM<br>(UPDATE) | Hess Kennedy Comapny fraud, breach of contract, ripoff Coral Springs Florida<br>*UPDATE *UPDATE...<br><br>Telemarketers : **Hess Kennedy Comapny**<br>Florida | **Author:** chicago, Illinois |
| 4. 1/31/2008<br>3:31:00 PM<br>(NEW) | HESS KENNEDY COMPANY why our credit is ruined Coral Springs Florida<br><br>Legal Process Servers :<br>**HESS KENNEDY COMPANY**<br>Florida | **Author:** crossville, Tennessee |
| 5. 1/25/2008<br>9:06:00 AM<br>(NEW) | Hess Kennedy & Company This company has been taken my money for 2 years and have not paid any of my debitors Fort Lauderdale Florida<br><br>Credit & Debt Services :<br>**Hess Kennedy & Company**<br>Florida | **Author:** Plymouth, Massachusetts |

**Did you finance with Washington Mutual in 2007?**

Did you finance with Washington Mutual in 2007 and get an appraisal of your home?

If so, you might be entitled to a **full refund**.

E-mail classaction@careylaw.com to see if you qualify.

Cashed a Payroll Check

Ripoff Report Search Results: Hess Kennedy                                      Page 2 of 3

1/10/2008
10:45:43
PM
(NEW)
(REBUTTAL)

Hess And Kennedy Law Office Questionable
Practice???Coral Springs Florida

*Consumer Suggestion ..Trying to buy house/car
while negotiating debt?

| Credit & Debt Services : **Hess And Kennedy Law Office** Florida | **Author:** soulsbyville, California |

1/4/2008
5:29:38 PM
(UPDATE)

Hess Kennedy & Company The Do Nothing
Company That Will RIP You OFF Orlando Florida

*UPDATE *UPDATE ..Hess Kennedy & Company
The Do Nothing Company

| Credit & Debt Services : **Hess Kennedy & Company** Florida | **Author:** Elkhart, Indiana |

8. 12/27/2007
7:13:00 AM
(NEW)

Hess Kennedy Fraudulent behavior, liars. Take
money out of your account and never payoff your
creditors Coral Springs Florida

| Corrupt Companies : **Hess Kennedy** Florida | **Author:** Littleton, Colorado |

9. 12/12/2007
3:52:00 PM
(NEW)

Hess Kennedy Ripped Off 210 North University
DriveCoral Springs Florida

| Credit & Debt Services : **Hess Kennedy** Florida | **Author:** North Providence, Rhode Island |

10. 12/7/2007
5:06:00 PM
(NEW)

Hess/Kennedy Attorneys Law Firm Stole from
Senior Citizen Coral Springs Florida

| Lawyers : **Hess/Kennedy Attorneys** Florida | **Author:** Oak Lawn, Illinois |

11. 12/3/2007
10:08:25
AM
(UPDATE)

Hess Kennedy Company This Company is
Fraudulent, They do not do what they promised
Coral Springs Florida

*UPDATE *UPDATE ..Hess Kennedy Finally does
something it promises!

| Lawyers : **Hess Kennedy Company** Florida | **Author:** Pasadena, Maryland |

12. 11/27/2007
2:18:00 PM
(NEW)

Hess Kennedy Chartered Law Firm cant contact
cant reach, took my money and did nothing to help
my debts. Syosset New York

and paid a

Ripoff Report Search Results: Hess Kennedy

Page 1 of 4

*by consumers, for consumers*

# Ripoff Report.

*Don't let them get away with it... let the truth be known!*

# Search Results: Hess Kennedy

You    Legend

▶NEW▶ New    ◀UPDATE▶ Updated    ◀REBUTTAL▶ Rebuttal    PHOTOS Photos

searched for: **Hess Kennedy**
Approximately **38** Reports Found
Showing 16 - 30

| Date | Title | City, State |
|---|---|---|
| **16.** 9/10/2007 11:13:00 AM ▶NEW▶ | <u>Hess Kennedy Helped make a financial problem into a disaster. Orlando Florida</u> | |
| | Credit & Debt Services : **Hess Kennedy** Florida | **Author:** Lafayette, Louisiana |
| **17.** 9/1/2007 1:29:59 PM ◀UPDATE▶ | <u>Coastal Credit Solutions - Consumer & Business Debt Counseling Services - Attorney Hess Kennedy RIP-OFF Unknowingly passed to 3 companies Agreement fee changed from $551 to $588 without notice Coral Springs Orlando Florida</u> <u>*UPDATE *UPDATE ..Coastal Credit Customer Service</u> | |
| | Credit & Debt Services : **Coastal Credit Solutions Consumer&Business Debt Counseling Services - ,Attorney Hess Kennedy** Florida | **Author:** Carson City, Nevada |
| **18.** 8/21/2007 7:21:00 AM ▶NEW▶ | <u>Hess Kennedy totally incompetent or total scammers ripoff Coral Springs Florida</u> | |
| | Credit & Debt Services : **Hess Kennedy** Florida | **Author:** bristolville, Ohio |
| **19.** 8/13/2007 8:02:25 PM ◀REBUTTAL▶ | <u>Rescue Debt Hess Kennedy Law Firm Paying Kickback Money to Debt Reduction Firms For Referrals Costa Mesa California</u> <u>*REBUTTAL Employee ..Hard Facts</u> | |
| | Credit & Debt Services : **Rescue Debt & Hess Kennedy Law Firm Working Together** California | **Author:** San Bernardino, California |



*Ripoff Report Legal Ads*

Did you finance with Washington Mutual in 2007?

Did you finance with Washington Mutual in 2007 and get an appraisal of your home?

If so, you might be entitled to a **full refund**.

E-mail classaction@ careylaw.com to see if you qualify.

_____

Cashed a Payroll Check

Ripoff Report Search Results: Hess Kennedy

Page 3 of 4

Attorneys & Legal Services : **Hess Kennedy & Company Debt Settlement Of America**
Florida



27.
5/2/2007
4:36:00 PM

Hess Kennedy Law Firm Ripp Off, Dishonest, Fraudulent deceptive Coral Springs Florida

Lawyers : **Hess Kennedy Law Firm**
Florida | **Author:** GIRDLETREE, Maryland

28.
4/20/2007
11:45:23 AM
*UPDATE*
*REBUTTAL*

Hess Kennedy Company Unethical, deceptive, immoral, unprofessional, exhorbitant fees, failure to communicate, failure to document ripoff Coral Springs Florida

*Consumer Suggestion ..I'm game for a fight!

Credit & Debt Services : **Hess Kennedy Company**
Florida | **Author:** BIG LAKE, Minnesota



29.
4/20/2007
11:41:53 AM
*REBUTTAL*

Hess Kennedy ripoff fradulent in debt settlement Orlando Florida

*Consumer Suggestion ..Don't wait to pursue this!

Credit & Debt Services : **Hess Kennedy**
Florida | **Author:** omaha, Nebraska

30.
3/30/2007
12:28:00 PM

Hess Kennedy ripped me off of money I didn't or better yet could not afford to pay Coral Springs Florida

Credit & Debt Services : **Hess Kennedy**
Florida | **Author:** Fox lake, Wisconsin

Approximately **38** Reports Found
Showing 16 - 30 | **Showing Page 2 of approximately 3**

<< Prev  Next >>

2

Passport Problems?

The federal government didn't live up to its promise to deliver the expedited passports in 14 days.

*Did you pay the federal government $60 to expedite the delivery of your passport and still get it late!?*

Join Class Action Now!

Advertisers above have met our strict standards for business conduct.

## Ripoff Report

Home Reports    File a Report    Update Report    Consumer Resources    Corporate Advocacy    Search    Past Featured

Want to sue Ripoff Report?    Why Ripoff Report will never release author information!

Privacy Policy    Terms of Service    FAQ    About Us    Contact Us

Thank You!    Ed Magedson - Ripoff Report Founder    Donate    Link to Ripoff Report

Ripoff Report Search Results: Hess Kennedy                                    Page 1 of 3

*by consumers, for consumers*

# Ripoff Report.

Don't let them get away with it . let the truth be known!

# Search Results: Hess Kennedy

You    Legend

**NEW** New    **UPDATE** Updated    **REBUTTAL** Rebuttal    **PHOTOS** Photos

searched for: **Hess Kennedy**
Approximately **38** Reports Found
Showing 31 - 38

| Date | Title | City, State |
|------|-------|-------------|
| 31. 2/20/2007 9:00:00 AM | Hess Kennedy And Company Breach of Contract, failure to disclose actions with accounts or provide any assistance promised. Coral Springs Florida | |
| | Credit & Debt Services : **Hess Kennedy And Company** Florida | **Author:** Norman, Oklahoma |
| 32. 2/12/2007 1:22:04 PM **UPDATE REBUTTAL** | Consumer Credit Counseling Hess Kennedy & Company Debt Settlement Of America no contact, took more money than agreed, did not reduce debt Coral Springs Florida *UPDATE *UPDATE ..OH HO MORE WAYS TO TRY TO RIP ME OFF | |
| | Credit & Debt Services : **Consumer Credit Counseling/Debt Settlement Of America/Hess Kennedy & Company** Florida | **Author:** Normal, Illinois |
| 33. 2/5/2007 2:10:00 PM | Hess Kennedy & Company SCAM ARTISTS!! THIEVES!! DONT GIVE THEM YOUR MONEY! Coral Springs Florida | |
| | Credit & Debt Services : **Hess Kennedy & Company** Florida | **Author:** Glendora, California |
| 34. 1/26/2007 3:19:00 PM | Hess Kennedy Company Debt Settlement ripoff will not refund money ignores emails on hold for an hour Fort Lauderdale Florida | |
| | Credit & Debt Services : **Hess Kennedy Company** Florida | **Author:** Indianapolis, Indiana |



what

*Ripoff Report Legal Ads*

Did you finance with Washington Mutual in 2007?

Did you finance with Washington Mutual in 2007 and get an appraisal of your home?

If so, you might be entitled to a **full refund**.

E-mail classaction@ careylaw.com to see if you qualify.

Cashed a Payroll Check

1/26/2007
9:15:00 AM

**Hess Kennedy BEWARE RIPOFF Coral Springs Florida**

Credit & Debt Services :      **Author:** Boonville, Indiana
**Hess Kennedy**
Florida

1/14/2007
3:55:00 PM

**Hess Kennedy Company RIPOFF SCAM FRAUD THEFT BREACH OF CONTRACT Coral Springs Florida**

Credit & Debt Services :      **Author:** New Braunfels, Texas
**Hess Kennedy Company**
Florida

1/11/2007
12:34:00
PM

**Hess Kennedy & Company Beware!! Hess Kennedy are FRAUDS!! Ripoff Coral Springs Florida**

Credit & Debt Services :      **Author:** Glendora, California
**Hess Kennedy &**
**Company**
Florida

1/11/2007
12:34:00
PM

**Hess Kennedy & Company Beware!! Hess Kennedy are FRAUDS!! Ripoff Coral Springs Florida**

Credit & Debt Services :      **Author:** Glendora, California
**Hess Kennedy &**
**Company**
Florida

Approximately **38** Reports Found
Showing 31 - 38 | **Showing Page 3 of approximately 3**                    << Prev

3

and paid a
Fee?

**Did your
employer's bank
charge you to cash
your payroll check
because you didn't
have an account at
their bank?**

If so, you might be
entitled to relief,
even if you no
longer work for
that employer.

You may be a
victim and due
compensation! E-
mail
classaction@
earthlaw.com
to see if you
qualify.



**Ripoff Report**

Home    File a Report    Update Report    Consumer Resources    Corporate Advocacy    Search    Past Featured Reports

Want to sue Ripoff Report?    Why Ripoff Report will never release author information!

Privacy Policy    Terms of Service    FAQ    About Us    Contact Us

Thank You!    Ed Magedson - Ripoff Report Founder    Donate    Link to Ripoff Report

Copyright © 1999-2007, Ripoff Report. All rights reserved.

Ripoff Report Search Results: Campos                                          Page 1 of 3

## Ripoff Report

*by consumers, for consumers*

Don't let them get away with it.. let the truth be known!

# Search Results: Campos

You     Legend

🆕 New   📝 Updated   💬 Rebuttal   📷 Photos

searched for: **Campos**
Approximately **10** Reports Found
Showing 1 - 10

**There may be more reports for "Campos."**
Follow this link to perform an advanced search of the complete text of all reports for "Campos."

| Date | Title | City, State |
|------|-------|-------------|
| 2/11/2008 5:39:00 AM 🆕 | Campos Chartered Law Firm Aka Jeffery Scott Campos and Telecore Direct Non responsive to requests to subdue intrusive creditors via phone,mail or fax SSyosset And Coral Springs New York and Florida<br><br>Credit & Debt Services : **Campos Chartered Law Firm ,Jeffery Scott Campos and Telecore Direct** Florida | Author: Anon, Texas |
| 2/5/2008 4:15:00 PM 🆕 | Campos Chartered Law Firm Campos Chartered Law Firm are thieves Syosset New York<br><br>Corrupt Companies : **Campos Chartered Law Firm** New York | Author: Beaver City, Nebraska |
| 2/2/2008 10:57:29 PM 💬 | Campos Chartered Law Firm Debt consolidation with this company is a scam and nothing is done for you. Syosset, New York<br><br>*Consumer Suggestion ..VERY COMMON<br><br>Credit & Debt Services : **Campos Chartered Law Firm** New York | Author: Johnston, Rhode Island |
| 1/24/2008 5:35:00 PM 🆕 | Campos Chartered Law Firm Was told letters went out to creditors but didn't send them.Can't get ahold of cus.ser. SYOSSET New York<br><br>Credit & Debt Services : | |



*Ripoff Report Legal Ads*

Did you finance with Washington Mutual in 2007?

Did you finance with Washington Mutual in 2007 and get an appraisal of your home?

If so, you might be entitled to a **full refund**.

E-mail classaction@ careylaw.com to see if you qualify.

