UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHASE BANK USA, N.A.

CIVIL ACTION NO. 1:08cv00121- JJF

Plaintiffs,

Vs.

HESS KENNEDY CHARTERED, LLC.,
Et al.

Defendants.

_____/

## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE AND/OR IN THE ALTERNATIVE FORUM NON-CONVENIENS

COMES NOW, the Defendants HESS KENNEDY CHARTERED,

LLC.,;LAURA L. HESS, LAURA HESS & ASSOCIATES, P.A.; HESS KENNEDY

HOLDINGS, LTD.; HESS KENNEDY COMPANY CHARTERED BWI;  THE

CONSUMERLAW CENTER, LLC.; THE CAMPOS CHARTERED LAW FIRM; JEFF

CAMPOS, P.A.;  and JEFFREY CAMPOS, by and through undersigned counsel and

hereby files this Motion to Dismiss and Incorporated Memorandum of Law For Lack of

Personal Jurisdiction, Improper Venue and/or In the Alternative Forum Non-Conveniens

and in support thereof sets forth the following:

### SUMMARY OF ARGUMENT

1.  This action should be dismissed with prejudice as a matter of law because this

    Court lacks personal jurisdiction over the Defendants as the Defendants do not

    have any minimum contacts with this State nor have the Plaintiffs asserted the

1

appropriate jurisdictional facts which would show this Court has personal

jurisdiction over the Defendants. Therefore, this Court does not have the requisite

authority to issue decisions regarding this controversy.

2. Even if this Court does have personal jurisdiction over the Defendants, which the

Defendants vehemently dispute, this Court should still dismiss the complaint for

improper venue based on the fact that all of the Defendants are located in the

State of Florida and there are already multiple actions pending in Florida

regarding the subject matter of this litigation.

3. In the alternative, this case should be dismissed and/or transferred to the Southern

District of Florida based upon the doctrine of forum non-conveniens as all of the

Defendants reside in Florida, conduct their business in Florida, all witnesses are in

Florida, all discovery production is in Florida and all of the alleged causes of

action arose from conduct that occurred in the State of Florida.

4. If this case is not dismissed, then an additional rationale for transferring this

action to the Southern District of Florida is because all of the multiple actions

pending against the Defendants can then be consolidated into a single action in a

single district and thus fulfill the goal of saving the Court's resources.

## STATEMENT OF FACTS

The Defendants are all entities providing legal services that are adversarial

to the credit card industry in that the Defendants assist in counseling their clients to

challenge credit card company billing practices based on Federal Laws (hereafter

"The Defendants' Services"). The Defendant entities are all owned and operated by

2

Attorneys. Said Attorneys are either licensed to practice law in the State of Florida
and/or only operate and transact business from offices located in the State of Florida.
More specifically the Defendants offices are all located in Coral Springs, Florida
which is covered by the Federal District Court map system as being located in the
Southern District of Florida for Federal Court jurisdictional purposes. The
Defendants do not maintain any offices in the state of this presently pending Federal
action, nor have they ever traveled to said state and conducted any provision of legal
services nor any other business related services for that matter in said state.

On or about February 22, 2008 the State Attorney General for the State of
Florida filed an action in Broward County, Florida (the "Broward Action") involving
The Defendants' Services after multiple complaints by the credit card industry. The
Broward Action seeks relief against all of the Defendants based on The Defendants'
Services and identifies each of the Defendants in this action. The Broward Action is
located in Broward County, Florida which is part of the Southern District of Florida.

Thereafter, on or about February 29, 2008 Chase Bank USA, N.A. filed an
action in United States District Court for the District of Delaware (the "Chase
Action") against the Defendants and/or their affiliated entities. The Chase Action
specifically references the pleadings from the Broward Action and even more
interesting the Chase Action does not specify any conduct by the Defendants in any
state other than Florida. Rather the Chase action asserts that its customers have
stopped paying based on legal advice received as a result of The Defendants'
Services. The Chase Action alleges a claim for injunctive relief, a claim for tortious
interference, abuse of process, deceptive trade practices, consumer fraud and

3

conspiracy. (See Exhibit "A") The Chase Action does not allege with any specificity as to what the alleged wrongdoing of the Defendants was in the State of Delaware other than to complain that Defendants' clients are now objecting to Plaintiff Chase Bank's billing practices and refusing to pay their credit cards.

Thereafter, and in almost plagiaristic fashion, on or about March 6, 2008 Capital One Bank filed an action in the United States District Court For the Eastern District of Virginia, Richmond Division (the "Capital One Action"). In the Capital One Action, just as in the Chase Action, there are claims for injunctive relief, tortious interference and conspiracy (See Exhibit "B"). Also, just as in the Chase Action, the Capital One Action does not in any way explain how any of the Defendants could possibly have venue asserted against them in the State of Virginia, rather, the Capital One Action asserts that The Defendants' Services are influencing the clients of the Defendants to challenge their credit card bills. In addition, the Capital One Action and the Chase Action include the same Defendants and/or their affiliated enterprises.

Neither the Chase Action nor the Capital One action specifies how venue would be appropriate with each Defendant but rather brushes over this issue by assuming venue would somehow be construed because the respective credit card companies have filed suit in their favored home state.

On or about March 7, 2008 the Defendants filed their own claim for Declaratory Relief in the United States District Court for the Southern District of Florida seeking a federal ruling confirming the legality of The Defendants Services and thus having the matter handled in the appropriate jurisdiction (the "Defendants' Federal Action"). A true and correct copy of the Defendants' Federal Action is

4

attached hereto as Exhibit "C". It is interesting to note that the Defendants' Action

references that settlement discussion took place with one of the credit card companies

by their retaining Florida counsel and having meetings at Florida law offices, hence

another indication of the fact that venue is only appropriate in Florida.

Furthermore, it became apparent that there was a necessity for the

Defendants to file the Defendants' Action in the Federal Court system in the State of

Florida seeking Declaratory relief as it has become obvious that the credit card

industry is seeking to assert financial hardship against Defendants, who should

obviously be sued in the State of Florida, by taking the tact of suing across multiple

state boundaries without any notion of the actual proper jurisdiction.

In addition, this Court should note that not only do all corporations and

individuals operate out of the State of Florida with regards to the Defendants but that

the Defendants have nearly one hundred employees and service providers who also

reside in the Southern District of Florida and who will also presumably be potential

witnesses in this case. As a result, there appears to be an obvious need to have this

cause handled in the Federal Court System in the State of Florida.

## MEMORANDUM OF LAW

Fed.R.Civ.P. 12(b)(2) permits dismissal of an action lacking the requisite

personal jurisdiction. Kulik Photography v. Cochran, 975 F.Supp 812 (E.D.Va

1997)(Court dismissed action with prejudice because Defendant could not have

reasonably forseen being sued in forum state and lacked minimum contacts with

forum state). Even when the cause of action is purely a federal question, a district

5

court applies the relevant state statute to determine whether the Court has personal jurisdiction. Autoscribe v. Goldman and Steinberg, 1995 U.S.App. Lexis 2848 (4th Cir. 1995).

Determining whether personal jurisdiction exists is a two step process which requires assessing (1) whether the particular facts and circumstances of a case fall within the state's statutory language and (2) whether the Due Process Clause of the Constitution would permit such jurisdiction to be asserted. Id. , Alton v. Wang, 941 F.Supp. 66 (W.D.Va 1996).

When a Defendant challenges a court's exercise of personal jurisdiction, the Plaintiff must prove the existence of grounds for jurisdiction by a preponderance of the evidence. RZS Holdings AVV v. PDVSA Petroleos SA, 293 F.Supp.2d 645 (E.D.Va 2003). To survive a challenge, the Plaintiff must make a prima facie showing of a sufficient jurisdictional basis. Id. A district court should look to the fairness to the Defendant and weigh that against the federal interest involved in the litigation when making a determination of personal jurisdiction. Republic of Panama v. BCCI Holdings, 119 F.3d 935, 945-46 (11th Cir. 1997).

There is no compelling interest to find minimum contacts with this forum state and hence no compelling reason to find personal jurisdiction, especially in light of the fact that a Federal Court in the Southern District of Florida, where all of the Defendants are located, is now undertaking the task of determining the legality of The Defendants' Services and said services are the crux of all of the other litigation.

Since all of the Defendants are residents of the State of Florida and are located in the Southern District of Florida, it is incumbent upon the Plaintiff to prove

jurisdiction of the Defendants pursuant to the forum state's applicable long arm statute and hence show minimum contacts. No such allegation of minimum contacts has been made in either the Chase Action or the Capital One Action. To the contrary the statement of facts in this motion directly dispute the establishment of minimum contacts and the Defendants have each verified and sworn to the accuracy of the statements made herein (See acknowledgement page at the end of this document) and thereby have specifically provided evidence to contradict the establishment of minimum contacts and hence personal jurisdiction. In particular the sworn acknowledgment page supports the assertion that all Defendants reside in Florida, as well as all witnesses and discoverable information. Furthermore, none of the Defendants have offices in or transact any business with the forum state.

Again, and not to belabor the point, the are no allegations of specific conduct against each of the Defendants that establishes any contact with the forum state in which this action is now presently pending.

At a bare minimum, the most that could ever be asserted by the Plaintiffs in this case is that they may have received a letter or telephone call from one of the Defendants but most certainly not even close to all of the Defendants. Courts nationwide have held that such sparse contact is not enough to confer jurisdiction. IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3rd Cir. 1998), Shaffer v. Heitner, 433 U.S. 186 (1977).

The case of Village Lane Rentals, LLC. v. The Capital Financing Group, 159 F.Supp.2d 910 (W.D.Va. 2001) is instructive in that it dealt with a law firm that had out of state clients. The District Court found that since the lawyers were not

7

licensed in the forum state, did not have offices in the forum state and never even had a post office box or telephone number in the forum state, that said lawyers could not be sued in the forum state.

Similarly, in this case, the Defendants are law firms owned and operated by lawyers who are not licensed in the forum state, do not have offices in the forum state, do not have telephone numbers in the forum state and do not travel to the forum state. (See sworn acknowledgement page to this motion support this statement).

The unilateral activity of the Plaintiff or third parties is not enough to satisfy the minimum contacts requirement. Burger King v. Rudzewicz, 471 U.S. 462 (1985). Hence, just because the Plaintiff filed suit in this state and/or just because a client of the Defendants may have affected the finances of the Plaintiff, that in and of itself does not confer jurisdiction upon the Defendants.

Not only do the Defendants not transact business in the forum state, but also the Defendants do not in any stretch of the imagination reside in the forum state as is blatantly obvious from the Plaintiff's own jurisdictional statement in its complaint. Just as importantly, 28 U.S.C. Section 1391 provides for the three situations for which venue can be asserted. The Plaintiff has failed to allege any substantial events or omissions by the Defendants in this forum state, which is the third section of the statute and which is the only portion of the statute which the Plaintiffs may argue as applicable. Hence, any allegation of venue in this state must fail. In addition, the Plaintiffs have failed to make any allegations which support personal jurisdiction over the Plaintiffs and hence likewise venue must fail based on

8

the language of the statute and the requirement that there be personal jurisdiction in order to lay venue.

Furthermore, the doctrine of forum non-conveniens allows a district court, for the convenience of the parties and witnesses and in the interest of justice, to transfer any civil action to any other district or division where it might have been brought. 28 USC Section 1404(a). Agilent Technologies, Inc. v. Micromuse, Inc., 316 F.Supp.2d 332 (E.D.Va. 2004).

Since all of the Defendants reside in South Florida and all offices, records, witnesses, computers, files and tangible evidence that could arise in this case is also in South Florida, litigation in the Southern District of Florida before the judge presently presiding over the Defendants' Federal Action seems most appropriate.

Such a ruling would be consistent with not only saving judicial resources but also help with saving the litigants resources as the access to the sources of proof including witnesses and discovery documents are located in Florida and this should be a significant consideration of a court. Id.

A district court may dispose of an action by a forum non conveniens dismissal, by passing on questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness and judicial economy so warrant. Sinochem International Co. v. Malaysia International Shipping, 127 S.Ct. 1184 (2007); American Dredging Co. v. Miller, 510 U.S. 443 (1994).

## CONCLUSION

The Defendants assert that this Court has no jurisdiction over them and that this cause should be dismissed. In the alternative, even if this Court were to find it had

9

jurisdiction, the proper jurisdiction for this federal action should be where a presently

pending federal action already exists in the Southern District of Florida.


Robert K. Beste, Jr. (I.D. No. 154)
Cohen Seglias Pallas Greenhall and Furman,P.C.
Suite 1130, Nemours Building
1007 Orange Street
Wilmington, Delaware 19801
Tel. 302-425-5089
Fax. 302-425-5097
E-Mail. Rbeste@cohenseglias.com
Delaware Bar No:   154

Of Counsel:
David J. Feingold, Esq.
Feingold & Kam
5100 PGA Blvd.
Second Floor
Palm Beach Gardens, Fl 33418
Ph 561-630-6727
Fx 561-630-8936
E-Mail: David@FKfirm.com
Fla. Bar 0892823
Pro Hac Vice Counsel for
Listed Defendants


## SWORN TO ACKNOWLEDGEMENT

We the undersigned are Defendants in Federal lawsuits pending outside of the

State of Florida. We hereby acknowledge that we have read this motion to dismiss

and acknowledge that we do not maintain any offices, phone numbers, employees or

do any business or dealings in the forum state. We operate our services from offices

located in the State of Florida and all witnesses, documents, and matters to be

10

provided in discovery are similarly located in the State of Florida.  We have read the

statements made in the motion to dismiss and they are true and correct and all of the

information contained therein is accurate based on my personal knowledge.  I the

undersigned have full authority to sign this document which is to be utilized in the

aforementioned motion to dismiss and I make this submission under penalty of

perjury.

Hess Kennedy Chartered, LLC.

The Campos Chartered Law Firm

Laura L. Hess

Hess Kennedy Company Chartered BWI

Jeffrey Campos

Hess Kennedy Holdings, LTD.

The Consumer Law Center, LLC.

Laura Hess & Assoc, P.A.

Jeff Campos, P.A.

Defendants:
HESS KENNEDY CHARTERED, LLC.,;LAURA L. HESS, LAURA HESS &
ASSOCIATES, P.A.; HESS KENNEDY HOLDINGS, LTD.; HESS KENNEDY
COMPANY CHARTERED BWI;  THE CONSUMERLAW CENTER, LLC.; THE
CAMPOS CHARTERED LAW FIRM; JEFF CAMPOS, P.A.;  and JEFFREY CAMPOS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA, N.A. | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 1:08cv00121-JJF |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HESS KENNEDY CHARTERED, LLC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF MOTION
TO DISMISS AND INCORPORATED MEMORANDUM OF LAW FOR LACK OF
PERSONAL JURISDICTION, IMPROPER VENUE
AND/OR IN THE ALTERNATIVE FORUM NON-CONVENIENS**

TO:    Ms. Beth Moskow-Schnoll, Esq.
       Ballard Spahr Andrews & Ingersoll, LLP
       1735 Market Street, 51st Floor
       Philadelphia, PA  19103

PLEASE TAKE NOTICE that the within "Motion to Dismiss and Incorporated Memorandum of Law for Lack of Personal Jurisdiction, Improper Venue and/or in the Alternative Forum Non-Conveniens" shall be presented to the Court on a date and at a time convenient to the Court.

Cohen Seglias Pallas Greenhall and Furman, P.C

/S/ Robert K. Beste, Jr. (ID #154)

_____
Robert K. Beste, Jr. (ID #154)
1007 Orange Street, Ste. 1130, Nemours Bldg.
Wilmington, Delaware 19801
Tel. 302-425-5097; Fax. 302-425-5097
Email.  rbeste@cohenseglias.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA, N.A. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 1:08-cv-00121- JJF |
| v. | ) | |
| | ) | |
| HESS KENNEDY CHARTERED, LLC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE AND/OR IN THE ALTERNATIVE FORUM NON-CONVENIENS

This ____ day of _____, 2008, the Court having considered

Defendants' Motion to Dismiss and Incorporated Memorandum of Law for Lack of Personal

Jurisdiction, Improper Venue and/or, in the Alternative, *Forum Non-Conveniens*,

IT IS HEREBY ORDERED that Defendants' Motion is granted.

_____
U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA, N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HESS KENNEDY CHARTERED, LLC; | : | CASE NO.: |
| LAURA L. HESS; EDWARD T. KENNEDY; | : | |
| LAURA HESS & ASSOCIATES, P.A.; | : | |
| HESS KENNEDY HOLDINGS, LTD.; | : | |
| HESS KENNEDY COMPANY CHARTERED | : | |
| BWI; THE CONSUMER LAW CENTER, LLC; | : | |
| THE CONSUMER LAW CENTER OF | : | |
| DELRAY BEACH, LLC; THE CONSUMER | : | |
| LAW CENTER OF BOCA RATON, INC.; | : | |
| THE CAMPOS CHARTERED LAW FIRM; | : | |
| JEFF CAMPOS, P.A.; JEFFREY S. CAMPOS; | : | |
| LEGAL DEBT CENTER, LLC; | : | |
| JOHN DOES 1-50, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, CHASE BANK USA, N.A. ("Chase"), for its Complaint against

Defendants HESS KENNEDY CHARTERED, LLC, LAURA L. HESS, EDWARD T.

KENNEDY, LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY HOLDINGS, LTD.,

HESS KENNEDY COMPANY CHARTERED BWI, THE CONSUMER LAW CENTER, LLC,

THE CONSUMER LAW CENTER OF DELRAY BEACH, LLC, THE CONSUMER LAW

CENTER OF BOCA RATON, INC., THE CAMPOS CHARTERED LAW FIRM, JEFF

CAMPOS, P.A., JEFFREY S. CAMPOS, LEGAL DEBT CENTER, LLC and JOHN DOES 1-

50 (collectively "defendants"), alleges as follows:

DMEAST #9990528 v1

## INTRODUCTION

1.     More than 3,800 Chase cardmembers have failed to pay more than $25 million dollars of legitimate debt owed to Chase under their credit card accounts due to an unlawful debt elimination scheme and other related schemes devised and operated by defendants and others acting in concert with them.  Defendants' unlawful schemes are the subject of lawsuits brought earlier this month by the Attorneys General of Florida and North Carolina alleging unfair and deceptive business practices and of an on-going investigation by the Attorney General of West Virginia.

2.     Under the guise of providing "legal services," "debt elimination services" and/or "debt management services" for which Chase cardmembers are charged substantial fees, defendants advise, encourage and enable these cardmembers to initiate, allegedly under the Fair Credit Billing Act ("FCBA"), 15 USC §§1666 *et seq.*, "billing error disputes" against Chase which defendants know to be without any basis in law or fact. Defendants mislead cardmembers into believing that under the FCBA they can validly challenge their entire Chase credit card account balances that have accrued over years of use and can legally withhold any and all payments until Chase investigates and resolves the purported "billing error disputes" to their satisfaction.  However, as defendants know, Chase has no obligation to deem these cardmembers' account balances eliminated based upon these sham billing error disputes.  Even in the case of valid billing error disputes (which these are not), Chase is obligated only to conduct a timely and reasonable investigation to determine, to its satisfaction, whether a billing error occurred.

3.     In furtherance of this scheme, defendants, *inter alia*, fabricate legally insufficient form letters which they and Chase cardmembers send to Chase and cause Chase cardmembers to assert frivolous claims and counterclaims against Chase in court and in

2

arbitrations commenced by Chase to collect on delinquent credit card balances owed by the cardmembers. At or around the time these letters are delivered to Chase, the cardmembers who have paid defendants cease making payments on their account balances, presumably at defendants' direction. Defendants' conduct is entirely in bad faith and serves no legitimate purpose. Defendants' ulterior goals are to extract fees from cardmembers who should be paying the money to Chase to satisfy their debts and to maliciously harass Chase in an improper (albeit unsuccessful) attempt to coerce the elimination of their clients' legitimate debts.

4.      By their unlawful conduct, defendants are improperly interfering with Chase's contractual relations with its cardmembers, abusing civil process, violating Delaware statutory law and unlawfully conspiring, entitling Chase to declaratory and injunctive relief, compensatory and punitive damages and the recovery of its attorneys' fees and costs.

5.      Pursuant to 18 U.S.C. §1344, one who knowingly executes or attempts to execute a scheme or artifice "to defraud a financial institution" or "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises" is punishable by a fine of not more than $1 million or imprisonment for not more than 30 years, or both. Among other things, in some instances Chase's cardmembers pay defendants for their "services" using Chase credit cards. Defendants accept such payments knowing that they will advise the cardmembers that they do not have to make any payments to Chase because of the alleged billing error disputes which defendants know to be sham.

## PARTIES

6.      Plaintiff Chase is a national banking association with its main office in Newark, Delaware. Chase is also the successor to Bank One, Delaware, N.A., a national banking association, by merger on October 1, 2004.

3

7.      Defendant HESS KENNEDY CHARTERED, LLC ("Hess Kennedy")
is a Florida limited liability company with its principal place of business at 210 N. University
Drive, Suite 900, Coral Springs, Florida 33071.  The managing member of Hess Kennedy is
Hess Kennedy Company Chartered BWI, Walker House, 87 Mary Street, Georgetown, Grand
Cayman, KY1-9001, Cayman Islands.  Prior to August 31, 2007, Hess Kennedy was organized
as a corporation known as "Hess Kennedy Company Chartered" and its director was Laura L.
Hess.  This organizational change occurred shortly after attorneys for Chase met with certain of
the defendants to demand that they cease their unlawful activities.

