## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHASE BANK USA, N.A.,                          :
                                               :
     Plaintiff,                          :
                                               :
     v.                                  :
                                               :
HESS KENNEDY CHARTERED, LLC,                   :
LAURA L. HESS, EDWARD T. KENNEDY,              :   Civil Action No. 08-121-JJF
LAURA HESS & ASSOCIATES, P.A.,                 :
HESS KENNEDY HOLDINGS, LTD.,                   :
HESS KENNEDY COMPANY CHARTERED                 :
BWI, THE CONSUMER LAW CENTER, LLC,             :
THE CONSUMER LAW CENTER OF DELRAY              :
BEACH, LLC, THE CONSUMER LAW                   :
CENTER OF BOCA RATON, INC., THE                :
CAMPOS CHARTERED LAW FIRM, JEFF                :
CAMPOS, P.A., JEFFREY S. CAMPOS, LEGAL         :
DEBT CENTER, LLC,                              :
                                               :
     Defendants.                          :

## CHASE BANK USA, N.A.'S RESPONSE TO DEFENDANTS'
## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## TO TRANSFER TO THE SOUTHERN DISTRICT OF FLORIDA

Defendants Hess Kennedy Chartered, LLC ("Hess Kennedy"), Laura L. Hess ("Hess"),

Laura Hess & Associates, P.A. ("Hess & Assoc."), Hess Kennedy Holdings, Ltd. ("HK

Holdings"), Hess Kennedy Company Chartered BWI ("BWI"), The Consumer Law Center, LLC

("Consumer Law Center"), The Campos Chartered Law Firm ("Campos Chartered"), Jeff

Campos, P.A. ("Campos P.A.") and Jeffrey S. Campos ("Campos") (collectively "the moving

defendants") have filed a motion to dismiss claiming that this Court lacks personal jurisdiction

over them, that venue is improper here and, in the alternative, that the case should be transferred

to the Southern District of Florida.[1]  Contrary to the moving defendants' allegations, however, this Court clearly has personal jurisdiction over the moving defendants pursuant to both the Delaware long-arm statute and the requirements of the due process clause, venue is proper here and the case should not be transferred to Florida.

The moving defendants' motion is premised on their unsupported allegation that they do "not have any minimum contacts with this State." Def. Mem. p.1. In making this claim, the moving defendants conveniently ignore several pertinent facts. First, pursuant to their debt elimination scheme, the moving defendants have sent over 7,600 letters to plaintiff Chase Bank USA, N.A. ("Chase") in Delaware. Affidavit of John Simons, ¶ 7 (hereinafter "Simons Aff."), attached hereto as Exhibit A. These thousands of letters, many of them signed by Hess or Campos, have arrived in Delaware on the letterheads of moving defendants Hess Kennedy, Consumer Law Center and Campos Chartered, and defendant Legal Debt Center, LLC. Exs. I, J, K, and L to Chase complaint.

Second, the moving defendants also fail to address the undeniable fact that the Chase credit card accounts their schemes attempt to adversely affect are opened and maintained by Chase in Delaware and are governed by Delaware law. Simons Aff. ¶¶ 2 and 5, Ex. A hereto; Ex. H to Chase complaint. Thus, the moving defendants' schemes interfere with Delaware contracts, and the injury the moving defendants have caused Chase occurs in Delaware.

Third, the moving defendants do not address the fact that they are doing business with Delaware cardmembers who have purchased defendants' "programs" and paid the defendants from Delaware. At least thirty Delaware residents are among the moving defendants' nation-

---

[1]     Defendants Edward T. Kennedy, The Consumer Law Center of Delray Beach, LLC, The Consumer Law Center of Boca Raton, LLC and Legal Debt Center, LLC are not parties to the pending motion to dismiss; nor have they responded to the complaint.

wide customer base -- a business presence that the websites of moving defendants Hess Kennedy

and Campos Chartered plainly invites. Simons Aff. ¶ 7, Ex. A hereto; Ex. G to Chase complaint;

*see* websites of Campos Chartered and Hess Kennedy, Appendix ("App.") Exhibits Q, R and S.[2]

Finally, the moving defendants artificially suggest that some kind of litigation "center of

gravity" exists in federal court in Florida to which this matter could be joined. No such "center"

exists, however. The sole matter pending in federal court in the Southern District of Florida is a

declaratory judgment action that some of the moving defendants filed one week **after** Chase filed

this suit, in a transparent exercise of forum shopping. (A copy of the complaint filed in the

Southern District of Florida, Case No. 08-60321, App. Exhibit B.) The two other Florida actions

referred to by the moving defendants -- the civil action filed by the Florida Attorney General and

the Florida Bar complaints against moving defendant Hess -- are pending in state court and

involve different issues and more limited parties than Chase's suit here does and, therefore, could

not be consolidated with this action. Exs. C and F to Chase complaint.

Moreover, this "center of gravity" argument does not even mention the North Carolina

Attorney General's lawsuit pending against certain of the moving defendants in state court in

North Carolina, (a) because it detracts from the moving defendants' center of gravity argument,

and (b) more importantly, because in that action, the judge denied the defendants' motion to

dismiss for lack of personal jurisdiction which was based on the same argument they raise here.

*See* Ex. C to Chase's complaint. In that case, jurisdiction was premised solely on the fact that

the defendants had customers in the state of North Carolina. *Id.* The additional facts that exist

here -- the thousands of letters sent into the forum and the thousands of credit card accounts

---

2       Exhibits B through V hereto are contained within the Appendix filed in support of this
        Response.

entered into in and governed by the law of the forum state -- were not present and yet the court exercised jurisdiction over the defendants. *Id.*

For these reasons, as discussed more fully below, the motion to dismiss should be denied.

## I.    STATEMENT OF FACTS

In this action, plaintiff Chase alleges that the defendants caused more than 3,800 Chase credit cardmembers to withhold more than $25 million dollars of outstanding debt due to Chase by operating an unlawful debt elimination and related schemes.[3]  Pursuant to these schemes, the defendants caused Chase cardmembers to assert sham billing error disputes under the Fair Credit Billing Act and to bring frivolous lawsuits against Chase as a pretext for not paying their valid credit card debts and also caused cardmembers to raise meritless dilatory defenses in collection actions brought by Chase to recover on defaulted credit card balances.  Chase asserts claims for tortious interference with contract, abuse of process, conspiracy and violations of the Delaware Deceptive Trade Practices Act and the Delaware Consumer Fraud Act and seeks declaratory, injunctive and monetary relief against the defendants.