———————

Cashed a Payroll Check

Ripoff Report Search Results: Campos                                      Page 2 of 3

**Campos Chartered Law**
**Firm**
New York                              │ Author: Brockton, Massachusetts

5. 12/29/2007    Campos Chartered Law Firm Major Rip-off Artists
   8:01:42 PM    Coral Springs Florida
   NEW
   RESUTTAL        *Consumer Suggestion ..Read your contracts

   Credit & Debt Services :    │ Author: Cleveland, Ohio
   **Campos Chartered Law**
   **Firm**
   Florida

6. 12/26/2007    CAMPOS CHARTERED LAW FIRM DEBITED MY
   5:07:00 PM    ACCOUNT, NOW NO ONE ANSWERS THE PHONE OR
   NEW          RETURN MY CALLS! SYOSSET New York

   Credit & Debt Services :    │ Author: ROCHESTER, New York
   **CAMPOS CHARTERED**
   **LAW FIRM**
   New York

7. 12/21/2007    Campos Chartered Law Firm Major Ripoff artists
   1:47:00 PM    SyossetSyosset New York
   NEW

   Lawyers : **Campos**    │ Author: brooklyn, New York
   **Chartered Law Firm**
   New York

8. 12/18/2007    Campos Chartered Law Firm Did not save my credit
   1:09:00 PM    score, did not forward any money to creditors, did
   NEW          not even contact creditors Syosset New York

   Attorney Generals :    │ Author: Penn Valley, California
   **Campos Chartered Law**
   **Firm**
   New York

9. 12/17/2007    Campos Chartered Law Firm ,Campos Legal
   10:20:00     Services ,Campos Kennedy Chartered Law Firm, has
   AM           no credibilty-no follow-up- is untrusworthy- and has
   NEW          questionable intentions & practices Syosset New
                York

   Attorneys & Legal    │ Author: trenton, New Jersey
   Services : **Campos**
   **Chartered Law Firm , Campos**
   **Kennedy Chartered Law Firm**
   New York

10. 6/5/2007    The Kayden Group, Campos Chartered Law withheld
    8:10:00 AM  my $5000 payment to CCDN legal group for 7
                months Tully, New York

    Credit & Debt Services :    │ Author: New York, New York
    **The Kayden Group**
    New York

                                                    and paid a

Approximately **10** Reports Found
Showing 1 - 10 | **Showing Page 1 of approximately 1**



## Ripoff Report

Home Reports    File a Report    Update Report    Consumer Resources    Corporate Advocacy    Search    Past Featured

Want to sue Ripoff Report?    Why Ripoff Report will never release author information!

Privacy Policy    Terms of Service    FAQ    About Us    Contact Us

Thank You!    Ed Magedson - Ripoff Report Founder    Donate    Link to Ripoff Report

Copyright © 1999-2007, Ripoff Report. All rights reserved.

**Passport Problems?**

The federal government didn't live up to its promise to deliver the expedited passports within 14 days.

*Did you pay the federal government $60 to expedite the delivery of your passport and still get it late!?*

Join Class Action Now!

*Advertisers above have met our strict standards for business conduct.*

# EXHIBIT F

IN THE SUPREME COURT OF FLORIDA

THE FLORIDA BAR,

      Petitioner,

v.

LAURA L. HESS,

      Respondent.

_____/

Case No.
TFB File No. 2008-90,111(OSC)

## PETITION FOR CONTEMPT
## AND ORDER TO SHOW CAUSE

THE FLORIDA BAR, files this, its Petition for Contempt and Order to Show Cause and request for a 91-day suspension against respondent, Laura L. Hess, and says:

1. In Florida Supreme Court Case No. SC04-1498, by order dated January 27, 2005, respondent received a public reprimand and was placed on probation for 3 years.

2. Respondent's probation was scheduled to end on January 27, 2008.

3. Respondent has had 8 new complaints filed with The Florida Bar during her probationary period which resulted in a finding of probable cause for misconduct committed during the probationary period by the grievance committee. *See*, January 15, 2008 Amended Notice of Finding of Probable Cause for Further Disciplinary Proceedings and Record of Investigation filed in The Florida Bar File Nos. 2007-50,983(17H) attached hereto as Exhibit "A."



4.    Rule 3-5.1(c), Rules Regulating The Florida Bar, provides in pertinent part:

> Failure to observe the conditions of probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rules.

5.    Thus, pursuant to Rule 3-5.1(c), The Florida Bar requests that respondent receive a 91-day suspension, so that she is required to demonstrate rehabilitation in reinstatement proceedings as a prerequisite to returning to the practice of law.

6.    Due to a finding of probable cause for misconduct which occurred during the probationary period, The Florida Bar was obligated to file this Petition for Contempt.

7.    The other members of The Florida Bar should not have to pay for respondent's misconduct which occurred during her probationary period resulting in the instant proceeding. Therefore, pursuant to Rule 3-7.6(q)(1)(I), Rules Regulating The Florida Bar, the Bar is requesting administrative costs of $1,250.00 against respondent.

2

WHEREFORE, petitioner, The Florida Bar, respectfully requests this court enter its order suspending respondent Laura L. Hess, from the practice of law for ninety-one (91) days and assessing costs in the amount of $1,250.00 to The Florida Bar.

Respectfully submitted,

Kathy Jane Bible
The Florida Bar
651 East Jefferson Street
Tallahassee, Florida 32399-2300
(850) 561-5823
Florida Bar No. 654019

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Petition for Contempt and Order to Show Cause has been forwarded by Certified Mail Return Receipt Number 7003 1680 0002 4612 1159 to Respondent's Counsel, Kevin P. Tynan, in TFB File Nos. 2007-50,983(17H), et al., at his record bar address of Richardson & Tynan, P.L.C., 8142 North University Drive, Tamarac, Florida 33321-1708, and by Certified Mail Return Receipt Number 7003 1680 0002 4612 1166 to Respondent's Counsel, Charles Wender, in TFB File No. 2004-50,991(17H), at his record bar address of 190 West Palmetto Park Road, Boca Raton, Florida, 33432-3828 and by regular U.S. Mail to Juan Carlos Arias, Bar Counsel, 5900 North Andrews Avenue, Suite 900, Fort Lauderdale, Florida, 33309 on this _11th_ day of February, 2008.

Kathy Jane Bible

3

IN THE SUPREME COURT OF FLORIDA
(Before a Grievance Committee)

THE FLORIDA BAR,

      Complainant,

v.

LAURA L. HESS

      Respondent.

_____/

The Florida Bar File Nos.
2007-50,983(17H),
2007-51,816(17H),
2007-51,797(17H),
2007-51,632(17H),
2007-51,482(17H),
2007-51,866(17H),
2007-51,340(17H),
2008-50,264(17H)

## AMENDED NOTICE OF FINDING OF PROBABLE CAUSE FOR FURTHER DISCIPLINARY PROCEEDINGS AND RECORD OF INVESTIGATION

TO:   Laura L. Hess
      c/o Kevin P. Tynan, Esq.
      Richardson & Tynan, P.L.C.
      8142 North University Drive
      Tamarac, Florida 33321

You are hereby notified that Seventeenth Judicial Circuit Grievance Committee "H," at a duly constituted meeting on the 15th day of January, 2008, and by majority vote of eligible members present, found probable cause for your violations of the following Rules:

R. Regulating Fla. Bar 3-4.2, 3-4.3, 4-1.3, 4-1.4(a), 4-1.4(b), 4-1.15, 4-7.2(a)(2), 4.5.5(a), 4-8.1(a), 4-8.4(a), 4-8.4(c), 4-8.4(d) and 5-.1(a)(1)

All matters of record considered by the grievance committee have been referred to the undersigned staff lawyer for the drafting and filing of a formal Complaint pursuant to Rule 3-7.4(l).

Your further attention is called to Rule 3-7.9.



EXHIBIT
A

Please note that plea negotiations for consent judgments may be entered into until two weeks before the final hearing. After that date, bar policy prohibits further negotiations.

Dated this **23rd** day of January, 2008.

Respectfully submitted,

JUAN CARLOS ARIAS, #76414
Bar Counsel
The Florida Bar
5900 North Andrews Avenue, Suite 900
Fort Lauderdale, Florida 33309
(954) 772-2245

cc:    Staff Counsel
The Florida Bar
651 East Jefferson Street
Tallahassee, Florida 32399-2300

Johanna S. Shields, Chair
Seventeenth Judicial Circuit
Grievance Committee "H"
Klauber, Hurtig, Shields
8751 West Broward Boulevard, Suite 410
Plantation, Florida 33324

Eugene Keith Pettis, Esq.
Designated Reviewer
Haliczer, Pettis & Schwamm
One Financial Plaza, 7th Floor
Fort Lauderdale, Florida 33394

2

# EXHIBIT G

Hess Kennedy Company, An International Law Firm                    Page 1 of 1



# HESS | KENNEDY CHARTERED
## A Professional Association

| Home | Services Offered | Our Business |

Contact Us

## WELCOME TO HESS | KENNEDY CHARTERED!

**HESS | KENNEDY CHARTERED**
A Professional Association

Hess Kennedy Chartered is A Professional Association with offices in the United States, Europe, and the Caribbean. Our attorneys manage millions of dollars for over 40,000 clients worldwide.

While our core concentration is that of asset management, we currently audit compliance with some of the major consumer protection statutes. Through a series of sophisticated disciplines, our attorneys have established an effective manner of dealing with original creditors, third party debt collectors, and consumer credit reporting agencies.

Our financial planner will analyze your personal income statement and place you with an attorney that will handle all aspects of your financial stability or instability. Your attorney will ensure that your rights are well protected and curb collection abuse.

Some of the services that our attorneys and affiliated companies offer are:

- Wealth Management
- Credit Counseling
- Debt Settlement
- Asset Protection

...learn more.

*FILL OUT OUR SHORT FORM BELOW & WE WILL CONACT YOU SHORTLY!*

Please fill out our short form be and we will contact you short!

✓ - required fields

First Name:
Last Name:
State:  Delaware
Country:
Contact Phone:
Best Time to Contact?  Anytime
Email Address:
Question and
or Comments:

Submit

(Please click the "Submit" button ONLY O
This will take a short moment to proces

Hess | Kennedy Chartered is a professional association. Managing Partner of Hess | Kennedy Chartered is Laura Hess. She is admitted for practice in Florida only. For cases outside of Florida Hess | Kennedy Chartered lawyers will request assistance from and associate with one of our hand-picked affiliate attorneys located throughout the country. An associated attorney will be compensated through Hess | Kennedy Chartered according to the work performed, in full compliance with the Florida Rules of Professional Conduct.

The hiring of a lawyer is an important decision that should not be based solely on advertisements. Before you decide ask us to send you written information about our Attorney / Lawyer qualifications and experience.

© 2007, All Rights Reserved, Hess | Kennedy Chartered

# EXHIBIT H

# Cardmember Agreement

CMA12826

This is the Agreement that establishes the terms of your Cardmember Account ("Account") with Chase Bank USA, N.A. Please read it carefully and keep it for your records. You do not need to sign this Agreement, but please be sure to sign the back of your Card if you have not already done so. All extensions of credit in connection with your Account are being made by Chase Bank USA, N.A., in Wilmington, Delaware. Any use of your Card or Account confirms your acceptance of the terms and conditions of this Agreement.

**Definitions:** In this Agreement, the words "**you**" and "**your**" refer to each person (jointly and severally if more than one) who has applied for the Account and any other person who has agreed to be responsible for the Account. The words "**we**", "**us**", and "**our**" refer to Chase Bank USA, N.A., which is the successor by merger to Bank One, Delaware, N.A. We may at any time choose to communicate with you under our other brands including Bank One. You understand that all such brand references when referring to your Card or Account shall mean Chase Bank USA, N.A. "**Card**" refers to each MasterCard and/or Visa Card that is issued on your Account. The Card must be returned or surrendered to us or our agent upon request.

**Using Your Account:** You may use your Card or Account to purchase or lease goods or services, or pay amounts you owe, wherever the Card is honored, transfer balances from other accounts or, if applicable, to obtain advances to cover an overdraft on your checking account with an affiliate of ours under the terms of this Agreement and your Overdraft Protection Agreement, ("Overdraft Advances"), (Purchases, Balance Transfers and Overdraft Advances are collectively called "Purchases"). You may also use the Card to obtain cash loans ("Cash Advances") at Automated Teller Machines, or from financial institutions accepting the card; or to obtain travelers checks, foreign currency, money orders, wire transfers or similar cash-like charges; or to obtain lottery tickets, casino gaming chips, race track wagers or for similar betting transactions. You may also use a third party service to make a payment on your behalf and bill the payment to this Account. You agree to accept credits to your Account instead of cash refunds when the original Purchase was charged to your Account.

We may issue "Convenience Checks" to you which may be used to access your credit line. Use of a Convenience Check will be treated as a "Purchase" in the amount of your check. Each Convenience Check will contain your Account number and may be used only by the person(s) whose name(s) is/are printed on it. Each must be completed and signed by you (or either of you) in the same manner as a regular personal check.

You may not use these checks, nor may you transfer a balance to pay any amount you owe to us, or any of our related banks, under your Cardmember Agreement or under any other credit agreement or account you may have with us. You promise to use your account only for valid and lawful transactions. For example, internet gambling may be illegal in some places. It is not our responsibility to make sure that you use your account only for permissible transactions, and you will remain responsible for paying for a transaction even if it is not permissible.

**Obligations On Your Account:** You authorize us to pay and charge your Account for all Purchases and Cash Advances made or obtained by you or anyone you authorize to use your Card or Account. You promise to pay us for all of these Purchases and Cash Advances, plus any Finance Charges assessed on your Account and any other charges and fees which you may owe us under the terms of this Agreement. You will be obligated to pay authorized charges to your Account whether resulting from (1) actual use of your Card or Convenience Checks, (2) mail order or telephone, computer or other electronic Purchases made without presenting the Card or (3) any other circumstance where you authorize a charge, or authorize someone else to make a charge, to your Account. Each person who is included within the definition of the term "you", above, is responsible to pay the full amount owed on the Account. We may require that you pay the full amount owed without first asking the other person(s) to pay. All payments must be made in U.S. dollars. Any payment made by check or other negotiable instrument must be drawn on a U.S. bank or a U.S. branch of a foreign bank.