8.      Defendant LAURA L. HESS ("Hess") is a citizen of the state of
Florida with an address at 210 N. University Drive, Suite 900, Coral Springs, Florida 33071.

9.      Defendant EDWARD T. KENNEDY ("Kennedy") is a citizen of the
state of Florida with an address at 210 N. University Drive, Suite 900, Coral Springs, Florida
33071.  Upon information and belief, Kennedy may also use the aliases "Edward Cherry" or
"Edward Kennedy Cherry."

10.     Defendant LAURA HESS & ASSOCIATES, P.A. ("LH&A") is a
Florida corporation with its principal place of business at 210 N. University Drive, Suite 900,
Coral Springs, Florida 33071.

11.     Defendant HESS KENNEDY HOLDINGS, LTD. ("HKH") is a
Florida limited liability company with its principal place of business at 210 N. University Drive,
Suite 209, Coral Springs, Florida 33071.  The managing member of HKH is Hess Kennedy
Company Chartered BWI, Walker House, 87 Mary Street, Georgetown, Grand Cayman, KY1-
9001, Cayman Islands.  Prior to August 31, 2007, the managing members of HKH were Laura
Hess, Inc., Jeff Campos, P.A., David Kleiman, P.A. and Edward Cherry.  This organizational

4

change occurred shortly after attorneys for Chase met with certain of the defendants to demand that they cease their unlawful activities.

12.    Defendant HESS KENNEDY COMPANY CHARTERED BWI ("BWI") is a corporation with its principal place of business at Walker House, 87 Mary Street, Georgetown, Grand Cayman, KY1-9001, Cayman Islands.

13.    Defendant THE CONSUMER LAW CENTER, LLC ("CLC") is a Florida limited liability company with its principal place of business at 210 N. University Drive, Suite 209, Coral Springs, Florida 33071.  The manager of CLC is The Consumer Law Center Partners, 210 North University Drive, Suite 901, Coral Springs, Florida 33071.  Prior to October 4, 2007, the managing members of CLC were Laura Hess, Inc., Jeff Campos, P.A., David Kleiman, P.A., David Lipman, P.A., Lee Stein, Esq., Mavrides, Moyal & Associates, LLP, Edward Cherry and Walter Chen.  This organizational change occurred shortly after attorneys for Chase met with certain of the defendants to demand that they cease their unlawful activities.

14.    Defendant THE CONSUMER LAW CENTER OF DELRAY BEACH, FLORIDA, LLC ("CLCDB") is a Florida limited liability company with its principal place of business at 14590 S. Military Trail, E2, Delray Beach, Florida 33484.  The managing member of CLCDB is "Jeff Gombos," 14590 S. Military Trail, E2, Delray Beach, Florida 33484.

15.    Defendant THE CONSUMER LAW CENTER OF BOCA RATON, INC. ("CLCBR") is a Florida corporation with its principal place of business at 160 West Camino Real, 240, Boca Raton, Florida 33432.

16.    Defendant THE CAMPOS CHARTERED LAW FIRM ("CCLF") is a Florida corporation with its principal place of business at 3200 N. University Drive, 210, Coral Springs, Florida 33065.

5

17.     Defendant JEFF CAMPOS, P.A. ("JCPA") is a Florida corporation with its principal place of business at 3200 North University Drive, 210, Coral Springs, Florida 33065.

18.     Defendant JEFFREY S. CAMPOS ("Campos") is citizen of the state of Florida with an address at 10224 Vestal Court, Coral Springs, Florida 33071. Campos has also signed letters on the stationary or letterhead of a purported entity called "The Consumer Protection Law Center." Chase has found no legal entity formed or incorporated under that name.

19.     Defendant LEGAL DEBT CENTER, LLC. ("LDC") is a Florida limited liability company with its principal place of business at 210 N. University Drive, #905, Coral Springs, Florida 33071. The managing member of LDC is Edward Cherry, 210 N. University Drive, #905, Coral Springs, Florida 33071. LDC also conducts business at 210 N. University Drive, Suite 900, Coral Springs, Florida 33071.

20.     Defendants JOHN DOES 1-50 are persons and entities, presently unknown, who have conspired with and/or aided and abetted the unlawful activities of defendants.

21.     Upon information and belief, defendants Hess and Hess Kennedy control, orchestrate, direct and/or participate in the unlawful activities of the other defendants as described herein as well as the activities of the so-called "National Network of Consumer Attorneys" or "The Attorney Network" whose members are hand-picked by Hess and Hess Kennedy and promise to help consumers who are "drowning in debt" to "dramatically lower or eliminate your debt" by using the sham letters and other devices devised by defendants. (Exhibit

6

A).[1]  Defendants may also conduct their unlawful activities under the guise of other names and

aliases, including but not limited to "The Consumer Protection Law Center," "Hess-Kennedy &

Company, Inc." and "Hess Kennedy & Company."

22.    Each of the defendants acts and has acted as an agent for or alter ego

of the other defendants in carrying out the schemes described herein, and each is liable for the

unlawful conduct of the other defendants.

## JURISDICTION AND VENUE

23.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332

because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is

between citizens of different states.

24.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because

a substantial part of the events, acts and omissions giving rise to the claims herein have taken

place in this District.

## FACTS

25.    In recent years, fraudulent debt elimination schemes have flourished

throughout the country, spread by the Internet and other mass-marketing routes.  Promoters of

these schemes generally claim that, for an up-front fee, they will eliminate or substantially

reduce a consumer's debt obligations to creditors without any further material payment to the

consumer's creditors.  These schemes, however, have no valid basis in either law or fact, fail to

provide any of the promised relief to the consumers who fall victim to them and ultimately result

in consumers who are deeper in debt with severely damaged credit scores.  These schemes have

become so varied and prevalent that the federal Office of the Comptroller of the Currency and

---

[1]    In the attached Exhibits, personal cardmember information has been redacted for
privacy reasons.

7

the Federal Deposit Insurance Corporation now warn consumers about such schemes on their

websites and through a formally-issued Alert to other regulators and banks.  (Exhibit B).

    26.      Defendants are the source of one or more fictitious debt elimination

schemes.  In addition to the conduct alleged herein: (a) the Florida Attorney General's Office

sued Laura L. Hess, Esq., Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC and The

Consumer Law Center, LLC on February 21, 2008 for violating state consumer protection laws

in connection with their debt elimination and/or debt management schemes; (b) the North

Carolina Attorney General's Office sued Hess Kennedy Chartered, LLC, The Consumer Law

Center, LLC, Laura L. Hess and Edward Cherry on February 11, 2008 for engaging in unfair and

deceptive practices and has obtained temporary and/or preliminary injunctions against their

unlawful activities; and (c) the West Virginia Attorney General's Office is reportedly

investigating Hess Kennedy for deceptive and unfair practices in debt management services.

(Collectively Exhibit C).  Moreover, according to its website, the Better Business Bureau of

Southeast Florida received 138 complaints from consumers concerning Hess Kennedy, as a

result of which it assigned the company a grade of "F," meaning that: "We strongly question the

company's reliability for reasons such as that they have failed to respond to complaints, their

advertising is grossly misleading, they are not in compliance with the law's licensing or

registration requirements, their complaints contain especially serious allegations, or the

company's industry is known for its fraudulent business practices."  (Exhibit D).  Other Internet

websites reveal strong consumer dissatisfaction with and complaints concerning Hess Kennedy.

(Exhibit E).

    27.      On or about February 11, 2008, The Florida Bar filed a Petition for

Contempt ("Petition") against defendant Laura Hess with the Florida Supreme Court reciting that

(a) on January 27, 2005 the Florida Supreme Court publicly reprimanded Hess and placed her on

probation for three years and (b) Hess had eight new complaints filed with The Florida Bar

during her probationary period which resulted in a finding of probable cause of misconduct. The

Petition asks the Florida Supreme Court to suspend Hess from the practice of law for 91 days.

(Exhibit F). All but one of the complaints referenced in the Petition involved consumers who

alleged that Hess, Hess Kennedy and/or other defendants were paid fees by the consumers but

failed to deliver promised services involving the consolidation, reduction, management and/or

elimination of credit card and other debts owed to creditors including Chase.

       28.      Hess Kennedy maintains a website, www.hesskennedycompany.com,

which promotes and solicits clients for the debt elimination scheme and other related schemes

described herein. The website states in pertinent part:

> Hess/Kennedy Chartered is a professional association. Managing
> Partner of Hess/Kennedy Chartered is Laura Hess. She is admitted
> for practice in Florida only. For cases outside of Florida
> Hess/Kennedy Chartered lawyers will request assistance from and
> associate with one of our hand-picked affiliate attorneys located
> throughout the country.

(Exhibit G).

       29.      Consumers are asked to supply their names, addresses and other

information over the Internet and are told that a Hess Kennedy representative will contact them

promptly. The Hess Kennedy website contains a "drop-down menu" listing all of the 50 states,

thereby permitting, and indeed inviting, consumers from every state to supply their contact

information and ultimately seek Hess Kennedy's services. Delaware is expressly included on

this list of states. (*See* Exhibit G).

       30.      The terms of Chase's contracts with its cardmembers are set forth in

written Cardmember Agreements, under which Chase extends credit privileges to cardmembers,

and cardmembers agree to make payments to Chase on the balances owed. The Cardmember Agreements state that they are entered into in Delaware and are governed by Delaware law. (A representative Cardmember Agreement is attached as Exhibit H).

31.    Defendants have interfered and continue to interfere with the contractual relations between Chase and its cardmembers and have engaged in tortious conduct by soliciting Chase cardmembers to commence and pursue frivolous and legally invalid billing error disputes challenging the enforceability of their credit card debt to Chase.

32.    Defendants mislead cardmembers into believing that, without even conducting so much as a cursory review of their account agreements and credit card statements, the cardmembers can lawfully challenge their entire credit card debts owed to Chase and accrued over years of use by sending form letters to Chase which purport to commence a "billing error dispute" that will trigger Chase's obligations under the FCBA to investigate the alleged dispute, provide documentation requested by the cardmember and refrain from taking action to collect the disputed amount. *See* 15 U.S.C. §§1666(a), (c), (d).

33.    To further their scheme, defendants advise Chase's cardmembers that by retaining defendants for a fee and sending Chase form letters supplied by defendants, or authorizing defendants themselves to send form letters to Chase, the cardmembers can eliminate or substantially reduce their entire credit card debts. Defendants' letters -- including those either provided to cardmembers or sent by defendants on their behalf -- are directed and mailed to Chase in Delaware.

34.    The form letters used by defendants do not vary in any material respect from person to person or account to account, but (excluding name, address, account number, statement date and total account balance) follow essentially identical formats. The form letters

10

do not reflect any individualized, fact-based claims specific to a given credit card account or credit card customer. Even the same typographical error ("I may also assert claims ob [sic] behalf of my client") appears in each letter. The form letters challenge the customer's entire then-existing account balance under the guise of a "billing error". The form letters request numerous boilerplate categories of legally irrelevant documentation and threaten a laundry list of litigation against Chase if it continues its efforts to collect the balance due on the credit card account. Examples of form letters used by defendants are attached as Exhibits I, J, K and L.

35.     Defendants' form letters, on their face, do not constitute valid, proper or legally sufficient written notices of billing errors under Section 1666 of the FCBA. The letters do not allege any type of billing error, as defined in the FCBA, much less identify the reasons for the belief that such a billing error exists, or even the date and the amount of the error. In fact, the letters are extremely amorphous, general and vague. Moreover, under the FCBA a creditor's obligation to investigate a disputed billing statement is triggered only when the consumer has sent a written notice within 60 days of the creditor's transmission of the first statement containing the alleged error. 15 U.S.C. §1666(a). Nevertheless, defendants' form letters challenge the cardmember's entire account balance, regardless of the period of time over which it has accrued. Thus, the form letters on their face are not timely under the FCBA and plainly invalid. A typical form letter sent by Hess Kennedy to Chase states in pertinent part:

> My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements that my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account.

\*               \*               \*

11

> [T]he remedy I seek is the complete elimination and/or discharge of the entire balance of the account referenced above, and the complete removal of my client's name from your records. I also request a zero balance due statement showing that no further monies are owed and no balance is due.

*See* Exhibit I. In addition, some form letters are unsigned or have electronic signatures that do not match up with the names at the top of the letters. Because defendants' form letters are legally deficient on their face and do not state proper, valid or timely billing errors, they do not trigger Chase's billing error obligations under the FCBA and do not alter the cardmembers' obligations to repay the balances owed on their respective credit card accounts.

36.     In addition, in many instances in which Chase has commenced arbitration proceedings against cardmembers to recover on delinquent account balances, as authorized by the Cardmember Agreements, defendants have directly or indirectly interposed frivolous and invalid counterclaims and other defenses to Chase's claims for payment. The responses and counterclaims interposed in different arbitrations are materially the same and apparently reflect forms used by defendants solely to delay and obstruct the arbitration proceedings and make them more expensive for Chase. Illustrative of the types of "defenses" raised by or on behalf of the cardmembers in these arbitrations are the following:

> In this case, the CLAIMANT [Chase] does not allege that it extended anything of value, nor conferred anything of value on the RESPONDENT [cardmember]. Given a fundamental understanding of Modern Money Mechanics and GAAP, CLAIMANT, created the money and credit upon its own books by bookkeeping entry as the consideration for RESPONDENT'S alleged "promise to pay." Each time RESPONDENT allegedly used the credit card account, the banks [sic] assets were expanded, not contracted. Thus, any failure to "pay as agreed" caused no damage to the Plaintiff.

Exhibit M.

> As its thirteenth affirmative defense, the Respondent shows that when a credit card account is established in the name of a holder of

12

> a credit card, no United States currency (Federal Reserve Notes)
> are lent or transferred to the holder of the credit card, but instead
> the card holder is given access to an electronic bookkeeping ledger
> wherein the issuing bank makes credits and debit entries in equal
> amounts in accordance with General Accepted Accounting
> Principles. Accordingly, no consideration is given and the contract
> fails for lack of consideration.

Exhibit N. This nonsensical gibberish -- referred to in case law as "vapor money" or "no money lent" theories -- does not assert a valid defense and is purely dilatory in nature.

37.     Some Chase cardmembers represented by Hess and Hess Kennedy have commenced lawsuits against Chase (and other creditors) seeking actual and statutory damages under the FCBA based upon sham billing error disputes. (Exhibit O). In these lawsuits defendants fabricated frivolous claims under the FCBA in an attempt to coerce the elimination or reduction of debts for their clients. These lawsuits were brought in bad faith and for the purpose of maliciously harassing Chase.

38.     Defendants are also apparently operating a sham debt consolidation scheme. Under this scheme a cardmember provides money to defendants, who are supposed to make payments to his or her creditors once defendants have entered into a debt consolidation plan with the creditors to reduce and pay off the amount owed by the cardmember. Upon information and belief, defendants, however, are apparently retaining the cardmember's money without making the promised arrangements for the cardmember or paying the creditors. For example, in an arbitration which Chase commenced against one of its cardmembers, a resident of Wilmington, Delaware, to recover amounts due on her account, the cardmember filed a counterclaim alleging that she had not failed to pay Chase because she had been sending money to Hess Kennedy to pay to her creditors (including Chase), and Hess Kennedy had supposedly arranged a debt consolidation plan with said creditors. (Exhibit P). Chase, however, never

13

received any payments from Hess Kennedy on behalf of said cardmember.  In fact, Defendants never attempted to make any arrangements with Chase on the cardmember's behalf.

39.     Defendants are brazenly taking fees from unwitting Chase cardmembers in exchange for providing phony debt consolidation services and for manufacturing bogus and frivolous billing error disputes against Chase under the pretense of assisting cardmembers in asserting their rights under the FCBA, all of which knowingly interferes with the relationship between Chase and its cardmembers.  One cardmember wrote to Chase in May 2007:

> I would like to get the matter resolved regarding the cancelled service through Campos Chartered Law Firm in the amount of $1500.  They may also be known as Hess Kennedy Company, or even The Attorney Network.  I have no trust in these companies and have mailed back my cancellation of service requests ....
> [T]hese companies are costing me ... time, effort and money ....

*See* Exhibit A.

40.     In some instances Chase's cardmembers pay defendants for their "services" using Chase credit cards.  Defendants accept such payments knowing that they will advise the cardmembers that they do not have to make any payments to Chase because the debt will be "forgiven."  These charges demonstrate that defendants are operating in concert and as a single enterprise or scheme, in that Chase's records show one entity may bill the cardmembers for the scheme on the cardmembers' Chase credit card accounts, while the purported "services" are provided by a different entity.

41.     Chase has been damaged by the unlawful conduct of defendants.  As a result of the false advice provided to Chase's cardmembers by defendants, Chase's cardmembers have ceased making payments to Chase and have defaulted on their obligations, in breach of the Cardmember Agreements between Chase and its cardmembers.  Chase has also been forced to

expend substantial sums defending frivolous claims and counterclaims and other defenses in court actions and arbitrations, paying legal fees that would not have been required but for defendants' unlawful scheme. Chase has also suffered the loss of reputation and goodwill.

42.     To date, Chase has received correspondence from defendants and its cardmembers for defendants' various schemes, including the billing error scheme, affecting over 3,800 accounts. These cardmembers reside in Delaware and virtually every other state, and their aggregate credit card balances exceed $25 million dollars. Moreover, at least 60 Chase cardmembers have interposed frivolous claims and counterclaims and other defenses against Chase in court actions and arbitrations.

43.     Chase has demanded, in correspondence and in-person, that defendants cease their unlawful activities but defendants have failed and continued to refuse to do so.

## COUNT I

### (Declaratory and Preliminary and Permanent Injunctive Relief)

44.     Chase repeats and realleges each of the foregoing allegations as though fully set forth herein.

45.     The debt elimination scheme operated by defendants is unlawful because the assertions which defendants make either directly to Chase or indirectly through letters provided to Chase by its cardmembers have no basis in fact or law and do not reflect bona fide violations of the FCBA. Defendants' theories provide no legal or bona fide basis for Chase's cardmembers to cease making any payments to Chase on their account balances.

46.     Chase has a substantial likelihood of success on the merits of its claims against defendants.

47.     Chase is suffering and will continue to suffer immediate and irreparable harm to its business as a result of defendants' unlawful actions, in that (a) Chase is

15

being required to expend substantial time and excessive resources addressing each of these bogus disputes and related litigations or arbitrations; (b) Chase's cardmembers have been induced to breach their Cardmember Agreements with Chase by failing to pay balances due on their accounts and (c) Chase is suffering harm to its goodwill and reputation.

48.     Defendants will not be irreparably harmed if injunctive relief is granted because the conduct that Chase seeks to enjoin is unlawful.

49.     An injunction enjoining defendants from continuing their unlawful conduct will benefit Chase's cardmembers and the public interest.  Many if not most of the Chase cardmembers who are solicited by defendants to participate in this sham billing error dispute scheme and other related schemes are themselves victims of defendants' unlawful conduct.

50.     Chase has no adequate remedy at law to stop defendants from continuing their unlawful conduct.

51.     As a result of the foregoing acts of defendants, Chase is entitled to:

(a)     Declarations that (i) the billing error disputes asserted by Chase's cardmembers who are represented or assisted by defendants are sham and do not assert valid billing error disputes under the terms of the FCBA or impose any duties on Chase under the FCBA, (ii) the billing error disputes asserted by Chase's cardmembers who are represented or assisted by defendants do not provide any legal or valid basis for these cardmembers to cease making payments to Chase, and (iii) the claims, counterclaims and other defenses interposed against Chase by cardmembers who are represented or assisted by defendants are frivolous and legally insufficient to prevent Chase from collecting delinquent balances due on its credit card accounts under the terms of the Cardmember Agreements;

16

(b)     Injunctive relief preliminarily and permanently restraining defendants, their representatives, heirs, assigns, agents, successors, and related entities, and those acting in concert or participating with any of the foregoing from: (i) assisting Chase's cardmembers in asserting bogus billing error disputes against Chase or representing them in such disputes; (ii) assisting Chase's cardmembers in asserting sham or frivolous claims, counterclaims or other defenses against Chase in any court or arbitration forum or representing them in such disputes; (iii) improperly interfering in any way with any of Chase's relationships with its cardmembers under the Cardmember Agreements, including, but not limited to, interfering with Chase's right to receive payments from its cardmembers; (iv) advertising unlawful debt elimination services, and any related services, in print, on the Internet, through e-mail or through any other form of media or other communications, and from authorizing or allowing others to do so on their behalf; (v) destroying any documents or data retention devices containing information related to Chase and/or its cardmembers; and (vi) assisting, advising, aiding and abetting or otherwise indirectly participating in any of the foregoing; and

(c)     Permanent injunctive relief requiring defendants to notify each cardmember whom defendants have previously advised, assisted or represented that (i) billing error disputes asserted against Chase do not state proper, valid or timely billing errors under the FCBA and do not alter the cardmembers' obligations to repay the balances owed on their respective credit card accounts under the terms of their Cardmember Agreements and (ii) claims, counterclaims and other defenses asserted against Chase by cardmembers represented or assisted by defendants are not legally sufficient and do not alter the cardmembers' obligations to repay the balances owed on their respective credit card accounts under the terms of their Cardmember Agreements.