Chase filed this action against the moving defendants and other affiliated entities on February 29, 2008.  One week **later**, on March 7, 2008, the moving defendants and others commenced an action in the Southern District of Florida against Chase raising only declaratory judgment claims that address Chase's claims here.  The defendants' claims in the second-filed Florida action arise out of the same transactions and occurrences that are the subject of Chase's claims against them in this action and are essentially in the nature of a counterclaim.  In fact, in the Florida action, the moving defendants have affirmed the nexus between the Florida action

---

[3]     In the less than two months since Chase filed its complaint, the number of accounts affected by the defendants' scheme has risen to 6,334.  Simons Aff. ¶ 7, Ex. A hereto.

and this action by seeking a declaration in the Florida action that they are not liable to Chase in this action.  App. Ex. B ¶¶ 43-48.  On April 1, 2008, Chase filed a motion to dismiss the Florida action primarily on the ground that it was the second-filed action.

The moving defendants are closely intertwined and operate their debt elimination and other schemes in concert with each other.  In documents filed with the Florida Secretary of State, defendant Hess is listed as the Director of Hess Kennedy and as the President/Director of Hess & Assoc.  *See*  Hess Kennedy Certificate of Conversion, App. Exhibit C; Hess & Assoc. Articles of Amendment, App. Exhibit D.  In other papers filed with the Florida Secretary of State, Laura Hess, Inc. and Jeff Campos, P.A. are listed as managers of HK Holdings and Consumer Law Center.  *See* HK Holdings Articles of Organization, App. Exhibit E; HK Holdings 2007 Annual Report, App. Exhibit F; Consumer Law Center Articles of Organization, App. Exhibit G; Consumer Law Center 2007 Annual Report, App. Exhibit H.  In later filings, BWI is named as the manager of HK Holdings.  *See* HK Holdings Articles of Amendment, App. Exhibit I. Currently, BWI also is the manager of Hess Kennedy.  Ex. C hereto; Hess Kennedy 2008 Annual Report, App. Exhibit J.  Defendant Campos is listed as the director of both Campos Chartered and Campos P.A.  *See* Campos Chartered 2007 Annual Report, App. Exhibit K; Campos Chartered 2008 Annual Report, App. Exhibit L; Campos P.A. 2007 Annual Report, App. Exhibit M; Campos P.A. 2008 Annual Report, App. Exhibit N.

Currently, **all** of the moving defendants operate out of **one** office located at 210 N. University Drive, Suite 900 in Coral Springs, Florida.  App. Exs. J, L, and N; Hess & Assoc. 2008 Annual Report, App. Exhibit O; HK Holdings 2008 Annual Report, App. Exhibit P; Consumer Law Center 2008 Annual Report, App. Exhibit Q.  In 2007, moving defendants Hess, Hess Kennedy, Hess & Assoc., HK Holdings and Consumer Law Center operated out of the

same office located at 210 N. University Drive, Suite 209 in Coral Springs, Florida. App. Exs.
C, D, F, and H. During that same time period, moving defendants Campos Chartered and
Campos P.A. listed Suite 210 in the same building as their physical location. App. Exs. K and
M. To further underscore their inextricable relationships with each other, four of the moving
defendants, namely, Campos Chartered, Hess Kennedy, Hess & Assoc. and Consumer Law
Center, list the same or similar telephone numbers. Campos Chartered website, a copy of which
is App. Exhibit R; Hess Kennedy website, a copy of which is App. Exhibit S; Hess & Assoc.
Articles of Amendment, App. Exhibit T; Consumer Law Center Articles of Amendment, App.
Exhibit U.

　　　　While papers filed with the Florida Secretary of State list Florida addresses for the
moving defendants and the moving defendants aver that they are physically located only in
Florida, this is contrary to other representations that they have made. In correspondence sent to
Chase in Delaware, Hess Kennedy's letterhead lists offices in New York, Illinois, New Jersey,
London, California, Cayman Islands, Singapore and South Carolina. Exs. I, K and L to Chase
complaint. Its website proclaims Hess Kennedy to be "An International Law Firm." App. Ex. S.
In a recent letter sent to Chase, Hess Kennedy lists an address in Syosset, New York. *See* Hess
Kennedy letter dated March 3, 2008, App. Exhibit V. Campos Chartered similarly lists a
Syosset, New York address in some of the letters sent to Chase in Delaware. Ex. K to Chase
complaint.

　　　　Moreover, even if purportedly located in Florida, the moving defendants conducted
business nationally and had significant contacts specifically with Delaware in running their
scheme against Chase. Chase is headquartered in Delaware, the credit card accounts it issues are
opened and maintained here and its agreements are governed by Delaware law under the terms of

the Cardmember Agreements Chase has with its customers. Simons Aff. ¶¶ 5 and 7, Ex. A

hereto; Ex. H to Chase complaint. Chase has determined that, using the letterheads of, *inter alia*,

moving defendants Hess Kennedy, Consumer Law Center, and Campos Chartered, and of

defendant Legal Debt Center, the moving defendants mailed, or caused their clients to mail,

8,190 letters -- of which 7,698 would have been sent to Chase in Delaware (using the 94% figure

determined from sampling defendants' letters) -- asserting the sham billing error disputes that

form the primary basis for this action. Simons Aff. ¶ 7, Ex. A hereto. In many of these letters,

which purport to be written on behalf of Chase cardmembers, defendants claim that they

"represent" the Chase cardmember named in the letter. Exs. I, K and L to Chase complaint.

These 8,190 letters pertain to 6,334 unique Chase accounts -- accounts held by Chase

cardmembers from forty-nine states, the District of Columbia and Puerto Rico. Simons Aff. ¶ 7,

Ex. A hereto. At least forty-four of those accounts are held by Chase cardmembers who reside in

Delaware. *Id.* Those forty-four accounts are held by thirty different Delaware residents. *Id.*

    In addition to mailing letters to Chase in Delaware, the moving defendants solicited

Chase cardmembers in Delaware via the Internet to procure their services. Defendant Hess

Kennedy maintains a website -- www.hesskennedycompany.com -- which solicits clients for

defendants' debt elimination and other related schemes.[4] App. Ex. S. Consumers who use Hess

---

[4]    At the time Chase filed its complaint, the website stated in pertinent part:

> Hess/Kennedy **Chartered** is a professional association. Managing
> Partner of Hess/Kennedy **Chartered** is Laura Hess. She is
> admitted for practice in Florida only. For cases outside of Florida
> Hess/Kennedy **Chartered** lawyers will request assistance from and
> associate with one of our hand-picked affiliate attorneys located
> throughout the country.