**Payment Allocation:** You agree that we are authorized to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower **Annual Percentage Rates** ("APRs") (such as promotional APRs) before balances with higher APRs.

**Credit Line/Authorized Usage:** Your credit line is shown on the folder containing your Card. Since we may change your credit line from time to time, your latest credit line will appear on your monthly statement. You agree not to make a Purchase or obtain a Cash Advance that would cause the unpaid balance of your Account to exceed your credit line. We may honor Purchases and Cash Advances in excess of your credit line at our sole discretion. If we do, this Agreement also applies to that excess and you agree to pay the excess immediately if we request that you do so. You agree that we may change or cancel your credit line at any time without affecting your obligation to pay amounts that you owe under this Agreement. We may designate that only a portion of your credit line is available for Cash Advances. If we do and you exceed that limit, you will be considered to have exceeded your credit line for all purposes of this Cardmember Agreement. For security reasons, we may limit the number or dollar amount of Purchase, Cash Advance and/or Convenience Check transactions that may be accomplished with your Card or Account, and we have the right to limit authorizations to make Purchases or obtain Cash Advances if we consider it necessary to verify payments received on your Account. Your total available credit may not be restored for up to 15 days after we receive your payment.

**Periodic Statements:** We will send a statement at the end of each monthly billing cycle in which your Account has a debit or credit balance of more than $1.00 or if a Finance Charge has been imposed. Among other things, your monthly statement will show your New Balance, any Finance Charge, your credit line and available credit, your minimum payment due and the Payment Due Date. Your monthly statement will also show payment instructions and information about how we may process payment checks electronically.

**Credit Information:** You agree that we may request consumer credit reports from one or more credit reporting agencies in connection with your application and the administration of your Account. You also authorize us to exchange credit information concerning you or your Account with (and answer questions and requests from) others, such as merchants, other lenders and credit reporting agencies.

**Skip/Promotional Features:** From time to time, we may let you skip or reduce one or more monthly payments during a year and/or we may temporarily reduce or eliminate certain Finance Charges on all or a portion of your Account balance or offer you other special terms. If

we do, we will advise you of the scope and duration of the applicable skip or promotional feature. When the skip or promotional feature ends, your regular rates and terms will resume.

**Refusal to Authorize Transactions:** We may, but are not required to, decline a transaction on your Account for any of the following reasons:
- because of operational considerations,
- because your Account is in default,
- if we suspect fraudulent or unlawful activity or,
- in our discretion, for any other reason.

We are not responsible for any losses if a transaction on your Account is declined for any reason, either by us or a third party, even if you have sufficient credit available.

For on-line transactions, we may require that you register your Account with an authorization system that we select. We will notify you if we want you to register. If you do not register, we may decline your on-line transactions.

**Refusal to Pay Convenience Checks:** Each Convenience Check you write is your request for funds. When we receive your Convenience Check for payment, we may review your Account to decide whether to authorize that Convenience Check. We may, but are not required to, reject and return unpaid a Convenience Check for any reason, including the following examples:
- We or one of our related companies is the payee on the Convenience Check.
- Your credit line has been exceeded, or would be exceeded if we paid the Convenience Check.
- The Convenience Check is post-dated. If a post-dated Convenience Check is paid, resulting in another check being returned or not paid, we are not responsible.
- You have used the Convenience Check after the date specified on the check.
- You are in default or would be if we paid the Convenience Check.

**Default/Collection:** We may consider you to be in default if any of these occurs:
- We do not receive at least the minimum payment due by the date and time due as shown on your billing statement.
- You exceed your credit line.
- You fail to comply with the terms of this Agreement or any agreement with one of our related companies.
- You file for bankruptcy.
- We obtain information that causes us to believe that you may be unwilling or unable to pay your debts to us or to others on time.
- You become incapacitated or in the event of your death.

If we consider your Account to be in default, we may close your Account without notice and require you to pay your unpaid balance immediately. We also may require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your account to be six or more billing cycles past due.

To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorneys' fees, court costs, and all other expenses of enforcing our rights under this agreement.

**Irregular Payments And Delay In Enforcement:** We can accept late payments, partial payments, checks and money orders marked "Paid in Full" or language having the same effect without losing any of our rights under this Agreement. We can also delay enforcing our rights under this Agreement any number of times without losing them. The fact that we may at any time honor a Purchase or Cash Advance in excess of your maximum credit line does not obligate us to do so again.

**ARBITRATION AGREEMENT:** PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

**Parties Covered.** For the purposes of this Arbitration Agreement, "we", "us", and "our" means our parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we", "us" and "our" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims

regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us.

Initiation of Arbitration. The party filing a Claim in arbitration must choose one of the following two arbitration administrators: American Arbitration Association; or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. If you want an arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the two arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators.

**American Arbitration Association,** 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879

**National Arbitration Forum,** P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371

Procedures and law applicable in arbitration. A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

Costs. We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

Enforcement, finality, appeals. Failure or any delay in enforcing this Arbitration Agreement at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of two neutral arbitrators designated by the same arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

Severability, survival. This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining

portions shall nevertheless remain in force.

Changes to this Agreement: We can change this Agreement at any time by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. Modifications, additions, or deletions are called "Changes" or a "Change".

We will notify you of any Change if required by applicable law. These Changes will be effective at the time stated in our notice. Unless we state otherwise, any Change will apply to the unpaid balances on your Account and to new transactions.

The notice may state that you may notify us in writing by a specified date if you do not want to accept certain Changes we are making. If you notify us in writing that you do not accept the Changes, your Account will be closed and you will be obligated to pay your outstanding balance under the terms of the Agreement in effect on the date you received the notice of Change.

If you do not notify us in writing by the date stated in the notice, or if you notify us but also use your Account after the date stated in the notice, you will be deemed to accept all Changes in the notice and to accept and confirm all terms of your Agreement and all Changes in prior notices we have sent you.

Phone Calls: In the regular course of our business we may monitor and record phone conversations made or received by our employees. You agree that we will have such right with respect to all phone conversations between you and our employees, whether initiated by you or any of our employees.

Notices: We will send statements and any other notices to you at the address shown in our files. If this is a joint account, we can send statements and notices to either of you. You promise to inform us promptly in writing of any change in your address. At our discretion, we may accept address corrections from the United States Postal Service.

Assignment: We may at any time assign your Account, any sums due on your Account, this Agreement or our rights or obligations under this Agreement. The person(s) to whom we make any such assignment shall be entitled to all of our rights under this Agreement, to the extent assigned.

GOVERNING LAW: THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAW OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW.

## YOUR BILLING RIGHTS

**Keep This Notice For Future Use**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at Cardmember Service, P.O. Box 15299, Wilmington, DE 19850-5299. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. **You can telephone us, but doing so will not preserve your rights.**

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error.
  If you need more information, describe the item you are not sure about.

**Your Rights And Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address, and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Minimum Payment:** You agree to pay at least the minimum payment due, as shown on your billing statement, so that we receive it by the date and time payment is due. You may pay more than the minimum payment due and may pay the full amount you owe us at any time. If you have a balance that is subject to finance charges, the sooner you pay us, the less you will pay in finance charges because finance charges accrue on your balance each day.

Your billing statement shows your beginning balance and your ending balance (the "New Balance" on your billing statement). If the New Balance is $10.00 or less, your minimum payment due will be the New Balance. Otherwise, it will be the largest of the following: $10.00; 2% of the New Balance; or the sum of 1% of the New Balance, total billed periodic rate finance charges, and any billed late and overlimit fees. As part of the minimum payment due, we also add any amount past due and any amount over your credit line.

**Minimum Finance Charge:** There is a minimum FINANCE CHARGE in the amount stated in the Table of Interest Charges in any billing cycle in which you owe a Periodic FINANCE CHARGE.

**Periodic Finance Charge Calculation—Two-Cycle Average Daily Balance Method (Including New Purchases) for Purchases and Average Daily Balance Method (Including New Transactions) for Other Transactions:** We calculate Periodic FINANCE CHARGES separately for each feature such as Purchases, Overdraft Advances, Cash Advances, Balance Transfers, Convenience Checks or Promotional Balances. We figure the Periodic FINANCE CHARGES by applying the applicable Daily Periodic Rate shown in the Table of Interest Charges to each feature's daily balance for each day of the current billing cycle. In addition, for Purchases, we apply the Daily Periodic Rate to the daily balance for each day of the previous billing cycle adjusted as described below.

To get the daily balance for each day of the current billing cycle, we take the beginning balance for each feature, add any new transactions or other debits (including fees and other charges), subtract any payments or credits, and make other adjustments. Transactions are added as of the later of the transaction date or the beginning of the billing cycle in which they are posted to your Account (except that Convenience Checks are added as of the date accepted by the payee). Fees are added either on the date of a related transaction or the last day of the billing cycle. This gives us that day's daily balance. A credit balance is treated as a balance of zero. We multiply the daily balance by the applicable Daily Periodic Rate, as stated in the Table of Interest Charges, to get your Periodic FINANCE CHARGES for that day. We then add these Periodic FINANCE CHARGES to your daily balance to get the beginning balance for the next day. For Purchases, we do the same thing for each day of the previous cycle to get the daily balance of Purchases for the previous billing cycle. However, the daily balance for previous billing cycle Purchases is considered to be zero for each day of the previous billing cycle if a Periodic FINANCE CHARGE was already imposed on Purchases itemized on your previous statement or you paid your New Balance on your previous statement in full by the payment due date.

To get your total Periodic FINANCE CHARGE for a billing cycle, we add all of the daily Periodic FINANCE CHARGES for all features. If you multiply the Average Daily Balance for each feature by the applicable Daily Periodic Rate and the number of days in the applicable billing cycle(s) and add the results together, the total will equal the Periodic FINANCE CHARGES for the billing cycle, except for minor variations due to rounding. To determine an Average Daily Balance, we add your daily balances and divide by the number of the days in the applicable billing cycle(s).

If we have promotional rate offers in effect, we will separately identify them on the front of your statement and separately disclose the balances to which the promotional rates or terms apply. These separate balances and the related Finance Charges will be calculated in the same manner as described above.

**Grace Period:** Periodic FINANCE CHARGES are added to your balance from the later of the transaction date or the beginning of the billing cycle in which they are posted to your Account (except that they are charged on Convenience Checks from the day the check is accepted by the payee). They continue to be added until the day we receive payment in full. However, we do not charge Periodic FINANCE CHARGES on new Purchases (other than Balance Transfers and Convenience Checks) if you pay your full New Balance by the Payment Due Date and your Previous Balance was zero or a credit balance. There is no grace period for Cash Advances, Convenience Checks, and Balance Transfers. If applicable, there is no grace period for Overdraft Advances.

We figure another portion of the Finance Charge on your Account by adding a one-time Cash Advance FINANCE CHARGE for each Cash Advance when it is obtained. The amount of the Cash Advance FINANCE CHARGE is stated in the Table of Interest Charges.

In addition, if you use a third party service to make a payment on your behalf and the service charges the payment to this Account, we may charge a Cash Advance FINANCE CHARGE for the payment.

**Transaction Finance Charges for Balance Transfers and Convenience Checks:** We will charge you a Transaction FINANCE CHARGE in the amount stated in the Table of Interest Charges for Balance Transfers and Convenience Checks. If applicable, Overdraft Advances will not be assessed a Transaction FINANCE CHARGE.

The total Finance Charge on your Account for a monthly billing cycle will be the sum of the Periodic FINANCE CHARGES plus any Cash Advance FINANCE CHARGES and any Transaction FINANCE CHARGES.

This Agreement provides for daily compounding of Finance Charges (interest).

The Periodic FINANCE CHARGES are subject to change as described in the sections entitled "Changes to this Agreement" and "Default Rate".

**Daily Periodic Rates and Annual Percentage Rates:** Your APRs and the corresponding daily periodic rates are listed in the Table of Interest Charges. To get the daily periodic rate we divide the APR by 365, and in effect always round up at the fifth place to the right of the decimal point.

**Variable Rates:** One or more APRs that apply to your account may vary with changes to the Prime Rate. When you have an APR that varies with changes to the Prime Rate, we calculate the APR by adding a margin to the Prime Rate published in *The Wall Street Journal* two business days before the Closing Date shown on your billing statement. The "Prime Rate" is the highest (U.S.) Prime Rate published in the Money Rates section of *The Wall Street Journal*. A "margin" is the percentage we add to the Prime Rate to calculate the APR. A "business day" is any day that is not a weekend or federal holiday. The Table of Interest Charges section shows which rates, if any, are variable rates. It also lists the margin for each variable rate and any minimum daily periodic rate and corresponding APR.

Two business days before the Closing Date shown on your billing statement, we see what the Prime Rate is. We then add the applicable margin to that Prime Rate to get the APR. To get the daily periodic rate we divide the APR by 365. To get the monthly periodic rate, we divide the APR by 12.

If our calculation results in a change to a daily periodic rate, the new rate will apply as of the first day of your billing cycle that ends in the calendar month in which we made the calculation. If the daily periodic rate increases, you will have to pay a higher periodic finance charge and may have to pay a higher minimum payment.

If *The Wall Street Journal* stops publishing the Prime Rate, we will select a similar reference rate and inform you on your billing statement or through a separate notice.

**Other Fees and Charges:** In addition to the Finance Charges discussed above, the following fees will be applicable to your Account:

**Annual Membership Fee:** If your Account has an Annual Membership Fee stated in the Table of Interest Charges it will be billed each year or in monthly installments, whether or not you use your Account, and you agree to pay it when billed. The Annual Membership Fee is non-refundable unless you notify us that you wish to close your Account within 30 days of the date we mail your billing statement on which the Annual Membership Fee is charged and at the same time, you pay your outstanding balance in full. Your payment of the Annual Membership Fee does not affect our right to close your Account or limit your right to make Purchases or obtain Cash Advances. If your Account is closed by you or us, we will continue to charge the Annual Membership Fee until you pay your outstanding balance in full and terminate your Account relationship.