17

52.    Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## COUNT II

### (Tortious Interference with Contractual Relations)

53.    Chase repeats and realleges each of the allegations contained in paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.    Pursuant to its written Cardmember Agreements, Chase extends credit privileges to cardmembers, and the cardmembers agree to make payments on the balances owed to Chase.

55.    Defendants at all time had knowledge of the existence of the Cardmember Agreements which exist between Chase and its cardmembers.

56.    Defendants knowingly, intentionally and improperly, without privilege or justification, have interfered with and disrupted the contractual relationships between Chase and its cardmembers by soliciting cardmembers to assert sham billing error disputes against Chase and to stop making payments to Chase on their account balances.  By stopping payment on their account balances, Chase's cardmembers have breached their Cardmember Agreements as a result of, and in reliance on, defendants' unlawful actions.  Defendants have further interfered with Chase's right to receive payments from its cardmembers, as defendants have taken funds from Chase's cardmembers which these cardmembers intended to be used to pay Chase, but failed to make the arrangements and payments that defendants promised they would.

57.    Defendants' wrongful and intentional interference with Chase's cardmembers has diminished the payments Chase receives from its cardmembers and has required Chase to defend against frivolous litigation initiated by cardmembers and frivolous

18

counterclaims and other defenses asserted by cardmembers in collection actions commenced by Chase. The unlawful activities of defendants have caused a decrease in the market value of the credit card accounts affected by defendants' improper and unjustified interference.

58.     As a proximate result of the foregoing intentional interference by defendants, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

59.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

60.     Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

61.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT III

### (Abuse of Process)

62.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63.     Defendants have encouraged and enabled Chase's cardmembers to assert sham billing error disputes, claims and counterclaims and other defenses against Chase to avoid payment of account balances lawfully due Chase. Defendants' actions had and have no legitimate purpose, but rather were and are being taken for the ulterior purposes of furthering defendants' unlawful schemes and extracting fees from the cardmembers in exchange for bogus "legal" advice.

19

64.     Defendants' bad faith conduct has spawned frivolous litigation by cardmembers and caused delay in legitimate collection actions commenced by Chase to recover delinquent account balances owed to Chase.  Defendants have unreasonably and vexatiously multiplied the proceedings in these actions by their dilatory unlawful conduct.

65.     As a proximate result of the foregoing abuse of process, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

66.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase.  Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

67.     Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

68.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT IV

### (Delaware Deceptive Trade Practices Act)

69.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.     The Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. Code §§2531 *et seq.*, was enacted to "address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993).

71.     Defendants have violated the DTPA in the course of their business, vocation or occupation by, *inter alia*:

20

(5) Represent[ing] that [their] ... services have ... characteristics ..., uses, [or] benefits ... that they do not have ....;

       *         *         *

(7) Represent[ing] that [their] ... services are of a particular standard, quality, or grade ....;

(8) Disparag[ing] the ... services, or business of another [Chase] by false or misleading representation of fact; [and]

(9) Advertis[ing] ... services with intent not to sell them as advertised.

6 Del. Code § 2532(a) (v), (vii)-(ix).

72.    Acts by defendants which caused the violation of the DTPA took place in and/or were directed to the state of Delaware. The Chase credit card accounts in question are opened in and maintained by Chase in Delaware, where Chase has its main office, and defendants' letters are directed to Chase in Delaware.

73.    Defendants' persistent pattern of conduct has grossly interfered with the promotion and conduct of Chase's business, namely the management of its consumer credit card business pursuant to its Cardmember Agreements with its cardmembers.

74.    As a proximate result of the foregoing violations of the DTPA, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

75.    The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

76.    Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

77.      Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT V

### (Delaware Consumer Fraud Act)

78.      Chase repeats and realleges each of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79.      The Delaware Consumer Fraud Act ("CFA"), 6 Del. Code §§2511 *et seq.*, was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices." 6 Del. Code §2512. It is intended to remedy "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby …." 6 Del. Code §2513(a). The statute's definition of "merchandise" includes "services." *Id.* §2511(2).

80.      In carrying out the aforesaid unlawful schemes, defendants have engaged in unfair, deceptive and fraudulent conduct directed to Chase's cardmembers and to Chase itself.

81.      Defendants' taking of cardmembers' money under false pretenses makes Chase a victim of the fraud and deception through its inability to collect on valid account balances due Chase.

82.      Upon information and belief, defendants Hess, Kennedy and Campos actively and directly participated in and had control over the deceptive and unfair practices of the other defendants and had knowledge and awareness of the deceptive and unfair conduct. Among

22

other things, said defendants drafted and/or disseminated documents to Chase cardmembers which were known by them not to raise legitimate billing error disputes against Chase under the FCBA.

83.     As a proximate result of the foregoing violations of the CFA, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

84.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

85.     Chase is entitled to an award of costs incurred herein.

86.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT VI

### (Conspiracy)

87.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.     In connection with the unlawful activities described herein, defendants knowingly, willfully, or tacitly and recklessly conspired and agreed among themselves to engage in one or more unlawful schemes designed and intended to damage Chase. In furtherance of the conspiracy, defendants, *inter alia*, drafted and/or disseminated documents to Chase cardmembers which were known by them not to raise legitimate billing error disputes against Chase under the FCBA.

89.     Hess Kennedy has taken payment from Chase's cardmembers using Chase credit cards. The charges were billed to CCLF, although Hess Kennedy was the name on the corresponding papers and provided the purported "services" related to the scheme.

23

Defendants take payment and provide services interchangeably and in common, further evidencing the unlawful conspiracy between and among them.

90.    As a proximate result of this wrongful civil conspiracy by and among defendants, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

91.    The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase.  Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

92.    Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

93.    Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

### Prayer for Relief

WHEREFORE, Chase prays for relief as follows:

1.    For declaratory and preliminary and permanent injunctive relief against defendants, as described above;

2.    For damages against defendants in an amount in excess of $75,000;

3.    For punitive damages against defendants sufficient to deter defendants from engaging in similar wrongful and outrageous conduct;

4.    For an award of its reasonable attorneys' fees and costs of suit incurred herein;

5.    For an award of interest on such sums at the highest rate allowed pursuant to law; and

24

6. For such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 29, 2008
      Wilmington, Delaware

                           Respectfully submitted,

                           Beth Moskow-Schnoll (No. 2900)
                           BALLARD SPAHR ANDREWS
                             & INGERSOLL, LLP
                           919 N. Market Street, 12th Floor
                           Wilmington, DE 19801
                           Telephone: (302) 252-4465
                           Facsimile: (302) 252-4466
                           Email: moskowschnollb@ballardspahr.com

                           Attorneys for Plaintiff
                           Chase Bank USA, N.A.

OF COUNSEL:

David H. Pittinsky, Esquire
Alan S. Kaplinsky, Esquire
Mark J. Levin, Esquire
BALLARD SPAHR ANDREWS
  & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

DMEAST #9990528 v1

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____ Virginia

Eastern

Capital One Bank (USA) N.A., Capital
One, N.A., Capital One Auto Finance,
Inc.

V.

Hess Kennedy Chartered, LLC, Hess
Kennedy Holdings, Ltd., Consumer
Credit Counseling of America, Inc.,
The Campos Chartered Law Firm, The
Consumer Law Center, LLC

## SUMMONS IN A CIVIL CASE

CASE NUMBER:  3:08CV147

3:12-08
0:30AM
SMK477

TO: (Name and address of Defendant)

Edward Cherry
The Consumer Law Center, LLC
210 North University Drive
Coral Springs, FL 33071

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Cameron S. Matheson
LeClairRyan
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, VA 23219

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

Fernando Galindo, Clerk

CLERK

(BY) DEPUTY CLERK

DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA,
RICHMOND DIVISION

CAPITAL ONE BANK (USA) N.A., CAPITAL )
ONE, N.A., CAPITAL ONE AUTO FINANCE, )
INC., )

        Plaintiffs,

vs.

HESS KENNEDY CHARTERED, LLC,
HESS KENNEDY HOLDINGS, LTD.,
CONSUMER CREDIT COUNSELING
OF AMERICA, INC., THE CAMPOS
CHARTERED LAW FIRM, THE
CONSUMER LAW CENTER, LLC,

        Defendants .

CIVIL ACTION NO. 3:08CV147(HEH)



## COMPLAINT

COME NOW Plaintiffs CAPITAL ONE BANK (USA) N.A., CAPITAL ONE, N.A., and

CAPITAL ONE AUTO FINANCE, INC., and file this complaint against Defendants Hess

Kennedy Chartered, LLC, Hess Kennedy Holdings, Ltd. (collectively referred to as "Hess

Kennedy"), Consumer Credit Counseling of America, Inc. ("CCCA"), The Campos Chartered

Law Firm ("Campos"), and The Consumer Law Center, LLC ("Consumer Law Center")

(collectively referred to as "Defendants"), and state as follows:

I.    **INTRODUCTION**

   1.    The Defendants are engaged in a fraudulent conspiracy to interfere with and

disrupt the business of Plaintiffs, defraud consumers, and misappropriate the resources of federal

and state judiciaries.

{B0806023}

2.    Plaintiffs are in the business of extending credit to consumers in Virginia and other states through credit card accounts. Each account is issued pursuant to and governed by a Customer Agreement between a consumer and one of the Plaintiffs. The Customer Agreement requires the consumer to pay Plaintiff the amounts of any charges to the credit card account, as well as other fees, charges and interest accruing to the account.

3.    Through Defendants' fraudulent conspiracy, as of the filing of this action, consumers have "disputed" and/or refused or failed to pay legitimate amounts owing to Plaintiffs on more than seven thousand three hundred (7,300) accounts with Plaintiffs, in violation of the applicable Customer Agreement. In an intentional, illegal effort to disrupt Plaintiffs' businesses and to interfere with Plaintiffs' contractual relations with Plaintiffs' consumers, Defendants have literally sent thousands of letters to Plaintiffs fraudulently disputing valid debts with the intent of forcing Plaintiffs to forego lawful attempts to collect account balances and forcing Plaintiffs to agree to waive valid account balances.

4.    This fraudulent scheme is initiated by Defendant CCCA who solicits consumers through web sites and other advertising to sign up for "debt reduction services." Once a consumer signs up with CCCA, Defendant Hess Kennedy and or Campos agrees to "represent" the consumer and sends letters on behalf of the consumers to Plaintiffs and other creditors fraudulently disputing valid, legitimate account balances.

5.    In this action, Plaintiffs seek, among other things, to enjoin Defendants from soliciting Plaintiffs' consumers, representing Plaintiffs' consumers, attempting to disrupt Plaintiffs' businesses with fraudulent correspondence, and interfering with Plaintiffs' contractual

relations with its consumers. Plaintiffs also seek an award of damages based on Defendants' intentional and unlawful conduct.

## II.    JURISDICTION AND VENUE

6.    This court has jurisdiction pursuant to 28 U.S.C. § 1331, in that, this controversy involves an action under the Credit Repair Organization Act, 15 U.S.C. § 1679. This Court also has jurisdiction of this matter pursuant to 28 U.S.C. § 1332, in that, this is a controversy between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c), because, among other things, the actions complained of occurred in Richmond, Virginia, and the Defendants contacts with this forum are substantial.

8.    Defendants have conspired to enter into contracts with, represent, and send letters on behalf of consumers who reside within the Eastern District of Virginia. Further, Defendants have conspired to send thousands of letters on behalf of Plaintiffs' consumers to Plaintiffs in this District.

## III.    PARTIES

9.    Plaintiff Capital One Bank (USA), N.A. is a national banking association organized under federal law, with its principal place of business in Virginia.

10.    Plaintiff Capital One, N.A. is a federal savings bank with its principal place of business in Virginia.

3

11.    Plaintiff Capital One Auto Finance, Inc. is a wholly owned subsidiary of Capital One, N.A. with its principal place of business in Virginia.

12.    Defendant Hess Kennedy Chartered, LLC is a limited liability company organized under the laws of Florida, with its principal place of business in Florida.

13.    Defendant Hess Kennedy Holdings, Ltd. is a limited liability company organized under the laws of Florida, with its principal place of business in Florida.

14.    Defendant Consumer Credit Counseling of America, Inc. is a corporation organized under the laws of Massachusetts, with its principal place of business in Massachusetts.

15.    Defendant The Campos Chartered Law firm is a corporation organized under the laws of Florida, with its principal place of business in Florida.

16.    Defendant The Consumer Law Center, LLC is a limited liability company organized under the laws of Florida, with its principal place of business in Florida.

IV.    **FACTS**

17.    Upon information and belief, Defendants, as a part of an ongoing nationwide conspiracy, have created and are engaged in a scheme whereby consumers of the Plaintiffs are led to believe that Defendants will erase their credit card debt through the legal services of Hess Kennedy or its affiliates. Specifically, Hess Kennedy states on its website:

We work with approved debt consolidation organizations that negotiate with over 50,000 creditors and we are confident that we will be able to help you to develop a debt consolidation repayment plan or credit card management plan that will fit your budget and help you to reach your goal of becoming DEBT FREE! Remember THERE IS LIFE AFTER DEBT and we will help you get back on track.

4

If you carry a balance, a credit card debt can be like a very expensive loan made by banks, gasoline companies or department stores. These credit card debts yield high profits to their issuers for several reasons. The most important is the high rate of interest (as high as 33% each year). Interest from a credit card alone can account for the bulk of the profits earned by the bank that issued you the credit card. Also, many credit card companies charge an annual fee for issuing you the credit card, and most of these companies charge late fees, over-the-limit fees and other miscellaneous charges. Finally, the banks and loan companies profit by charging the merchants and service providers a fee each time a customer uses the loan company's credit card in the merchant's establishment. Our debt consolidation and credit card management program can help you put an end to these high interest credit card debts. A Certified Debt Counselor will contact you within the next 24 hours with your free consultation. Please have your most recent Credit Card Statements available and we will show you how to consolidate them to save you from 20% to as much as 60% in monthly payments!

(Hess Kennedy Chartered Company web site, http://www.hesskennedycompany.com/credit_counseling.html, a copy of which is attached hereto as Exhibit "1".) Hess Kennedy's website also explains: "We will help you make the best choices possible despite difficult financial circumstances. We will help you decide whether there are debts you can ignore and what your options are when you cannot ignore a particular debt." (Hess Kennedy Chartered Company web site, http://www.hesskennedycompany.com/debt_settlement.html, a copy of which is attached hereto as Exhibit "2".) Campos identically states on its website as follows:

We work with approved debt consolidation organizations that negotiate with over 50,000 creditors and we are confident that we will be able to help you to develop a debt consolidation repayment plan or credit card management plan that will fit your budget and help you to reach your goal of becoming DEBT FREE!

(The Campos Chartered Law Firm website, http://www.camposlegalservices.com/creditcounseling.html, a copy of which is attached hereto as Exhibit "3".)

18.    This scheme is one of countless examples of debt elimination schemes directed at making Defendants easy money by swindling consumers into believing their debts can be eliminated simply by the mailing of a "dispute" letter by one of the Defendants to Plaintiffs.

19.     Through a telemarketing and internet ploy, CCCA signs up consumers under the guise that it will hire the consumer a lawyer who will help the consumer eliminate his credit card debt. CCCA collects an over-the-phone payment from the consumer for its initial "services" by directly debiting the consumer's bank account. Upon information and belief, CCCA takes initial information regarding the consumer, his debts, account numbers, and address. CCCA then sends the consumer's information to one of the law firm defendants for "validation."

20.     Upon information and belief, Hess Kennedy, Campos and/or the Consumer Law Center, without ever meeting or conferring with their "client," inserts the consumers' name and credit card information into a form letter. The letter is sent to Plaintiffs and other credit card companies alleging that the entire balance of the credit card is in "dispute."

21.     A virtually identical letter is sent for every consumer without regard for the age of the consumer's account, the consumer's debt load, the type of the account, or any other factor. That letter reads in part as follows:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principals. Please be advised than any communications that you make in this matter will become part of an administrative record, and may be used in litigation of claims related to the above listed account.

. . . .

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with legal and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

6

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and / or discharge of the entire balance of the account referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees.

(Exemplar Letter from Hess Kennedy Company Charted to Capital One, Billing Dispute Representative (Mar. 23, 2007) attached as Exhibit "4".)

22.     The letters also claim that any communication with the borrower will constitute a violation of the Fair Credit Billing Act, and communications with the borrower about the debt will be a violation of the Fair Debt Collection Practices Act. (*Id*.) The letters specifically ask for information relating to the validity and legal sufficiency of the claim for the valid debt. (*Id*.)

23.     Defendants have no legitimate legal basis for the positions advocated in said letters to Plaintiffs. Hess Kennedy's illegitimate letters lack factual or legal support.

24.     In an effort to squeeze within the terms of the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq*. ("FCBA"), the letters claim that the entire credit card balance is in dispute. The Hess Kennedy letters are not "billing error notices" pursuant to the FCBA. The letters are not related to an actual disputed bill or charge. Upon information and belief, many consumers are not even aware when the letter is sent by Hess Kennedy.

7

25.    The letters are intended not only to disrupt Plaintiffs' businesses, but also to interfere with Plaintiffs' contractual relationships with its consumers.

26.    To date, through this conspiracy, Hess Kennedy, Campos, and its affiliates have sent more than eight thousand (8,000) letters to Plaintiffs allegedly disputing the balances of over 7,300 accounts.

27.    Upon information and belief, Defendants instruct consumers to stop making payments on their debts.  To date, the aggregate balance of the accounts Defendants have challenged through this unlawful conspiracy is more than sixteen million dollars ($16,000,000).

28.    Plaintiffs have attempted by correspondence to contact its consumers to advise of the receipt of the correspondence from Defendants.  In its correspondence to the consumers, Plaintiffs explain the consumers must give the Plaintiffs authorization to allow communication with the law firms regarding the consumer's account.  (As an example, see Letter from Capital One Bank to Margaret Ellard (January 17, 2007) attached as Exhibit "5".)

29.    Plaintiffs have notified Hess Kennedy that their actions are interfering with the contractual relations between the Plaintiffs and their consumers.  Plaintiffs wrote Hess Kennedy and stated:

Capital One Financial Services, Inc. and its affiliates ("Capital One") are in receipt of hundreds of letters from your firm making identical unsubstantiated allegations that lack factual or legal merit.  The letters appear to be part of a concerted effort by you and your firm to delay, and impede, without any legal basis, Capital One's ability to collect outstanding credit card debt.  Capital One has no duty to respond to the letters.

Further these activities by you and your firm constitute, among other things, tortious interference with business relations.  This letter serves as notice that

8

Capital One will pursue all available legal remedies should these activities continue.

Capital One demands that you cease and desist all communications of this nature. This letter serves as notice to your firm and its clients that Capital One hereby reserves all rights against you, your firm, and all associated individuals and entities.

(See Letter from Capital One to Hess Kennedy & Company (July 24, 2007) attached as Exhibit "6".) Nevertheless, Defendants have continued to engage in this scheme and conspiracy even after Plaintiffs' notice.

30.    Upon information and belief, individual Defendants and affiliates are using the limited liability companies and corporations as a shell and are disregarding the corporate form in order to shield themselves from liability. Hess Kennedy, Campos, and The Consumer Law Firm, LLC are all located on North University Drive in Coral Springs, Florida.

## V.    CAUSES OF ACTION

### COUNT ONE
### CREDIT REPAIR ORGANIZATION ACT

31.    Plaintiffs adopt and reallege the allegations contained in all preceding paragraphs the same as is set forth fully herein.

32.    The purpose of the Credit Repair Organization Act ("CROA") is "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b).

33.    A credit repair organization is defined as, among other things, "any person who uses any instrumentality of interstate commerce or the mails to . . . provide . . . any service, in return for the payment of money or other valuable consideration, for the express or implied

9

purpose of -- (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)." 15 U.S.C. § 1679a(3). None of the Defendants are exempted from the act as each is clearly a credit repair organization as defined by CROA.

34.    The Credit Repair Organization Act prohibits the Defendants from, among other things, making misleading or untrue representations of the services of the credit repair organization. 15 U.S.C. § 1679b(3).

35.    In violation of 15 U.S.C.§ 1679b, upon information and belief, Defendants, among other things, violate CROA in numerous ways, including but not limited to, making promises to consumers regarding their credit, and request payment from consumers in order to eliminate debt that Defendants feel can be ignored.

36.    In performing these actions, Defendants are credit repair organizations, as defined by the Credit Repair Act.

37.    Additionally, these actions are interfering with the contractual relationship between Plaintiffs and their consumers, and these actions are unfair business practices.

38.    Defendants have sent well over 8,000 letters relating to more than 7,300 of Plaintiffs accounts. Although Plaintiffs have requested that these letters cease, Defendants continue to intentionally interfere with the business relationship of Plaintiffs and their consumers.

39.    Defendants instruct consumers to stop making payments on their debts. To date, the aggregate balance of the accounts Defendants have challenged through this unlawful conspiracy is more than sixteen million dollars ($16,000,000).

40.    CROA provides liability to any person who is damaged by the failure of another to abide by the terms of the act which includes the Defendants actions making false statements to individuals and participating in this scheme. 15 U.S.C.§ 1679g.

41.    As a direct and proximate result of the intentional misleading statements and information provided by Defendants to Plaintiffs' consumers in violation of the CROA, Plaintiffs have incurred significant financial loss, including but not limited to, delayed payment from over 7,300 accounts, loss of interest payments and the costs and fees associated with pursuing payment of debt from consumers. The Act provides for actual damages for the amount of damage sustained as a result of the Defendants' liability under the act, punitive damages, and attorney's fees. 15 U.S.C.§ 1679g.