Ex. G to Chase's complaint. Other than the removal of the word
"Chartered," the current website is identical. App. Ex. S.

Kennedy's website to respond to the solicitation must supply their names, addresses and other information over the Internet and are told that a Hess Kennedy representative will contact them "shortly." *Id.* The Hess Kennedy website contains a "drop-down menu" listing Delaware and the other 49 states, thereby permitting, and indeed inviting, consumers from Delaware and other states to supply their contact information and ultimately retain Hess Kennedy's services. *Id.* Defendant Campos Chartered Law Firm also maintains a website -- www.camposlegalservices.com -- in which it promotes and solicits customers for the defendants' debt elimination and other related schemes.[5] App. Ex. Q. In this way, consumers from Delaware and other states are lured to purchase Campos Chartered's so-called services.

The moving defendants' marketing and sales efforts, plainly and intentionally directed to Delaware residents, have successfully drawn in at least thirty Delaware residents. Simons Aff. ¶ 7, Ex. A hereto. One such Chase cardmember who resides in Wilmington, Delaware retained Hess Kennedy as "my consolidation law firm." However, the funds she paid to defendants for disbursement to Chase were retained by defendants and never paid to Chase. Ex. P to Chase complaint. She was just one of the at least thirty Chase cardmembers who reside in Delaware that fell prey to defendants' unlawful schemes. Simons Aff. ¶ 7, Ex. A hereto.

---

[5]     The website lists Campos Chartered's telephone number as 954.510.7840. App. Ex. R. That same telephone number is listed on the Hess Kennedy website and appears in papers filed with the Florida Secretary of State on behalf of moving defendant Hess & Assoc. App. Exs. S and T. A virtually identical telephone number, 954.510.7848, is associated with Consumer Law Center. App. Ex. U.

## II.     ARGUMENT

### A.     This Court Has Jurisdiction Over the Moving Defendants Pursuant to Both the Delaware Long-Arm Statute and the Due Process Clause.

Relying on their bald assertion that they are residents of Florida who have never "conducted any provision of legal services nor any other business related services" physically in Delaware, the moving defendants argue that the complaint against them should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Def. Mem. p.3). However, defendants' motion is completely without merit because personal jurisdiction over defendants has clearly been established.

Two requirements, one statutory and one constitutional, must be met in order for a court to exercise personal jurisdiction over a defendant. First, the court must determine whether there is a statutory basis for finding jurisdiction under the Delaware long-arm statute, 10 Del. Code § 3104(c). *Intel Corp. v. Silicon Storage Technology, Inc.,* 20 F. Supp. 2d 690, 694 (D. Del. 1998) (McKelvie, J.). Second, if the Delaware long-arm statute authorizes jurisdiction, the court must then determine whether an exercise of jurisdiction comports with the defendant's constitutional right to due process. *Id.* While it is the plaintiff's burden to show the existence of personal jurisdiction, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes resolved in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004); *see also Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002) (citing *Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141, 142 n.1 (3d Cir. 1992)). As shown below, Chase has easily met its burden.

### 1.     The Delaware Long-Arm Statute Authorizes the Court to Exercise Jurisdiction over the Moving Defendants.

The Delaware long-arm statute states, in pertinent part, that "a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply services or things in this State;... [or] (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 Del. Code § 3104(c). In applying the Delaware long-arm statute, the court must defer to the interpretations of the Delaware state courts. *See Graphic Controls Corp. v. Utah Medical Products, Inc.,* 149 F.3d 1382, 1386 (Fed. Cir. 1998). The Delaware Supreme Court has characterized the Delaware long-arm statute as a "single act" statute, "a type of long-arm statute establishing jurisdiction over nonresidents on the basis of a single act done ... by the nonresident of the forum state." *Eudaily v. Harmon,* 420 A.2d 1175, 1176 n.1 (Del. 1980); *see also LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del. 1986) (the Delaware long-arm statute should be "broadly construed to confer jurisdiction to the maximum extent possible under the due process clause"); *Moore v. Little Giant Industries,* 513 F. Supp. 1043, 1048 (D. Del. 1981) (Wright, J.) (stating that the Delaware legislature drafted the statute to reach the "outer limits" of the constitutionally permissible exercise of personal jurisdiction).

Subsection (c)(1), the "transacting business" provision of the Delaware long-arm statute, allows a court to exercise specific jurisdiction over a defendant where (1) the plaintiff's claim arises from the defendant's activity; and (2) there is a "nexus between the cause of action and the conduct used as a basis for jurisdiction." *Intel Corp.,* 20 F. Supp. 2d at 695. *See also Moore,* 513 F. Supp. at 1048 (citing *La Nuova,* 513 A.2d at 769). In keeping with the broad construction

given to the statute, jurisdiction can arise "from a single transaction within the state if the relationship between the transaction and the plaintiff's cause of action is sufficiently close." *Intel Corp.*, 20 F. Supp. 2d at 695.

Here, the moving defendants marketed their alleged "services" to Delaware residents via Internet websites, sent and caused Chase cardmembers to send more than 7,600 form letters asserting sham billing error disputes to Chase in Delaware and purported to represent at least thirty Delaware residents in billing error disputes against Chase in Delaware. Simons Aff. ¶ 7, Ex. A hereto; App. Exs. R and S. Thus, the moving defendants clearly transacted "business" and/or performed "work or service" within the state of Delaware. 10 Del. Code § 3104(c)(1).

In *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175, at *4 (D. Del. August 3, 1999) (Robinson, J.), the court found that subsection (c)(1) conferred jurisdiction in Delaware, although the defendants sold no products in Delaware, because the defendants had engaged in a concerted marketing effort, including "national advertisements accessible to Delaware residents …, out-of-state negotiations with a Delaware resident, and the mailing of promotional materials to Delaware residents." The facts of the instant case are much more compelling than those of *American Bio Medica* because, in addition to engaging in "national advertising accessible to Delaware residents," the moving defendants here actually sold their services in Delaware to at least thirty Delaware residents. Simons Aff. ¶ 7, Ex. A hereto. Furthermore, rather than mailing a few promotional materials into Delaware, they sent more than 7,600 letters to Chase in Delaware. *Id.* The sending of these letters, in which the moving defendants and their cardmember "clients" assert sham billing error disputes, and the moving defendants' representation of Delaware residents in connection with these disputes, is not only related to but constitutes the **heart** of Chase's claims. The very acts which confer personal

jurisdiction here are the wrongs alleged in the complaint. Thus, jurisdiction should be exercised over the moving defendants pursuant to 10 Del. Code § 3104(c)(1).