**Late Fee:** If you do not pay at least the minimum payment due by the Payment Due Date for any billing cycle ("Late Payment"), we may charge a late fee. We will calculate the late fee based on the New Balance shown on your monthly statement as shown in the Table of Interest Charges.

**Return Payment Fee:** If your bank does not honor the check or direct debit you remitted to us to pay amounts you owe under this Agreement, or we must return a check because it is not signed or is otherwise irregular, we may charge you a return payment fee in the amount stated in the Table of Interest Charges.

**Return Convenience Check Fee:** If we (a) stop payment on a Convenience Check at your request or (b) return a Convenience Check unpaid because it exceeds your available credit at the time it is processed, your Account is closed or otherwise does not have charge privileges, or your Account is past due, we may charge you a return Convenience Check fee in the amount stated in the Table of Interest Charges.

**Overlimit Fee:** You are responsible for keeping track of your Account balance, including any fees and finance charges, and making sure that it remains below your credit line. If your Account balance is over your credit line at any time during a billing cycle, even if only for a day, we may charge an overlimit fee in the amount stated in the Table of Interest Charges. We may charge this fee even if your balance is over the credit line because of a finance charge or fee we imposed or a transaction we authorized. We will not charge more than one overlimit fee for any billing cycle. But we may charge an overlimit fee in subsequent billing cycles, even if no new transactions are made on your Account, if your Account balance still is over your credit line at any time during the subsequent billing cycles. For example, if you are overlimit at the end of a billing cycle, you may incur an additional fee for being overlimit at the beginning of the next billing cycle as well. This will be true even if you pay your Account by the date and time due as shown on your billing statement.

**Administrative Fees:** If you request photocopies of sales slips or duplicate copies of monthly statements, or if you request any special services such as obtaining Cards on an expedited basis, you agree to pay our reasonable charges for such services, as from time to time in effect. The present charges for such services are specified in the Table of Interest Charges. However if you request items such as sales slips or duplicate statements in connection with any disputed billing matter (see "Your Billing Rights"), we will not impose a fee if a billing error is disclosed.

Unless otherwise arranged between us, any fees listed above under "Other Fees and Charges" will be added to your Account and treated as Purchases.

**International Transactions:** International transactions include any transaction that you make in a foreign currency or that you make outside of the United States of America even if it is made in U.S. dollars. If you make a transaction in a foreign currency, Visa International or MasterCard International, Inc. will convert the transaction into U.S. dollars by using its respective currency conversion procedures. The exchange rate each entity uses to convert currency is a rate that it selects either from the range of rates available in the wholesale currency markets for the applicable processing date (which rate may vary from the rate the respective entity itself receives), or the government-mandated rate in effect on the applicable processing date. The rate in effect on the applicable processing date may differ from the rate on the date you used your card or account. We reserve the right to charge you an additional three percent (3%) of the U.S. dollar amount of any international transaction, whether that transaction was originally made in U.S. dollars or was made in another currency and converted to U.S. dollars by Visa or MasterCard. In either case, the 3% will be calculated on the U.S. dollar amount provided to us by that entity. The same process and charges may apply if any international transaction is reversed.

**Table of Interest Charges**

The Daily Periodic Rates we use to determine the **Periodic FINANCE CHARGE** for your Purchase balances (excluding Overdraft Advances, if applicable) and your Cash Advance balance are variable rates. They are called "Standard Rates". These variable rates will be calculated as described in the section of this agreement entitled "**Variable Rates**".

The APR for your Purchase balances (excluding Overdraft Advances, if applicable) will be the prime rate plus 13.99%. It will never be less than 19.24%. The corresponding Daily Periodic Rate for your Purchase balances will never be less than 0.05271%.

The APR for your Cash Advance balance will be the prime rate plus 15.99%. It will never be less than 23.99%. The corresponding Daily Periodic Rate for your Cash Advance balance will never be less than 0.06573%.

On May 17, 2005, the prime rate was 6%. Using that prime rate as an example, we estimate that the Daily Periodic Rate for your Purchase balances (excluding Overdraft Advances, if applicable) would equal 0.05477% and the APR would equal 19.99%. And the Daily Periodic Rate for your Cash Advance balance would equal 0.06573% and the APR would equal 23.99%.

However, the Daily Periodic Rate we use to determine the **Periodic FINANCE CHARGE** on Balance Transfers and Convenience Checks only, until the first day of your billing cycle that includes May 1, 2006 (the "Introductory Period"), is a fixed rate of 0%, corresponding to an APR of 0%. After that the Standard Rate for Purchases will apply to Balance Transfers and Convenience Checks.

If applicable the Daily Periodic Rate we use to determine your **Periodic FINANCE CHARGE** for Overdraft Advances is a fixed rate of 0.03833%, corresponding to an APR of 13.99%.

*See also "Default Rate" section.*

| Cash Advance FINANCE CHARGE | |
|---|---|
| ATM Cash Advance | 3% of Cash Advance (with a minimum of $10.00) |
| All Other Cash Advances | 3% of Cash Advance (with a minimum of $10.00) |
| Balance Transfer FINANCE CHARGE | 3% of applicable transaction (with a minimum of $5.00 and a maximum of $50.00) |
| Convenience Check FINANCE CHARGE | 3% of applicable transaction (with a minimum of $5.00 and a maximum of $75.00) |
| Minimum FINANCE CHARGE (if any Finance Charge is payable for a monthly billing cycle) | $1.00 |
| Annual Membership Fee | None |

**Late Fees:**

$15.00 if the New Balance is up to, but not including $250.00
$39.00 if the New Balance is $250.00 and over

However, if the default rate is in effect on a monthly statement, we may charge a late fee of $39.00 regardless of the amount of your New Balance.

| Return Payment Fee | $35.00 |
|---|---|
| Return Convenience Check Fee | $35.00 |
| Overlimit Fee | $35.00 |
| **Administrative Fees:** | |
| Duplicate of Merchant Sale Slip | $5.00 |
| Duplicate of Monthly Billing Statement | $5.00 |

**Default Rate:** Your APRs also may vary if you are in default under this Agreement or any other agreement you have with us or any of our related companies for any of the following reasons:
- We do not receive, for any payment that is owed on this Account or any other account or loan with us, at least the minimum payment due by the date and time due.
- You exceed your credit line on this Account.
- You fail to make a payment to another creditor when due.
- You make a payment to us that is not honored by your bank.
- To the extent allowed by law, if, at any time after your Account is closed, we demand immediate payment of your outstanding balance and we do not receive payment within the time we specify.

If any of these events occurs, we may increase the APRs (including any introductory or promotional APR) on all balances up to a default rate of the Prime Rate plus 23.99%. The default rate will be calculated as described in the section entitled "**Variable Rates**".

On May 17, 2005, the Prime Rate was 6%. Using that Prime Rate as an example, we estimate that the Daily Periodic Rate for a default rate of 1/365 of the Prime Rate plus 23.99% would equal 0.08216% and the corresponding **APR** would equal 23.99%.

We may consider the following factors to determine your default rate: the length of time your Account has been open, the existence, seriousness and timing of the defaults on your Account; other indications of your Account usage and performance; information about your other relationships with us or any of our related companies; and information we obtain from consumer credit reports obtained from credit bureaus. The default rate will take effect as of the first day of the billing cycle in which the default occurs, and will apply to purchase balances from the previous billing cycle for which periodic finance charges have not been already billed. If we decide not to increase your APR even though there is a default or if we do not increase your APR up to the maximum default rate stated above, we reserve our right to increase your APR in the event of any future default. We may in our discretion determine to charge reduced default rates or reinstate standard rates for all or selected balances on your Account.

**Closing Your Account:** You may close your Account at any time. If you call us to close your Account, we may require that you confirm your request in writing.

We may close your Account at any time or suspend your credit privileges at any time for any reason without prior notice except as required by applicable law. If we close your Account, we will not be liable to you for any consequences resulting from closing your Account or suspending your credit privileges.

If you or we close your Account, you and any authorized users must immediately stop using your Account and destroy all cards and Convenience Checks or return them to us upon request. You will continue to be responsible for charges to your Account, even if they are made or processed after your Account is closed and you will be required to pay the outstanding balance on your Account according to the terms of this Agreement. In addition, to the extent allowed by law, we may require you to pay the outstanding balance immediately or at any time after your Account is closed.

**Liability For Unauthorized Use Of Your Account:** If your Card or Convenience Checks are lost or stolen or if you are afraid someone may use your Account without your permission, you must notify us at once. You may be liable for that unauthorized use of your Account. You will not be liable for unauthorized use that occurs after you notify Cardmember Service, by writing to us at P.O. Box 15201, Wilmington, DE 19850-5201, or verbally by calling us at 1-800-945-2006, of the loss or theft of your Card or Convenience Checks or the possible unauthorized use of your Account. In any case, your maximum liability is $50.00. We may terminate or limit access to your Account if you have notified us or we have determined that your Card or Convenience Checks may have been lost or stolen, or that there may be unauthorized access to your Account.

**Inquiries Or Questions:** You may address any inquiries or questions which you have about your Account to: Cardmember Service, P.O. Box 15201, Wilmington, DE 19850-5201, or you may call us at 1-800-945-2006. If you telephone us instead of writing, you may lose certain rights the law gives you to dispute billing errors (see "Your Billing Rights").

**ILLINOIS CARDMEMBERS: INFORMATION SHARING:** Our Privacy Policy, which you have received, describes our information sharing practices and gives directions on how to opt out, or direct us to limit the sharing of personal information about you with companies or organizations outside of our family of companies.

Illinois law provides that we may not share information about you with companies or other organizations outside of our family of companies unless you authorize the disclosure or unless the disclosure falls under another exception in the law (such as sharing information to process your transactions or in response to a subpoena). You hereby agree that, if you choose not to exercise the opt out described in our Privacy Policy, you will be deemed to have authorized us to share personal information we have about you (including information related to any of the products or services you may have with any of our companies) with companies or other organizations outside of our family of companies.

# EXHIBIT I

## HESS KENNEDY COMPANY
### CHARTERED

March 22, 2007

JPMorgan Chase

MAR 27 2007 ·

DPS, 57

Via First Class Mail & Facsimile 917-591-8294

CHASE
P.O. BOX 15298
WILMINGTON, DE 19850-5298

RE:    I████ G. C████████
ACCOUNT# ███████████-4569

Dear Supervising Attorney:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principles. Please be advised that any communications that you make in this matter will become part of an administrative record, and may be used in litigation of claims related to the above listed account.

This letter constitutes a first notice of dispute with you regarding the above-listed account, and is served in response to recent communications that your company has made to my client by telephone and in writing. In the future, please restrict your communications to this office, have them be in writing, and cease and desist from any telephone communications with my client, my client's family members, my client's neighbors or workplace. Your company's continued telephonic communications with anyone other than me with respect to this matter may constitute a violation of the Fair Credit Billing Act should you continue to attempt collections on the amount in dispute, the Fair Debt Collection Practices Act, and may also violate the rules of professional responsibility, should your department employ a supervising attorney. Please be advised that I will aggressively pursue any claims that may arise in this area.

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

## HESS KENNEDY COMPANY

### CHARTERED

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

In order to determine the nature and character of the alleged debt relationship between you and my client, I will require strict verification, through the presentation of certified documentary evidence showing the factual basis and legal standing for your Company's claim for payment of the alleged debt that is disputed herein. Verification is defined as: Confirmation of correctness, truth or authenticity, by affidavit, oath or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party; sworn or equivalent confirmation of truth; and in accounting, the process of substantiating entries in books of account.

Specifically, in order to ascertain the validity and legal sufficiency of your claim, I am demanding the following:

1. Validation of your Company's right to collect the disputed debt set forth above, by furnishing verified copies of any and all agreements governing the assignment, novation, or transfer of rights, and/or the like, and state whether your Company is the current owner, assignee, holder, or holder in due course of the above referenced account, with evidence to support said statements.
2. Validation of the legal sufficiency of your claim regarding the disputed debt by furnishing verified copies of all relevant commercial instruments and/or contracts containing my client's wet ink signature, and the evidence of any exchange of a benefit or detriment; and/or the series of external acts giving the objective semblance of agreement; and/or otherwise between your Company and my client that you rely upon in advancing your Company's claim.
3. Please provide me with bona fide copies of the accounting transaction ledger that demonstrates how the money in the disputed account was originated. The documentation and evidence of the actual "account transaction ledger" are of the utmost importance. Your failure to provide them will be deemed to be substantial noncompliance with this request. This

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

evidence should include any transfer of cash or cash equivalents to any acquiring bank, merchant, or other third party.

4. Certified copies of any insurance policies related to the disputed account, contract, note or other instrument.

5. Any source of any cash or cash equivalent you and/or claimant claim was paid to my client and/or on my client's behalf, including, but not limited to, all accounts from which the cash or cash equivalents originated and/or passed through.

6. Certified Public Accountant audit reports of you and/or claimant for the disputed account for the period during which the claim existed, including any and all reports prepared for compliance with the requirements of the Sarbanes-Oxley Act of 2002.

7. If you claim to be the assignee debt collector for a particular creditor, provide proof of a valid license and bond to engage in this particular collection activity in this state. In the alternative, if you claim to be employees of the corporate creditor, or original creditor, please provide a statement indicating as such.

8. If the claim is asserted through an assignment, provide an authenticated executed copy of that agreement.

9. Certification that the terms of §326 of the U.S.A. Patriot Act have been complied with respect to the verification of the identity of my client as the account holder related to the above listed account.

The above records will allow me to effectively understand the nature of the transactions upon which you base your claim. Please do not misinterpret this request with a request for copies of any billing statements or standard cardholder agreements. Those documents will not satisfy my need for verification of your claims by authenticated documentation and affidavit.

I have also been advised that there may be legitimate claims against you for credit defamation, breach of warranty or contract, fraudulent billing, unfair dealing and/or deceptive and misleading advertising or business practices. I may also assert claims ob behalf of my client for violations of the Fair Credit Billing Act, The Truth in Lending Act, Fair Debt Collection Practices Act or the state versions of these statutes under the consumer protection provisions.