WHEREFORE, Plaintiffs pray that this Court award Plaintiffs the following:

A.    compensatory damages;

B.    punitive damages;

C.    pre-judgment interest;

D.    costs;

E.    attorneys' fees;

F.    equitable relief; and

G.    any other relief to which Plaintiffs may be entitled.

## COUNT TWO
## TORTIOUS INTERFERENCE WITH
## CONTRACTUAL OR BUSINESS RELATION

42.    The Plaintiffs adopt and reallege the allegations contained in all preceding paragraphs the same as if set forth fully herein.

43.    Defendants, individually, collectively, and by means of their conspiracy, have purposefully, knowingly and without justification interfered with the contractual and business relations between Plaintiffs and their consumers.

44.    Defendants knew and know of the existence of the contractual or business relationships between Plaintiffs and their consumers that, among other things, require consumers to pay Plaintiffs the amount of any charges to the credit card account as well as other fees, charges and interest.

45.    Defendants intentionally seek to interfere and have interfered with those contractual and business relationships by seeking to prevent and have prevented consumers from paying legitimate amounts owing to Plaintiffs and by seeking to preclude Plaintiffs from collecting legitimate amounts consumers owe Plaintiffs.

46.    Defendants intentionally seek to interfere and have interfered with those contractual and business relationships by attempting to create an unbearable burden on Plaintiffs to respond to unauthorized and improper requests for the production of documents related to the credit card accounts of Plaintiffs' consumers.

47.    The Defendants knowingly and intentionally interfered with and caused the disruption of the contractual relationships between Plaintiffs and their consumers by sending

more than eight thousand (8,000) letters to Plaintiffs fraudulently "disputing" the valid debt of over 7,300 accounts. This intentional interference has caused a breach of the relationship between Plaintiffs and their consumers.

48.     Defendants have no justification for their interference with Plaintiffs contractual and business relationships with its consumers.

49.     But for the Defendants' wrongful and intentional interference, Plaintiffs would not have received and responded to thousands of baseless, fraudulent letters from the Defendants.

50.     As a direct and proximate result of the foregoing intentional interference by Defendants, Plaintiffs have sustained an undetermined amount of monetary damages due to:

b) the receipt of and the response to the thousands of letters sent by Defendants;

c) the disruption of Plaintiffs' communications with its consumers;

d) the disruption of Plaintiffs' receipt of payments from its consumers; and

e) the disruption of Plaintiff's rights to attempt to collect the balances due on the credit card accounts of its consumers.

WHEREFORE, Plaintiffs pray that this Court award Plaintiffs the following:

A.  compensatory damages in excess of $75,000;

B.  punitive damages;

C.  pre-judgment interest;

D.  costs;

E. attorneys' fees;

F. equitable relief; and

G. any other relief to which Plaintiffs may be entitled.

## COUNT THREE
## CONSPIRACY

51. Plaintiffs adopt and reallege the allegations contained in all preceding paragraphs the same as is set forth fully herein.

52. Defendants conspired to defraud Plaintiffs of money owed on consumers' credit card accounts and to intentionally interfere with contractual or business relations between Plaintiffs and their consumers.

53. Upon information and belief, Defendants conspired to solicit consumers via the internet and falsely promised to have all debt decreased and/or eliminated. The consumers tendered payment to CCCA for their application services. CCCA then transfers the consumers to one of the defendant law firms, where the law firm sends out an identical form letter to Plaintiffs for each individual the law firms claim to represent.

54. As a proximate result of this conspiracy and the fraudulent and deceitful conduct of Defendants, Plaintiffs have incurred significant financial loss, including but not limited to, delayed payment from over 7,300 accounts, loss of interest payments and the costs and fees associated with pursuing payment of debt from consumers.

WHEREFORE, Plaintiffs pray that this Court award Plaintiffs the following:

H. compensatory damages in excess of $75,000;

I. punitive damages;

14

J.   pre-judgment interest;

K.   costs;

L.   attorneys' fees;

M.  equitable relief, and

N.  any other relief to which Plaintiffs may be entitled.

## COUNT FOUR
## PERMANENT INJUNCTION

55.   Plaintiffs adopt and reallege the allegations contained in all preceding paragraphs the same as is set forth fully herein.

56.   As a direct and proximate result of the foregoing intentional interference by the Defendants, Plaintiffs have suffered immediate and irreparable injury, loss, harm and damage and will continue to suffer this irreparable harm in the future if Defendants are not enjoined from continuing to solicit Plaintiffs' consumers, represent Plaintiffs' consumers, attempting to disrupt Plaintiffs' businesses with fraudulent correspondence, and interfere with Plaintiffs' contractual relations with its consumers.

57.   Plaintiffs have no adequate remedy at law for said injuries, in that, among other things, Plaintiffs will continue to receive correspondence from Defendants attempting to stop payment from consumers on valid debts unless the Defendants' wrongful conduct is enjoined.

58.   Further, upon information and belief, other credit card issuers are facing similar influxes of correspondence from the Defendants seeking to cease all communication with consumers. The public interest will be served by enjoining these Defendants from soliciting consumers.

WHEREFORE, Plaintiffs pray that this Court award Plaintiffs the following:

A.  monetary damages in excess of $75,000;

B.  a temporary restraining order

C.  preliminary and permanent injunctive relief on Counts I, II, and III of the Complaint; and

D.  any other relief to which Plaintiffs may be entitled.

Dated: March 6, 2008

Respectfully submitted,

CAPITAL ONE BANK (USA) N.A.,
CAPITAL ONE, N.A.,
CAPITAL ONE AUTO FINANCE, INC.

_Cameron S. Matheson_

James A. Murphy (VSB No. 35380)
Cameron S. Matheson (VSB No. 47145)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Post Office Box 2499
Richmond, Virginia 23218-2499
Tel: (804) 916-7126
Fax: (804) 783-7645
james.murphy@leclairryan.com
cameron.matheson@leclairryan.com

OF COUNSEL:

Rik Stanford Tozzi
Alfred Huey Perkins, Jr.
Starnes & Atchison LLP
PO Box 598512
Birmingham, AL 35259-8512
Tel: (205) 868-6024
Fax: (205) 868-6099
rtozzi@starneslaw.com
aperkins@starneslaw.com

16

**EXHIBIT 1**



**HESS | KENNEDY CHARTERED**
**A Professional Association**

| Home | Services Offered | Our Business |

| Contact Us |

## Credit Counseling

We work with approved debt consolidation organizations that negotiate with over 50,000 creditors and we are confident that we will be able to help you to develop a debt consolidation repayment plan or credit card management plan that will fit your budget and help you to reach your goal of becoming DEBT FREE! Remember THERE IS LIFE AFTER DEBT and we will help you get back on track.

### Credit Card Management



If you carry a balance, a credit card debt can be like a very expensive loan made by banks, gasoline companies or department stores. These credit card debts yield high profits to their issuers for several reasons. The most important is the high rate of interest (as high as 33% each year). Interest from a credit card alone can account for the bulk of the profits earned by the bank that issued you the credit card. Also, many credit card companies charge an annual fee for issuing you the credit card, and most of these companies charge late fees, over-the-limit fees and other miscellaneous charges. Finally, the banks and loan companies profit by charging the merchants and service providers a fee each time a customer uses the loan company's credit card in the merchant's establishment. Our debt consolidation and credit card management program can help you put an end to these high interest credit card debts. A Certified Debt Counselor will contact you within the next 24 hours with your free consultation. Please have your most recent Credit Card Statements available and we will show you how to consolidate them to save you from 20% to as much as 60% in monthly payments!

Hess | Kennedy Chartered is a professional association. Managing Partner of Hess | Kennedy Chartered is Laura Hess. She is admitted for practice in Florida only. For cases outside of Florida Hess | Kennedy Chartered lawyers will request assistance from and associate with one of our hand-picked affiliate attorneys located throughout the country. An associated attorney will be compensated through Hess | Kennedy Chartered according to the work performed, in full compliance with the Florida Rules of Professional Conduct.

The hiring of a lawyer is an important decision that should not be based solely on advertisements. Before you decide ask us to send you written information about our Attorney / Lawyer qualifications and experience.

© 2007, All Rights Reserved, Hess | Kennedy Chartered

http://www.hesskennedycompany.com/credit_counseling.html

2/20/2008

EXHIBIT 2



## HESS | KENNEDY CHARTERED
### A Professional Association

| Home | Services Offered | Our Business |
|------|------------------|--------------|
| Contact Us | | |

## Debt Settlement

**NOTICE TO CONSUMERS**
**IMPORTANT PLEASE READ**

If you are having debt problems, you may fee overwhelmed and powerless. During periods of financial hardship, you may not have the resources to pay pressing debts, to meet family needs, and to get legal help. You may feel helpless to fight debt collectors pressing you for payment or threatening to seize your home, car, or other possessions.

We will help you make the best choices possible despite difficult financial circumstances. We will help you decide whether there are debts you can ignore and what your options are when you cannot ignore a particular debt. Most important, we will make sure that your rights as a consumer are protected. Many state and federal laws are designed to help people facing financial problems.

Most people in financial distress will first want to deal with the worst symptoms of a deteriorating financial situation. However, you should never make a decision based upon what a debt collector tells you. If you have an issue, have the debt collector call your attorney three-way to confirm what they have just said. Or, tell the debt collector that you need to call your attorney first, or better yet, ask the debt collector to contact us directly.

When your financial condition is such that you cannot meet your monthly payment requirements, we are here to develop a long-term strategy to deal with your debt problems. This strategy involves figuring out those debts that you need to repay, and understanding the likely consequences if you cannot pay

certain debts.

The first discipline that you need to learn is keeping a log of your income and expenses for a few months. You should have already submitted an income statement worksheet to the lawyer referral firm that referred you to our law firm. We will make sure that we have this.

The second discipline is determining the priority of your debt. Debts with collateral are top priority. These include mortgages, rent, car loans, and loans secured by household goods. Debts without collateral are low priority debts. These include credit cards, charge cards, medical bills, gasoline cards, payday loans, and loans from family or friends.

The third discipline involves identifying those debts that should be paid first.
**Always pay family necessities**. This means food and unavoidable medical expenses.

**Next pay your housing related bills.** Pay your mortgage or rent if at all possible. If you own a home, pay your non-deferrable real estate taxes and your insurance unless they are included in the monthly payment. Failure to pay these bills can result in the loss of your home or apartment. If you are having a serious problem that require you to move, you might stop paying the mortgage or rent. When you do so, do not spend this money. Save this money as a fund to use when you move, and to put down any required down payment.

**Pay the minimum required to keep your essential utility service.** You should pay the minimum payment necessary to avoid disconnection. It would not make sense to work hard to keep your house or apartment only to not be able to live there because of no utility service.

**Pay car loans or car leases if you need to keep your car.** If you need your car to get to work or for other essential transportation you should make your car payment your next priority after food, housing costs, and utilities. You may want to pay for the car first if the car is necessary to keep your job.

**You must pay your child support debts.** A child support debt will not go away. If you need to modify a final order of child support obligation, then do it. You will have to prove that your financial condition has dramatically changed, and some states have minimum thresholds. However, if you do not make these payments, you can lose your license and go to jail.

**Income tax debts are a high priority.** You must pay income taxes you owe that are not automatically deducted from your wages. You must pay file your federal income tax returns, even if you do not have

2/20/2008

the money to pay the tax liability. The government has powerful collection rights that other creditors do not have, particularly if you do not file your returns. If your income has been reduced due to a change in circumstances, you can have your tax liability reduced.

**Loans without collateral are low priority.** Most credit card debts, doctor and hospital bills, and other debts, such as open accounts with merchants, and similar debts are low priority. You have not secured any property with these debts, and in the short term, creditors cannot hurt you.

**Do not move a debt up in priority because a creditor or debt collector threatens to sue you.** Many threats to sue are not carried out. Even if the creditor does sue, it will take a while before the collector can seize any property, and much of your property may be exempt from seizure.

**Court judgments against you move a debt up in priority, but less than you think.** After a collector obtains a court judgment, that debt is often higher priority because the creditor can now ask a court to seize certain pieces of property, wages, and bank accounts. However, as to whether or not it is a serious threat will depend upon your state's law, the value of the property, and your income.

**Debt collection efforts should never move up a debt's priority.** Be polite to the debt collector, but make your own choices. Debt collectors are unlikely to give you good advice. Debt collectors may be most aggressive when trying to get you to pay debts that should be paid last, if at all. You should never listen to what a debt collector says until you have had time to contact your lawyer or paralegal.

**Threats to ruin your credit record should never move up a debt's priority.** Many collectors that threaten to report your delinquency to a credit bureau have already done so. If the creditor has not yet reported the status of your account to a credit bureau, it is unlikely that a collector hired by that creditor will do so.

**Refinancing is rarely the answer.** You should always be careful about refinancing. It can be very expensive and it can give creditors more opportunities to seize your important assets.

You have retained this firm because you can no longer afford the required payments to your creditors each month. The objective is to achieve a settlement on the balances owed to your creditors. Although in our experience, creditors accept settlement offers, we must disclose that there are inherent risks with not making payments to your creditors. Some of these risks include: late fees, penalties, and interest will continue to accrue on the consumers debt until the creditors accept and receive a settlement; (2) a creditor(s) may still sue to collect on the debts and garnish your wages; (3) interest rates applicable to

http://www.hesskennedycompany.com/debt_settlement.html

2/20/2008

the debt may increase; (4) any money saved in negotiating a settlement with a creditor must be treated as income for tax purposes; and (5) a debt settled for less than the full amount owed may result in a negative notation on your credit report

Hess | Kennedy Chartered is a professional association. Managing Partner of Hess | Kennedy Chartered is Laura Hess. She is admitted for practice in Florida only. For cases outside of Florida Hess | Kennedy Chartered lawyers will request assistance from and associate with one of our hand-picked affiliate attorneys located throughout the country. An associated attorney will be compensated through Hess | Kennedy Chartered according to the work performed, in full compliance with the Florida Rules of Professional Conduct.

The hiring of a lawyer is an important decision that should not be based solely on advertisements. Before you decide ask us to send you written information about our Attorney / Lawyer qualifications and experience.

© 2007, All Rights Reserved, Hess | Kennedy Chartered

**EXHIBIT 3**



**Contact Us: (954) 510-7840**

Legal Solutions For Prosperous Living

Credit Counseling

## Credit Counseling

We work with approved debt consolidation organizations that negotiate with over 50,000 creditors and we are confident that we will be able to help you to develop a debt consolidation repayment plan or credit card management plan that will fit your budget and help you to reach your goal of becoming DEBT FREE!



**Remember THERE IS LIFE AFTER DEBT and we will help you get back on track.**

## Credit Card Management

If you carry a balance, a credit card debt can be like a very expensive loan made by banks, gasoline companies or department stores. These credit card debts yield high profits to their issuers for several reasons. The most important is the high rate of interest (as high as 33% each year). Interest from a credit card alone can account for the bulk of the profits earned by the bank that issued you the credit card. Also, many credit card companies charge an annual fee for issuing you the credit card, and most of these companies charge late fees, over-the-limit fees and other miscellaneous charges. Finally, the banks and loan companies profit by charging the

http://www.camposlegalservices.com/creditcounseling.html

2/20/2008

merchants and service providers a fee each time a customer uses the loan company's credit card in the merchant's establishment. Our debt consolidation and credit card management program can help you put an end to these high interest credit card debts. A Certified Debt Counselor will contact you within the next 24 hours with your free consultation. Please have your most recent Credit Card Statements available and we will show you how to consolidate them to save you from 20% to as much as 60% in monthly payments!

Florida State Bar Rules require that all attorney advertising include the following: The hiring of a lawyer is an important decision that should not be based solely upon advertisement. Before you decide, ask us to send you free written information about our qualifications and experience.
The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 Requires the following notice:
We are a Debt Relief Agency. This web site is not an offer to provide bankruptcy assistance services to any assisted person as defined under Section 527(a)(2) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

http://www.camposlegalservices.com/creditcounseling.html

2/20/2008

**EXHIBIT 4**

# HESS KENNEDY COMPANY CHARTERED

March 23, 2007

Via First Class Mail

RE:    MARGARET ELLARD
       51780525549409007
       571.00

CAPITAL ONE
PO BOX 26030
RICHMOND, VA 23260

Dear part Billing Dispute Representative:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principles. Please be advised that any communications that you make in this matter will become of an administrative record, and may be used in litigation of claims related to the above listed account.

This letter constitutes a first notice of dispute with you regarding the above-listed account, and is served in response to recent communications that your company has made to my client by telephone and in writing. In the future, please restrict your communications to this office, have them be in writing, and cease and desist from any telephone communications with my client, my client's family members, my client's neighbors or workplace. Your company's continued telephonic communications with anyone other than me with respect to this matter may constitute a violation of the Fair Credit Billing Act should you continue to attempt collections on the amount in dispute, the Fair Debt Collection Practices Act, and may also violate the rules of professional responsibility, should your department employ a supervising attorney. Please be advised that I will aggressively pursue any claims that may arise in this area.

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with legal and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

In order to determine the nature and character of the alleged debt relationship between you and my client, I will require strict verification, through the presentation of certified documentary evidence

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722
NEW YORK   |   ILLINOIS   |   NEW JERSEY   |   LONDON   |   CALIFORNIA   |   CAYMAN ISLANDS   |   SINGAPORE

# HESS KENNEDY COMPANY

## CHARTERED

showing the factual basis and legal standing for your Company's claim for payment of the alleged debt that is disputed herein. Verification is defined as: Confirmation of correctness, truth or authenticity, by affidavit, oath or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party; sworn or equivalent confirmation of truth; and in accounting, the process of substantiating entries in books of account.

Specifically, in order to ascertain the validity and legal sufficiency of your claim, I am demanding the following:

1. Validation of your Company's right to collect the disputed debt set forth above, by furnishing verified copies of any and all agreements governing the assignment, novation, or transfer of rights, and/or the like, and state whether your Company is the current owner, assignee, holder, or holder in due course of the above referenced account, with evidence to support said statements.

2. Validation of the legal sufficiency of your claim regarding the disputed debt by furnishing verified copies of all relevant commercial instruments and/or contracts containing my client's wet ink signature, and the evidence of any exchange of a benefit or detriment; and/or the series of external acts giving the objective semblance of agreement; and/or otherwise between your Company and my client that you rely upon in advancing your Company's claim.

3. Please provide me with bona fide copies of the accounting transaction ledger that demonstrates how the money in the disputed account was originated. The documentation and evidence of the actual "account transaction ledger" are of the utmost importance. Your failure to provide them will be deemed to be substantial noncompliance with this request. This evidence should include any transfer of cash or cash equivalents to any acquiring bank, merchant, or other third party.

4. Certified copies of any insurance policies related to the disputed account, contract, note or other instrument.

5. Any source of any cash or cash equivalent you and/or claimant claim was paid to my client and/or on my client's behalf, including, but not limited to, all accounts from which the cash or cash equivalents originated and/or passed through.

6. Certified Public Accountant audit reports of you and/or claimant for the disputed account for the period during which the claim existed, including any and all reports prepared for compliance with the requirements of the Sarbanes-Oxley Act of 2002.

7. If you claim to be the assignee debt collector for a particular creditor, provide proof of a valid license and bond to engage in this particular collection activity in this state. In the alternative, if you claim to be employees of the corporate creditor, or original creditor, please provide a statement indicating as such.

8. If the claim is asserted through an assignment, provide an authenticated executed copy of that agreement.

9. Certification that the terms of §326 of the U.S.A. Patriot Act have been complied with respect to the verification of the identity of my client as the card holder related to the above listed account.

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954/752.1950 TELECOPIER 954.727.8722
NEW YORK | ILLINOIS | NEW JERSEY | LONDON | CALIFORNIA | CAYMAN ISLANDS | SINGAPORE

# HESS KENNEDY COMPANY CHARTERED

The above records will allow me to effectively understand the nature of the transactions upon which you base your claim. Please do not misinterpret this request with a request for copies of any billing statements or standard cardholder agreements. Those documents will not satisfy my need for verification of your claims by authenticated documentation and affidavit.

I have also been advised that there may be legitimate claims against you for credit defamation, breach of warranty or contract, fraudulent billing, unfair dealing and/or deceptive and misleading advertising or business practices. I may also assert claims on behalf of my client for violations of the Fair Credit Billing Act, The Truth in Lending Act, Fair Debt Collection Practices Act or the state versions of these statutes under the consumer protection provisions.

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and/or discharge of the entire balance of the account referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees. I expect your good faith reply to include all of the records and information identified herein, within thirty (30) days. If you need more time, please notify me within thirty (30) days and I will allow you an additional thirty (30) days before considering your failure to answer a default. You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under 18 USC §1341.

The above does not constitute a complete identification of my client's rights, and all are hereby reserved.