The moving defendants assert that personal jurisdiction is lacking because "there are no allegations of specific conduct against each of the Defendants that establishes any contact with the forum state …. [T]he most that could ever be asserted by … [Chase] in this case is that they may have received a letter or telephone call from one of the Defendants but most certainly not even close to all of the Defendants." Def. Mem. p. 7. This argument is completely unavailing and is itself another example of defendants' evasive and disingenuous conduct. Moreover, the claim that, at most, one of the defendants may have sent "a letter or telephone call" is patently false. The moving defendants sent over 7,600 letters to Chase in Delaware. Simons Aff. ¶ 7, Ex. A hereto.

Furthermore, it is immaterial whether each of the moving defendants performed acts within or impacting Delaware, for the acts of each of the defendants is attributable to each of the other defendants "pursuant to the 'through an agent' language of Section 3104(c)." *Hercules, Inc. v. Leu Trust and Banking, Ltd.,* 611 A.2d 476, 481 (Del. 1992) (quoting 10 Del. Code § 3104(c)). This "conspiracy theory" of jurisdiction has it roots "'in policies that make conspirators liable for the acts of their coconspirators in furtherance of a conspiracy.'" *G&G LLC v. White*, 2008 WL 205150, at *9 (D. Del. Jan. 28, 2008) (Robinson, J.) (quoting *Amaysing Technologies Corp. v. Cyberair Communications, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005)). The conspiracy theory of jurisdiction "is a 'shorthand reference to an analytical framework where a defendant's conduct that either occurred or had a substantial effect in Delaware is attributed to a defendant who would not otherwise be amenable to jurisdiction in Delaware.'" *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000) (citing

*Computer People, Inc. v. Best International Group, Inc.*, 1999 WL 288119, at *13-14 (Del. Ch.

1999)). Under this theory, a plaintiff may establish jurisdiction over a nonresident defendant if:

> (1) a conspiracy to defraud existed; (2) the defendant was a
> member of that conspiracy; (3) a substantial act or substantial
> effect in furtherance of the conspiracy occurred in the forum state;
> (4) the defendant knew or had reason to know of the act in the
> forum state or that acts outside the forum state would have an
> effect in the forum state; and (5) the act in, or effect on, the forum
> state was a direct and foreseeable result of the conduct in
> furtherance of the conspiracy.

*Istituto Bancario Italiano SpA v. Hunter Engineering Co.*, 449 A.2d 210, 225 (Del. 1982).

"Application of personal jurisdiction under the conspiracy theory requires factual proof of each

enumerated element." *Werner v. Miller Technology Management, L.P.*, 831 A.2d 318, 330 (Del.

Ch. 2003). There is certainly ample proof of each element here.

Chase has alleged an actionable conspiracy against each of the moving defendants in

Count VI of the complaint, which Chase incorporates herein by reference.[6] One of the goals of

this conspiracy was for the moving defendants to represent Chase cardmembers, at least thirty of

whom resided in Delaware, in asserting sham billing error disputes against Chase, which is

located and has its national credit card headquarters in Delaware. Simons Aff. ¶¶ 2, 5 and 7, Ex.

A hereto. To assert these sham billing error disputes, and in furtherance of their conspiracy, the

moving defendants fabricated legally insufficient form letters which they and Chase

cardmembers sent to Chase in Delaware. Exs. I, J, K and L to Chase complaint; App. Ex. V.  At

or around the time these letters were delivered to Chase in Delaware, the cardmembers, who paid

fees to the moving defendants, ceased making payments on their Chase account balances at the

---

[6]      In addition, in paragraph 22 of the complaint, Chase has alleged that each defendant was
acting as an agent for each of the other defendants.

moving defendants' direction. This resultant harm to Chase, a banking association residing in

Delaware, was a direct and foreseeable result of the moving defendants' actions.

The moving defendants are closely intertwined and operate their debt elimination and

other schemes in concert with each other. In documents filed with the Florida Secretary of State,

defendant Hess is listed as the Director of Hess Kennedy and as the President/Director of Hess &

Assoc. In other papers filed with the Florida Secretary of State, Laura Hess, Inc. and Jeff

Campos, P.A. are listed as managers of HK Holdings and Consumer Law Center. In later filings,

BWI is named as the manager of HK Holdings. Currently, BWI also is the manager of Hess

Kennedy. Defendant Campos is listed as the director of both Campos Chartered and Campos

P.A. *See* p. 5, *supra.*

Currently, **all** of the moving defendants operate out of **one** office located at 210 N.

University Drive, Suite 900 in Coral Springs, Florida. In 2007, moving defendants Hess, Hess

Kennedy, Hess & Assoc., HK Holdings and Consumer Law Center operated out of the same

office located at 210 N. University Drive, Suite 209 in Coral Springs, Florida. During that same

time period, moving defendants Campos Chartered and Campos P.A. listed Suite 210 in the same

building as their physical location. To further underscore their inextricable relationships with

each other, four of the moving defendants, namely, Campos Chartered, Hess Kennedy, Hess &

Assoc. and Consumer Law Center, list the same or similar telephone numbers. *See* pp. 5-6,

*supra.*

In light of all of the foregoing, Chase has proffered concrete factual proof of each of the

five factors identified in *Istituto Bancario Italiano*, and, therefore, subsection (c)(1) of the

Delaware long-arm statute clearly authorizes jurisdiction over each of the moving defendants.

449 A.2d at 225. *See also G&G LLC*, 2008 WL 205150, at *9; *Hercules,* 611 A.2d 476.

Based on the same facts presented above and as stated in Chase's complaint, subsections (c)(2) and (c)(4) also confer jurisdiction. Subsection (c)(2) of the long-arm statute allows a court to exercise specific jurisdiction over a defendant if the defendant contracted to sell services or things in Delaware. "As a specific jurisdictional provision, the subsection requires a nexus between the cause of action and the conduct used as a basis for jurisdiction." *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 672 (D. Del. 2008) (Robinson, J.). Like subsection (c)(1), this subsection establishes jurisdiction over nonresidents based on a single act. *Moore*, 513 F. Supp. at 1048 (quoting *Eudaily*, 420 A.2d at 1176 n.1). Here, as discussed in greater detail above, the moving defendants did much more than a single act: they contracted to sell their services to at least thirty Chase cardmembers who resided in Delaware and, in connection with this representation and their representation of other Chase cardmembers, they sent more than 7,600 dispute letters to Chase in Delaware involving credit card accounts that were originated and maintained in Delaware and governed by Delaware law. Simons Aff. ¶¶ 2 and 7, Ex. A hereto; Exs. H, I, J, K, and L to Chase complaint; App. Ex. V. Thus, subsection (c)(2) clearly confers jurisdiction over the moving defendants.