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and/or discharge of the entire balance of the account

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

## HESS KENNEDY COMPANY
### CHARTERED

referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees. I expect your good faith reply to include all of the records and information identified herein, within thirty (30) days. If you need more time, please notify me within thirty (30) days and I will allow you an additional thirty (30) days before considering your failure to answer a default. You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under 18 USC §1341.

The above does not constitute a complete identification of my client's rights, and all are hereby reserved.

Sincerely yours,

ATTORNEY FOR THE FIRM
HESS KENNEDY COMPANY

HESS KENNEDY COMPANY ● 210 NORTH UNIVERSITY DRIVE ● TWO HUNDRED NINE ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

# HESS KENNEDY COMPANY

### CHARTERED

March 14, 2007

Via First Class Mail & Facsimile 917-591-8294

**Cardmember Services**
P.O. Box 15299
Wilmington, DE 19850-5299

RE:  A~~~W. L~~~~
ACCOUNT# ~~~~~~~~-0034

JPMORGAN CHASE

MAR 1 9 2007

uPS, 900

Dear Supervising Attorney:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principles. Please be advised that any communications that you make in this matter will become part of an administrative record, and may be used in litigation of claims related to the above listed account.

This letter constitutes a first notice of dispute with you regarding the above-listed account, and is served in response to recent communications that your company has made to my client by telephone and in writing. In the future, please restrict your communications to this office, have them be in writing, and cease and desist from any telephone communications with my client, my client's family members, my client's neighbors or workplace. Your company's continued telephonic communications with anyone other than me with respect to this matter may constitute a violation of the Fair Credit Billing Act should you continue to attempt collections on the amount in dispute, the Fair Debt Collection Practices Act, and may also violate the rules of professional responsibility, should your department employ a supervising attorney. Please be advised that I will aggressively pursue any claims that may arise in this area.

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is

HESS KENNEDY COMPANY ● 210 NORTH UNIVERSITY DRIVE ● TWO HUNDRED NINE ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK   ILLINOIS   NEW JERSEY   LONDON   CALIFORNIA   CAYMAN ISLANDS   SINGAPORE   SOUTH CAROLINA

# HESS KENNEDY COMPANY

### CHARTERED

resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

In order to determine the nature and character of the alleged debt relationship between you and my client, I will require strict verification, through the presentation of certified documentary evidence showing the factual basis and legal standing for your Company's claim for payment of the alleged debt that is disputed herein.    Verification is defined as: Confirmation of correctness, truth or authenticity, by affidavit, oath or deposition.    Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party; sworn or equivalent confirmation of truth; and in accounting, the process of substantiating entries in books of account.

Specifically, in order to ascertain the validity and legal sufficiency of your claim, I am demanding the following:

1. Validation of your Company's right to collect the disputed debt set forth above, by furnishing verified copies of any and all agreements governing the assignment, novation, or transfer of rights, and/or the like, and state whether your Company is the current owner, assignee, holder, or holder in due course of the above referenced account, with evidence to support said statements.
2. Validation of the legal sufficiency of your claim regarding the disputed debt by furnishing verified copies of all relevant commercial instruments and/or contracts containing my client's wet ink signature, and the evidence of any exchange of a benefit or detriment; and/or the series of external acts giving the objective semblance of agreement; and/or otherwise between your Company and my client that you rely upon in advancing your Company's claim.
3. Please provide me with bona fide copies of the accounting transaction ledger that demonstrates how the money in the disputed account was originated. The documentation and evidence of the actual "account transaction ledger" are of the utmost importance. Your failure to provide them will be deemed to be substantial noncompliance with this request. This evidence should include any transfer of cash or cash equivalents to any acquiring bank, merchant, or other third party.
4. Certified copies of any insurance policies related to the disputed account, contract, note or other instrument.

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK     ILLINOIS     NEW JERSEY     LONDON     CALIFORNIA     CAYMAN ISLANDS     SINGAPORE     SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

5. Any source of any cash or cash equivalent you and/or claimant claim was paid to my client and/or on my client's behalf, including, but not limited to, all accounts from which the cash or cash equivalents originated and/or passed through.

6. Certified Public Accountant audit reports of you and/or claimant for the disputed account for the period during which the claim existed, including any and all reports prepared for compliance with the requirements of the Sarbanes-Oxley Act of 2002.

7. If you claim to be the assignee debt collector for a particular creditor, provide proof of a valid license and bond to engage in this particular collection activity in this state. In the alternative, if you claim to be employees of the corporate creditor, or original creditor, please provide a statement indicating as such.

8. If the claim is asserted through an assignment, provide an authenticated executed copy of that agreement.

9. Certification that the terms of §326 of the U.S.A. Patriot Act have been complied with respect to the verification of the identity of my client as the account holder related to the above listed account.

The above records will allow me to effectively understand the nature of the transactions upon which you base your claim. Please do not misinterpret this request with a request for copies of any billing statements or standard cardholder agreements. Those documents will not satisfy my need for verification of your claims by authenticated documentation and affidavit.

I have also been advised that there may be legitimate claims against you for credit defamation, breach of warranty or contract, fraudulent billing, unfair dealing and/or deceptive and misleading advertising or business practices. I may also assert claims ob behalf of my client for violations of the Fair Credit Billing Act, The Truth in Lending Act, Fair Debt Collection Practices Act or the state versions of these statutes under the consumer protection provisions.

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and/or discharge of the entire balance of the account referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK   ILLINOIS   NEW JERSEY   LONDON   CALIFORNIA   CAYMAN ISLANDS   SINGAPORE   SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees. I expect your good faith reply to include all of the records and information identified herein, within thirty (30) days. If you need more time, please notify me within thirty (30) days and I will allow you an additional thirty (30) days before considering your failure to answer a default. You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under 18 USC §1341.

The above does not constitute a complete identification of my client's rights, and all are hereby reserved.

Sincerely yours,

ATTORNEY FOR THE FIRM
HESS KENNEDY COMPANY

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK   ILLINOIS   NEW JERSEY   LONDON   CALIFORNIA   CAYMAN ISLANDS   SINGAPORE   SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

March 22, 2007

JPMorgan Chase

MAR 2 7 2007

DPS, 57

Via First Class Mail & Facsimile 917-591-8294

CHASE
P.O. BOX 15298
WILMINGTON, DE 19850-5298

RE:    W█████ D. R██████
ACCOUNT# █████████████5460

Dear Supervising Attorney:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principles. Please be advised that any communications that you make in this matter will become part of an administrative record, and may be used in litigation of claims related to the above listed account.

This letter constitutes a first notice of dispute with you regarding the above-listed account, and is served in response to recent communications that your company has made to my client by telephone and in writing. In the future, please restrict your communications to this office, have them be in writing, and cease and desist from any telephone communications with my client, my client's family members, my client's neighbors or workplace. Your company's continued telephonic communications with anyone other than me with respect to this matter may constitute a violation of the Fair Credit Billing Act should you continue to attempt collections on the amount in dispute, the Fair Debt Collection Practices Act, and may also violate the rules of professional responsibility, should your department employ a supervising attorney. Please be advised that I will aggressively pursue any claims that may arise in this area.

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

In order to determine the nature and character of the alleged debt relationship between you and my client, I will require strict verification, through the presentation of certified documentary evidence showing the factual basis and legal standing for your Company's claim for payment of the alleged debt that is disputed herein.    Verification is defined as: Confirmation of correctness, truth or authenticity, by affidavit, oath or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party; sworn or equivalent confirmation of truth; and in accounting, the process of substantiating entries in books of account.

Specifically, in order to ascertain the validity and legal sufficiency of your claim, I am demanding the following:

1. Validation of your Company's right to collect the disputed debt set forth above, by furnishing verified copies of any and all agreements governing the assignment, novation, or transfer of rights, and/or the like, and state whether your Company is the current owner, assignee, holder, or holder in due course of the above referenced account, with evidence to support said statements.

2. Validation of the legal sufficiency of your claim regarding the disputed debt by furnishing verified copies of all relevant commercial instruments and/or contracts containing my client's wet ink signature, and the evidence of any exchange of a benefit or detriment; and/or the series of external acts giving the objective semblance of agreement; and/or otherwise between your Company and my client that you rely upon in advancing your Company's claim.

3. Please provide me with bona fide copies of the accounting transaction ledger that demonstrates how the money in the disputed account was originated. The documentation and evidence of the actual "account transaction ledger" are of the utmost importance. Your failure to provide them will be deemed to be substantial noncompliance with this request.    This

HESS KENNEDY COMPANY ●  210 NORTH UNIVERSITY DRIVE ● TWO HUNDRED NINE ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK   ILLINOIS   NEW JERSEY   LONDON   CALIFORNIA   CAYMAN ISLANDS   SINGAPORE   SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

evidence should include any transfer of cash or cash equivalents to any acquiring bank, merchant, or other third party.

4. Certified copies of any insurance policies related to the disputed account, contract, note or other instrument.

5. Any source of any cash or cash equivalent you and/or claimant claim was paid to my client and/or on my client's behalf, including, but not limited to, all accounts from which the cash or cash equivalents originated and/or passed through.

6. Certified Public Accountant audit reports of you and/or claimant for the disputed account for the period during which the claim existed, including any and all reports prepared for compliance with the requirements of the Sarbanes-Oxley Act of 2002.

7. If you claim to be the assignee debt collector for a particular creditor, provide proof of a valid license and bond to engage in this particular collection activity in this state. In the alternative, if you claim to be employees of the corporate creditor, or original creditor, please provide a statement indicating as such.

8. If the claim is asserted through an assignment, provide an authenticated executed copy of that agreement.

9. Certification that the terms of §326 of the U.S.A. Patriot Act have been complied with respect to the verification of the identity of my client as the account holder related to the above listed account.

The above records will allow me to effectively understand the nature of the transactions upon which you base your claim. Please do not misinterpret this request with a request for copies of any billing statements or standard cardholder agreements. Those documents will not satisfy my need for verification of your claims by authenticated documentation and affidavit.

I have also been advised that there may be legitimate claims against you for credit defamation, breach of warranty or contract, fraudulent billing, unfair dealing and/or deceptive and misleading advertising or business practices. I may also assert claims ob behalf of my client for violations of the Fair Credit Billing Act, The Truth in Lending Act, Fair Debt Collection Practices Act or the state versions of these statutes under the consumer protection provisions.

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and/or discharge of the entire balance of the account

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

# HESS KENNEDY COMPANY
## CHARTERED

referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees. I expect your good faith reply to include all of the records and information identified herein, within thirty (30) days. If you need more time, please notify me within thirty (30) days and I will allow you an additional thirty (30) days before considering your failure to answer a default. You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under 18 USC §1341.

The above does not constitute a complete identification of my client's rights, and all are hereby reserved.

Sincerely yours,

ATTORNEY FOR THE FIRM
HESS KENNEDY COMPANY

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

# EXHIBIT J



Coral Springs, FL 33065

July 26, 2007

AMAZON.COM VISA
PO BOX 15298
WILMINGTON, DE 198501-5298

Re:    Account Number: ▮▮▮▮▮▮4577
       Amount in Dispute: $3675.98

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of a billing error found within my periodic statements for the previous 60 days as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement. Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter. They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request. My new address is: 210 North University Drive, #209, Coral Springs, FL 33071. My new telephone number is: ▮▮▮▮▮▮▮ and my new work telephone number is: 954-752-1950.

Very truly yours,



JPMorgan Chase
JUL 3 1 2007
DPS.48



Independence, MO 64057

November 30, 2007

<u>Via First Class Mail</u>

AARP
PO Box 15148
Wilmington, DE 19850-5148

Re: ████████-7698
Amount in Dispute: $7582.55

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of what I believe to be a billing error found within my periodic statements for the previous 60 days as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement. Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter. They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request. My new address is: PO BOX 170, SYOSSET, NY, 11791. My new telephone number is: ████████ and new fax number is: (866)384-3330.

Very truly yours,

████████

JPMorgan Chase
N.A.

DEC - 1 2007

DPS, 14


Coral Springs, FL 33071

November 29, 2007

ROBERT QUINN & CARLTON FIELDS
4221 W BOYSCOUT BLVD
TAMPA, FL 33607

Re:   CHASE
        ████████████ 6720
        $14,473.88

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of what I believe to be a billing error found within my periodic statements for the previous 60 days, as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement.   Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter.  They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request.  My new address is: 210 North University Drive, #900, Coral Springs, FL 33071. My new telephone number is: ████ ████████ and my new work telephone number is: 954-510-7840.

Very truly yours,





Coral Springs, FL 33071

November 28, 2007

CHASE
ROBERT QUINN & CARLTON FIELDS
4221 W BOYSCOUT BLVD
TAMPA, FL 33607

Re:    CHASE
       ▓▓▓▓▓▓▓ 4953
       $9,718.98

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of what I believe to be a billing error found within my periodic statements for the previous 60 days, as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement.    Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter.  They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request.  My new address is: 210 North University Drive, #900, Coral Springs, FL 33071.  My new telephone number is: ▓▓▓ ▓▓▓▓▓ and my new work telephone number is: 954-510-7840.

Very truly yours,

▓▓▓▓▓▓▓



Coral Springs, FL 33071

November 27, 2007

ROBERT QUINN & CARLTON FIELDS
4221 W BOYSCOUT BLVD
TAMPA, FL 33607

Re:    CHASE
         4478
         $22,248.88

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of what I believe to be a billing error found within my periodic statements for the previous 60 days, as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement.   Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter.  They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request.  My new address is: 210 North University Drive, #900, Coral Springs, FL 33071. My new telephone number is: and my new work telephone number is: 954-510-7840.

Very truly yours,


Coral Springs, FL 33071

November 28, 2007

CHASE
ROBERT QUINN & CARLTON FIELDS
4221 W BOYSCOUT BLVD
TAMPA, FL 33607

Re:    CHASE
       9444
       $7,855.81

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of what I believe to be a billing error found within my periodic statements for the previous 60 days, as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement.    Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter. They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request.  My new address is: 210 North University Drive, #900, Coral Springs, FL 33071.  My new telephone number is: and my new work telephone number is: 954-510-7840.