Sincerely yours,
ATTORNEY FOR THE FIRM
HESS KENNEDY COMPANY

HESS KENNEDY COMPANY • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722
NEW YORK | ILLINOIS | NEW JERSEY | LONDON | CALIFORNIA | CAYMAN ISLANDS | SINGAPORE

**EXHIBIT 5**

# CapitalOne

PO Box 30285
Salt Lake City, UT 84130-0285

January 17, 2007

Margaret Ellard
12391 Bama Rock
Garden Rd
Vance AL 35490-3210

Re: 5178052549409007
Creditor: Capital One Bank

Dear Margaret Ellard:

We have recently received a letter from Hess Kennedy Company regarding your Capital One Account. In order to protect your privacy, I am unable to discuss your account with anyone else without your permission. I assure you, this is to protect the security of your account and your security as a Capital One customer. Enclosed is a copy of the letter we received for your review.

We strive to deliver the highest level of quality service to all our customers. We look forward to serving your credit needs and would like the opportunity to discuss any concerns that you may have with your Capital One account.

We have removed their telephone number from our call list and have stopped written communications regarding the collection of this debt. Our Financial Solutions Department must adhere to all applicable rules and regulations when contacting a customer about an account that is delinquent or overlimit. I regret any inconvenience experienced.

If you would like for us to be able to discuss your account in the future with anyone other than yourself, please call our office at 1-800-258-9319, or send a signed release to the address above.

Sincerely,

Eric Dugan
Customer Relations Account Manager
Capital One Services, Inc.

Enclosure

This is not an attempt to collect a debt, but a response to your inquiry ©2007 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

**EXHIBIT 6**



**CapitalOne®**

Capital One Services, Inc.
15000 Capital One Drive
Richmond, Virginia 23238

July 24, 2007

Hess Kennedy & Company
210 N. University Drive, #209
Coral Springs, FL 33071

To Whom It May Concern:

Capital One Financial Services, Inc. and its affiliates ("Capital One") are in receipt of hundreds of letters from your firm making identical unsubstantiated allegations that lack factual or legal merit. The letters appear to be part of a concerted effort by you and your firm to delay, and impede, without any legal basis, Capital One's ability to collect outstanding credit card debt. Capital One has no duty to respond to the letters.

Further, these activities by you and your firm constitute, among other things, tortious interference with business relations. This letter serves as notice that Capital One will pursue all available legal remedies should these activities continue.

Capital One demands that you cease and desist all communications of this nature. This letter serves as notice to your firm and its clients that Capital One hereby reserves all rights against you, your firm, and all associated individuals and entities.

To the extent you wish to discuss, please contact our outside counsel, Rik Tozzi, of the law firm Starnes & Atchison assigned to this matter.

Sincerely,

Nicholas C. Slade
Vice President, Litigation
Senior Associate General Counsel
Capital One

cc: Rik Tozzi

IN THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

HESS KENNEDY CHARTERED, LLC;
LAURA L. HESS; EDWARD T. KENNEDY;
HESS KENNEDY HOLDINGS, LTD.;
LAURA HESS & ASSOCIATES, P.A.;
THE CONSUMER LAW CENTER, LLC;
THE CAMPOS CHARTERED LAW FIRM;
JEFF CAMPOS, P.A.; JEFFREY S. CAMPOS;
LEGAL DEBT CENTER, LLC.

**08 - 60921**

**CIV - DIMITROULEAS**

ROSENBAUM

       Plaintiffs,

vs.

CHASE BANK USA, N.A.,

       Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, by and through undersigned counsel, brings this Complaint as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C §§ 2201; 2202; and 1332.

2.    Venue is proper in the Southern District of Florida because HESS plaintiffs reside and maintain their principal place of business is in the Southern District of Florida. Most of the acts of HESS's business are performed within the Southern District of Florida. A majority of the witnesses in this matter reside in the Southern District of Florida. Defendant CHASE has communicated with HESS through telecommunications into the Southern District of Florida. Those communications give rise to the request for declaratory relief sought in this lawsuit.

## INTRODUCTION

3.    The Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq. was enacted to ensure that creditors provide a meaningful disclosure of credit terms so that consumers will be able to compare more readily the various credit terms available to them, avoid the uniformed use of credit, and protect consumers against inaccurate and unfair credit billing and credit card practices.

4.    To this end, the credit transaction provisions of the TILA require creditors to clearly and conspicuously disclose certain key terms and costs before consummating a credit transaction.

5.    Once the consumer has taken advantage of the credit offered, the creditor is required to send periodic statements disclosing among other things, the balance on which the finance charge is computed and how the balance was determined.

6.    In the event that a consumer believes that a periodic statement contains a billing error, the TILA requires that the consumer respond, within 60 days, to the creditor's statement of account with a written notice that he or she believes a billing error has occurred.

7.    The written notice complies with the TILA when it (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor, (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error.

8.    When the consumer responds as set forth above, the creditor must comply with the provisions of the TILA.

2

## PLAINTIFFS

9.      Laura Hess is a citizen of the State of Florida. She is the principal in a law firm, Laura Hess & Associates; P.A., a Florida professional services corporation that is retained by consumers with credit card debt, with the limited purpose of auditing whether Chase Bank USA, N.A. was in compliance with the TILA and the Fair Credit Reporting Act ("FCRA").

10.     Laura Hess and Associates, P.A. is a Florida corporation with its principal place of business in Coral Springs, Fla.

11.     Hess Kennedy Holdings, Ltd. is a Florida limited liability company with its principal place of business in Coral Springs, Florida that provides employee staffing services for Plaintiff Laura Hess & Associates, P.A. and Plaintiff Jeff Campos, P.A.

12.     Hess Kennedy Chartered, LLC is a Florida limited liability company with its principal place of business in Coral Springs, Fla that provides payment processing services for Hess | Kennedy.

13.     The Consumer Law Center, LLC is a Florida limited liability company with its principal place of business in Coral Springs, Florida that provides payment processing services for The Consumer Law Center.

14.     The Campos Chartered law firm is a Florida corporation with its principal place of business in Coral Springs, Florida that is retained by consumers with credit card debt, with the limited purpose of auditing whether Chase Bank USA, N.A. was in compliance with the TILA and the FCRA.

15.     Jeff Campos, P.A. is a Florida corporation with its principal place of business in Coral Springs, Florida.

16.    Jeffrey S. Campos is a citizen of the State of Florida and is the principal in a law firm, Jeff Campos, P.A., a Florida professional services corporation that is retained by consumers with credit card debt, with the limited purpose of auditing whether Chase Bank USA, N.A. was in compliance with the TILA and the FCRA.

17.    Legal Debt Center, LLC is a Florida limited liability company with its principal place of business in Coral Springs, Florida that provides payment processing services on behalf of The Legal Debt Center.

18.    Edward T. Kennedy is a human being who is not Edward Cherry. Edward Kennedy resides in Brussels.

19.    All plaintiffs will be collectively referred to as HESS.

20.    HESS wants to enforce consumer rights under the TILA and the FCRA free from the threat from Chase Bank USA, N.A. that doing so will result in criminal prosecution and liability for tortious interference with contractual relations.

## DEFENDANT

21.    The Defendant Chase Bank USA, N.A. ("CHASE") is a national bank and wholly owned subsidiary of JP Morgan Chase & Co. The Defendant CHASE issues credit cards to consumers. CHASE's main office is in Newark, Delaware. CHASE is also the successor to Bank One, Delaware, N.A., a national banking association, by merger on October 1, 2004.

## FACTS

22.    On February 29, 2008, CHASE filed a lawsuit in the District of Delaware against all of the named plaintiffs in this matter in Case No. 1:08-cv-00121-UNA. (Exhibit J).

*Complaint*
*Hess v. Chase*

23.     In that lawsuit, CHASE alleges that the HESS plaintiffs committed the torts of: tortious interference with contractual relations; abuse of process; violation of Delaware deceptive trade practices act; Delaware consumer fraud act; and, conspiracy.

24.     On July 20, 2007, representatives of HESS and CHASE met in the Miami office of the Carlton Fields law firm.

25.     The meeting regarded certain letters that CHASE was receiving from the HESS on behalf of its clients.

26.     The letters contained information relating to CHASE credit card accounts and requested certain information relating to the nature and scope of the relationship between CHASE and HESS clients.  (See Exhibits "A" "B" and "C").

27.     During the meeting, it was disclosed by CHASE that CHASE believed that the letters were a "scam," "illegal," and that CHASE was "under no obligation to respond to such letters."

28.     CHASE further disclosed that CHASE has received letters similar in kind to HESS'S letters and that CHASE has successfully obtained damages, injunctive relief, and caused the writers of such letters in some circumstances to be indicted and/or disbarred.

29.     CHASE requested that HESS  cease sending such letters; withdraw the letters already sent; notify its clients that its legal theories were not well-supported in the law or in its clients' best interests; notify its clients that they would be better served to request relief and payment arrangements from CHASE; and, recommend that its clients make the minimum monthly payments due.

30.     In the event that HESS did not perform these actions, CHASE would initiate litigation against the HESS and attempt to both cause its attorneys to be disbarred and criminally prosecuted.

31.     On August 17, 2007, Carlton Fields law firm, on behalf of CHASE, transmitted a letter to HESS again demanding that that HESS cease sending such letters; withdraw the letters already sent; notify its clients that its legal theories were not well-supported in the law or in its clients' best interests; notify its clients that they would be better served to request relief and payment arrangements from Defendant Chase; and recommend that its clients make the minimum monthly payments due. Carlton Fields closed its letter with the veiled threat that should HESS fail to do so, CHASE would ". . .proceed along the lines discussed at our meeting in Miami." (*See* Exhibit D.)

32.     HESS desires to notice CHASE of the billing errors in accordance with TILA, but fear the institution of litigation by CHASE, and do not desire to violate any criminal statute that CHASE may be referring to in their correspondence.

## THE STATUTE AT ISSUE

33.     Under 15 U.S.C. § 1666 if an obligor responds, within sixty days, to a creditor's statement of account pertaining to a consumer line of credit by properly notifying the creditor that he or she believes a billing error has occurred, the creditor must comply with the provisions of the Act. 15 U.S.C. § 1666(a).

34.     A written notice of a billing error complies with the requirements of 15 U.S.C. §1666 when it: (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor, (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and (3) sets forth the reasons for the obligor's

belief (to the extent applicable) that the statement contains a billing error.    15 U.S.C.

§§1666(a)(1), (2), & (3).

35.    Under 15 U.S.C. §1666, a "billing error" is defined as any of the following:

(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement required under section 1637 (b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Board. 15 U.S.C. §1666(b).

## DISCUSSION

36.    CHASE's periodic statement sent to users of the Chase credit card contains the

following explanation as to how CHASE calculated the resulting balance and in the same sized

font:

Explanation of Finance Charge:

We calculate periodic finance charges using the applicable periodic rates shown on this statement, separately for each feature (e.g., balance transfer/convenience checks and cash advances checks ("check transaction"), purchases, balance transfers, cash advances, promotional balances or overdraft advances).  These calculations may combine different categories with the same daily periodic rates.

*Complaint*
*Hess v. Chase*

If there is a "V" next to a periodic rate on this statement, that rate may vary, and the index and margin used to determine that rate and its corresponding APR are described in your Cardmember Agreement, as amended. There is a minimum finance charge in any billing cycle in which you owe any periodic finance charges and a transaction finance charge for each balance transfer, cash advance, or check transaction, in the amounts stated in your Cardmember Agreement, as amended.

To get the daily balance for each day of the current billing cycle, we take the beginning balance for each feature, add any new transactions or other debits (including fees, unpaid finance charges and other charges), subtract any payments or credits, and make other adjustments. Transactions are added as of the transaction date, the beginning of the billing cycle in which they are posted to your account, or a later date of our choice (except that check transactions are added as of the date deposited by the payee or a later date of our choice). Fees are added either on the date of a related transaction, the date they are posted to your account, or the last day of the billing cycle. This gives is that day's daily balance. A credit balance is treated as a balance of zero. If a daily periodic rate applies to any feature, we multiply the daily balance by the daily periodic rate to get your periodic finance charges for that day. We then add these periodic finance charges to your daily balance to get the beginning balance for the next day. (If more than one daily periodic rate could apply based on the average daily balance, we will use the daily periodic rate that applies for the average daily balance amount tat the end of the billing cycle to calculate the daily periodic finance charge each day.)

To get your total periodic finance charge for a billing cycle when a daily periodic rate(s) applies, we add all of the daily periodic finance charges for all features. To determine an average daily balance, we add your daily balances and divide by the number of days in the applicable billing cycle(s). If you multiply the average daily balances for each feature by the applicable daily periodic rate, and then multiply each of these results by the number of days in the applicable billing cycles(s), and then add all of the results together, the total will also equal the periodic finance charges for the billing cycle, except for minor variations due to rounding. To get your total periodic finance charge for a billing cycle when a monthly periodic rate(s) applies, multiply the average daily balance for each feature by the applicable monthly periodic rate and add the results together. The total will equal the periodic finance charges for the billing cycle, except for minor variations due to rounding.

37.     CHASE's periodic statement sent to users of CHASE's credit card contains the following information relating to charges to the account as an example:

| Category | Daily Periodic Rate 31 days in cycle | Corresp. APR | Average Daily Balance | Due to Periodic Rate | Transaction Fee | Accumulated Fin Charge | FINANCE CHARGES |
|---|---|---|---|---|---|---|---|
| Purchases | V .08217% | 29.99% | $4,523.22 | $115.22 | $0.00 | $0.00 | $115.22 |
| Cash Advances | V .08217% | 29.99% | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Convenience check | V .08217% | 29.99% | $3,560.34 | $90.70 | $0.00 | $0.00 | $90.70 |
| | | | | | | | ------------- |
| Total finance charges | | | | | | | $205.92 |

38.     HESS contends that taking into consideration the information provided by CHASE in paragraph 36 and the information provided by CHASE in paragraph 37, it is impossible to ascertain how CHASE arrived at the resulting balance. (*See* Exhibit E.)

39.     HESS contends that taking into consideration the information provided by CHASE in paragraphs 36 & 37, and utilizing a calculator, not only is it impossible to ascertain how CHASE arrived at the resulting finance charge and balance due, using any manner of calculating interest, it is impossible to duplicate the computations.

40.     HESS contends that the letter attached as Exhibit F satisfies the TILA requirements of 15 U.S.C. §§1666(a)(1), (2), & (3) and that HESS  has sent a lawful letter asserting the rights of the credit-card user.

*Complaint*
*Hess v. Chase*

41.    HESS contends that the letters attached as Exhibit G and Exhibit H are not violative of any civil or criminal law, but instead seek information relating to whether CHASE would succeed in an action against a credit card user (HESS client) based upon the theories of: (1) Money Lent; (2) Breach of Contract; (3) Account Stated; (4) Open Account; and/or (5) Unjust Enrichment.

42.    CHASE contend that the HESS letters are without legal merit, are criminal in nature, subject HESS to a claim for tortious interference with contractual relations, and do not commence valid credit card billing disputes.

## BASIS FOR DECLARATORY JUDGMENT

43.    CHASE'S contention that HESS letters are without legal merit, are criminal in nature, subject HESS to a claim for tortious interference with contractual relations, and do not commence valid credit card billing disputes, have left HESS in doubt and uncertain about their rights under the TILA, the common law of the State of Florida, the Federal Criminal Statutes, and the Florida criminal statues; thus giving rise to a justiciable controversy and an actual rather than a theoretical controversy as to the validity of the letters that are the subject matter of this action.

44.    Accordingly, an actual, bona fide, present, practical, active, and justiciable controversy has arisen and now exists between HESS and CHASE concerning their respective rights, duties and responsibilities, needing a Declaration from this Court.

45.    The controversy is definite, concrete, and deals with an ascertained state of facts, all of which are before the Court.

46.     HESS further alleges that certain of their privileges and rights are dependent upon the facts and the law applicable to the facts, all of which touches on the legal relations of the parties.

47.     HESS also show that the relief sought is not merely the giving of legal advice or answers to questions propounded from curiosity.

48.     HESS desires a Declaration of their rights, status and other equitable and legal relations as to 15 U.S.C. §§ 1601 et seq., the Defendants periodic statements, and the Plaintiffs letters. Such a Declaration is necessary and appropriate under the circumstances in order that HESS may ascertain her rights under TILA and in order that HESS may ascertain its rights as attorneys enforcing the provisions of the TILA free from the threat of civil litigation and potential criminal liability.

## **RELIEF SOUGHT**

**WHEREFORE**, for the reasons set forth above, Plaintiffs requests relief as follows:

1.     A Declaration that this Court has jurisdiction of a real and active justiciable controversy between these parties;

2.     A Declaration that the letters attached are not tortious in nature;

3.     A Declaration that the letters attached are not criminal in nature;

4.     A Declaration that the letters attached have legal merit;

5.     A Declaration that Exhibit A and Exhibit B satisfy the TILA notice requirements; and

6.     A Declaration that Exhibit A and Exhibit B commence valid credit card billing disputes; and

*Complaint*
*Hess v. Chase*

      7.    A Declaration that Exhibit A and Exhibit B if transmitted to the Defendant Chase

within 60 days of receipt of a statement of account require that the Defendant Chase comply with

the TILA.

                 Respectfully submitted,

                 ROTHSTEIN ROSENFELDT ADLER
                 Attorneys for Plaintiffs
                 401 East Las Olas Boulevard, Suite 1650
                 Fort Lauderdale, Florida 33301
                 Telephone No. (954) 522-3456
                 Facsimile: (954) 527-8663

                 By: _____
                    ROBERT C. BUSCHEL
                    Florida Bar Number: 0063436

┌─────────────┐
│  **EXHIBIT**  │
│      **A**      │
└─────────────┘

█████ Parker
210 N. University Drive #209
Coral Springs, FL 33071

May 23, 2007

Chase Bank, N.A.
PO BOX 15298
Wilmington, DE 19850-5298

Re:     4266 8410 7509████
        Amount in Dispute: $10'503.72

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of a billing error found within my periodic statements for the previous 60 days as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement. Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter. They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request. My new address is: 210 North University Drive, #209, Coral Springs, FL 33071. My new telephone number is: 954-345-7848 and my new work telephone number is: 954-752-1950.

Very truly yours,

 Parker

# HESS KENNEDY COMPANY

## CHARTERED

```
┌─────────────┐
│  EXHIBIT    │
│     B       │
└─────────────┘
```

July 23, 2007

Via First Class Mail

Supervising Attorney
**Chase Bank, N.A.**
PO BOX 1234
Anytown, IL 10045

Re:        ███████ Shank
            Chase Account #4569 6589 8974 ████

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of today's date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of an account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into "disputed status" and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,

**HESS KENNEDY CO. CHARTERED**

HESS KENNEDY COMPANY  •  210 NORTH UNIVERSITY DRIVE • 209 • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK      ILLINOIS      NEW JERSEY      LONDON      CALIFORNIA   CAYMAN ISLANDS    SOUTH CAROLINA

# HESS KENNEDY COMPANY

## CHARTERED

> **EXHIBIT**
> **C**

March 22, 2007

Via Certified Mail

Chase Bank, N.A.
PO BOX 15298
Wilmington, DE 19850-5298

**RE:**

Dear Supervising Attorney:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principles. Please be advised that any communications that you make in this matter will become part of an administrative record, and may be used in litigation of claims related to the above listed account.

This letter constitutes a first notice of dispute with you regarding the above-listed account, and is served in response to recent communications that your company has made to my client by telephone and in writing. In the future, please restrict your communications to this office, have them be in writing, and cease and desist from any telephone communications with my client, my client's family members, my client's neighbors or workplace. Your company's continued telephonic communications with anyone other than me with respect to this matter may constitute a violation of the Fair Credit Billing Act should you continue to attempt collections on the amount in dispute, the Fair Debt Collection Practices Act, and may also violate the rules of professional responsibility, should your department employ a supervising attorney. Please be advised that I will aggressively pursue any claims that may arise in this area.

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

In order to determine the nature and character of the alleged debt relationship between you and my client, I will require strict verification, through the presentation of certified documentary evidence

**HESS KENNEDY COMPANY** ● 210 NORTH UNIVERSITY DRIVE ● TWO HUNDRED NINE ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

**NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA**

# HESS KENNEDY COMPANY

## CHARTERED

```
┌─────────────────┐
│    EXHIBIT      │
│       C         │
└─────────────────┘
```

showing the factual basis and legal standing for your Company's claim for payment of the alleged debt that is disputed herein. Verification is defined as: Confirmation of correctness, truth or authenticity, by affidavit, oath or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party; sworn or equivalent confirmation of truth; and in accounting, the process of substantiating entries in books of account.

Specifically, in order to ascertain the validity and legal sufficiency of your claim, I am demanding the following:

1. Validation of your Company's right to collect the disputed debt set forth above, by furnishing verified copies of any and all agreements governing the assignment, novation, or transfer of rights, and/or the like, and state whether your Company is the current owner, assignee, holder, or holder in due course of the above referenced account, with evidence to support said statements.
2. Validation of the legal sufficiency of your claim regarding the disputed debt by furnishing verified copies of all relevant commercial instruments and/or contracts containing my client's wet ink signature, and the evidence of any exchange of a benefit or detriment; and/or the series of external acts giving the objective semblance of agreement; and/or otherwise between your Company and my client that you rely upon in advancing your Company's claim.
3. Please provide me with bona fide copies of the accounting transaction ledger that demonstrates how the money in the disputed account was originated. The documentation and evidence of the actual "account transaction ledger" are of the utmost importance. Your failure to provide them will be deemed to be substantial noncompliance with this request. This evidence should include any transfer of cash or cash equivalents to any acquiring bank, merchant, or other third party.
4. Certified copies of any insurance policies related to the disputed account, contract, note or other instrument.
5. Any source of any cash or cash equivalent you and/or claimant claim was paid to my client and/or on my client's behalf, including, but not limited to, all accounts from which the cash or cash equivalents originated and/or passed through.
6. Certified Public Accountant audit reports of you and/or claimant for the disputed account for the period during which the claim existed, including any and all reports prepared for compliance with the requirements of the Sarbanes-Oxley Act of 2002.
7. If you claim to be the assignee debt collector for a particular creditor, provide proof of a valid license and bond to engage in this particular collection activity in this state. In the alternative, if you claim to be employees of the corporate creditor, or original creditor, please provide a statement indicating as such.
8. If the claim is asserted through an assignment, provide an authenticated executed copy of that agreement.