The moving defendants also should be subject to the reach of subsection (c)(4) of the Delaware long-arm statute because they "regularly do[] or solicit[] business" and "engage[] in any other persistent course of conduct" in Delaware. 10 Del. Code § 3104(c)(4). Unlike subsections (c)(1) and (c)(2), this subsection has been interpreted as conferring general jurisdiction. *Intel*, 20 F.Supp.2d at 699. "General jurisdiction may be exercised over a defendant whose contacts with the forum state are 'continuous and substantial.'" *Parker*, 530 F. Supp. 2d at 673 (quoting *Kloth v. Southern Christian Univ.,* 494 F. Supp. 2d 273, 280 (D. Del. 2007) (Robinson, J.)).

Here, where Chase has alleged in the complaint that the moving defendants committed tortious acts in Delaware, the sheer volume of the billing error dispute letters sent by the moving defendants to Chase in Delaware -- more than 7,600 in less than one and one-half years -- especially when coupled with the fact that the moving defendants represented at least thirty Chase cardmembers who were Delaware residents, certainly is enough to confer jurisdiction upon the defendants under subsection (c)(4). Simons Aff. ¶ 7, Ex. A hereto; Exs. I, J, K, and L to Chase complaint; App. Ex. V.

## 2. The Court's Exercise of Personal Jurisdiction Here Would Comport with the Due Process Clause.

After determining whether there is a statutory basis for jurisdiction, a court next must assess whether the exercise of jurisdiction would comport with a defendant's constitutional right to due process. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). For a finding of specific personal jurisdiction, the Due Process Clause requires (1) that the defendant have "certain minimum contacts" with the forum and (2) that subjecting the defendant to the court's jurisdiction comports with "traditional notions of fair play and substantial justice." *Id.* The "minimum contacts" requirement has been defined as "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). To comport with "traditional notions of fair play and substantial justice," the defendant should reasonably be able to anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. 286. 292 (1980). "To defeat jurisdiction based on this fairness inquiry, a defendant must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Miller Yacht Sales,* 384 F.3d at 97 (quoting *Burger King*, 471 U.S. at 477). The moving defendants have not and cannot present the requisite compelling case.

As discussed in detail above, the moving defendants represented Chase cardmembers in disputes against Chase, a national banking association with its principal place of business in Delaware. Simons Aff. ¶ 5, Ex. A hereto. At least thirty of these Chase cardmembers were residents of Delaware. *Id.* These representations necessarily involved activities in Delaware -- most notably, the sending of more than 7,600 dispute letters to Delaware. *Id.* By seeking out and undertaking these representations and by sending these letters, the moving defendants purposefully availed themselves of the privilege of conducting activities within the state of Delaware. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska v. Brandt,* 195 F.3d 208, 213 (5th Cir. 1999). Moreover, the sheer volume of this activity was such that the moving defendants reasonably should have anticipated that they could be haled into court in Delaware.

In an attempt to counter these facts, the moving defendants merely claim that they would be inconvenienced should this action remain in Delaware. However, once minimum contacts are established, the interests of the plaintiff and the forum justify even large burdens on the defendant. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 115 (1987). Thus, the defendant's unsupported claim of inconvenience does not amount to a "compelling case." *Miller Yacht Sales,* 384 F.3d at 97. On the contrary, there are compelling reasons to keep the case in Delaware, including that the form letters that are the subject of this action were sent to Chase in Delaware; the moving defendants solicited Chase cardmembers in Delaware to procure their services; the accounts at issue were opened and maintained by Chase in Delaware; the agreements with which defendants have interfered are governed by Delaware law; and witnesses, including Chase employees and cardmembers affected by the moving defendants' debt

elimination and related schemes, reside in or close to Delaware. Thus, an exercise of jurisdiction clearly comports with due process. Simons Aff. ¶¶ 2, 5 and 7, Ex. A hereto; Exs. G, H, I, J, K, L to Chase complaint; App. Exs. R, S and V.

**B.  Venue in the District of Delaware Is Proper.**

Federal Rule of Civil Procedure 12(b)(3) provides that a motion to dismiss may be made on the basis of improper venue. Chase alleges in its complaint that venue in this action is governed by 28 U.S.C. § 1391(a). Section 1391(a)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events ... giving rise to the claim occurred." A plain reading of the provision shows that venue is proper here where the moving defendants' actions in Delaware, namely, the sending of thousands of sham billing error dispute letters to Chase in Delaware and the representation of at least thirty Chase cardmembers who were residents of Delaware, gave rise to Chase's claims. Simons Aff. ¶ 7, Ex. A hereto.

Despite these clear facts, the moving defendants allege that venue is improper in the District of Delaware because "all of the Defendants are located in the State of Florida and there are already multiple actions pending in Florida." Def. Mem. p.2. While the moving defendants purport to be located only in Florida -- a fact that is contradicted by letters the moving defendants have sent to Chase -- they chose to conduct business in Delaware and that business gave rise to Chase's complaint. Thus, venue is proper here.

Furthermore, the fact that "multiple actions" are pending in Florida does not show that venue in Delaware is improper. The moving defendants' brief tries to create the impression that the Southern District of Florida is the proper location for this action, implying that all litigation against it is pending there. This is not true. Chase is aware of three actions pending in Florida courts -- two in state court and one in Federal court -- involving certain, but not all, of the moving defendants. On February 21, 2008, the Office of the Attorney General, Department of

Legal Affairs, State of Florida, sued Hess, Hess & Assoc., Hess Kennedy, and the Consumer Law Center in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, for violating state consumer protection laws in connection with their debt elimination and/or debt management schemes. Ex. C to Chase complaint. On or about February 11, 2008, the Florida Bar filed a Petition for Contempt against Hess with the Florida Supreme Court . Ex. F to Chase complaint. Plainly, however, these actions cannot be consolidated with Chase's action here and are irrelevant to the propriety of this matter proceeding in Delaware.