Very truly yours,



Coral Springs, FL 33071

November 30, 2007

ROBERT QUINN & CARLTON FIELDS
4221 W BOYSCOUT BLVD
TAMPA, FL 33607

Re: CHASE
▓▓▓▓▓▓▓▓0673
$13240.94

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of what I believe to be a billing error found within my periodic statements for the previous 60 days, as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement.  Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter.  They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request.  My new address is: 210 North University Drive, #900, Coral Springs, FL 33071.  My new telephone number is:▓▓▓-▓▓▓▓▓▓ and my new work telephone number is: 954-510-7840.

Very truly yours,

# EXHIBIT K

# HESS KENNEDY COMPANY

## CHARTERED

July 26, 2007

Via First Class Mail

Supervising Attorney
BJ'S MASTERCARD
P.O BOX 15298
WILMINGTON, DE 19850-5298

JPMorgan Chase

JUL 3 1 2007

DPS, 48

Re:    R████ D██████
       Account #██████████1686

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of today's date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of an account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into "disputed status" and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,



HESS KENNEDY CO. CHARTERED

HESS KENNEDY COMPANY ● 210 NORTH UNIVERSITY DRIVE ● 209 ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SOUTH CAROLINA

Campos Chartered Law Firm.
PO Box 170
Syosset, NY 11791
Phone: (631)940-2411 Fax: (866)384-3330
www.freelawspace.com

**Campos Chartered Law Firm**
Attorneys at Law.

November 30, 2007

Via First Class Mail

AARP
PO Box 15148
Wilmington, DE 19850-5148

JPMorgan Chase

DEC 1 4 2007

DPS, 64

Re: J███ K█████ 
    Account #████████████-7698

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of todays date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of the account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into -disputed status- and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,

Campos Chartered Law Firm.

CAMPOS CHARTERED LAW FIRM. | PO BOX 170 | SYOSSET | NY | 11791

THE CONSUMER LAW
LAW CENTER, L.C.

July 15, 2007

Via First Class Mail

Supervising Attorney
CHASE
PO BOX 15298
WILMINGTON, DE 19850-5298



Re:    W████ G█████ ████████2103
      5,344.11

**JPMorgan Chase**

**JUL 3 1 2007**

**DPS, 48**

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of today's date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of an account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into "disputed status" and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,

THE CONSUMER LAW CENTER, L.C.

THE CONSUMER LAW CENTER · 3200 N. UNIVERSITY DRIVE   SUITE 210   CORAL SPRINGS   FL   33065
TEL: 1-954-752-1950       FAX: 1-954-727-8722

THE CONSUMER
LAW CENTER, L.C.

July 25, 2007

Via First Class Mail

Supervising Attorney
CHASE
PO BOX 15298
WILMINGTON, DE 19850-5298



JPMorgan Chase

JUL 3 1 2007

DPS, 48

Re:    W█████ O██████
       ██████████2103
       5,344.11

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of today's date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of an account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into "disputed status" and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,

THE CONSUMER LAW CENTER, L.C.

THE CONSUMER LAW CENTER · 3200 N. UNIVERSITY DRIVE  SUITE 210  CORAL SPRINGS  FL  33065
TEL: 1-954-752-1950                      FAX: 1-954-727-8722

# THE CONSUMER LAW CENTER

A PROFESSIONAL ASSOCIATION

November 27, 2007

Via First Class Mail

Supervising Attorney

Robert M. Quinn & Carlton Fields
CHASE BANK
4221 W. BOY SCOUT BLVD
TAMPA, FL 33607-5780

Re:     C███ S███████
        CHASE ACCT. #███████████3783

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of today's date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of an account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into "disputed status" and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,

THE CONSUMER LAW CENTER

# EXHIBIT L

# HESS KENNEDY COMPANY
## CHARTERED

JPMorgan Chase

MAR 2 7 2007

DPS, 41

ADAM FOREMANE
INFO@HESSKENNEDYLAW.COM
TEL: 954.345.7845 EXT 305
FAX: 954.727.8722

March 8, 2006

<u>Via First Class Mail</u>

CHASE
PO BOX 15298
WILMINGTON, DE 19850-5298

CONFIDENTIAL SETTLEMENT CORRESPONDENCE

Re:   K███ G█████████6130

Dear Billing Dispute Representative:

This firm represents the above named consumer. We are writing to dispute a billing error in the amount of $25,685.19 on the obligor's account.

The amount is inaccurate because it reflects: 1) an extension of credit which was not made to our client; 2] goods or services not accepted by our client in accordance with the agreement made at the time of the transaction; 3) inaccurate amounts of payments made by our client; and 4) an inaccurate computation of the annual percentage rate.

In accordance with 15 U.S.C. §1666(c) demand is hereby made that:

(1) All action to collect the amount or any part thereof cease until such time as this billing error has been resolved, including but not limited to telephone calls, correspondence other than that allowed by law, and the reporting of any negative or derogatory information to third party credit reporting agencies;

(2) Additional clarification and documentary evidence reflecting how your organization calculated the dollar amount allegedly due be forwarded to this office; and

(3) The error is corrected and that any finance or other charges related to the disputed amount be credited and that we receive on our client's behalf a copy of a corrected statement.

Please direct any and all future communications to our firm.

Very truly yours,

*Adam Foremane*

ADAM FOREMANE[1]
HESS KENNEDY COMPANY

---

[1] Not a member of the Florida Bar.
HESS KENNEDY COMPANY ● 210 NORTH UNIVERSITY DRIVE ● TWO HUNDRED NINE ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722
NEW YORK  |  ILLINOIS  |  CALIFORNIA  |  CAYMAN ISLANDS  |  SINGAPORE

# HESS KENNEDY COMPANY

## CHARTERED

JPMorgan Chase



DPS, 41

ADAM FOREMANE
INFO@HESSKENNEDYLAW.COM
TEL: 954.340.7848 EXT 305
FAX: 954.727.8722

March 8, 2006

<u>Via First Class Mail</u>

CHASE
PO BOX 15298
WILMINGTON, DE 19850-5298

CONFIDENTIAL SETTLEMENT CORRESPONDENCE

Re:    Ms. C████ T████
        ██████████████1248

Dear Billing Dispute Representative:

This firm represents the above named consumer. We are writing to dispute a billing error in the amount of $5,497.49 on the obligor's account.

The amount is inaccurate because it reflects: 1) an extension of credit which was not made to our client; 2) goods or services not accepted by our client in accordance with the agreement made at the time of the transaction; 3) inaccurate amounts of payments made by our client; and 4) an inaccurate computation of the annual percentage rate.

In accordance with 15 U.S.C. §1666(c) demand is hereby made that:

(1) All action to collect the amount or any part thereof cease until such time as this billing error has been resolved, including but not limited to telephone calls, correspondence other than that allowed by law, and the reporting of any negative or derogatory information to third party credit reporting agencies;

(2) Additional clarification and documentary evidence reflecting how your organization calculated the dollar amount allegedly due be forwarded to this office; and

(3) The error is corrected and that any finance or other charges related to the disputed amount be credited and that we receive on our client's behalf a copy of a corrected statement.

Please direct any and all future communications to our firm.

Very truly yours,

*Adam Foremane*

**ADAM FOREMANE**[1]
**HESS KENNEDY COMPANY**

[1] Not a member of the Florida Bar.
HESS KENNEDY COMPANY • 210 NORTH UNIVERISTY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722
NEW YORK   |   ILLINOIS   |   CALIFORNIA   |   CAYMAN ISLANDS   |   SINGAPORE

# HESS KENNEDY COMPANY

### JPMorgan Chase

### CHARTERED

I'vi 2 / 2007

DPS, 41

ADAM FOREMANE
INFO@HESSKENNEDYLAW.COM
TEL: 954.345.7848 EXT 303
FAX: 954.727.8722

March 8, 2006

<u>Via First Class Mail</u>

**CHASE**
**PO BOX 15298**
**WILMINGTON, DE 19850-5298**

CONFIDENTIAL SETTLEMENT CORRESPONDENCE

Re:     8576

Dear Billing Dispute Representative:

This firm represents the above named consumer. We are writing to dispute a billing error in the amount of $5,547.62 on the obligor's account.

The amount is inaccurate because it reflects: 1) an extension of credit which was not made to our client; 2) goods or services not accepted by our client in accordance with the agreement made at the time of the transaction; 3) inaccurate amounts of payments made by our client; and 4) an inaccurate computation of the annual percentage rate.

In accordance with 15 U.S.C. §1666(c) demand is hereby made that:

(1) All action to collect the amount or any part thereof cease until such time as this billing error has been resolved, including but not limited to telephone calls, correspondence other than that allowed by law, and the reporting of any negative or derogatory information to third party credit reporting agencies;

(2) Additional clarification and documentary evidence reflecting how your organization calculated the dollar amount allegedly due be forwarded to this office; and

(3) The error is corrected and that any finance or other charges related to the disputed amount be credited and that we receive on our client's behalf a copy of a corrected statement.

Please direct any and all future communications to our firm.

Very truly yours,

*Adam Foremane*

ADAM FOREMANE[1]
HESS KENNEDY COMPANY

---

[1] Not a member of the Florida Bar.
HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722
NEW YORK  |  ILLINOIS  |  CALIFORNIA  |  CAYMAN ISLANDS  |  SINGAPORE

# EXHIBIT M

07. 83694.0.81          AGD

## IN THE
## NATIONAL ARBITRATION FORUM

### REQUEST BY A PARTY
### DISMISSAL

L████ E█████                          In Re: **CHASE BANK, N.A.**
210 N. University Drive                       **FA0705000991396**
Suite 209
Coral Springs, FL 33071
USA
   Respondent,

   AND

**MANN BRACKEN, LLC**
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
USA
   Claimant

### INTRODUCTION

 A credit card is a system of payment, named after the small plastic card issued to users of the system. A user ("cardholder") is issued a credit card after an account has been approved by the credit provider often a general bank, but sometimes a captive bank created to issue a particular brand of credit card, such as Providian National Bank, or American Express Centurion Bank, with which the user will be able to make purchases from merchants accepting that credit card up to a pre-established credit limit.

 When a purchase is made, the cardholder signs a promissory note and presents it to the merchant as payment. The note acts as a receipt with a record of the card details and indicating the amount to be paid or by entering a PIN. Also, many merchants

now accept verbal authorizations via telephone and electronic authorization using the Internet, known as a customer not present (CNP) transaction.

At the end of each banking day, the promissory notes are delivered by the merchant to the merchant's bank. The merchant's bank credits the merchant's deposit account in an amount equal to the dollar amount of accumulated notes. The credit is that of a bookkeeping entry, and not a cash, or cash equivalent. This deposit increases the assets of the merchant bank.

Each time the cardholder uses the card, the issuing bank also creates a bookkeeping entry upon its books, a standard banking practice exercised in combination with the Federal Reserve Bank in its district. Contrary to what people may think, no cash or cash equivalent (money) is loaned to the cardholder, but instead, the cardholder is allowed electronic assess to the ledger book established by the bank in the name of the cardholder.

It is well established law that banks cannot loan the money of its depositors, number one, it is prohibited by 12 U.S.C. § 582. More important, and from a practical standpoint, if banks loaned money deposited by its own clients, it would not create any new money. Instead, when a purchase is made with a credit card, bank assets are increased by the purchase amount and the bank turns right around and uses those newly created assets. Thus, the cardholder actually creates the money to make those purchases by executing a promissory note payable to the merchant.

Each month, the credit card user is sent a statement indicating the purchases undertaken with the card, any outstanding fees, and the total amount owed. After receiving the statement, the cardholder may dispute any charges that he or she thinks

2

are incorrect in accordance with the Fair Credit Billing Act (15 U.S.C. §1666) or pay the bill.

When a cardholder or a cardholder's attorney sends notice in accordance with 15 U.S.C. §1666, a bank cannot engage in certain activities. Under the law, Title 12 C.F.R § 226.13, a consumer has the right to withhold payment until the dispute is resolved and the creditor is prohibited from all collection efforts, as well as adding late charges and fees if the account is still in dispute. Continued action to attempt to collect payment on a disputed account is in violation of Federal law Title Code of Federal Regulations (C.F.R) Banks and Banking § 226.13 (d)(1).

Under the law Title 12 C.F.R § 226.12 (Truth in Lending), a bank is prohibited from reporting negatively on a cardholders credit report until a dispute is resolved. The account should either read, in dispute, and/or closed per customer request. Many times they report as closed by guarantor (them) and also as late. This violates federal law.

In this case, the CLAIMANT does not allege that it extended anything of value, nor conferred anything of value on the RESPONDENT. Given a fundamental understanding of Modern Money Mechanics and GAAP, CLAIMANT, created the money and credit upon its own books by bookkeeping entry as the consideration for the RESPONDENT's alleged "promise to pay". Each time the RESPONDENT allegedly used the credit card account, the banks assets were expanded, not contracted. Thus, any failure to "pay as agreed" caused no damage to the Plaintiff.

3

## REQUEST FOR RELIEF

1.    For a Request, Relief, or an Order, L▮▮▮ E▮▮▮:    Respondent respectfully requests that the Arbitrator in this matter dismiss this claim as the Chase Bank, N.A. account is not the Respondent's account.  Mann Bracken, LLC is not able to properly validate this debt per federal requirements, nor can they prove that this account is the Respondent's.  Respondent prays that this Request will be granted and that this claim will be dismissed as this Mann Bracken, LLC account number is not the Respondent's account number.

2.    For a Request, Relief, or an Order, L▮▮▮ E▮▮▮ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that the Claimant fails to allege sufficient facts to state any claim for which relief can be granted, in that an action on an account is founded upon contract, and therefore the plaintiff must plead that the contract involves a transaction that usually forms the subject of a book account. Respondent prays that this Request will be granted and that this claim will be dismissed.

3.    For a Request, Relief, or an Order, L▮▮▮ E▮▮▮ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that the Claimant fails to allege sufficient facts to state any claim for which relief can be granted, in that  the Claimant has failed to attach copies of the mandatory Truth in Lending Act Disclosures.  Respondent prays that this Request will be granted and that this claim will be dismissed.