**HESS KENNEDY COMPANY** • 210 NORTH UNIVERSITY DRIVE • TWO HUNDRED NINE • CORAL SPRINGS • FL • 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK   ILLINOIS   NEW JERSEY   LONDON   CALIFORNIA   CAYMAN ISLANDS   SINGAPORE   SOUTH CAROLINA



# HESS KENNEDY COMPANY
## CHARTERED

**EXHIBIT C**

9. Certification that the terms of §326 of the U.S.A. Patriot Act have been complied with respect to the verification of the identity of my client as the account holder related to the above listed account.

The above records will allow me to effectively understand the nature of the transactions upon which you base your claim. Please do not misinterpret this request with a request for copies of any billing statements or standard cardholder agreements. Those documents will not satisfy my need for verification of your claims by authenticated documentation and affidavit.

I have also been advised that there may be legitimate claims against you for credit defamation, breach of warranty or contract, fraudulent billing, unfair dealing and/or deceptive and misleading advertising or business practices. I may also assert claims ob behalf of my client for violations of the Fair Credit Billing Act, The Truth in Lending Act, Fair Debt Collection Practices Act or the state versions of these statutes under the consumer protection provisions.

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and/or discharge of the entire balance of the account referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees. I expect your good faith reply to include all of the records and information identified herein, within thirty (30) days. If you need more time, please notify me within thirty (30) days and I will allow you an additional thirty (30) days before considering your failure to answer a default. You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under 18 USC §1341.

The above does not constitute a complete identification of my client's rights, and all are hereby reserved.

Sincerely yours,

**ATTORNEY FOR THE FIRM**
**HESS KENNEDY COMPANY**

**HESS KENNEDY COMPANY** ● 210 NORTH UNIVERSITY DRIVE ● TWO HUNDRED NINE ● CORAL SPRINGS ● FL ● 33071
PHONE 954.752.1950 TELECOPIER 954.727.8722

NEW YORK    ILLINOIS    NEW JERSEY    LONDON    CALIFORNIA    CAYMAN ISLANDS    SINGAPORE    SOUTH CAROLINA

ATLANTA
MIAMI
ORLANDO
ST. PETERSBURG
TALLAHASSEE
TAMPA
WEST PALM BEACH

# CARLTON FIELDS

### ATTORNEYS AT LAW

4221 W. Boy Scout Boulevard
Suite 1000
Tampa, Florida 33607-5736
P.O. Box 3239
Tampa, Florida 33601-3239

813.229.7000
813 229.4133 fax
www.carltonfields.com

**Robert M. Quinn**
813.229.4217 direct
rquinn@carltonfields.com

August 17, 2007

Laura Hess, Esq.                                **VIA E-MAIL AND MAIL**
Hess Kennedy Company Chartered
210 N. University Dr.
Coral Springs, FL 33071

    Re:    Joseph Diorio vs. Chase Manhattan Bank USA, N.A.
            Case No. 07-60733-civ-ZLOCH/SNOW

Dear Ms. Hess:

After our meeting on July 20, 2007, we expected to receive a proposed draft letter from your law firm which after our review you would mail to each of your clients. The drafts you have sent for review did not address the issues we expected would be covered in your letter.

We expected that your letter to clients would cover the following subjects:

1.    Upon further review and investigation, [Hess Kennedy] has reconsidered and withdraws its previous advice to you [the client], which recommended that you or we on your behalf send certain form letters challenging your credit card account liabilities. We no longer view that strategy as well-supported in the law, or in your best interest.

2.    You [the client] would be better served to request relief and payment arrangements from the creditor based upon your individual financial condition. Although [Hess Kennedy] cannot assure you that we can obtain any specific arrangements or terms, we believe that the creditor would consider reasonable terms and arrangements to repay your debt.

3.    If you [the client] are still receiving monthly statements, [Hess Kennedy] recommends that you make the minimum monthly payment due under the statement, while we attempt to negotiate payment arrangements or other resolution of your account with the creditor.

Please let us know if you are willing to draft a letter to your clients which would address the above points.

TPA#2377117.7

> **EXHIBIT**
> **D**

Laura Hess, Esq.
August 17, 2007
Page 2

We also want to confirm that Hess Kennedy and its affiliates have stopped sending form letters to Chase and its affiliates, and to confirm that Chase does not need to respond to the letters that continue to trickle in. For some reason, Chase or one or more of its affiliates continue to receive letters from you, or the "Consumer Law Center," and we had expected that form letters making challenge to the entire balance due on credit card accounts would stop.

Finally, please be advised that Chase does not agree with the characterizations of the previous Hess Kennedy credit card program made in your previous draft letter. We continue to believe that the program which relied on various form letters to challenge entire credit card balances, which we discussed at the July 20, 2007 meeting, was legally meritless, and that such letters did not commence valid credit card billing disputes.

Please e-mail to me a draft copy of your letter far enough in advance of August 31 so that the final letter could actually reach your clients before the end of August. As you are aware, the continuing failure of your clients to make payments adversely affects their credit. If, for any reason, you are rethinking your commitment to send such a letter, please let me know that promptly too and Chase will proceed along the lines discussed at our meeting in Miami.

If you have any questions, call me.

Very truly yours,

CARLTON FIELDS, P.A.

Robert M. Quinn

RMQ/lr

TPA#237711.7.7

<table>
<tr><td>EXHIBIT<br>D</td></tr>
</table>

EXHIBIT
E

**Information About Your Account**

**Lost or Stolen Cards:** Please report your lost or stolen card immediately by calling the Customer Service number found on the front of your statement. Advisors are always available to assist you. You can reach an Advisor by pressing 0 after you enter your account number.

**Crediting of Payments:** For payments by regular U.S. mail, send at least your minimum payment due to our post office box designated for payments shown on this statement. Your payments by mail must comply with the instructions on this statement, and must be made by check or money order, payable in U.S. Dollars, and drawn on or payable through a U.S. financial institution or the U.S. branch of a foreign financial institution. Do not send cash. Write your account number on your check or money order. Payments must be accompanied by the payment coupon in the envelope provided with our address visible through the envelope window, the envelope cannot contain more than one payment or coupon, and there can be no staples, paper clips, tape or correspondence included with your payment. If your payment is in accordance with our payment instructions and is made available to us on any day except December 25 by 1:00 p.m. local time at our post office box designated for payments on this statement, we will credit the payment to your account as of that day. If your payment is in accordance with our payment instructions, but is made available to us after 1:00 p.m. local time at our post office box designated for payments on this statement, we will credit it to your account as of the next day. If you do not follow our payment instructions or if your payment is not sent by regular U.S. mail to our post office box designated for payments, crediting of your payment may be delayed for up to 5 days. Payments made electronically through our automated telephone service, Customer Service advisors, or our web site will be subject to any processing times disclosed for those payments.

**Account Information Reported to Credit Bureaus:** We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, you may write to us at the Cardmember Service address listed on your billing statement.

**Notice About Electronic Check Conversion:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. Call the customer service number on this statement if you have questions about electronic check collection or do not want your payments collected electronically.

**Conditional Payments:** Any payment check or other form of payment that you send us for less than the full balance due that is marked "paid in full" or contains a similar notation, or that you otherwise tender in full satisfaction of a disputed amount, must be sent to Card Services, P.O. Box 15049, Wilmington, DE 19850-5049. We reserve all our rights regarding these payments (e.g., if it is determined there is no valid dispute or if any such check is received at any other address, we may accept the check and you will still owe any remaining balance). We may refuse to accept any such payment by returning it to you, not cashing it or destroying it. All other payments that you make should be sent to the appropriate payment address.

**Annual Renewal Notice:** If your account has an annual fee, it will be billed each year or in monthly installments, whether or not you use your account, and you agree to pay it when billed. The annual fee is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your statement on which the annual fee is charged and at the same time, you pay your outstanding balance in full. Your payment of this annual fee does not affect our rights to close your account and to limit your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the annual fee until you pay your outstanding balance in full and terminate your account relationship.

**Explanation of Finance Charges:** We calculate periodic finance charges, using the applicable periodic rates shown on this statement, separately for each feature (e.g., balance transfer/convenience checks and cash advance checks ("check transaction"), purchases, balance transfers, cash advances, promotional balances or overdraft advances). These calculations may combine different categories with the same daily periodic rates. If there is a "V" next to a periodic rate on this statement, that rate may vary, and the index and margin used to determine that rate and its corresponding APR are described in your Cardmember Agreement, as amended. There is a minimum finance charge in any billing cycle in which you owe any periodic finance charges, and a transaction finance charge for each balance transfer, cash advance or check transaction, in the amounts stated in your Cardmember Agreement, as amended.

To get the daily balance for each day of the current billing cycle, we take the beginning balance for each feature, add any new transactions or other debits (including fees, unpaid finance charges and other charges), subtract any payments or credits, and make other adjustments. Transactions are added as of the transaction date, the beginning of the billing cycle in which they are posted to your account, or a later date of our choice (except that check transactions are added as of the date deposited by the payee or a later date of our choice). Fees are added either on the date of a related transaction, the

date they are posted to your account, or the last day of the billing cycle. This gives us that day's daily balance. A credit balance is treated as a balance of zero. If a daily periodic rate applies to any feature, we multiply the daily balance by the daily periodic rate to get your periodic finance charges for that day. We then add these periodic finance charges to your daily balance to get the beginning balance for the next day. (If more than one daily periodic rate could apply based on the average daily balance, we will use the daily periodic rate that applies for the average daily balance amount at the end of the billing cycle to calculate the daily periodic finance charge each day.)

To get your total periodic finance charge for a billing cycle when a daily periodic rate(s) applies, we add all of the daily periodic finance charges for all features. To determine an average daily balance, we add your daily balances and divide by the number of the days in the applicable billing cycle(s). If you multiply the average daily balance for each feature by the applicable daily periodic rate, and then multiply each of these results by the number of days in the applicable billing cycle(s), and then add all of the results together, the total will also equal the periodic finance charges for the billing cycle, except for minor variations due to rounding. To get your total periodic finance charge for a billing cycle when a monthly periodic rate(s) applies, multiply the average daily balance for each feature by the applicable monthly periodic rate and add the results together. The total will equal the periodic finance charges for the billing cycle, except for minor variations due to rounding.

**Grace Period (at least 20 days):**

We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive both payment of your New Balance on your current statement by the date and time your payment is due and also payment of your New Balance on your previous statement by the date and time your payment was due. There is no grace period for balance transfers, cash advances, check transactions, or overdraft advances.

**In addition, if there is a "Qualifying Promotional Financing" section on this statement,** you will not incur periodic finance charges on any Remaining Balance that appears in that section if you pay that balance in full by the applicable Expiration Date. To avoid finance charges on new purchases when your New Balance includes any Remaining Balance(s) in the Qualifying Promotional Financing section, pay your full New Balance minus the total of those Remaining Balance(s) by the date and time your payment is due. However, if your statement shows that a minimum payment is due, we must receive at least that minimum payment by the date and time specified on your statement, even if Your New Balance consists only of Qualifying Promotional Financing balances.

Also, for some Qualifying Promotional Financing balances, periodic finance charges accrue during the promotional period but are not added to your account balance. Instead, they accumulate from billing cycle to billing cycle. This is referred to as "deferred interest." If a deferred interest Qualifying Promotional Financing balance is not paid in full by the applicable Expiration Date, the deferred finance charges will be added to your account as soon as the first day after the Expiration Date. Further, if you default under the terms of your Cardmember Agreement, the deferred finance charges will be added to your account as soon as the date of default.

**BILLING RIGHTS SUMMARY**

**In Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write Cardmember Service on a separate sheet at P.O. Box 15299 Wilmington, DE 19850-5299 as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and account number

• The dollar amount of the suspected error

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take action to collect the amount you question. If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter or call (using the Cardmember Service address or telephone number shown on this statement) must reach us at least three business days before the automatic payment is scheduled to occur.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of goods or services that you purchased with a credit card (excluding purchases made with a check), and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

EXHIBIT
E

## CHASE ○

| | | |
|---|---|---|
| Opening/Closing Date: | 07/14/07 - 08/13/07 | |
| Payment Due Date: | 09/07/07 | |
| Minimum Payment Due: | $915.00 | |

**CUSTOMER SERVICE**
In U.S.        1-800-945-2000
Español       1-888-446-3308
TDD          1-800-955-8060
Pay by phone 1-800-436-7958
Outside U.S. call collect
                1-302-594-8200

### VISA ACCOUNT SUMMARY          Account Number: 4417 1242 5121

| | | |
|---|---|---|
| Previous Balance | $7,975.64 | |
| Purchases, Cash, Debits | +$39.00 | |
| Finance Charges | +$205.92 | |
| New Balance | $8,220.56 | |

| | |
|---|---|
| Total Credit Line | $8,500 |
| Available Credit | $279 |
| Cash Access Line | $1,700 |
| Available for Cash | $0 |

**ACCOUNT INQUIRIES**
P.O. Box 15298
Wilmington, DE 19850-5298

**PAYMENT ADDRESS**
P.O. Box 15153
Wilmington, DE 19886-5153

**VISIT US AT:**
www.chase.com/creditcards

Your credit card account is past due. Please send payment immediately. Call 1-800-955-8030
(collect 1-302-594-8200) today.

### REWARDS SUMMARY

| | |
|---|---|
| Previous points balance | 5,257 |
| Points earned for finance charges | 206 |
| Points earned on purchases | 0 |
| Total points expired this period | 198 |
| New total points balance | 0 |
| Total points unavailable for redemption | 5,265 |

199 points to expire on statement date in September 2007

To redeem your points, call the number on the back of your card or log on to www.chase.com/creditcards

### TRANSACTIONS

| Trans Date | Reference Number | Merchant Name or Transaction Description | Amount Credit | Debit |
|---|---|---|---|---|
| 08/07 | | LATE FEE | | $39.00 |

### FINANCE CHARGES

| Category | Daily Periodic Rate 31 days in cycle | Corresp. APR | Average Daily Balance | Finance Charge Due To Periodic Rate | Transaction Fee | Accumulated Fin-Charge | FINANCE CHARGES |
|---|---|---|---|---|---|---|---|
| Purchases | V .08217% | 29.99% | $4,523.22 | $115.22 | $0.00 | $0.00 | $115.22 |
| Cash advances | V .08217% | 29.99% | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Convenience check | V .08217% | 29.99% | $3,560.84 | $90.70 | $0.00 | $0.00 | $90.70 |
| Total finance charges | | | | | | | $205.92 |

**Effective Annual Percentage Rate (APR):**          29.99%

Please see Information About Your Account section for balance computation method, grace period, and other important information.

The Corresponding APR is the rate of interest you pay when you carry a balance on any transaction category.
The Effective APR represents your total finance charges - including transaction fees
such as cash advance and balance transfer fees - expressed as a percentage.

<table>
<tr><td>EXHIBIT<br>F</td></tr>
</table>

 Simmons
210 N. University Drive #209
Coral Springs, FL 33071

August 31, 2007

Chase Bank, N.A.
PO BOX 15298
Wilmington, DE 19850-5298

Re:    4417 1242 5121 ▊▊▊
        Amount In Dispute: $8,220.56

Dear Billing Dispute Representative:

I am writing this letter in order to place your organization on notice of a billing error found within my periodic statements for the previous 60 days as well as a clarification regarding the manner in which you calculate the Annual Percentage Rate and Daily Periodic Rate.

I have reviewed the advertising that you initially sent to my residence and the interest rate you are charging me is not the interest rate included in your advertisement. Even more alarming, the use of a calculator and the explanation on your statements do not produce the amount that you claim is due.

I demand the following information be sent to my attention: the original advertising, the signed credit card application, a clarification as to how you calculated the periodic rate applied to new and previous activity, the balance on which the finance charge is computed, the amount of the finance charge, as well as the agreed upon annual percentage rate.

I have retained an attorney in this matter. They will be contacting you as well. Please place my account into dispute status and do not contact me other than through the mails with the information I am requesting.

I am also submitting an address change request. My new address is: 210 North University Drive, #209, Coral Springs, FL 33071. My new telephone number is: 954-345-7848 and my new work telephone number is: 954-752-1950.

Very truly yours,

▊▊▊ Simmons

# HESS | KENNEDY CHARTERED

ATTORNEYS AT LAW

```
+-----------+
| EXHIBIT   |
|    G      |
+-----------+
```

210 North University Drive
Second Floor
Coral Springs, FL 33071
WWW.HESSKENNEDYLAW.COM
INFO@HESSKENNEDYLAW.COM

954.345.7848 Tel
954.344.8438 Fax

August 31, 2007

Via Certified Mail

Chase Bank, N.A.
PO BOX 15298
Wilmington, DE 19850-5298

RE:    4266 8410 7509 ▇▇▇
       KAREN A. SIMMONS

Dear Supervising Attorney:

The undersigned represents the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and my client, as well as the nature, validity and scope of the alleged debt. This is a request for strict proof of your claim under commercial and general contract law principles. Please be advised that any communications that you make in this matter will become part of an administrative record, and may be used in litigation of claims related to the above listed account.

This letter constitutes a first notice of dispute with you regarding the above-listed account, and is served in response to recent communications that your company has made to my client by telephone and in writing. In the future, please restrict your communications to this office, have them be in writing, and cease and desist from any telephone communications with my client, my client's family members, my client's neighbors or workplace. Your company's continued telephonic communications with anyone other than me with respect to this matter may constitute a violation of the Fair Credit Billing Act should you continue to attempt collections on the amount in dispute, the Fair Debt Collection Practices Act, and may also violate the rules of professional responsibility, should your department employ a supervising attorney. Please be advised that I will aggressively pursue any claims that may arise in this area.

My client is disputing the accuracy and validity of the balance as reflected on your most recent statement, as well as disputing the accuracy and validity of all charges shown on all statements that my client may have ever received, as well as all statements my client may receive until this dispute is resolved. To be clear, at this point in my investigation, and based upon conversations that I have had with the Comptroller of the Currency, Federal Reserve Bank, and accounting advisors, my client is disputing the entire balance and every charge reflected on the disputed account. As such, any claim based upon an account stated is without foundation and is hereby disputed.

| New York City | South Carolina | California | Illinois | London | Cayman Islands |
|---|---|---|---|---|---|
| 1622 York Avenue | 112-A Arrow Road | 1011 Brioso Drive | 954 West Grace Street | 10th Floor, 1 Stephen Street | Walker House, 87 Mary Street |
| New York, NY 10028 | Hilton Head, SC 29938 | Costa Mesa CA 92627 | Chicago IL 60613 | London, W1TAT UK | Grand Cayman, KY1-9001 |

# HESS | KENNEDY CHARTERED

**ATTORNEYS AT LAW**

**EXHIBIT G**

210 North University Drive
Second Floor
Coral Springs, FL 33071
WWW.HESSKENNEDYLAW.COM
INFO@HESSKENNEDYLAW.COM

954.345.7848 Tel
954.344.8438 Fax

In order to determine the nature and character of the alleged debt relationship between you and my client, I will require strict verification, through the presentation of certified documentary evidence showing the factual basis and legal standing for your Company's claim for payment of the alleged debt that is disclosed herein. Verification is defined as: Confirmation of correctness, truth or authenticity, by affidavit, oath or deposition. Affidavit of truth of matter stated and object of verification is to assure good faith in averments or statements of party; sworn or equivalent confirmation of truth; and in accounting, the process of substantiating entries in books of account.

Specifically, in order to ascertain the validity and legal sufficiency of your claim, I am demanding the following:

1. Validation of your Company's right to collect the disputed debt set forth above, by furnishing verified copies of any and all agreements governing the assignment, novation, or transfer of rights, and/or the like, and state whether your Company is the current owner, assignee, holder, or holder in due course of the above referenced account, with evidence to support said statements.
2. Validation of the legal sufficiency of your claim regarding the disputed debt by furnishing verified copies of all relevant commercial instruments and/or contracts containing my client's wet ink signature, and the evidence of any exchange of a benefit or detriment; and/or the series of external acts giving the objective semblance of agreement; and/or otherwise between your Company and my client that you rely upon in advancing your Company's claim.
3. Please provide me with bona fide copies of the accounting transaction ledger that demonstrates how the money in the disputed account was originated. The documentation and evidence of the actual "account transaction ledger" are of the utmost importance. Your failure to provide them will be deemed to be substantial noncompliance with this request. This evidence should include any transfer of cash or cash equivalents to any acquiring bank, merchant, or other third party.
4. Certified copies of any insurance policies related to the disputed account, contract, note or other instrument.
5. Any source of any cash or cash equivalent you and/or claimant claim was paid to my client and/or on my client's behalf, including, but not limited to, all accounts from which the cash or cash equivalents originated and/or passed through.
6. Certified Public Accountant audit reports of you and/or claimant for the disputed account for the period during which the claim existed, including any and all reports prepared for compliance with the requirements of the Sarbanes-Oxley Act of 2002.
7. If you claim to be the assignee debt collector for a particular creditor, provide proof of a valid license and bond to engage in this particular collection activity in this state. In the alternative, if you claim to be employees of the corporate creditor, or original creditor, please provide a statement indicating as such.
8. If the claim is asserted through an assignment, provide an authenticated executed copy of that agreement.