Another matter which cannot be consolidated with this action -- one about which the moving defendants' brief is curiously silent -- is the North Carolina Attorney General's pending action against moving defendants Hess Kennedy, Consumer Law Center and Laura Hess and against Edward Cherry. Ex. C to Chase complaint. This action is notable in that it shows that all litigation against some of the moving defendants does not exist in Florida. It is also notable in that the North Carolina trial court found that personal jurisdiction existed against the defendants in that action based solely on the presence of defendants' customers in that state -- a more limited connection to that state than the moving defendants have to Delaware due to the accounts here and the thousands of letters that the defendants sent to Chase in Delaware. *Id.*

The third matter involving certain of the moving defendants in Florida, and the only one in federal district court, is the second-filed action the moving defendants and others commenced in the Southern District of Florida one week after Chase filed its complaint in Delaware. App. Ex. B. Their claims in the second-filed Florida action arise out of the same transactions and occurrences that are the subject of Chase's claims against them in this first-filed action. *Id.* In fact, in the Florida action, the moving defendants seek a declaration that they are not liable to Chase in this action. *Id.* As a result of the moving defendants' improper commencement of the

second-filed Florida action, which is subject to a motion to dismiss recently filed by Chase, there are currently two separate lawsuits between Chase and the moving defendants pending in two different federal judicial districts with respect to the exact same subject matter. Now, the moving defendants seek to bootstrap the existence of that second-filed action into an argument that venue is improper in Delaware. Such an argument must be rejected under the first-filed rule.

Under the first-filed rule, "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 970 (3d Cir. 1988). The United States Supreme Court itself has instructed that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960). For this reason, the "invocation of the first-filed rule is the norm, not the exception and courts must be presented with exceptional circumstances before exercising their discretion to depart from the rule." *Advanta Corp. v. Visa U.S.A., Inc.,* 1997 WL 88906, at *2 (E.D. Pa. Feb. 19, 1997) (citing *E.E.O.C.,* 850 F.2d at 979). The moving defendants have not and cannot present any exceptional circumstances. As stated in *Time Warner Cable, Inc. v. USA Video Technology Corp.,* 520 F. Supp. 2d 579 (D. Del. 2007) (Thynge, J.):

> Where two lawsuits involving the same claims are filed in different jurisdictions, the first-filed action is given preference. The first-filed rule reduces multiple conflicting decisions which may require separate appeals, and ensures that litigants receive a single determination of their controversy. The Third Circuit applies the first-filed rule to litigation that involves the same subject matter .... Where there is federal concurrent jurisdiction over a matter, "the court which first has possession of the subject must decide it." This court has held that the first-filed action is determined by "which court first obtains possession of the subject of the dispute, not the parties of the dispute." This interpretation of the rule

> ensures that the first-filed rule "achieve[s] resolution in a single
> lawsuit of all disputes from common matters."

Id. at 585-86 (citations and footnote omitted).

The moving defendants' argument that it is more convenient for them to litigate in Florida because they are located there and because some of the other actions pending against them and involving their practices are there is **not** a "compelling circumstance" that would justify a departure from the first-filed rule. There are equally strong -- indeed, even stronger -- considerations for keeping the case in Delaware. Among other things: (a) Chase is located and has its national card headquarters in Delaware; (b) form letters that are the subject of both the Delaware action and the Florida action were sent to Chase in Delaware;[7] (c) the moving defendants solicited Chase cardmembers in Delaware to procure their services;[8] (d) the agreements between Chase and its cardmembers were entered into in Delaware and are governed by Delaware law;[9] (e) Chase's documents are located or electronically available in Delaware;[10] and (f) witnesses, including Chase employees and cardmembers affected by the moving defendants' unlawful schemes, reside in or in close proximity to Delaware.[11] Moreover, the conduct of the moving defendants that is at issue is nationwide in scope and not restricted to Florida. The moving defendants solicit consumers via the Internet throughout the country

---

[7]    See Exs. I, J, K and L to Chase complaint.

[8]    See Chase complaint, ¶29 and Ex. G thereto; App. Exs. Q, R and S.

[9]    See Chase complaint, ¶30 and Ex. H thereto.

[10]   See Simons Aff. ¶ 6, Ex. A hereto.

[11]   See Simons Aff. ¶ 8, Ex. A hereto; Chase complaint, ¶¶ 38, 42.

(including Delaware) to purchase their services;[12] their Chase cardmember clients reside in at

least forty-nine states and the District of Columbia and Puerto Rico,[13] they boast that they will

"associate with ... hand-picked affiliate attorneys located throughout the country;"[14] and they are

being sued and/or investigated by not only the Florida Attorney General but also by the North

Carolina and West Virginia Attorneys General.[15]  Finally, the moving defendants can assert their

declaratory judgment claims against Chase as a counterclaim to Chase's complaint.

Accordingly, to prevent burdening the courts and the parties with duplicative

proceedings, this Court should keep this action in Delaware where venue is proper.

**C.    The Moving Defendants' Argument Based On *Forum Non Conveniens* Should be Rejected.**

Dismissal under *forum non conveniens* is proper only where "[a]n alternative forum has

jurisdiction to hear the case, and when trial in the chosen forum would establish ...

oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or

when the 'chosen forum [is] inappropriate because of considerations affecting the court's own

administrative and legal problems.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct.

252, 258 (1981) (quoting *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.

Ct. 828, 831-32 (1947)).  For the reasons stated in both the preceding and following sections, the

moving defendants' motion to dismiss based on *forum non conveniens* should be denied.

---

[12]     *See* App. Exs. Q, R and S.

[13]     *See* Simons Aff. ¶ 7, Ex. A hereto.

[14]     *See* Chase complaint, ¶28 and Ex. G thereto; App. Ex. R.

[15]     *See* Chase complaint, ¶26 and Ex. C thereto.

**D.    This Action Should Not be Transferred to the Southern District of Florida.**

The law governing transfer of venue is set forth in 28 U.S.C. §1404(a), which authorizes

a district court "[f]or the convenience of the parties and witnesses, in the interest of justice …

[to] transfer any civil action to any other district or division where it might have been brought."

A court is directed to consider several private and public interests in weighing transfer. Included

among these private factors are: "(1) plaintiff's forum preference as manifested in the original

choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of

the parties as indicated by their relative physical and financial condition; (5) the convenience of

the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one

of the fora; and (6) location of books and records (similarly limited to the extent that the files

could not be produced in the alternative forum)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873,

879 (3d Cir. 1995). The public interests include: "(1) the enforceability of the judgment; (2)

practical considerations that could make the trial easy, expeditious or inexpensive; (3) the

relative administrative difficulty in the two fora resulting from court congestion; (4) the local

interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the

familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

A review of the foregoing criteria shows that a transfer of this action is not warranted.