4.    For a Request, Relief, or an Order, L▮▮▮ E▮▮▮ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that the

Claimant fails to allege sufficient facts to state any claim for which relief can be granted, in that an action on an open account requires allegations of a connected series of transactions with no break or interruption. The Claimant has failed to properly plead a cause of action based upon a theory of Open Account. Respondent prays that this Request will be granted and that this claim will be dismissed.

5.    For a Request, Relief, or an Order, L▮▮▮▮ E▮▮▮▮ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that the Claimant fails to allege sufficient facts to state any claim for which relief can be granted, in that an action on an account stated requires allegations of an agreement between the parties that a certain balance is correct and due and an express or implied promise to pay this balance. The Claimant makes no allegations that the Respondent made an express or implied promise to pay, but merely that the Respondent failed to object to the balance. The Claimant has failed to properly plead a cause of action based upon a theory of Account Stated. Respondent prays that this Request will be granted and that this claim will be dismissed.

6.    For a Request, Relief, or an Order, L▮▮▮ E▮▮▮ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that the Claimant is barred from collecting on this alleged debt, in that Claimant has waived any and all claims, rights and demands made by him seeking to recover finance charges, late fees, or collection charges due in part to his violations of Consumer Credit Protection Act – Credit Billing 15 U.S.C. §1666, Regulation Z, 12 C.F.R. 226. Respondent prays that this Request will be granted and that this claim will be dismissed.

7.    For a Request, Relief, or an Order, L██ E██ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that the Claimant lacks standing to collect on this alleged debt, in that the original creditor has charged off this debt, and as a result ahs relinquished all right, title, and interest to the claim, and the Claimant issuing in the name of the Original Creditor, without authorization from the Original Creditor.

8.    For a Request, Relief, or an Order, L██ E██ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that when a bank opens a credit card account, it creates a bookkeeping ledger on its balance sheet and allows the cardholder the use of the ledger. This in and of itself is not consideration. To the contrary, when a bank creates a bookkeeping ledger on its balance sheet, and a cardholder sues that bookkeeping ledger, the banks assets are increased. The claim should fail for lack of consideration.

9.    For a Request, Relief, or an Order, L██ E██ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that 12 U.S.C. § 582 prohibits banks from loaning the money of its depositors. If the Claimant "loaned" the Respondent money, it did so illegally, and the agreement is violative of a valid statute, illegal and void.

10.    For a Request, Relief, or an Order, L██ E██ states: Respondent respectfully requests that the Arbitrator in this matter dismiss this claim in that within 60 days after Claimant's transmission of a periodic statement, and prior to the filing of this claim, Respondent sent a "Billing Error Dispute Notice" in accordance with 15 U.S.C. § 1666 et. seq. Despite its receipt of Respondent's billing error notice, and before

6

meeting the requirements of 15 U.S.C. §1666 to either correct the error or investigate and send an explanation of the charges, Claimant took action to collect the disputed amount by filing this claim.

L██ E███
210 N. University Drive
Two Hundred Nine
Coral Springs, FL 33071

By: ___ s/ *████ ████* _____          Date:  06/08/2007
L████ E█████, Respondent

7

IN THE
NATIONAL ARBITRATION FORUM

PROOF OF SERVICE

L███ E███                                    In Re:  **CHASE BANK, N.A.**
210 N. University Drive                               **FA05000991396**
Suite 209
Coral Springs, FL 33071
USA
                 Respondent,

                    AND

**MANN BRACKEN, LLC**
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
USA
                 Claimant

---

**PROOF OF SERVICE**

1.      I, the Respondent, have served the following documents on the Claimant:
Respondent's Response.

2.      All of the above documents were served on the Claimant by:   Facsimile and
regular mail.

I, L███ E███, assert, under penalty of perjury, that the above listed documents
were served on the Claimant:
                    **MANN BRACKEN, LLC**
                    One Paces West, Suite 1400
                    2727 Paces Ferry Road
                    Atlanta, GA 30339
                    USA

and that this service conforms to the requirements of Rule 6 of the NAF Code of
Procedure and the applicable law.


By:___s/ ████ ████___                         Date:  06/08/2007
L███ E███, Respondent

8

# EXHIBIT N

71.91076,D. BI. AWC
AWC

**IN THE**
**NATIONAL ARBITRATION FORUM**
**RESPONSE WITH DEFENSES**

**Respondent:**
R█████ A. H████
c/o The Consumer Law Center
210 North University Drive
Suite 900
Coral Springs, FL 33071
USA
Telephone:        954-510-7840
E-mail Address   NAF@hesskennedylaw.com

**File Number: MX0712002028043**

**Claimant:**
Chase Bank USA, N.A.
c/o Mann Bracken, LLC
One Paces Road West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
USA

**RESPONSE**

In response to the Claimant's Claim, the Respondent states as follows:

1.    In response to paragraph 1, the Respondent denies the allegations contained therein.

2.    In response to paragraph 2, the Respondent denies the allegations contained therein.

3.    In response to paragraph 3, the Respondent denies the allegations contained therein.

4.    In response to paragraph 4, the Respondent denies the allegations contained therein.

5.    In response to paragraph 5, the Respondent denies the allegations contained therein.

6.    In response to paragraph 6, the Respondent denies the allegations contained therein.

**WHEREFORE,** the Respondent requests that the Claim be dismissed with prejudice and judgment granted in favor of the Respondent, plus court costs, attorneys' fees and further relief deemed just and proper.

## AFFIRMATIVE DEFENSES

7.     As its first affirmative Defense, the Respondent shows that the Claimant is precluded from recovery in this action for failure to state a cause of action upon which relief can be granted.  The Claimant seeks damages for Respondent's purported breach of contract and failure to pay money lent on a credit card account.  The Claimant failed to attach the signed and dated credit card application, request or agreement executed by the Respondent and the document which is attached to the Claimant's Claim is so vague and uncertain as to leave the Respondent unable to formulate an intelligent response to the Claimant's Claim.  The Claimant's unmarked attachments appear to be the business records of the original creditor.  This being the case, the Claimant is unable to attest to the authenticity of the originating source of documents, and further lacks personal knowledge of the events that transpired at that period of time in the life of the credit card Agreement.

8.     As its second affirmative defense, the Respondent shows that the Claimant is precluded from recovery in this action for failure to state a cause of action upon which relief can be granted, in that 15 U.S.C. §1642 provides that no credit card shall be issued to any person except in response to a request or application for a credit card.  The Claimant fails to state when or how the Respondent requested or applied for the alleged credit card account that is the subject of its claim for breach of contract.

9.     As its third affirmative defense, the Respondent shows that the Claimant is precluded form recovery in this action for failure to state a cause of action upon which relief can be granted, in that 15 U.S.C. §1637(a) requires a creditor to disclose rates, fees, and other cost information in applications and solicitations to open credit card accounts before opening any account under an open end consumer credit plan.  The Claimant fails to allege that before opening the alleged credit card account that it disclosed to this Respondent the rates, fees, or other cost information in an application or solicitation which is a statutory condition precedent to the accrual of a cause of action for breach of contract on a credit card issued by a bank.  The common law of the

2

State of Delaware in so far as it relates to causes of action for breach of contract for failure to pay as agreed on a credit card account is preempted by the Federal Truth in Lending Act, 15 U.S.C. §1666 et seq.

10.    As its fourth affirmative defense, the Respondent shows that the Claimant is precluded from recovery in this action for failure to state a cause of action upon which relief can be granted, in that 15 U.S.C. §1637(b) requires a creditor of any account under an open end consumer credit plan to transmit a statements to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed. The Claimant fails to allege that it transmitted to this Respondent the statements that formed the basis for a claim of breach of contract which is a statutory condition precedent to the accrual of a cause of action for failure to pay as agreed on a credit card account. The common law of the State of Delaware in so far as it relates to causes of action for breach of contract for failure to pay as agreed on a credit card account is preempted by the Federal Truth in Lending Act, 15 U.S.C. §1666 et seq.

11.    As its fifth affirmative defense, the Respondent shows that the Claimant is precluded from recovery in this action for failure to state a cause of action upon which relief can be granted, in that the Respondent sent the Claimant a notice of billing error in accordance with 15 U.S.C. §1666(a). 15 U.S.C. §1666(a)(3)(B) prohibits a creditor from taking any action to collect the amount, or any part thereof prior to complying with 15 U.S.C. §§(3)(A) & (B). See **Exhibits A.**

12.    As its sixth affirmative defense, the Respondent shows that the Claimant's claims are barred by the applicable statute of limitations and/or the doctrine of laches.

13.    As its seventh affirmative defense, the Respondent shows that the Claimant is precluded from recovery in this action by the doctrines of waiver and unclean hands.

14.    As its eighth affirmative defense, the Respondent shows that the Claimant is precluded from recovery in this action because he has substantially and/or materially breached the parties' agreement and is not entitled to the relief requested.

3

15.    As its ninth affirmative defense, the Respondent shows that the Claimant is precluded from recovery in this action in that any work, labor, or goods furnished and delivered were those furnished by third parties and not the Respondent.

16.    As its tenth affirmative defense, the Respondent shows that the Claimant's damages, if any, are too speculative and are not plead with particularity.

17.    As its eleventh affirmative defense, the Respondent shows that the Claimant is precluded from recovery because it possesses and has benefited form an insurance policy covering its losses if any.

18.    As its twelfth affirmative defense, the Respondent shows that in the unlikely event that the Claimant is awarded damages in this action; the Respondent is entitled to an offset or credit for the amounts awarded to Claimant.

19.    As its thirteenth affirmative defense, the Respondent shows that when a credit card account is established in the name of a holder of a credit card, no United States currency (Federal Reserve Notes) are lent or transferred to the holder of the credit card, but instead the card holder is given access to an electronic bookkeeping ledger wherein the issuing bank makes credits and debit entries in equal amounts in accordance with General Accepted Accounting Principles.  Accordingly, no consideration is given and the contract fails for lack of consideration.

20.    The Claim contains insufficient information to permit the Respondent from raising all appropriate defenses and counterclaims, and therefore, Respondent expressly reserves the right to amend and/or supplement this Response and Counterclaim with additional affirmative defenses and causes of action.

### REQUEST FOR HEARING

21.    The Respondent requests a document hearing.

WHEREFORE, the Respondent requests that the Claim be dismissed with prejudice and judgment granted in favor of the Respondent, plus court costs, attorneys' fees and further relief deemed just and proper.

4

## AFFIDAVIT OF AUTHENTICITY

The undersigned assert, under penalty of perjury, that the facts supporting the Response and the Supporting Documents are accurate and correct.

David M. Lipman, Esq.
for the Respondent

Respondent Contact
The Consumer Law Center
Attention: David M. Lipman, Esq.
210 North University Drive. Suite 900
Coral Springs, FL 33071
954-510-7840
NAF@hesskennedylaw.com

5

IN THE
NATIONAL ARBITRATION FORUM
RESPONDENT'S PROOF OF SERVICE

**Respondent:**
P███████ A H███████
c/o The Consumer Law Center
210 North University Drive
Suite 900
Coral Springs, FL 33071
USA
Telephone:        954-510-7840
E-mail Address    NAF@hesskennedylaw.com

File Number: MX0712002028043

**Claimant:**
Chase Bank USA, N.A.
c/o Mann Bracken, LLC
One Paces Road West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
USA

## RESPONDENT'S PROOF OF SERVICE

1.   I, David M. Lipman, Esq. have Delivered the following Documents to the Claimant:
     ☒    **Respondent's Response**            ☒    **Documents Supporting Response**

2.   All of the above Documents were Delivered to the Claimant by one of these methods described below:
     ☒    **United States Postal Service Regular Mail**
     The undersigned asserts, under penalty of perjury, that the above listed Documents were served on the Claimant, Chase Bank c/o Mann Bracken, LLC, One Paces Road West, Suite 1400, 2727 Paces Ferry Road, Atlanta, GA 30339 on December 21, 2007 and that this service conforms to the requirements of Rule 6 of he NAF Code of Procedure and the applicable law.

David M. Lipman, Esq.
Respondent Contact
The Consumer Law Center
Attention: David M. Lipman, Esq.
210 North University Drive, Suite 900
Coral Springs, FL 33071
954-510-7840
NAF@hesskennedylaw.com

# EXHIBIT O

5607

**52**

## IN THE COUNTY COURT OF BROWARD COUNTY, FLORIDA

JOSEPH DIORIO,
    Plaintiff,

                                        CASE NO.:     07  06599

v.

CHASE MANHATTAN BANK USA, N.A
*As successor in interest to* BANK ONE DELAWARE,
N.A
    Defendants.

                                                  JAY S. SPECHLER

_____➤

### COMPLAINT

JOSEPH DIORIO ("DIORIO") complains as follows against CHASE MANHATTAN BANK USA, N.A ("CHASE"):

1. This is an action for actual damages and statutory damages greater than $5000.00 but less than $15,000.00, and attorneys fees for violation of the Fair Credit Billing Act (part of the Truth in Lending Act), 15 U.S.C. §1666 and Regulation Z issued thereunder.

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1640(e), Fla. Stat. §48.193(1)(a),(b), & (2) and *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209 (11th Cir. 1999).

3. Defendant **CHASE** is a National Bank that engages in continuous and substantial business transactions in Broward County, Florida.

4. Plaintiff **DIORIO** is a natural person with a legal billing address of 210 North University Drive, Coral Springs, FL 33071 who entered into an open-end credit transaction, namely a BOA account, with Defendant BOA for personal, family, and household purposes.

6. At all timed material hereto, Defendant **CHASE**, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a credit card account, on which Defendant **CHASE** assessed finance charges.

XSI-PC

7. Beginning with the periodic statement with a closing date October 21, 2006, finance charges and daily periodic interest rates began appearing on Plaintiff's **CHASE** credit card account.

8. Plaintiff did not agree to those charges.

9. Within 60 days after transmission of the statement, plaintiff sent a notice disputing the charges to Defendant **CHASE** at the address stated on the periodic statement.