New York City
1622 York Avenue
New York, NY 10028

South Carolina
112-A Arrow Road
Hilton Head, SC 29938

California
1011 Brioso Drive
Costa Mesa CA 92627

Illinois
954 West Grace Street
Chicago IL 60613

London
10th Floor, 1 Stephen Street
London, W1TAT UK

Cayman Islands
Walker House, 87 Mary Street
Grand Cayman, KY1-9001

# HESS | KENNEDY CHARTERED

**ATTORNEYS AT LAW**

> **EXHIBIT**
> **G**

210 North University Drive
Second Floor
Coral Springs, FL 33071
WWW.HESSKENNEDYLAW.COM
INFO@HESSKENNEDYLAW.COM

954.345.7848 Tel
954.344.8438 Fax

9. Certification that the terms of §326 of the U.S.A. Patriot Act have been complied with respect to the verification of the identity of my client as the account holder related to the above listed account.

The above records will allow me to effectively understand the nature of the transactions upon which you base your claim. Please do not misinterpret this request with a request for copies of any billing statements or standard cardholder agreements. Those documents will not satisfy my need for verification of your claims by authenticated documentation and affidavit.

I have also been advised that there may be legitimate claims against you for credit defamation, breach of warranty or contract, fraudulent billing, unfair dealing and/or deceptive and misleading advertising or business practices. I may also assert claims ob behalf of my client for violations of the Fair Credit Billing Act, The Truth in Lending Act, Fair Debt Collection Practices Act or the state versions of these statutes under the consumer protection provisions.

Unless and until the above listed information is provided, there can be no "default" on this account. Further, this account is not stated, and I hereby specifically rebut any presumption that this account has been stated. Absent your providing the above-listed documentation, validation and verification, the remedy I seek is the complete elimination and/or discharge of the entire balance of the account referenced above, and the complete removal of my client's name from your records. I also request, a zero balance due statement showing that no further monies are owed and no balance is due.

Your failure to satisfy this dispute and request within the requirements of federal and state commercial and collections law will be construed as your absolute waiver of any and all claims against my client, and your tacit agreement to compensate my client for costs and attorneys' fees. I expect your good faith reply to include all of the records and information identified herein, within thirty (30) days. If you need more time, please notify me within thirty (30) days and I will allow you an additional thirty (30) days before considering your failure to answer a default. You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under 18 USC §1341.

The above does not constitute a complete identification of my client's rights, and all are hereby reserved.

Sincerely yours,

**ATTORNEY FOR THE FIRM**
**HESS KENNEDY COMPANY**

| New York City | South Carolina | California | Illinois | London | Cayman Islands |
| 1622 York Avenue | 112-A Arrow Road | 1011 Brioso Drive | 954 West Grace Street | 10th Floor, 1 Stephen Street | Walker House, 87 Mary Street |
| New York, NY 10028 | Hilton Head, SC 29938 | Costa Mesa CA 92627 | Chicago IL 60613 | London, W1TAT UK | Grand Cayman, KY1-9001 |

# HESS | KENNEDY CHARTERED

**ATTORNEYS AT LAW**

210 North University Drive
Second Floor
Coral Springs, FL 33071
WWW.HESSKENNEDYLAW.COM
INFO@HESSKENNEDYLAW.COM

954.345.7848 Tel
954.344.8438 Fax

┌─────────────────┐
│    **EXHIBIT**      │
│       **H**         │
└─────────────────┘

August 31, 2007

Via First Class Mail

Supervising Attorney
**Chase Bank, N.A.**
PO BOX 15298
WILMINGTON, DE 19850-5298

Re:    4266 8410 7509 ▮▮▮▮
            ▮▮▮▮▮▮ SIMMONS

Dear Supervising Attorney:

This firm has been retained by the above named consumer. The purpose of this letter is to determine the nature of the relationship between your company and our client. Prior to our client retaining this firm, our client sent your organization a billing dispute notice challenging various charges that have began appearing on the periodic statements generated by your firm.

As of today's date, our client informs us that you have failed to acknowledge the notice and have continued collection activity. We ask that you cease communications with our client and direct any and all communications to our firm.

In order to properly analyze the nature and character of the relationship between your firm and our client, we request that you allow our firm to review the documents establishing the alleged liability. We request the original advertising presented to our client prior to consummation of the transaction as well as the signed credit application. In addition, please forward the last 60 days worth of periodic statements that attempt to form the basis of an account stated. This information can be forwarded to any lawyer or Nonlawyer employed by our firm.

Finally, we request that you place the account into "disputed status" and comply with the provisions of the Fair Credit Billing Act in so far as they relate to collection activities, credit reporting, and the institution of legal action.

Very truly yours,

**HESS KENNEDY CO. CHARTERED**

| New York City | South Carolina | California | Illinois | London | Cayman Islands |
|---|---|---|---|---|---|
| 1622 York Avenue | 112-A Arrow Road | 1011 Brioso Drive | 954 West Grace Street | 10th Floor, 1 Stephen Street | Walker House, 87 Mary Street |
| New York, NY 10028 | Hilton Head, SC 29938 | Costa Mesa CA 92627 | Chicago IL 60613 | London, W1TAT UK | Grand Cayman, KY1-9001 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA, N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| HESS KENNEDY CHARTERED, LLC; | : | CASE NO.: |
| LAURA L. HESS; EDWARD T. KENNEDY; | : | |
| LAURA HESS & ASSOCIATES, P.A.; | : | |
| HESS KENNEDY HOLDINGS, LTD.; | : | |
| HESS KENNEDY COMPANY CHARTERED | : | |
| BWI; THE CONSUMER LAW CENTER, LLC; | : | |
| THE CONSUMER LAW CENTER OF | : | |
| DELRAY BEACH, LLC; THE CONSUMER | : | |
| LAW CENTER OF BOCA RATON, INC.; | : | |
| THE CAMPOS CHARTERED LAW FIRM; | : | |
| JEFF CAMPOS, P.A.; JEFFREY S. CAMPOS; | : | |
| LEGAL DEBT CENTER, LLC; | : | |
| JOHN DOES 1-50, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, CHASE BANK USA, N.A. ("Chase"), for its Complaint against

Defendants HESS KENNEDY CHARTERED, LLC, LAURA L. HESS, EDWARD T.

KENNEDY, LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY HOLDINGS, LTD.,

HESS KENNEDY COMPANY CHARTERED BWI, THE CONSUMER LAW CENTER, LLC,

THE CONSUMER LAW CENTER OF DELRAY BEACH, LLC, THE CONSUMER LAW

CENTER OF BOCA RATON, INC., THE CAMPOS CHARTERED LAW FIRM, JEFF

CAMPOS, P.A., JEFFREY S. CAMPOS, LEGAL DEBT CENTER, LLC and JOHN DOES 1-

50 (collectively "defendants"), alleges as follows:

EXHIBIT
J

**INTRODUCTION**

1.        More than 3,800 Chase cardmembers have failed to pay more than $25 million dollars of legitimate debt owed to Chase under their credit card accounts due to an unlawful debt elimination scheme and other related schemes devised and operated by defendants and others acting in concert with them. Defendants' unlawful schemes are the subject of lawsuits brought earlier this month by the Attorneys General of Florida and North Carolina alleging unfair and deceptive business practices and of an on-going investigation by the Attorney General of West Virginia.

2.        Under the guise of providing "legal services," "debt elimination services" and/or "debt management services" for which Chase cardmembers are charged substantial fees, defendants advise, encourage and enable these cardmembers to initiate, allegedly under the Fair Credit Billing Act ("FCBA"), 15 USC §§1666 *et seq.*, "billing error disputes" against Chase which defendants know to be without any basis in law or fact. Defendants mislead cardmembers into believing that under the FCBA they can validly challenge their entire Chase credit card account balances that have accrued over years of use and can legally withhold any and all payments until Chase investigates and resolves the purported "billing error disputes" to their satisfaction. However, as defendants know, Chase has no obligation to deem these cardmembers' account balances eliminated based upon these sham billing error disputes. Even in the case of valid billing error disputes (which these are not), Chase is obligated only to conduct a timely and reasonable investigation to determine, to its satisfaction, whether a billing error occurred.

3.        In furtherance of this scheme, defendants, *inter alia*, fabricate legally insufficient form letters which they and Chase cardmembers send to Chase and cause Chase cardmembers to assert frivolous claims and counterclaims against Chase in court and in

arbitrations commenced by Chase to collect on delinquent credit card balances owed by the cardmembers. At or around the time these letters are delivered to Chase, the cardmembers who have paid defendants cease making payments on their account balances, presumably at defendants' direction. Defendants' conduct is entirely in bad faith and serves no legitimate purpose. Defendants' ulterior goals are to extract fees from cardmembers who should be paying the money to Chase to satisfy their debts and to maliciously harass Chase in an improper (albeit unsuccessful) attempt to coerce the elimination of their clients' legitimate debts.

4.    By their unlawful conduct, defendants are improperly interfering with Chase's contractual relations with its cardmembers, abusing civil process, violating Delaware statutory law and unlawfully conspiring, entitling Chase to declaratory and injunctive relief, compensatory and punitive damages and the recovery of its attorneys' fees and costs.

5.    Pursuant to 18 U.S.C. §1344, one who knowingly executes or attempts to execute a scheme or artifice "to defraud a financial institution" or "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises" is punishable by a fine of not more than $1 million or imprisonment for not more than 30 years, or both. Among other things, in some instances Chase's cardmembers pay defendants for their "services" using Chase credit cards. Defendants accept such payments knowing that they will advise the cardmembers that they do not have to make any payments to Chase because of the alleged billing error disputes which defendants know to be sham.

## PARTIES

6.    Plaintiff Chase is a national banking association with its main office in Newark, Delaware. Chase is also the successor to Bank One, Delaware, N.A., a national banking association, by merger on October 1, 2004.

7.      Defendant HESS KENNEDY CHARTERED, LLC ("Hess Kennedy")

is a Florida limited liability company with its principal place of business at 210 N. University

Drive, Suite 900, Coral Springs, Florida 33071. The managing member of Hess Kennedy is

Hess Kennedy Company Chartered BWI, Walker House, 87 Mary Street, Georgetown, Grand

Cayman, KY1-9001, Cayman Islands. Prior to August 31, 2007, Hess Kennedy was organized

as a corporation known as "Hess Kennedy Company Chartered" and its director was Laura L.

Hess. This organizational change occurred shortly after attorneys for Chase met with certain of

the defendants to demand that they cease their unlawful activities.

8.      Defendant LAURA L. HESS ("Hess") is a citizen of the state of

Florida with an address at 210 N. University Drive, Suite 900, Coral Springs, Florida 33071.

9.      Defendant EDWARD T. KENNEDY ("Kennedy") is a citizen of the

state of Florida with an address at 210 N. University Drive, Suite 900, Coral Springs, Florida

33071. Upon information and belief, Kennedy may also use the aliases "Edward Cherry" or

"Edward Kennedy Cherry."

10.      Defendant LAURA HESS & ASSOCIATES, P.A. ("LH&A") is a

Florida corporation with its principal place of business at 210 N. University Drive, Suite 900,

Coral Springs, Florida 33071.

11.      Defendant HESS KENNEDY HOLDINGS, LTD. ("HKH") is a

Florida limited liability company with its principal place of business at 210 N. University Drive,

Suite 209, Coral Springs, Florida 33071. The managing member of HKH is Hess Kennedy

Company Chartered BWI, Walker House, 87 Mary Street, Georgetown, Grand Cayman, KY1-

9001, Cayman Islands. Prior to August 31, 2007, the managing members of HKH were Laura

Hess, Inc., Jeff Campos, P.A., David Kleiman, P.A. and Edward Cherry. This organizational

4

change occurred shortly after attorneys for Chase met with certain of the defendants to demand that they cease their unlawful activities.

12.     Defendant HESS KENNEDY COMPANY CHARTERED BWI ("BWI") is a corporation with its principal place of business at Walker House, 87 Mary Street, Georgetown, Grand Cayman, KY1-9001, Cayman Islands.

13.     Defendant THE CONSUMER LAW CENTER, LLC ("CLC") is a Florida limited liability company with its principal place of business at 210 N. University Drive, Suite 209, Coral Springs, Florida 33071. The manager of CLC is The Consumer Law Center Partners, 210 North University Drive, Suite 901, Coral Springs, Florida 33071. Prior to October 4, 2007, the managing members of CLC were Laura Hess, Inc., Jeff Campos, P.A., David Kleiman, P.A., David Lipman, P.A., Lee Stein, Esq., Mavrides, Moyal & Associates, LLP, Edward Cherry and Walter Chen. This organizational change occurred shortly after attorneys for Chase met with certain of the defendants to demand that they cease their unlawful activities.

14.     Defendant THE CONSUMER LAW CENTER OF DELRAY BEACH, FLORIDA, LLC ("CLCDB") is a Florida limited liability company with its principal place of business at 14590 S. Military Trail, E2, Delray Beach, Florida 33484. The managing member of CLCDB is "Jeff Gombos," 14590 S. Military Trail, E2, Delray Beach, Florida 33484.

15.     Defendant THE CONSUMER LAW CENTER OF BOCA RATON, INC. ("CLCBR") is a Florida corporation with its principal place of business at 160 West Camino Real, 240, Boca Raton, Florida 33432.

16.     Defendant THE CAMPOS CHARTERED LAW FIRM ("CCLF") is a Florida corporation with its principal place of business at 3200 N. University Drive, 210, Coral Springs, Florida 33065.

5

17.     Defendant JEFF CAMPOS, P.A. ("JCPA") is a Florida corporation with its principal place of business at 3200 North University Drive, 210, Coral Springs, Florida 33065.

18.     Defendant JEFFREY S. CAMPOS ("Campos") is citizen of the state of Florida with an address at 10224 Vestal Court, Coral Springs, Florida 33071.  Campos has also signed letters on the stationary or letterhead of a purported entity called "The Consumer Protection Law Center."  Chase has found no legal entity formed or incorporated under that name.

19.     Defendant LEGAL DEBT CENTER, LLC. ("LDC") is a Florida limited liability company with its principal place of business at 210 N. University Drive, #905, Coral Springs, Florida 33071.  The managing member of LDC is Edward Cherry, 210 N. University Drive, #905, Coral Springs, Florida 33071.  LDC also conducts business at 210 N. University Drive, Suite 900, Coral Springs, Florida 33071.

20.     Defendants JOHN DOES 1-50 are persons and entities, presently unknown, who have conspired with and/or aided and abetted the unlawful activities of defendants.

21.     Upon information and belief, defendants Hess and Hess Kennedy control, orchestrate, direct and/or participate in the unlawful activities of the other defendants as described herein as well as the activities of the so-called "National Network of Consumer Attorneys" or "The Attorney Network" whose members are hand-picked by Hess and Hess Kennedy and promise to help consumers who are "drowning in debt" to "dramatically lower or eliminate your debt" by using the sham letters and other devices devised by defendants.  (Exhibit

6

A).[1] Defendants may also conduct their unlawful activities under the guise of other names and

aliases, including but not limited to "The Consumer Protection Law Center," "Hess-Kennedy &

Company, Inc." and "Hess Kennedy & Company."

22.    Each of the defendants acts and has acted as an agent for or alter ego

of the other defendants in carrying out the schemes described herein, and each is liable for the

unlawful conduct of the other defendants.

## JURISDICTION AND VENUE

23.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332

because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is

between citizens of different states.

24.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because

a substantial part of the events, acts and omissions giving rise to the claims herein have taken

place in this District.

## FACTS

25.    In recent years, fraudulent debt elimination schemes have flourished

throughout the country, spread by the Internet and other mass-marketing routes. Promoters of

these schemes generally claim that, for an up-front fee, they will eliminate or substantially

reduce a consumer's debt obligations to creditors without any further material payment to the

consumer's creditors. These schemes, however, have no valid basis in either law or fact, fail to

provide any of the promised relief to the consumers who fall victim to them and ultimately result

in consumers who are deeper in debt with severely damaged credit scores. These schemes have

become so varied and prevalent that the federal Office of the Comptroller of the Currency and

---

[1]    In the attached Exhibits, personal cardmember information has been redacted for
privacy reasons.

7

the Federal Deposit Insurance Corporation now warn consumers about such schemes on their

websites and through a formally-issued Alert to other regulators and banks. (Exhibit B).

26.    Defendants are the source of one or more fictitious debt elimination

schemes. In addition to the conduct alleged herein: (a) the Florida Attorney General's Office

sued Laura L. Hess, Esq., Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC and The

Consumer Law Center, LLC on February 21, 2008 for violating state consumer protection laws

in connection with their debt elimination and/or debt management schemes; (b) the North

Carolina Attorney General's Office sued Hess Kennedy Chartered, LLC, The Consumer Law

Center, LLC, Laura L. Hess and Edward Cherry on February 11, 2008 for engaging in unfair and

deceptive practices and has obtained temporary and/or preliminary injunctions against their

unlawful activities; and (c) the West Virginia Attorney General's Office is reportedly

investigating Hess Kennedy for deceptive and unfair practices in debt management services.

(Collectively Exhibit C). Moreover, according to its website, the Better Business Bureau of

Southeast Florida received 138 complaints from consumers concerning Hess Kennedy, as a

result of which it assigned the company a grade of "F," meaning that: "We strongly question the

company's reliability for reasons such as that they have failed to respond to complaints, their

advertising is grossly misleading, they are not in compliance with the law's licensing or

registration requirements, their complaints contain especially serious allegations, or the

company's industry is known for its fraudulent business practices." (Exhibit D). Other Internet

websites reveal strong consumer dissatisfaction with and complaints concerning Hess Kennedy.

(Exhibit E).

27.    On or about February 11, 2008, The Florida Bar filed a Petition for

Contempt ("Petition") against defendant Laura Hess with the Florida Supreme Court reciting that

8

(a) on January 27, 2005 the Florida Supreme Court publicly reprimanded Hess and placed her on

probation for three years and (b) Hess had eight new complaints filed with The Florida Bar

during her probationary period which resulted in a finding of probable cause of misconduct. The

Petition asks the Florida Supreme Court to suspend Hess from the practice of law for 91 days.

(Exhibit F). All but one of the complaints referenced in the Petition involved consumers who

alleged that Hess, Hess Kennedy and/or other defendants were paid fees by the consumers but

failed to deliver promised services involving the consolidation, reduction, management and/or

elimination of credit card and other debts owed to creditors including Chase.

28.     Hess Kennedy maintains a website, www.hesskennedycompany.com,

which promotes and solicits clients for the debt elimination scheme and other related schemes

described herein. The website states in pertinent part:

> Hess/Kennedy Chartered is a professional association. Managing
> Partner of Hess/Kennedy Chartered is Laura Hess. She is admitted
> for practice in Florida only. For cases outside of Florida
> Hess/Kennedy Chartered lawyers will request assistance from and
> associate with one of our hand-picked affiliate attorneys located
> throughout the country.

(Exhibit G).

29.     Consumers are asked to supply their names, addresses and other

information over the Internet and are told that a Hess Kennedy representative will contact them

promptly. The Hess Kennedy website contains a "drop-down menu" listing all of the 50 states,

thereby permitting, and indeed inviting, consumers from every state to supply their contact

information and ultimately seek Hess Kennedy's services. Delaware is expressly included on

this list of states. (*See* Exhibit G).

30.     The terms of Chase's contracts with its cardmembers are set forth in

written Cardmember Agreements, under which Chase extends credit privileges to cardmembers,

9

and cardmembers agree to make payments to Chase on the balances owed. The Cardmember Agreements state that they are entered into in Delaware and are governed by Delaware law. (A representative Cardmember Agreement is attached as Exhibit H).

      31.    Defendants have interfered and continue to interfere with the contractual relations between Chase and its cardmembers and have engaged in tortious conduct by soliciting Chase cardmembers to commence and pursue frivolous and legally invalid billing error disputes challenging the enforceability of their credit card debt to Chase.

      32.    Defendants mislead cardmembers into believing that, without even conducting so much as a cursory review of their account agreements and credit card statements, the cardmembers can lawfully challenge their entire credit card debts owed to Chase and accrued over years of use by sending form letters to Chase which purport to commence a "billing error dispute" that will trigger Chase's obligations under the FCBA to investigate the alleged dispute, provide documentation requested by the cardmember and refrain from taking action to collect the disputed amount. *See* 15 U.S.C. §§1666(a), (c), (d).

      33.    To further their scheme, defendants advise Chase's cardmembers that by retaining defendants for a fee and sending Chase form letters supplied by defendants, or authorizing defendants themselves to send form letters to Chase, the cardmembers can eliminate or substantially reduce their entire credit card debts. Defendants' letters -- including those either provided to cardmembers or sent by defendants on their behalf -- are directed and mailed to Chase in Delaware.