The following private interests all favor keeping this action in Delaware. First, a court "gives

great deference to a plaintiff's choice of forum." *American Bio Medica Corp.*, 1999 WL

615175, at *5. Second, the claims at issue here arose in Delaware, and the accounts and

contracts affected by the defendants' scheme are located in Delaware. Third, while the moving

defendants allege that they would be inconvenienced if this case were to remain in Delaware, for

the reasons stated in Section II.B. above, Chase would be similarly inconvenienced if the case

were to be transferred to Florida. Fourth, while the moving defendants baldly allege, without

more, that both their records and their witnesses are in Florida, they do not claim that either their records or their witnesses would be unavailable for trial in Delaware. In this regard, the moving defendants have not identified a single non-party witness with relevant knowledge who would not be available for a trial in Delaware.

Regarding the public interests, as discussed above in Section II.B., the pendency of this first-filed action outweighs the moving defendants' desire to transfer this action to Florida, the forum for their second-filed lawsuit. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent." *Continental Grain*, 364 U.S. at 26. Moreover, given that Delaware law governs the contracts between Chase and its cardmembers, this Court is more familiar with the applicable law than a Florida federal judge would be. This public interest factor clearly compels retaining this case in this forum.

The moving defendants have not and cannot present any exceptional circumstances that would justify departing from the first-filed rule. Therefore, the moving defendants' request to transfer this action to the Southern District of Florida should be denied.[16]

---

[16] In alleged support of their motion to dismiss, the moving defendants state that "a Federal Court in the Southern District of Florida, where all of the Defendants are located, is now undertaking the task of determining the legality of The Defendants' Services and said services are the crux of all of the other litigation." Def. Mem. p. 6. In actuality, the Southern District of Florida is currently considering Chase's motion to dismiss based on the first-filed rule and/or to transfer the action to the District of Delaware. Chase filed that motion on April 1, 2008 in case no. 08-60321-WRD.

## III.    CONCLUSION

For all of the foregoing reasons, plaintiff Chase Bank USA, N.A. respectfully requests

that the moving defendants' motion to dismiss or, in the alternative, to transfer this action to the

United States District Court for the Southern District of Florida be denied.[17]

Dated: April 18, 2008

/s/ Beth Moskow-Schnoll
Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR ANDREWS
    & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
Email: moskowschnollb@ballardspahr.com

Attorneys for Plaintiff
Chase Bank USA, N.A.

OF COUNSEL:

David H. Pittinsky, Esquire
Alan S. Kaplinsky, Esquire
Mark J. Levin, Esquire
BALLARD SPAHR ANDREWS
    & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

---

[17]    Should the Court find any jurisdictional defects, Chase respectfully requests that, as an alternative to dismissal, it be granted leave to conduct jurisdictional discovery. *See Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . . , courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (quoting *Mass. School of Law at Andover, Inc. v. American Bar Association,* 107 F.3d 1026, 1042 (3d Cir. 1997)). Chase's claim is not clearly frivolous.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHASE BANK USA, N.A., | : |
|     Plaintiff, | : |
| v. | : |
| HESS KENNEDY CHARTERED, LLC, LAURA L. HESS, EDWARD T. KENNEDY, LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY HOLDINGS, LTD., HESS KENNEDY COMPANY CHARTERED BWI, THE CONSUMER LAW CENTER, LLC, THE CONSUMER LAW CENTER OF DELRAY BEACH, LLC, THE CONSUMER LAW CENTER OF BOCA RATON, INC., THE CAMPOS CHARTERED LAW FIRM, JEFF CAMPOS, P.A., JEFFREY S. CAMPOS, LEGAL DEBT CENTER, LLC, | : Civil Action No. 08-121-JJF |
|     Defendants. | : |

### AFFIDAVIT OF JOHN C. SIMONS

I hereby state that John C. Simons, having appeared before me and been duly sworn, did say under oath as follows:

1.    My name is John C. Simons. I am a Vice President and Assistant General Counsel for JPMorgan Chase Bank, N.A. and am assigned to Chase Bank USA, N.A. I have worked in this capacity since 2001. I have personal knowledge of the business and legal affairs of Chase Bank USA, N.A. and its predecessor, Bank One, Delaware, N.A. (herein collectively known as "Chase"). I also have personal knowledge of the matters set forth herein, and attest that they are true and correct.

2.    Chase is a national bank chartered under the federal laws of the United States of America with its main office in Newark, Delaware. Chase enters into

contractual relationships with consumers, issues credit cards to consumers, extends credit to those consumers pursuant to contract, and is entitled to payments pursuant to contract. Chase also issues some business cards.  Chase's contracts with its customers are entered into in Delaware and governed by Delaware law.

3.      On March 1, 2005, Chase Manhattan Bank USA, N.A. changed its name to Chase Bank USA, N.A.  Chase is also the successor by merger, on October 1, 2004, to Bank One, Delaware, N.A.  From 2001 through the October 1, 2004, I was assigned to Bank One, Delaware, N.A.

4.      I am familiar with the allegations in the present action, titled <u>Chase Bank USA, N.A. v. Hess Kennedy Chartered, LLC, et al.</u>, which was filed in the United States District Court for the District of Delaware on February 29, 2008 (the "Delaware Lawsuit").  I also am familiar with the allegations in the suit titled <u>Hess Kennedy Chartered, LLC, et al. v. Chase Bank USA, N.A.</u> which was filed in the United States District Court for the Southern District of Florida, Case No. 08-cv-60321, one week later on March 7, 2008 (the "Florida Lawsuit").  Chase filed a motion to dismiss or transfer the Florida Lawsuit on April 1, 2008.

5.      Chase has its main office, or national credit card headquarters, in Newark, Delaware.  Chase has additional management located at offices in Wilmington, Delaware. Chase does not have any offices outside of the state of Delaware.  Chase does have a wholly-owned operating subsidiary, Chase Bankcard Services, Inc., which is incorporated in Delaware with its principal place of business in Newark, Delaware, and which has some operations in other states, including a facility in Frederick, Maryland.