10. Subsequent to the above notice being sent, but prior to 30 days after receiving Defendant's notice, Attorneys for the Plaintiff sent Defendant **CHASE** notice disputing the charges as well as requesting additional information relating to Defendant **CHASE**'s initial disclosure statements and compliance with Federal law governing Banks insured by the Federal Depository Insurance Corporation.

11. Defendant **CHASE** did not, within two complete billing cycles after receipt of the notice, either correct the error and transmit to plaintiff, or plaintiff's attorney, a notification of the corrections or investigate the error and send plaintiff a written explanation.

12. Despite its receipt of plaintiff's billing error notice, and before meeting the requirements of 15 U.S.C. §1666 to either correct the error or investigate and send an explanation of the charges; Defendant **CHASE** made or threatened to make an adverse credit report regarding plaintiff.

13. Despite its receipt of plaintiff's billing error notice, and before meeting the requirements of 15 U.S.C. §1666 to either correct the error or investigate and send an explanation of the charges, Defendant **CHASE** took action to collect the disputed amount by calling Plaintiff, sending Plaintiff notices demanding payment, and retained Joann Haddad, **EICHENBAUM & STYLIANOU, LLC** to take action to collect the disputed amount.

2

**WHEREFORE**, Plaintiff **DIORIO** prays for judgment against Defendant **CHASE** for:

A.    Actual damages;

B.    Statutory damages in an amount of double the finance charge pursuant to 15 U.S.C. §1640(a)(2);

C.    Pursuant to 15 U.S.C. §1666(e), a declaration that Defendant has forfeited any right to collect the first $50.00 of the disputed amount and any finance charges thereon from Plaintiff;

D.    Costs and attorneys fees; and

E.    Such other relief as the Court deems proper.

## JURY DEMAND

The Plaintiff demands a jury trial.

**Respectfully submitted,**

**LAURA HESS, ESQUIRE**
HESS KENNEDY COMPANY CHARTERED
210 NORTH UNIVERSITY DRIVE
CORAL SPRINGS, FL 33071
TEL: 954-752-1950
FAX: 954-727-8722


BY: _____
LAURA HESS    FBN: 280940

Date:  04/24/2007

3

IN THE COUNTY COURT OF BROWARD COUNTY, FLORIDA

LINDA EWING,
      Plaintiff,

v.

CHASE BANK, N.A., MANN BRACKEN,
LLC., *and* JOHN DOE,
      Defendants.

CASE NO.:

07009020

COMPLAINT

    LINDA EWING ("EWING"), complains as follows against CHASE BANK, N.A.
("CHASE"), MANN BRACKEN, LLC ("BRACKEN"), *and* JOHN DOE ("DOE"):

    1.    This is an action for actual damages and statutory damages greater than $5000.00
but less than $15,000.00, attorneys fees, and injunctive or other relief for violations of the Fair
Credit Billing Act("FCBA") (part of the Truth In Lending Act), 15 U.S.C. §1666,Regulation Z
thereunder, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq.*

    2.    This Court has jurisdiction over the action pursuant to 15 U.S.C. §1640(e), 15
U.S.C. § 1692k (d), Fla. Stat. §§48.193(1) (a),(b), & (2) and *Posner v. Essex Ins. Co., Ltd.,* 178
F. 3d 1209 (11th Cir. 1999).

    3.    Defendant **CHASE** is a corporate creditor engaging in substantial and continuous
activities within Broward County, Florida in its own name, and through its business agent
Defendant **BRACKEN**.

    4.    Upon information and belief, Defendant **DOE** is a natural person employed by
Defendant **BRACKEN** and is engaged in the business of collecting consumer debts and
regularly collects consumer debts. Accordingly, he is a "debt collector" as defined in the

FDCPA, 15 U.S.C. §1692a (6). Upon identification of the true identity of **DOE**, and with permission of this Court, Plaintiff will amend the Complaint adding **DOE** in his actual capacity.

5.     Defendant **BRACKEN** is a Georgia Limited Liability Company and consumer collection agency and is engaged in the business of collecting consumer debts and regularly collects consumer debts. It is accordingly a "debt collector" as defined in the FDCPA, 15 U.S.C. §1692a (6). **BRACKEN** is vicariously liable for all conduct of Defendant **DOE**.

6.     Plaintiff **EWING** is a natural person whose legal billing address is 210 North University Drive Coral Springs, Florida 33071, entered into an open-end credit transaction, namely a **CHASE** account with Defendant **CHASE** for personal, family, and household purposes.

7.     At all times material hereto, Defendant **CHASE**, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a credit card account, on which Defendant **CHASE** assessed finance charges.

8.     Beginning with the periodic statement with a closing date January 21, 2007, recent activity, finance charges, and daily periodic activity began appearing on Plaintiff's **CHASE** credit card account.

9.     Plaintiff did not agree to those charges.

10.    Within 60 days after transmission of the statement, Plaintiff sent a notice disputing the charges to Defendant **CHASE** at the address stated on the periodic statement.

11.    Subsequent to the above notice being sent, but prior to 30 days after receiving notice, attorneys for the Plaintiff sent Defendant **CHASE** notice disputing the charges as well as requesting information relating to Defendant **CHASE** initial disclosure statements and compliance with Federal law governing banks and banking.

2

12.    Defendant **CHASE** did not, within two complete billing cycles after receipt of the notice, either correct the error and transmit to Plaintiff, or Plaintiff's attorney, a notification of the corrections or investigate the error and send Plaintiff or Plaintiff's attorney a written explanation.

13.    Despite its receipt of Plaintiff's billing error notice, and before meeting the requirements of 15 U.S.C. §1666 to either correct the error or investigate and send an explanation of the charges, Defendant **CHASE** made or threatened to make an adverse credit report regarding Plaintiff.

14.    Despite its receipt of Plaintiff's billing error notice, and before meeting the requirements of 15 U.S.C. § 1666 to either correct the error or investigate and send an explanation for the charges, Defendant **CHASE** took action to collect the disputed amount by calling Plaintiff, sending Plaintiff notices, and contacting Plaintiff at work and at home demanding payment.

15.    Despite its receipt of Plaintiff's billing error notice, and before meeting the requirements of 15 U.S.C. § 1666 to either correct the error or investigate and send an explanation for the charges, Defendant **CHASE** took action to collect the disputed amount by having its business agents Defendants **BRACKEN** and **DOE** call Plaintiff, sending Plaintiff notices, and contacting Plaintiff at work and at home demanding payment.

16.    On numerous occasions, in connection with the collection of Plaintiff's **CHASE** account, without the prior consent of Plaintiff given directly to Defendant **DOE**, or Defendant **BRACKEN** or the express permission of a court of competent jurisdiction, Defendant **BRACKEN** and Defendant **DOE** has communicated with the Plaintiff at times or places that Defendants **BRACKEN** and **DOE** knew or should have known to be inconvenient to the

3

Plaintiff, including the Plaintiff's place of employment after the Plaintiff and Plaintiff's attorneys notified Defendants **BRACKEN** and **DOE** that calls at work were inconvenient, in violation of Section 805(a)(1) of the FDCPA , 15 U.S.C. § 1692c(a)(1).

17.    On numerous occasions, in connection with the collection of Plaintiff's **CHASE** account, Defendants **BRACKEN** and **DOE** have communicated with third parties, including parents, children, and employers, for purposes other than acquiring location information about the Plaintiff, without having obtained directly the prior consent of the Plaintiff or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a post judgment judicial remedy, in violation of Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b).

18.    On numerous occasions, in connection with the collection of Plaintiff's **CHASE** account, Defendants **BRACKEN** and **DOE** engaged in conduct the natural consequence of which is to harass, oppress, or abuse the Plaintiff, in violation of Section 806 of the FDCPA, 15 U.S.C. §1692d, including but not limited to the following:

a)    Defendant **DOE** has used obscene or profane language, or language the natural consequence of which is to abuse the Plaintiff, in violation of Section 806(2) of the FDCPA, 15 U.S.C. § 1692d(2); and

b)    Defendant **DOE** has caused a telephone to ring, or has engaged the Plaintiff in telephone conversations, repeatedly, or continuously, with intent to annoy, abuse, or harass the person at the called numbers, in violation of Section 806(5) of the FDCPA, 15 U.S.C. §1692d(5).

c)    Defendant **DOE** has communicated with the Plaintiff knowing that the Plaintiff is represented by an attorney in violation of 15 U.S.C. §1692c(a)(2).

4

19.    On numerous occasions, in connection with the collection of the Plaintiff's CHASE account, Defendant DOE has used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including but not limited to the following:

a)    Defendant DOE has falsely represented to or implied that nonpayment of a debt will result in the arrest or imprisonment of the Plaintiff, or the seizure, garnishment, or attachments of a person's wages or property, when such an action is not lawful or when none of the Defendants has intended to take such action, in violation of Section 807(4) of the FDCPA, 15 U.S.C. §1692e(4); and

b)    Defendant DOE has threatened to take an action that cannot legally be taken or that is not intended to be taken, in violation of Section 807(5) of the FDCPA, 15 U.S.C. §1692e(5).

20.    On numerous occasions, in connection with the collection of the Plaintiff's CHASE account, Defendants BRACKEN and DOE have continued to contact Plaintiff after Plaintiff and Plaintiff's attorneys notified all Defendants in writing that the debt is disputed and prior to providing verification of the debt within the prescribed time, in violation of the FDCPA, 15 U.S.C. § 1692g(b).

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief against Defendant CHASE:

(a)    Actual damages;
(b)    Statutory damages in an amount of double the finance charge pursuant to 15 U.S.C. §1640(a)(2);
(c)    Pursuant to 15 U.S.C. §1666(e), a declaration that Defendant has forfeited any right to collect the first $50.00 of the disputed amount and any finance charges thereon from Plaintiff;
(d)    Costs and attorneys fees; and
(e)    Such other relief as the Court deems proper.

5

**WHEREFORE,** Plaintiff respectfully requests that the Court grant the following relief against Defendants **BRACKEN** and **DOE,** jointly and severally:

(a)   The maximum amount of statutory damages provided under 15 U.S.C. §1692k;
(b)   Attorneys fees, litigation expenses and costs pursuant to 15 U.S.C. §1692k; and
(c)   Such other relief as the Court deems proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

LAURA HESS, ESQUIRE
HESS KENNEDY COMPANY CHARTERED
210 NORTH UNIVERSITY DRIVE
CORAL SPRINGS, FL 33071
TEL: 954-752-1950
FAX: 954-727-8722


BY: _____                              Date:   06/04/2007
LAURA HESS        FBN: 280940

6

# EXHIBIT P



Respondent. ~~f——R——~~
~~—————————~~
Wilmington Del
19801

Claiment- Chase Bank USA, NA
One paces West Suit 1460
2727 Paces Ferry RD
Alanta GA. 30339

file # FA0703000936616
Date April 2. 2007

I'm desputing my failure
to pay my credit. On may
Of 2006. I paid my last payment
on the Account. However ty
went into Consolidation for
this card and 10 others
as they had gotten to be
to much for me. hadden
Ben put on Social Security.
before purchasing the card
as of May 06'. I began paying
Hers Kendg from my account

with P.N.C. Bank $118.00
a month to desburst to
my creditors.
I still pay as of March 2007
Bank statement
Hess kendy $118.00 to pay
my creditors. I informed
them of this process and
still got harrased daily
for the past 11 months nightly
and day. Causing my health
to worsen and to be put on
medicatin.

Enclosed: is * my May 2006 } proof
Bank statement          of
* March 2007 Bank statement } payment
* Letters from Hess Kennedy my
consolidatin law firm.
* Copy of letter sent to one of
my creditors from Hess Kennedy.
* Supporting documents.
* Counter Claims
* Request for fee waver)

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFF**
Chase Bank USA, N.A.
(b) County of Resident of First Listed Plaintiff  New Castle County
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney (Firm Name, Address, and Telephone Number)
Beth Moskow-Schnoll, Esq.
Ballard Spahr Andrews & Ingersoll, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4465

**DEFENDANTS**
Hess Kennedy Chartered, LLC et al. (see attached)
County of Residence of First Listed  Broward County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place Of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Individual | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☒ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| &Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans (Excl. | ☐ 340 Marine | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| Veterans) | ☐ 345 Marine Product | | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | | ☐ 891 Agricultural Acts |
| | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | Accommodations | **IMMIGRATION** | | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 444 Welfare | ☐ 462 Naturalization Application | | Determination Under |
| | ☐ 445 Amer. w/Disabilities - | ☐ 463 Habeas Corpus - | | Equal Access to Justice |
| | Employment | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 465 Other Immigration | | State Statutes |
| | Other | Actions | | |
| | ☐ 440 Other Civil Rights | | | |

(additional TORTS column)
**PERSONAL INJURY**
☐ 362 Personal Injury-
Med. Malpractice
☐ 365 Personal Injury-
Product Liability
☐ 368 Asbestos Personal
Injury Product
Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
Property Damage
☐ 385 Property Damage
Product Liability
**PRISONER PETITIONS**
☐ 510 Motions to Vacate
Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus &Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Action for declaratory and preliminary and permanent injunctive relief and for damages arising out of defendants' unlawful and deceptive business practices.

**VII. REQUESTED IN COMPLAINT**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ in excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE  2/29/08
SIGNATURE OF ATTORNEY OF RECORD  _Beth Mo-Schnoll_

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

DMEAST #9990709 v1

**Continued list of Defendants from cover page:**

LAURA L. HESS;
EDWARD T. KENNEDY;
LAURA HESS & ASSOCIATES, P.A.;
HESS KENNEDY HOLDINGS, LTD.;
HESS KENNEDY COMPANY CHARTERED BWI;
THE CONSUMER LAW CENTER, LLC;
THE CONSUMER LAW CENTER OF DELRAY BEACH, LLC;
THE CONSUMER LAW CENTER OF BOCA RATON, INC.;
THE CAMPOS CHARTERED LAW FIRM;
JEFF CAMPOS, P.A.; JEFFREY S. CAMPOS;
LEGAL DEBT CENTER, LLC;
JOHN DOES 1-50

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 08-121

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF 5 COPIES OF AO FORM 85.

2/29/08
(Date forms issued)

[signature]
(Signature of Party or their Representative)

Shane Handlin
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action