      34.    The form letters used by defendants do not vary in any material respect from person to person or account to account, but (excluding name, address, account number, statement date and total account balance) follow essentially identical formats. The form letters

do not reflect any individualized, fact-based claims specific to a given credit card account or

credit card customer. Even the same typographical error ("I may also assert claims ob [sic]

behalf of my client") appears in each letter. The form letters challenge the customer's entire

then-existing account balance under the guise of a "billing error". The form letters request

numerous boilerplate categories of legally irrelevant documentation and threaten a laundry list of

litigation against Chase if it continues its efforts to collect the balance due on the credit card

account. Examples of form letters used by defendants are attached as Exhibits I, J, K and L.

     35.     Defendants' form letters, on their face, do not constitute valid, proper

or legally sufficient written notices of billing errors under Section 1666 of the FCBA. The letters

do not allege any type of billing error, as defined in the FCBA, much less identify the reasons for

the belief that such a billing error exists, or even the date and the amount of the error. In fact, the

letters are extremely amorphous, general and vague. Moreover, under the FCBA a creditor's

obligation to investigate a disputed billing statement is triggered only when the consumer has

sent a written notice within 60 days of the creditor's transmission of the first statement

containing the alleged error. 15 U.S.C. §1666(a). Nevertheless, defendants' form letters

challenge the cardmember's entire account balance, regardless of the period of time over which

it has accrued. Thus, the form letters on their face are not timely under the FCBA and plainly

invalid. A typical form letter sent by Hess Kennedy to Chase states in pertinent part:

> My client is disputing the accuracy and validity of the balance as
> reflected on your most recent statement, as well as disputing the
> accuracy and validity of all charges shown on all statements that
> my client may have ever received, as well as all statements that my
> client may receive until this dispute is resolved. To be clear, at this
> point in my investigation, and based upon conversations that I have
> had with the Comptroller of the Currency, Federal Reserve Bank,
> and accounting advisors, my client is disputing the entire balance
> and every charge reflected on the disputed account.

       *        *        *

11

> [T]he remedy I seek is the complete elimination and/or discharge
> of the entire balance of the account referenced above, and the
> complete removal of my client's name from your records. I also
> request a zero balance due statement showing that no further
> monies are owed and no balance is due.

*See* Exhibit I. In addition, some form letters are unsigned or have electronic signatures that do

not match up with the names at the top of the letters. Because defendants' form letters are

legally deficient on their face and do not state proper, valid or timely billing errors, they do not

trigger Chase's billing error obligations under the FCBA and do not alter the cardmembers'

obligations to repay the balances owed on their respective credit card accounts.

36.    In addition, in many instances in which Chase has commenced

arbitration proceedings against cardmembers to recover on delinquent account balances, as

authorized by the Cardmember Agreements, defendants have directly or indirectly interposed

frivolous and invalid counterclaims and other defenses to Chase's claims for payment. The

responses and counterclaims interposed in different arbitrations are materially the same and

apparently reflect forms used by defendants solely to delay and obstruct the arbitration

proceedings and make them more expensive for Chase. Illustrative of the types of "defenses"

raised by or on behalf of the cardmembers in these arbitrations are the following:

> In this case, the CLAIMANT [Chase] does not allege that it
> extended anything of value, nor conferred anything of value on the
> RESPONDENT [cardmember]. Given a fundamental
> understanding of Modern Money Mechanics and GAAP,
> CLAIMANT, created the money and credit upon its own books by
> bookkeeping entry as the consideration for RESPONDENT'S
> alleged "promise to pay." Each time RESPONDENT allegedly
> used the credit card account, the banks [sic] assets were expanded,
> not contracted. Thus, any failure to "pay as agreed" caused no
> damage to the Plaintiff.

Exhibit M.

> As its thirteenth affirmative defense, the Respondent shows that
> when a credit card account is established in the name of a holder of

12

a credit card, no United States currency (Federal Reserve Notes)
are lent or transferred to the holder of the credit card, but instead
the card holder is given access to an electronic bookkeeping ledger
wherein the issuing bank makes credits and debit entries in equal
amounts in accordance with General Accepted Accounting
Principles. Accordingly, no consideration is given and the contract
fails for lack of consideration.

Exhibit N. This nonsensical gibberish -- referred to in case law as "vapor money" or "no money

lent" theories -- does not assert a valid defense and is purely dilatory in nature.

37.     Some Chase cardmembers represented by Hess and Hess Kennedy

have commenced lawsuits against Chase (and other creditors) seeking actual and statutory

damages under the FCBA based upon sham billing error disputes. (Exhibit O). In these lawsuits

defendants fabricated frivolous claims under the FCBA in an attempt to coerce the elimination or

reduction of debts for their clients. These lawsuits were brought in bad faith and for the purpose

of maliciously harassing Chase.

38.     Defendants are also apparently operating a sham debt consolidation

scheme. Under this scheme a cardmember provides money to defendants, who are supposed to

make payments to his or her creditors once defendants have entered into a debt consolidation

plan with the creditors to reduce and pay off the amount owed by the cardmember. Upon

information and belief, defendants, however, are apparently retaining the cardmember's money

without making the promised arrangements for the cardmember or paying the creditors. For

example, in an arbitration which Chase commenced against one of its cardmembers, a resident of

Wilmington, Delaware, to recover amounts due on her account, the cardmember filed a

counterclaim alleging that she had not failed to pay Chase because she had been sending money

to Hess Kennedy to pay to her creditors (including Chase), and Hess Kennedy had supposedly

arranged a debt consolidation plan with said creditors. (Exhibit P). Chase, however, never

13

received any payments from Hess Kennedy on behalf of said cardmember. In fact, Defendants

never attempted to make any arrangements with Chase on the cardmember's behalf.

      39.     Defendants are brazenly taking fees from unwitting Chase

cardmembers in exchange for providing phony debt consolidation services and for

manufacturing bogus and frivolous billing error disputes against Chase under the pretense of

assisting cardmembers in asserting their rights under the FCBA, all of which knowingly

interferes with the relationship between Chase and its cardmembers. One cardmember wrote to

Chase in May 2007:

> I would like to get the matter resolved regarding the cancelled
> service through Campos Chartered Law Firm in the amount of
> $1500. They may also be known as Hess Kennedy Company, or
> even The Attorney Network. I have no trust in these companies
> and have mailed back my cancellation of service requests ....
> [T]hese companies are costing me ... time, effort and money ....

*See* Exhibit A.

      40.     In some instances Chase's cardmembers pay defendants for their

"services" using Chase credit cards. Defendants accept such payments knowing that they will

advise the cardmembers that they do not have to make any payments to Chase because the debt

will be "forgiven." These charges demonstrate that defendants are operating in concert and as a

single enterprise or scheme, in that Chase's records show one entity may bill the cardmembers

for the scheme on the cardmembers' Chase credit card accounts, while the purported "services"

are provided by a different entity.

      41.     Chase has been damaged by the unlawful conduct of defendants. As a

result of the false advice provided to Chase's cardmembers by defendants, Chase's cardmembers

have ceased making payments to Chase and have defaulted on their obligations, in breach of the

Cardmember Agreements between Chase and its cardmembers. Chase has also been forced to

14

expend substantial sums defending frivolous claims and counterclaims and other defenses in court actions and arbitrations, paying legal fees that would not have been required but for defendants' unlawful scheme. Chase has also suffered the loss of reputation and goodwill.

42. To date, Chase has received correspondence from defendants and its cardmembers for defendants' various schemes, including the billing error scheme, affecting over 3,800 accounts. These cardmembers reside in Delaware and virtually every other state, and their aggregate credit card balances exceed $25 million dollars. Moreover, at least 60 Chase cardmembers have interposed frivolous claims and counterclaims and other defenses against Chase in court actions and arbitrations.

43. Chase has demanded, in correspondence and in-person, that defendants cease their unlawful activities but defendants have failed and continued to refuse to do so.

## COUNT I

### (Declaratory and Preliminary and Permanent Injunctive Relief)

44. Chase repeats and realleges each of the foregoing allegations as though fully set forth herein.

45. The debt elimination scheme operated by defendants is unlawful because the assertions which defendants make either directly to Chase or indirectly through letters provided to Chase by its cardmembers have no basis in fact or law and do not reflect bona fide violations of the FCBA. Defendants' theories provide no legal or bona fide basis for Chase's cardmembers to cease making any payments to Chase on their account balances.

46. Chase has a substantial likelihood of success on the merits of its claims against defendants.

47. Chase is suffering and will continue to suffer immediate and irreparable harm to its business as a result of defendants' unlawful actions, in that (a) Chase is

15

being required to expend substantial time and excessive resources addressing each of these bogus

disputes and related litigations or arbitrations; (b) Chase's cardmembers have been induced to

breach their Cardmember Agreements with Chase by failing to pay balances due on their

accounts and (c) Chase is suffering harm to its goodwill and reputation.

48.   Defendants will not be irreparably harmed if injunctive relief is

granted because the conduct that Chase seeks to enjoin is unlawful.

49.   An injunction enjoining defendants from continuing their unlawful

conduct will benefit Chase's cardmembers and the public interest.  Many if not most of the

Chase cardmembers who are solicited by defendants to participate in this sham billing error

dispute scheme and other related schemes are themselves victims of defendants' unlawful

conduct.

50.   Chase has no adequate remedy at law to stop defendants from

continuing their unlawful conduct.

51.   As a result of the foregoing acts of defendants, Chase is entitled to:

(a)   Declarations that (i) the billing error disputes asserted by Chase's

cardmembers who are represented or assisted by defendants are sham and do not assert valid

billing error disputes under the terms of the FCBA or impose any duties on Chase under the

FCBA, (ii) the billing error disputes asserted by Chase's cardmembers who are represented or

assisted by defendants do not provide any legal or valid basis for these cardmembers to cease

making payments to Chase, and (iii) the claims, counterclaims and other defenses interposed

against Chase by cardmembers who are represented or assisted by defendants are frivolous and

legally insufficient to prevent Chase from collecting delinquent balances due on its credit card

accounts under the terms of the Cardmember Agreements;

16

(b)    Injunctive relief preliminarily and permanently restraining

defendants, their representatives, heirs, assigns, agents, successors, and related entities, and those

acting in concert or participating with any of the foregoing from: (i) assisting Chase's

cardmembers in asserting bogus billing error disputes against Chase or representing them in such

disputes; (ii) assisting Chase's cardmembers in asserting sham or frivolous claims, counterclaims

or other defenses against Chase in any court or arbitration forum or representing them in such

disputes; (iii) improperly interfering in any way with any of Chase's relationships with its

cardmembers under the Cardmember Agreements, including, but not limited to, interfering with

Chase's right to receive payments from its cardmembers; (iv) advertising unlawful debt

elimination services, and any related services, in print, on the Internet, through e-mail or through

any other form of media or other communications, and from authorizing or allowing others to do

so on their behalf; (v) destroying any documents or data retention devices containing information

related to Chase and/or its cardmembers; and (vi) assisting, advising, aiding and abetting or

otherwise indirectly participating in any of the foregoing; and

(c)    Permanent injunctive relief requiring defendants to notify each

cardmember whom defendants have previously advised, assisted or represented that (i) billing

error disputes asserted against Chase do not state proper, valid or timely billing errors under the

FCBA and do not alter the cardmembers' obligations to repay the balances owed on their

respective credit card accounts under the terms of their Cardmember Agreements and (ii) claims,

counterclaims and other defenses asserted against Chase by cardmembers represented or assisted

by defendants are not legally sufficient and do not alter the cardmembers' obligations to repay

the balances owed on their respective credit card accounts under the terms of their Cardmember

Agreements.

17

52.      Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## COUNT II

### (Tortious Interference with Contractual Relations)

53.      Chase repeats and realleges each of the allegations contained in paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.      Pursuant to its written Cardmember Agreements, Chase extends credit privileges to cardmembers, and the cardmembers agree to make payments on the balances owed to Chase.

55.      Defendants at all time had knowledge of the existence of the Cardmember Agreements which exist between Chase and its cardmembers.

56.      Defendants knowingly, intentionally and improperly, without privilege or justification, have interfered with and disrupted the contractual relationships between Chase and its cardmembers by soliciting cardmembers to assert sham billing error disputes against Chase and to stop making payments to Chase on their account balances. By stopping payment on their account balances, Chase's cardmembers have breached their Cardmember Agreements as a result of, and in reliance on, defendants' unlawful actions. Defendants have further interfered with Chase's right to receive payments from its cardmembers, as defendants have taken funds from Chase's cardmembers which these cardmembers intended to be used to pay Chase, but failed to make the arrangements and payments that defendants promised they would.

57.      Defendants' wrongful and intentional interference with Chase's cardmembers has diminished the payments Chase receives from its cardmembers and has required Chase to defend against frivolous litigation initiated by cardmembers and frivolous

18

DMEAST #9990528 v1

counterclaims and other defenses asserted by cardmembers in collection actions commenced by

Chase. The unlawful activities of defendants have caused a decrease in the market value of the

credit card accounts affected by defendants' improper and unjustified interference.

   58.  As a proximate result of the foregoing intentional interference by

defendants, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

   59.  The actions of defendants were fraudulent, malicious, reckless and/or

oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for

punitive and exemplary damages in an amount to be proven at trial.

   60.  Chase has been required to retain the services of attorneys to prosecute

this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred

herein.

   61.  Chase is further entitled to declaratory and injunctive relief to prevent

defendants from continuing their unlawful conduct.

## COUNT III

### (Abuse of Process)

   62.  Chase repeats and realleges each of the allegations contained in

paragraphs 1 through 61 of this Complaint as though fully set forth herein.

   63.  Defendants have encouraged and enabled Chase's cardmembers to

assert sham billing error disputes, claims and counterclaims and other defenses against Chase to

avoid payment of account balances lawfully due Chase. Defendants' actions had and have no

legitimate purpose, but rather were and are being taken for the ulterior purposes of furthering

defendants' unlawful schemes and extracting fees from the cardmembers in exchange for bogus

"legal" advice.

64.     Defendants' bad faith conduct has spawned frivolous litigation by cardmembers and caused delay in legitimate collection actions commenced by Chase to recover delinquent account balances owed to Chase. Defendants have unreasonably and vexatiously multiplied the proceedings in these actions by their dilatory unlawful conduct.

65.     As a proximate result of the foregoing abuse of process, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

66.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

67.     Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

68.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT IV

### (Delaware Deceptive Trade Practices Act)

69.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.     The Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. Code §§2531 *et seq.*, was enacted to "address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 65 (Del. 1993).

71.     Defendants have violated the DTPA in the course of their business, vocation or occupation by, *inter alia*:

20

(5) Represent[ing] that [their] ... services have ... characteristics ..., uses, [or] benefits ... that they do not have ....;

*          *          *

(7) Represent[ing] that [their] ... services are of a particular standard, quality, or grade ....;

(8) Disparag[ing] the ... services, or business of another [Chase] by false or misleading representation of fact; [and]

(9) Advertis[ing] ... services with intent not to sell them as advertised.

6 Del. Code § 2532(a) (v), (vii)-(ix).

72.    Acts by defendants which caused the violation of the DTPA took place in and/or were directed to the state of Delaware. The Chase credit card accounts in question are opened in and maintained by Chase in Delaware, where Chase has its main office, and defendants' letters are directed to Chase in Delaware.

73.    Defendants' persistent pattern of conduct has grossly interfered with the promotion and conduct of Chase's business, namely the management of its consumer credit card business pursuant to its Cardmember Agreements with its cardmembers.

74.    As a proximate result of the foregoing violations of the DTPA, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

75.    The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

76.    Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

21

77.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT V

### (Delaware Consumer Fraud Act)

78.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79.     The Delaware Consumer Fraud Act ("CFA"), 6 Del. Code §§2511 *et seq.*, was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices." 6 Del. Code §2512. It is intended to remedy "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby ...." 6 Del. Code §2513(a). The statute's definition of "merchandise" includes "services." *Id.* §2511(2).

80.     In carrying out the aforesaid unlawful schemes, defendants have engaged in unfair, deceptive and fraudulent conduct directed to Chase's cardmembers and to Chase itself.

81.     Defendants' taking of cardmembers' money under false pretenses makes Chase a victim of the fraud and deception through its inability to collect on valid account balances due Chase.

82.     Upon information and belief, defendants Hess, Kennedy and Campos actively and directly participated in and had control over the deceptive and unfair practices of the other defendants and had knowledge and awareness of the deceptive and unfair conduct. Among

22

other things, said defendants drafted and/or disseminated documents to Chase cardmembers which were known by them not to raise legitimate billing error disputes against Chase under the FCBA.

83.     As a proximate result of the foregoing violations of the CFA, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

84.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

85.     Chase is entitled to an award of costs incurred herein.

86.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## COUNT VI

### (Conspiracy)

87.     Chase repeats and realleges each of the allegations contained in paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.     In connection with the unlawful activities described herein, defendants knowingly, willfully, or tacitly and recklessly conspired and agreed among themselves to engage in one or more unlawful schemes designed and intended to damage Chase. In furtherance of the conspiracy, defendants, *inter alia*, drafted and/or disseminated documents to Chase cardmembers which were known by them not to raise legitimate billing error disputes against Chase under the FCBA.

89.     Hess Kennedy has taken payment from Chase's cardmembers using Chase credit cards. The charges were billed to CCLF, although Hess Kennedy was the name on the corresponding papers and provided the purported "services" related to the scheme.

23

Defendants take payment and provide services interchangeably and in common, further evidencing the unlawful conspiracy between and among them.

90.     As a proximate result of this wrongful civil conspiracy by and among defendants, Chase has suffered, and will continue to suffer, damages in excess of $75,000.

91.     The actions of defendants were fraudulent, malicious, reckless and/or oppressive and were undertaken to injure Chase. Accordingly, defendants are liable to Chase for punitive and exemplary damages in an amount to be proven at trial.

92.     Chase has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

93.     Chase is further entitled to declaratory and injunctive relief to prevent defendants from continuing their unlawful conduct.

## Prayer for Relief

WHEREFORE, Chase prays for relief as follows:

1.     For declaratory and preliminary and permanent injunctive relief against defendants, as described above;

2.     For damages against defendants in an amount in excess of $75,000;

3.     For punitive damages against defendants sufficient to deter defendants from engaging in similar wrongful and outrageous conduct;

4.     For an award of its reasonable attorneys' fees and costs of suit incurred herein;

5.     For an award of interest on such sums at the highest rate allowed pursuant to law; and

24

6. For such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 29, 2008
      Wilmington, Delaware

Respectfully submitted,

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR ANDREWS
  & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
Email: moskowschnollb@ballardspahr.com

Attorneys for Plaintiff
Chase Bank USA, N.A.

OF COUNSEL:

David H. Pittinsky, Esquire
Alan S. Kaplinsky, Esquire
Mark J. Levin, Esquire
BALLARD SPAHR ANDREWS
  & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

25

DMEAST #9990528 v1

# CIVIL COVER SHEET

## 08-60321

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I(a) PLAINTIFFS**

Hess Kennedy Chartered, LLc; Laura L. Hess; Edward T. Kennedy; Hess Kennedy Holdings, LTD.; Laura Hess & Associates, P.A.; The Consumer Law Center, LLC; The Campos Chartered Law Firm; Jeff Campos, P.A.; Jeffrey S. Campos; Legal Debt Center, LLC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES)

BROWARD COUNTY

**DEFENDANTS** CIV-DIMITROULEAS

Chase Bank USA, N.A.

/ROSENBAUM

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
ROTHSTEIN ROSENFELDT ADLER - 401 East Las Olas Blvd. Ste. 1650, Fort Lauderdale, FL 33301; Tel: 954-522-3456; Fax: 954-527-8663

ATTORNEYS (IF KNOWN)

0:08cv 60321 wpd/RSR

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporation and Principal Place of Business in This State | ☐ 1 | ☐ 1 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporation and Principal Place of Business in Another State | ☐ 2 | ☐ 2 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 3 | ☐ 3 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) **Family Medical Leave Act of 1993, 29 U.S.C. §2601, et seq.,**

**IVa.** __3__ days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Pers Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability ☐ 365 Personal Injury-Prod. Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability **PERSONAL PROPERTY** | ☐ 640 R R & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl Veterans) B | ☐ 345 Marine Product Liability ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities /Commodities /Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting **B PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations ☐ 530 General* | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26b USC 7609 | ☐ 900 Appeal of Fee Determination under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare ☐ 535 Death Penalty |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights ☐ 540 Mandamus & Other* |  |  | ☐ 890 Other Statutory Actions* *A or B |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights *A or B |  |  |  |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1. Original Proceeding ☐ 2 Removed from State Court ☐ 3. Remanded from Appellate Court ☐ 4 Refiled ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ACTION No UNDER F.R.C.P.23 **DEMAND** $ UNDETERMINED CHECK YES only if demanded in complaint JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** N/A (See Instructions) JUDGE _____ DOCKET NUMBER _____

DATE
March 7, 2008

SIGNATURE OF ATTORNEY OF RECORD

Robert C. Buschel

UNITED STATES DISTRICT COURT

FOR OFFICE USE ONLY: Receipt No. 54250 _____ Amount: 350.00

Date Paid: _____ M/ifp: _____

S/F 1-2
REV. 9/94

FTL/LINP/266449/5pld01¹ DOC/3/07/08/26094.010400

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplement the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs** - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standards abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney or record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, please an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**V. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the depute clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceeding initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Refiled. (4) Check this box for cases refiled in the district court. Attach copy of order.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

(rev. 6/90)