6.      Chase uses and maintains various computer systems pursuant to its credit

card operations. These computer systems contain various documents, information and records related to the credit cards Chase has issued to consumers, including those cardmembers who have paid money to the defendants for their alleged services. These computer systems (and the documents, information and records they contain) are based and maintained in Delaware, and such documents, information and records thus are and will be prepared and generated there. Chase will rely upon such documents, information and records in its prosecution of the Delaware Lawsuit and, if it is not dismissed or transferred, the Florida Lawsuit. The computer systems relevant to this suit in Delaware include:

(a)    Chase Card Core (C3), commonly referred to as TSYS, which is the primary operations system for accounts while they are open and also contains certain information related to Chase credit card accounts after they are charged off. Information for accounts concerning the customer, account history, certain communications with the customer, contractual history (including amendments), payment history and credit reporting are maintained on TSYS;

(b)    the Recovery Management System (RMS), which is the primary operations system for accounts for which no payments have been received for at least six billing cycles (requiring the accounting charge off of the debt pursuant to federal guidelines), relating to subsequent collection-related activity. For cardmembers who have paid the defendants for their "programs," RMS would contain evidence related to Chase's inability to collect amounts owed to Chase following such cardmembers' involvement in the defendants' "programs". In addition, Chase maintains limited

information from a predecessor system to RMS, the Account Recovery Management
System (ARM), in Delaware;

    (c)    FileNet, on which correspondence between the cardmember and Chase, or
received from third parties, in relation to an account is imaged and preserved. FileNet
would contain the imaged correspondence sent to Chase by or in relation to the
defendants for their "programs"; and

    (d)    Instant Image, sometimes referred to as S.T.A.R., on which statements for
Chase credit card accounts are maintained. These statements would evidence
cardmembers' payments to the defendants on their Chase credit cards, the cessation of
payments following cardmembers becoming involved with the defendants, and the
amounts that Chase has not been paid as a result of the defendants' "programs."

    7.    Although I recall that the defendants began sending letters to Chase
earlier, Chase did not begin tracking the letters until December 2006. Employees of
Chase who are directed by Joette Herrara, an audit manager for Chase, reviewed the
relevant information which revealed the following:

    (a)    Between December 27, 2006 and April 15, 2008, the defendants sent at
least 8,190 letters to Chase. These letters pertain to 6,334 unique accounts;

    (b)    On April 15, 2008, a Chase employee randomly sampled 100 of the 8,190
letters and determined that 94 of the 100 letters had been mailed to Chase in Delaware.
(The defendants had mailed the remaining six to Chase in Illinois.) Thus, 94% of the
letters were mailed to Delaware. Extrapolating that percentage to the total number of
letters shows that 7,698 of the 8,190 letters were mailed to Chase in Delaware;

(c)     The 8,190 letters include letters pertaining to Chase cardmembers who reside in forty-nine states (every state but Virginia) and the District of Columbia and Puerto Rico;

(d)     The 6,334 unique accounts include forty-four accounts held by Chase cardmembers who reside in Delaware. These forty-four accounts are held by at least thirty different Delaware residents;

(e)     Only approximately 12% of the letters -- 1,052 -- came from Chase cardmembers who gave a Florida address. However, in many of the letters, Chase cardmembers asked that their address be changed to the defendants' address in Coral Springs, Florida. Thus, this number is higher than the true number of Florida residents who are clients of the defendants; and

(f)     At the time the complaint was filed on February 29, 2008, the defendants had sent letters pertaining to approximately 3,800 unique accounts. Since that time, the defendants have sent at least an additional 2,500 letters. Thus, the letters are arriving at a rate of more than 1,000 per month. The vast majority of these letters have been mailed to Chase in Delaware.

8.      Chase anticipates that the following individuals who are employed in Delaware (by Chase) or in Frederick, Maryland (by its operating subsidiary) have relevant information and may testify at deposition and/or at any trial that occurs in the Delaware Lawsuit and, if it is not dismissed or transferred, the Florida Lawsuit:

(a)     Jeff Courtney is a Senior Operations Director for Chase who works in Wilmington, Delaware and who may testify concerning Chase's recovery programs, the

affect of the defendants' "programs" on Chase's collection efforts and the defendants' failure to make settlement arrangements for their clients;

(b)     Barton Berry is a Senior Business Operations Director for Chase who works in Wilmington, Delaware, and who may testify concerning Chase's recovery programs, the effect of the defendants' "programs" on Chase's collection efforts and the defendants' failure to make settlement arrangements for their clients;

(c)     Lina Edmonds is a Business Operations Director for Chase who works in Wilmington, Delaware, and who may testify concerning Chase's recovery programs, the effect of the defendants' "programs" on Chase's collection efforts and the defendants' failure to make settlement arrangements for their clients;

(d)     Joette Herrera is an Audit Manager for Chase who works in Wilmington, Delaware, and who may testify concerning Chase's processes and procedures for distinguishing bona fide written notices of billing error that Chase receives from correspondence, such as that created by the defendants, which is attempting to improperly eliminate valid debts owed to Chase, and Chase's corresponding procedures for handling each category of correspondence;

(e)     Susan Coniglio-Callahan is a Strategy Manager for Chase who works in Wilmington, Delaware, and who may testify concerning Chase's experience with the defendants' alleged debt settlement program;

(f)     Anthony Demczak is a Business Analysis Group Manager for Chase who works in Wilmington, Delaware, and who may testify concerning analysis of the value of the payments from Chase customers that Chase could have anticipated receiving but for the defendants' actions;

(g)    Robert Leone is a Finance Director for Chase who works in Wilmington, Delaware, and who may testify concerning analysis of the accounts affected by the defendants' programs on Chase and its customers; and

(h)    the affiant, John Simons, is a Vice President and Assistant General Counsel for JPMorgan Chase Bank, N.A. and is assigned to Chase. I work in Wilmington, Delaware, and may testify concerning Chase's analysis of the defendants' correspondence to Chase, including letters that the defendants provided to Chase cardmembers to send to Chase or which the defendants sent to Chase under the names of Chase's cardmembers.

9.    I understand that false statements made herein are subject to the penalties of 28 U.S.C. § 1746 relating to unsworn declarations under penalty of perjury. I swear that the foregoing is true and correct to the best of my knowledge.

Dated: April 24, 2008

John C. Simons

Sworn to and subscribed
before me this __18th__ day
of April, 2008.

Notary Public

My commission expires: 03·04·11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the forgoing Response was served on April 18, 2008 by first-class U.S. Mail, postage prepaid, upon defendants' counsel:

Robert K. Beste, Jr.
Cohen Seglias Pallas Greenhall and Furman, P.C.
Suite 1130, Nemours Building
1007 Orange Street
Wilmington, Delaware 19801

/s/ Katie Arrington D'Emilio
Katie Arrington D'Emilio (No. 4824)