LAW OFFICES

# BALLARD SPAHR ANDREWS & INGERSOLL, LLP

919 NORTH MARKET STREET, 12TH FLOOR
WILMINGTON, DELAWARE 19801-3034
(302) 252-4465
FAX: (302) 252-4466
WWW.BALLARDSPAHR.COM

PHILADELPHIA, PA
BALTIMORE, MD
BETHESDA, MD
DENVER, CO
LAS VEGAS, NV
LOS ANGELES, CA
PHOENIX, AZ
SALT LAKE CITY, UT
VOORHEES, NJ
WASHINGTON, DC

BETH MOSKOW-SCHNOLL
DIRECT DIAL: 302-252-4447
PERSONAL FAX: 302-355-0221
MOSKOWSCHNOLLB@BALLARDSPAHR.COM

July 29, 2008

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 North King Street
Wilmington, DE 19801

> **Re:    Chase Bank, USA, N.A. v. Hess Kennedy Chartered, LLC, et al.**
> **Civil Action No. 08-121-JJF**

Dear Judge Farnan:

In response to an emergency motion by the Florida Attorney General, on July 18, 2008, the Broward County Circuit Court in Florida entered an *ex parte* order placing, *inter alia*, Hess Kennedy Chartered, LLC, Laura Hess & Associates, P.A., Hess Kennedy Holdings, Ltd., The Consumer Law Center, LLC, the Campos Chartered Law Firm and Legal Debt Center, LLC -- all defendants in the above-referenced case pending before this Court -- into receivership. Copies of the Florida Attorney General's emergency motion and its memorandum of law in support of the motion are attached hereto as Exhibits A and B, respectively. A copy of the Broward County Circuit Court's order granting the emergency motion is attached hereto as Exhibit C.

In its emergency motion, the Attorney General stated that the defendants were engaging in "deceptive trade practices" and that "unsuspecting consumers have paid millions to Defendants for payment of credit card debt. Defendants are illicitly diverting much of this money to themselves and their families and associates." In fact, the motion continues, "Defendants have already transferred millions of dollars to individuals who are not creditors of consumers and to their accounts outside the United States."

Furthermore, on July 23, 2008, the Florida Supreme Court suspended Laura Hess' license to practice law. A copy of the order of suspension is attached hereto as Exhibit D.

Respectfully,

Beth Moskow-Schnoll

BMS/
Enclosures

cc:    Robert K. Beste, Jr.

# EXHIBIT A

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

OFFICE OF THE ATTORNEY GENERAL,
DEPARTMENT OF LEGAL AFFAIRS,
STATE OF FLORIDA,

           Plaintiff,

vs.                                 Case No. 08-007686 08

LAURA L. HESS, ESQ.,
LAURA HESS & ASSOCIATES, P.A.,
HESS KENNEDY CHARTERED LLC, and
THE CONSUMER LAW CENTER, LLC.

           Defendants.
_____/

## PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER AND INJUNCTIVE RELIEF WITHOUT NOTICE

The Plaintiff, **OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA**, by and through the undersigned attorney, moves this Court for an Appointment of Receiver and Injunctive Relief Without Notice, pursuant to section 501.207(3), Florida Statutes, and Fla.R.Civ.P., Rules 1.610 and 1.620, regarding Defendants **LAURA L. HESS, ESQ., LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC** (hereinafter referred to as "Defendants"), and states in support the following:

    I.      The Plaintiff adopts, realleges and incorporates herein each and every allegation and offer of proof set forth at length in its accompanying MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER AND INJUNCTIVE RELIEF WITHOUT NOTICE and APPENDIX OF EXHIBITS.

1

II.      Pursuant to Florida's Deceptive and Unfair Trade Practices Act, specifically Section 501.207(3), Florida Statutes (2007), the Attorney General is authorized to move this Court for equitable relief.

Based on the pleadings, affidavits, and exhibits filed herewith, it is alleged that:

a)      Defendants have induced thousands of consumers to become clients of Defendants' debt settlement practice by claiming the ability to negotiate the repayment of the consumer's unsecured debt for significantly less than the full amount. Defendants do not inform consumers that the Defendants' legal strategy of issuing dispute letters to creditors under the Fair Credit Billing Act may not be effective to toll or relieve the consumers' liability for payments to creditors and do not inform consumers that legal fees are paid first and that only after legal fees are paid does the consumer start paying money towards settlement of the debt owed to creditors.

b)      A review of documentation of certain of the Defendants' bank accounts, namely Bank Atlantic Account No. 0059893048 and Bank of America Account No. 5564384034 have discovered significant illicit payments.   Money from consumers is wired or otherwise deposited on a monthly basis into the Defendants' Bank Atlantic and Bank of America accounts ostensibly to pay the consumers' credit card debts to creditors or the Defendants' legal fees. However, from early 2006 to November, 2007, money totaling approximately $20 million from Bank Atlantic Account No. 0059893048 and Bank of America Account No. 5564384034 have been paid or transferred to persons and/or entities who are neither lawyers nor creditors.

c)      On September 30, 2007, Defendants registered three fictitious names with the Florida Department of State, Division of Corporations, which names mimic established and well known national banks: CAPITAL ONE, CHASE CARD SERVICES and DISCOVER

2

FINANCIAL. On and after September 30, 2007, Defendants, through checks signed by Edward Cherry, issued numerous checks payable to CAPITAL ONE which checks were deposited into Account No. 0579001970 at BankUnited, F.S.B. On and after September 30, 2007, Defendants, through checks signed by Edward Cherry, issued numerous checks payable to CHASE CARD SERVICES which checks were deposited into Account No. 0579001954 at BankUnited, F.S.B. The total amount that has been deposited into these two aforesaid accounts plus three other accounts at BankUnited, F.S.B. through checks issued by Defendants and signed by Edward Cherry is in excess of $4 million. The five aforesaid accounts at BankUnited, F.S.B. are titled in the name of Edward Cherry. Capital One Bank and Chase Bank do not maintain any accounts or have any relationship with BankUnited, F.S.B. for the deposit of checks payable to Capital One or Chase for payment of credit card bills of customers.

d)    Defendants, through checks signed by Edward Cherry, issued checks payable to BANK UNITED to be credited to Account No. 0531129160. The total amount of these checks during the year 2007 is $122,438.45. Bank United Account No. 0531129160 is the account for the mortgage held by BankUnited on 10985 NW 71st Court, Parkland, Florida which is Edward Cherry's residence.

III.    If Defendants are permitted to continue to conduct business and continue the above-cited deceptive trade practices, the number of consumers aggrieved by these deceptive acts and practices will increase unless equitable relief is granted by this Court. Plaintiff has no adequate remedy at law to protect the consuming public against these continuing deceptive trade practices.

IV.    Unsuspecting consumers have paid millions to Defendants for payment of credit card debt. Defendants are illicitly diverting much of this money to themselves and their families

3

and associates. Irreparable harm will result to consumers without the requested relief. The irreparable harm will occur because Defendants have already transferred millions of dollars to individuals who are not creditors of consumers and to their accounts outside the United States. For example, on or about November 9, 2007, Eric Siversen, Defendants' accountant, transferred $950,000.00 from his Bank Atlantic account to Safe Harbor Bank in Switzerland. At another unknown time, Mr. Siversen transferred $400,000.00 from his Bank Atlantic account to Safe Harbor Bank in Switzerland. When questioned by Bank Atlantic officials, Mr. Siversen explained he is a "Client-Marketing consultant" and that Hess Kennedy was one of his customers. [attached SAR] On or about February 4, 2008, Eric Siversen, Defendants' accountant, attempted to transfer $550,000.00 from an account at BankUnited to Safe Harbor Bank, Saint Vincent, Grenadines but BankUnited would not process the wire transfer. The BankUnited account from which Mr. Siversen attempted the wire transfer was titled to Mr. Siversen, one of his companies and Global Payment Processing, LLC, a company whose manager is Edward Cherry, the Defendants' business manager. [attached Division of Corporations filing; Hess dep. 69]

     V.     In the event that notice of this Motion is given to Defendants, assets and other evidence of the acts alleged herein may be removed, dissipated, or transferred, prejudicing Plaintiff's prosecution of this action and the ability to recover restitution for consumers.

     "[R]ule 1.610(a) requires a 'strong and clear' showing before a temporary injunction without notice may issue. (citation omitted) To satisfy the Rule's mandate of establishing why notice should not be required, a plaintiff seeking an ex parte temporary injunction must demonstrate (1) how and why the giving of notice would accelerate or precipitate the injury or (2) that the time required to notice a hearing would actually permit the threatened irreparable

injury to occur. (citations omitted) Examples of such a showing are where notice of a hearing will prompt a defendant to ....cause unsecured assets to be liquidated in the context of a fraudulent enterprise, or precipitate the disposal of the major asset ...." Smith v. Knight, 679 So. 2d 359, 361-362 (4th Dist. Ct. App.1996)

It is submitted that the Plaintiff has met its burden as aforesaid in view of the diversion of millions of dollars from consumers that has been detailed in the instant Motion and accompanying Memorandum and Appendix of Exhibits. Notice to the Defendants of the relief requested by this Motion and the accompanying disclosure of the evidence that Plaintiff has uncovered will provide the Defendants opportunity to continue the diversion of money to overseas accounts and perhaps depart from Florida with additional money that would otherwise have been beyond their control with the granting of the requested equitable relief. The granting of the requested equitable relief will also insure that future payments to the Defendants from consumers are not illicitly diverted while the Receiver determines a course of action and this proceeding is resolved on the merits.

VII.    Pursuant to Fla. R. Civ. P. 1.610(b), Plaintiff, as an agency of the State of Florida, is not subject to the requirement of posting bond, and under the facts alleged herein, it is in the public interest to dispense with the requirements for same.

VIII.    The Plaintiff requests the Court appoint a Receiver in this matter pursuant to Section 501.207(3), Florida Statutes, to be paid for by the Defendants. The Receiver, or custodian, may be appointed to wind up and liquidate or to manage the business and affairs of the corporation or limited liability company. The Receiver may exercise all of the powers of the corporation or limited liability company, through or in place of its board of directors or officers

5

or of its managers or members, to the extent necessary to manage the affairs of the corporation or limited liability company in the best interests of its creditors. F.S. § 607.1432; § 608.4492.

If a Receiver is not appointed by this Court, consumers will suffer irreparable harm as Defendants will continue to have unfettered control over consumers' funds to disburse said funds, as has occurred in the past, for the benefit of the Defendants and their family and associates and NOT to creditors of the consumers. Untold numbers of consumers are currently making monthly payments to the Defendants and it is foreseeable that other consumers will continue to sign up as clients and provide even more money to Defendants if a Receiver is not appointed by this Court.

IX.    At this time, no effort to give notice to Defendants has been made. The Plaintiff shall notify Defendants by service upon them of the Motion, Order, and all exhibits filed in this case.

**WHEREFORE,** the Plaintiff moves that this Court grant equitable relief, without the requirement of bond, as follows:

1.    Appoint a Receiver, pursuant to Fla.R.Civ.P., Rule 1.620, and Section 501.207(3), Florida Statutes, with the following powers to review the financial records of the Defendants, to manage the affairs of LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC and all other entities operated, controlled or otherwise associated with the Defendants' activities, including but not limited to HESS KENNEDY COMPANY CHARTERED, CONSUMER RECOVERY TEAM, HESS KENNEDY HOLDINGS LTD., LEGAL DEBT CENTER, HESS KENNEDY COMPANY, LAURA HESS, INC., HESS KENNEDY, LEGAL DEBT CENTER, LLC, HESS KENNEDY FLORIDA, HESS KENNEDY CHARTERED, HESS | KENNEDY, LLC, HESS KENNEDY

PAYMENT, HESS KENNEDY TRUST COMPANY, THE CONSUMER LAW CENTER, LC,
HESS | KENNEDY FLORIDA, HESS KENNEDY TRUST ACCOUNT, GLOBAL PAYMENT
PROCESSING, LLC and CAMPOS CHARTERED LAW FIRM, which entities shall be deemed
to be included in the term "Defendants" herein, and to ensure proper disposition of consumers'
funds, with the Receiver's fees to be paid by the Defendants. The Receiver shall be permitted to
have access to any of the Defendants' business records and to any other records that may be
seized by any law enforcement agency. The Receiver shall have the following duties, powers
and authority.

The Receiver shall marshal, preserve, protect, maintain, manage and safeguard the Assets
of Defendants in a reasonable, prudent, diligent, and efficient manner. Property in the custody of
the Receiver or property to which the Receiver has the right to custody shall not be subject to
execution or similar process. The Receiver shall be vested with the usual powers and duties of
equity Receivers in like cases, and is hereby authorized and instructed to take possession of and
control over the Assets; and, without limitation of any kind as to his general duties, the Receiver
shall have at least the following specific duties and responsibilities:

a. Business Offices. The Receiver shall take possession of all Assets, bank accounts,
including but not limited to accounts at BANK ATLANTIC, BANK OF AMERICA,
BANKUNITED and SIGNATURE BANK, offices, and the contents of such offices where the
business of Defendants has been conducted.

b. Revenues. Commencing immediately, the Receiver shall collect all receipts, revenues,
deposits, receivables, notes and other sums generated by, from or due to Defendants. All sums
marshaled shall be deposited with a state or federally chartered financial institution. Defendants
shall immediately turn over to the Receiver any monies belonging to or otherwise generated from

7

consumers or Defendants' clients currently in their possession. Defendants shall refrain from any further collection of receipts or revenues generated by Defendants from consumers or Defendants' clients, except as the Receiver might direct. Any funds of Defendants received by any party shall be forthwith delivered to the Receiver without further Order of this Court. The Receiver shall have the exclusive right to pursue, collect and control all monies belonging to or otherwise generated by Defendants, and shall have the exclusive right to make payments and disbursements from Defendants' bank accounts, including rents, accounts payable, expenses, costs of merchandise or equipment, and payroll.

   c. General Powers. The Receiver shall exercise all other powers and rights necessary to manage, protect and preserve the Assets and the businesses of Defendants.

   d. Cooperation: Defendants, and their officers, agents, partners, servants, employees and transferees shall cooperate fully with Receiver and comply with Receiver's requests for information, records and documentation so that Receiver may perform his duties with full information and knowledge. Defendants, and their officers, agents, partners, servants, employees and transferees shall not interfere with or hinder the operations of Receiver, but shall maintain their legal rights with respect to this action, the Receiver and the Receivership.

   e. Possession of Property: The Receiver shall immediately take possession and control of all of the assets in the possession or under the control of Defendants whether such property is held by Defendants, beneficially or otherwise.

   f. Bank Accounts. As the Receiver may deem necessary, and effective immediately upon entry of this Order, the Receiver shall establish and maintain, at a bank or banks whose deposits are federally insured, operating accounts for the Receivership into which the Receiver shall deposit all receipts or revenues from Defendants. Amounts on deposit in all accounts, including

8

but not limited to in a financial institution, brokerage account, and/or as a retainer previously paid and/or in bank accounts at BANK ATLANTIC, BANK OF AMERICA, BANKUNITED and SIGNATURE BANK, of Defendants shall be transferred to the Receiver without further Order of this Court. All safety deposit boxes shall be transferred to the Receiver without further Order of this Court. The Receiver is authorized to disburse regularly and punctually (to the extent available), all amounts hereafter due and payable as reasonable, necessary and proper operating expenses of the Receivership, subject to the terms of this Order.

g. Expenses. The Receiver shall pay from the estate's of Defendants funds the expenses incurred by him in the conservation, protection and management of the Assets.

h. Maintenance of Assets. The Receiver shall enter into any and all service contracts reasonably necessary to keep, maintain and protect the Assets.

i. Checks. The Receiver shall endorse all checks and drafts now or hereafter made payable to Defendants concerning such accounts receivables, deposits, rents, income, profits, and revenues.

j. Mail. The Receiver shall open all mail in connection with the Assets or business(es) of Defendants.

k. Supplemental. The Receiver shall have all other duties, powers and authority as set forth in the Order of this Court.

2.     Enjoin Defendant LAURA L. HESS, Esq., EDWARD CHERRY, also known as CHERRY EDWARD, EDWARD KENNEDY CHERRY, EDWARD THOMAS KENNEDY or EDWARD T. KENNEDY and ERIC SIVERSEN individually and/or by or through their spouses, trustees, agents, employees or other persons who act under, by, through or on behalf of either or all of them or the Defendants, from transferring, conveying, encumbering, disposing of

9

or otherwise alienating their real estate in the State of Florida, including but not limited to real estate located at 9447 Satinleaf Place, Parkland, FL 33076, 10985 NW 71st Court, Parkland, FL 33076 and 9351 NW 39th Court, Coral Springs, FL 33065, respectively until further order of this Court.

3. Enjoin Defendant LAURA L. HESS, Esq., EDWARD CHERRY, also known as CHERRY EDWARD, EDWARD KENNEDY CHERRY, EDWARD THOMAS KENNEDY or EDWARD T. KENNEDY and ERIC SIVERSEN individually and/or by or through their spouses, trustees, agents, employees or other persons who act under, by, through or on behalf of either or all of them or the Defendants, from transferring, conveying, encumbering, disposing of or otherwise alienating their personal bank accounts or business accounts standing in the name of another person or entity, including but not limited to accounts at Bank Atlantic, Bank of America, BankUnited and Signature Bank, until further order of this Court.

4. Enjoin Defendant LAURA L. HESS, Esq., EDWARD CHERRY, also known as CHERRY EDWARD, EDWARD KENNEDY CHERRY, EDWARD THOMAS KENNEDY or EDWARD T. KENNEDY and ERIC SIVERSEN individually and/or by or through their spouses, trustees, agents, employees or other persons who act under, by, through or on behalf of either or all of them or the Defendants, from destroying, mutilating, concealing, altering, or disposing of, in any manner, any of the books, records, papers, computer disks, computer memory retention devices or the like, computers, documents, correspondence, obligations or other property of the Defendants herein until further order of this Court.

5. Order Defendants LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC, Defendant LAURA L. HESS, Esq., EDWARD CHERRY, also known as CHERRY EDWARD, EDWARD KENNEDY

10

CHERRY, EDWARD THOMAS KENNEDY or EDWARD T. KENNEDY and ERIC

SIVERSEN individually and/or by or through their spouses, trustees, agents, employees or other

persons who act under, by, through or on behalf of either or all of them or the Defendants, to

fully and immediately comply with any reasonable request or direction of the Receiver.

6.       Order that no bond shall be required with respect to the relief requested herein as

the Plaintiff, **OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL**

**AFFAIRS, STATE OF FLORIDA**, is an agency of the State of Florida and the public interest

served by this action.

7.       Order that any and all law enforcement authorities, including but not

limited to the Broward Sherriff's Office for said locations in Broward County, are authorized to

take any and all necessary steps to assist the Receiver in the securing of the assets, business

offices, and contents of such business offices of Defendants LAURA L. HESS, ESQ., LAURA

HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER

LAW CENTER, LLC located at 210 N. University Drive, Suite 900, Coral Springs, FL 33071

and any and all other locations of the Receivership Defendants HESS KENNEDY COMPANY

CHARTERED, CONSUMER RECOVERY TEAM, HESS KENNEDY HOLDINGS LTD.,

LEGAL DEBT CENTER, HESS KENNEDY COMPANY, LAURA HESS, INC., HESS

KENNEDY, LEGAL DEBT CENTER, LLC, HESS KENNEDY FLORIDA, HESS KENNEDY

CHARTERED, HESS | KENNEDY, LLC, HESS KENNEDY PAYMENT, HESS KENNEDY

TRUST COMPANY, THE CONSUMER LAW CENTER, LC, HESS | KENNEDY FLORIDA,

HESS KENNEDY TRUST ACCOUNT, GLOBAL PAYMENT PROCESSING, LLC and

CAMPOS CHARTERED LAW FIRM, which entities shall be deemed to be included in the term

"Defendants."

11

8.    Grant all other relief as deemed necessary by this Court.


IT IS HEREBY CERTIFIED that a true and correct copy of this Emergency Motion for

Appointment of Receiver and Injunctive Relief Without Notice will be served with the Court's

Order.

Dated this 11th day of July, 2008

Respectfully Submitted,

**BILL McCOLLUM**
**Attorney General**
By: Fulvio Joseph Gentili

Assistant Attorney General
FL Bar No. 0037493
Office of the Attorney General
Department of Legal Affairs
110 S.E. 6th Street, Tenth Floor
Ft. Lauderdale, FL 33301
(954) 712-4600

12

# EXHIBIT B

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

OFFICE OF THE ATTORNEY GENERAL,
DEPARTMENT OF LEGAL AFFAIRS,
STATE OF FLORIDA,

        Plaintiff,

vs.

        Case No. 08-007686 08

LAURA L. HESS, ESQ.,
LAURA HESS & ASSOCIATES, P.A.,
HESS KENNEDY CHARTERED LLC; and
THE CONSUMER LAW CENTER, LLC.

        Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER AND INJUNCTIVE RELIEF WITHOUT NOTICE

Plaintiff, **OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA,** by and through the undersigned attorney, files this Memorandum of Law in Support of Motion for Appointment of Receiver and Injunctive Relief Without Notice regarding Defendants, **LAURA L. HESS, ESQ., LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC** (hereinafter referred to as "Defendants"), and in support thereof states as follows.

1

## *INTRODUCTION*

### *Initial Misrepresentations to Consumers*

Defendants' scheme starts with the solicitation and procurement of distressed consumers from across the United States as clients. Defendants obtain clients by representing their expertise in the practice of debt settlement and by claiming the ability "to negotiate the repayment of the consumer's unsecured debt for significantly less than the full amount." [Ex. 2, bate stamp pp. 0124-0127]

Defendants' counsel represents that the "only representations made by the law firm are those contained in its retainer agreement, welcome letter and world-wide websites." [Ex. 3] Relevant representations from the Defendants' internet websites have been set forth above. Three versions of the Defendants' retainer agreement have been produced to the Plaintiff. [Ex. 2, bate stamp pp. 093-095; 0101-0103; 0104-0105] None of the agreements informs consumers that the Defendants' legal strategy of issuing 60-day dispute letters under the Fair Credit Billing Act may not be effective to toll or relieve the consumers' liability for payments to creditors. In fact, recent federal district court decisions and one federal court of appeals opinion have dismissed the legal strategy as advocated by the Defendants. Esquibel v. Chase Manhattan Bank USA, N.A., 487 F. Supp. 2d 818 (S.D. Tex., 2007); Esquibel v. Chase Manhattan Bank USA, N.A., 2008 U.S. App. LEXIS 9273 (5th Cir., April 29, 2008); Cunningham v. Bank One, 487 F. Supp. 2d 1189 (W.D. Wash., 2007); Eicken v. USAA Federal Savings Bank, 498 F. Supp. 2d 954 (S.D. Tex., 2007); Carmack v. Chase Manhattan Bank (USA) N.A., 521 F. Supp. 2d 1017 (N.D. Cal., 2007).

Counsel for Attorney Hess before the Florida Bar has also represented that in the Defendants' retainer agreements "clients acknowledge that legal fees are paid first and that only

after legal fees are paid does the client start paying money towards the actual settlement of debts". [Ex. 5, bate stamp pp. 1911] Plaintiff has reviewed various versions of the Defendants' retainer agreements, especially the three above referenced, and finds no such language in the Defendants' retainer agreements.

Two versions of the Defendants' welcome letter to clients have also been produced to the Plaintiff. [Ex. 2, bate stamp pp. 0114-0115] Neither version of welcome letter informs consumers that Defendants' legal strategy may not be effective to toll or relieve liability to creditors nor that legal fees are paid first and that only after legal fees are paid does the client start paying money towards settlement of the debt owed to creditors.

Accordingly, the foregoing nondisclosures and/or misrepresentations constitute deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act. However, the foregoing nondisclosures and/or misrepresentations are only the tip of the iceberg as Plaintiff's investigation has uncovered conduct that may constitute fraud, as hereinafter set forth.

### STATEMENT OF FACTS

1. *Defendants' Business Plan.* Defendants' business has two components for debt settlement: law firms for legal work and a payment processing company. [Ex. 31, Cherry dep. 46] Laura L. Hess is the attorney who operates the law firms and a non-lawyer named Edward Cherry operates the payment processing company. [Ex. 30, Hess dep. 10-11, 69; Ex. 31, Cherry dep. 50-51] Laura L. Hess putatively has a law partner named Edward Thomas Kennedy who is not admitted in Florida but, according to Ms. Hess, spends most of his time in the Florida headquarters office in Coral Springs. [Ex. 30, Hess dep. 14-15] In contrast, Mr. Cherry says that Mr. Kennedy has not been at the Coral Springs headquarters office. [Ex. 31, Cherry dep. 41] The Defendants' misrepresentations do not hide that Edward Cherry is Edward Thomas Kennedy. [Ex. 36]

3

Defendants have organized myriad legal entities and registered numerous fictitious names in conjunction with their operations. Accordingly, the Defendants have utilized the multiple names as hereinafter set forth:

| | |
|---|---|
| HESS KENNEDY CHARTERED LLC | CAPITAL ONE |
| HESS KENNEDY COMPANY CHARTERED | CHASE CARD SERVICES |
| THE CONSUMER LAW CENTER, LLC | CONSUMER RECOVERY TEAM |
| HESS KENNEDY HOLDINGS LTD. | LEGAL DEBT CENTER |
| HESS KENNEDY COMPANY | LAURA HESS, INC. |
| HESS KENNEDY | LEGAL DEBT CENTER, LLC |
| HESS KENNEDY FLORIDA | DISCOVER FINANCIAL |
| HESS KENNEDY CHARTERED | HESS \| KENNEDY, LLC |
| HESS KENNEDY PAYMENT | LAURA HESS & ASSOCIATES, PA |
| HESS KENNEDY TRUST COMPANY | THE CONSUMER LAW CENTER, LC |
| HESS \| KENNEDY FLORIDA | HESS KENNEDY TRUST ACCOUNT |
| GLOBAL PAYMENT PROCESSING, LLC | CAMPOS CHARTERED LAW FIRM[1] |
| [Ex. 17, 18, 24, 26] | |

Edward Cherry justifies the use of multiple corporate identities by saying that "whenever you see the company or the Inc., or an LLC, it's supposed to denote the payment processing company because there's a — you know, there's a payment processing company, and then there's a law firm. The law firm would have been, like I said, just a Hess, Kennedy. So if you see a company or an Inc., or an LLC, in any of the filings, those would have been the payment processing business." [Ex. 31, Cherry dep. 45-46]

The Defendants have implemented a bifurcated business plan. Edward Cherry enunciated the crux of the plan as follows: "the gist of the business was, there's a law firm that

---

[1] This entity was organized by Jeffrey S. Campos on 8/24/06 using his residence as a place of business. [Ex. 18] In November of 2006, Mr. Campos began working for the Defendants. [Ex. 32, Campos dep. 7, 13-15, 21] Defendants have used this entity as another name through which to conduct their activities as this entity's payroll, operating and trust accounts show no activity from 11/1/07 to 3/7/08 except for 9 deposits and 7 wire transfers from Westchester Marketing Consultants, LLC, a company related to the Defendants as hereinafter explained. [Ex. 29B] This entity's payroll, operating and trust accounts were not opened until 12/4/06, that is after Mr. Campos started working for the Defendants. [Ex. 29B]

handles the legal work, and there's a payment processing company handling the payment processing." [Ex. 31, Cherry dep. 46] Furthermore, Defendants' counsel has confirmed that the payment processing company "Hess Kennedy Chartered, LLC f/k/a Hess Kennedy Company, f/k/a Hess Kennedy Chartered is a Florida C-Corp, responsible for processing consumer payments on behalf of the law firm." [Ex. 3]

Once a consumer has signed a services contract with the Defendants, the consumer commences to make monthly payments to the Defendants. Attorney Hess has been clear that the consumer 'is required to pay its flat fee up front and is broken down into monthly payments." [Ex. 4] Attorney Hess has reiterated to the Florida Bar that the fee is taken as the monthly payments are made and before any settlement is made with creditors. [Ex. 30, Hess dep. 43] Finally, Attorney Hess represented to the Florida Bar that consumer money beyond the Defendants' legal fee "goes into an escrow account. And once they've built up sufficient funds, and once we've received a settlement that corresponds with what they have in their escrow account, we released funds to the debt – the creditor." [Ex. 30, Hess dep. 42]

Defendants' counsel has succinctly described the source of the Defendants' business referrals or clients: "Other than word of mouth, the Law Firms generate business by entering into Advertising Contracts with not-for-profit and for profit Credit Counseling Companies that direct clients to the law firm that do not qualify for a 'consolidation loan', a 'consolidation plan', or 'formal bankruptcy.' None of these Credit Counseling Companies share ownership, operation, or control of any entity owned, operated and controlled by the law firm or the law firm's payment processing company." [Ex. 3]

Attorney Hess confirmed to the Florida Bar in deposition testimony that the Defendants

5

do not pay referral fees to credit counseling companies that refer consumers to the Defendants.
[Ex. 30, Hess dep. 30] In her correspondence to the Florida Bar, Attorney Hess represented that
the two credit counseling companies identified in complaints to the Florida Bar, namely
Consumer Credit Counseling of America (CCCOA) and The Credit Exchange (TCE), "received
no portion of the legal fees collected from [the complainants] for ... handling of the financial
analysis that concluded with the independent decision by [the credit counseling companies that
the complainants] did not qualify for a consolidation loan, a consolidation plan, or bankruptcy
under the amended [bankruptcy] Act." [Ex. 4]

      Counsel for Attorney Hess also represented to the Florida Bar that the Defendants do not
pay referral fees to credit counseling companies that refer consumers to the Defendants. In
correspondence dated October 12, 2007, counsel stated the following:

> "The Bar mentions several companies that have referred at least one client to
> Ms. Hess' law firm and alleges that these firms should be considered lawyer
> referral services. These firms are: 1. First Consumer Debt Consolidation (FCDC);
> 2. Consumer Credit Counseling of America (CCCA); 3. Consumer Credit Counsel-
> ing (CCC); and 4. The Credit Exchange (TCE). As is stated by my client in her letter
> to the Bar, my client and the law firm have no interest in any of these entities and
> have no control over how they conduct their affairs. Further, *as their name implies*
> *they are each a credit counseling company.* ... One of the law firms they refer to
> is the Hess Kennedy law firm. We are unaware of who else these companies refer
> business to. *The law firm does not pay for these referrals in any manner.*" (emphasis
> added) [Ex. 5, bate stamp pp. 1920, 1921]

    *Defendants Business Practices.* During the course of discovery, Defendants produced to
Plaintiff records for multiple bank accounts of the Defendant entities, but not of Laura L. Hess,
which records consisted of approximately 10,000 pages of account statements from Bank
Atlantic and Bank of America and the front and back of checks written on these accounts. In
reviewing these banks records and other documents that Plaintiff has obtained during its

investigation, Plaintiff has uncovered the following facts.

In contrast to their professed business plan, Defendants business practices are substantially different. A cursory review of the records from only two accounts has discovered significant illicit payments. The two accounts are Bank Atlantic account no. 0059893048 and Bank of America account no. 5564384034.

On May 16, 2007, Defendant Laura L. Hess' deposition was taken by the Florida Bar in regard to disciplinary proceedings that have been initiated against Attorney Hess. Attorney Hess testified that Edward Cherry is the business manager for her law firm Hess Kennedy Chartered. [Ex. 30, Hess dep. 11-12, 67-69]. Edward Cherry is the principal signatory of the checks of the Defendants which Plaintiff has reviewed. [Ex. 1] Edward Cherry has signed thousands of checks written from the Defendants' aforesaid Bank Atlantic and Bank of America accounts. [Ex. 1]

Money from consumers is wired or otherwise deposited on a monthly basis into the Defendants' Bank Atlantic and Bank of America accounts ostensibly to pay the consumers' credit card debts to creditors or the Defendants' legal fees. [Ex. 1; Ex. 30, Hess dep. 41-42; Ex. 31, Cherry dep. 70-73] However, from early 2006 to November, 2007, checks totaling approximately $12 million from Bank Atlantic account no. 0059893048 have been issued to the following persons and entities who are neither lawyers nor creditors:

The Attorney Network;
Consumer Credit Counseling of America;
Consumer Debt Solutions;
Consumer Recovery Team;
Hess Kennedy Holdings;
Jessica Jacucci;
Joseph Jacucci;

Monster Media Delray, Inc.;
Palm Beach Marketing Partners, LLC;
Raquel Sabio-Cherry;
Rescue Debt, Inc.;
Barbara Roussin;
Self Made, LLC;
Corey Tyler; and

Westchester Marketing Consultants.

The Attorney Network received $3,342,856.00 during the foregoing period. [Ex. 1] The

7

Attorney Network is ostensibly an attorney referral service. A number of complaints made to the Plaintiff state that the complainant was referred to the Defendants by The Attorney Network. [Ex. 1]

Consumer Credit Counseling of America received $1,927,333.00 during the foregoing period. [Ex. 1] Consumer Credit Counseling of America is ostensibly a credit counseling referral service. Consistent with the Defendants' admissions as aforesaid, a number of complaints made to the Plaintiff state that the complainant was referred to the Defendants by Consumer Credit Counseling of America. [Ex. 1]

Consumer Debt Solutions received $199,316.00 during the foregoing period. [Ex. 1] Consumer Debt Solutions is ostensibly a credit counseling referral service which is consistent with the Defendants' admissions as aforesaid as to the source of Defendants' business referrals. None of the complaints made to the Plaintiff mentions Consumer Debt Solutions. [Ex. 1]

Consumer Recovery Team received $132,696.00 in October and November of 2007. [Ex. 1] Consumer Recovery Team is a fictitious name entity registered on September 10, 2007 and owned by Edward Cherry. [Ex. 22]

Hess Kennedy Holdings received $798,000.00 during the foregoing period. [Ex. 1] Hess Kennedy Holdings is one of the Defendants' entities and its manager is Edward Cherry. [Ex. 21] Attorney Hess testified to the Florida Bar that Hess Kennedy Holdings "is really the division that we operate under our payroll company." [Ex. 30, Hess dep. 13]

Jessica Jacucci received $418,534.55 during the foregoing period. [Ex. 1] Jessica Jacucci is the maiden name of Edward Cherry's wife. [Ex. 6]

Joseph Jacucci received $130,455.00 during the foregoing period. [Ex. 1] Joseph

8

Jacucci is related by marriage to Edward Cherry and was the minister who performed the marriage of Edward Cherry and Jessica Jacucci. [Ex. 6]   Joseph Jacucci is also employed by the Defendants with a hire date of 4/23/07. [Ex. 7, bate stamp 1161]

Monster Media Delray, Inc. received $905,243.00 during the foregoing period; Palm Beach Marketing Partners, LLC received $163,241.00 during the foregoing period; and Westchester Marketing Consultants, LLC received $349,393.00 during the foregoing period. [Ex. 1] The principals of these three entities, Jeff Gombos, Neil Carlsen and Joel Carlsen, all have connections to Edward Cherry. [Ex. 19, 20, 23]

Raquel Sabio-Cherry received $226,915.00 during the foregoing period.  [Ex. 1]  Raquel Sabio-Cherry is the former wife of Edward Cherry. [Ex. 8]

Barbara Roussin received $90,000 during the foregoing period. [Ex. 1]  Barbara Roussin is connected to Edward Cherry and was a witness at the marriage of Edward Cherry and Jessica Jacucci. [Ex. 6]  In addition, Barbara Roussin and Edward Cherry were the witnesses at the marriage of Eric Siversen and Rebakah Jacucci. [Ex. 9]  Eric Siversen was employed by the Defendants as an accountant. [Ex. 33, Rebecca Valentine dep. 23-24]

Self Made, LLC received $3,262,089.49 during the foregoing period.  [Ex. 1]  Self Made, LLC had its registered address at the Defendants' offices in Coral Springs and was an entity organized and controlled by Eric Siversen which Mr. Siversen dissolved on April 21, 2008. [Ex. 24] Attorney Hess' assistant testified to the Florida Bar that Eric Siversen was employed by the Defendants as an accountant. [Ex. 33, Rebecca Valentine dep. 23-24]

Eric Siversen, together with another company of his called Home Plate Consultants, LLC and Global Payment Processing, LLC, an Edward Cherry organized LLC, are all titled on

account no. 0579002101 at BankUnited. [Ex. 29C; Ex. 24] On October 19, 2007, Defendants,

through a check signed by Edward Cherry, issued a check for $45,000 payable to Global

Payment Processing. [Ex. 1] From 11/9/07 to 2/4/08, the sum of $1,108,912.00 was

also transferred or otherwise deposited into said account no. 0579002101 at

BankUnited. [Ex. 29C]

Corey Tyler received $96,000.00 from March 2, 2007 to October 12, 2007. [Ex. 1]

Corey Tyler is employed by the Defendants and his hire date is September 10, 2007. [Ex. 7, bate

stamp p. 1165]

Rescue Debt, Inc. received $89,795.02 during the foregoing period. [Ex. 1] Rescue

Debt, Inc. is ostensibly a credit counseling referral service which is consistent with the

Defendants' admissions as aforesaid as to the source of Defendants' business referrals. None of

the complaints made to the Plaintiff mentions Rescue Debt, Inc. [Ex. 1]

In addition to the foregoing, the Defendants made wire transfers from Bank of America

account no. 5564384034 to The Credit Exchange Corp. and Coastal Credit Solutions. The Credit

Exchange (TCE) received approximately $7,500,000.00 from May, 2006 through April 9, 2008.

[Ex. 1] Coastal Credit Solutions received approximately $800,000.00 from December 15, 2006

through April 9, 2008. [Ex. 1] The Credit Exchange (TCE) and Coastal Credit Solutions are

ostensibly credit counseling referral services which would be consistent with the Defendants'

admissions as aforesaid as to the source of Defendants' business referrals. Moreover, Attorney

Hess' correspondence and her counsel's correspondence to the Florida Bar confirm that The

Credit Exchange Corp. (TCE) is a credit counseling company. [Ex. 4; Ex. 5, bate stamp pp.

1920-1921]

10

Defendants also entered into a contract purportedly for advertising with Debt Settlement of America (DSA). The contract calls for DSA to advertise the services of the Defendants but not the Defendants' name and specifies monthly payments of $18,000.00 from the Defendants to DSA. [Ex. 10] Debt Settlement of America was a registered fictitious name entity owned by Hess | Kennedy, LLC and Consumer Credit Counseling of America, Inc. [Ex. 25]

On September 30, 2007, Edward Cherry registered three fictitious names with the Florida Department of State, Division of Corporations, which names mimic established and well known national banks. The three fictitious names Edward Cherry registered are CAPITAL ONE, CHASE CARD SERVICES and DISCOVER FINANCIAL. [Ex. 26]

On and after September 30, 2007, Defendants, through checks signed by Edward Cherry, issued numerous checks payable to CAPITAL ONE which checks were deposited into account no. 0579001970 at BankUnited, F.S.B. [Ex. 1; Ex. 29D]  Capital One Financial Corporation is a national bank chartered under the laws of the United States of America.  Capital One Financial Corporation does not maintain any accounts or have any relationship with BankUnited, F.S.B. for the deposit of checks payable to Capital One for payment of credit card bills of customers of Capital One Financial Corporation. [Ex. 34, Affidavit of Steven A. Mikita]

On and after September 30, 2007, Defendants, through checks signed by Edward Cherry, issued numerous checks payable to CHASE CARD SERVICES which checks were deposited into  account no. 0579001954 at BankUnited, F.S.B. [Ex. 1; Ex. 29D]   Chase Bank USA, N.A. is a national bank chartered under the laws of the United States of America.  Chase Bank USA, N.A. does not maintain any accounts or have any relationship with BankUnited, F.S.B. for the deposit of checks payable to Chase for payment of credit card bills of customers of

11

Chase Bank USA, N.A. [Ex. 35, Affidavit of Keith W. Schuck]

The total amount that has been deposited into these two aforesaid accounts plus three other accounts at BankUnited, F.S.B. through checks issued by Defendants and signed by Edward Cherry is in excess of $4 million. [Ex. 29D] The five aforesaid accounts at BankUnited, F.S.B. are titled in the name of Edward Cherry. [Ex. 29D]

In addition to the foregoing five accounts at BankUnited, F.S.B. titled to Edward Cherry, Defendants, through checks signed by Edward Cherry, issued eight checks payable to BANK UNITED to be credited to account no.0531129160. [Ex. 1] The total amount of these checks during the year 2007 is $122,438.45. [Ex. 1] Bank United account no. 0531129160 is the account for the mortgage held by BankUnited on 10985 NW 71st Court, Parkland, Florida which is Edward Cherry's residence. [Ex. 11]

### *ARGUMENT*

1. *Legal Standards.* The Office of the Attorney General, Department of Legal Affairs, State of Florida is prosecuting the Defendants for violations of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501 Part II, Florida Statutes (2007), hereinafter referred to as "the Act" or "FDUTPA". Defendants' business activities with consumers are acts within the purview of Chapter 501, Part II, Florida Statutes (2007). The Act is to be "construed liberally" to, inter alia, "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Florida Statutes (2007).

The Defendants are engaged in "trade or commerce", defined by the Act as "the advertising, soliciting, providing, offering or distributing...of any good or service, or any

property... or thing of value". F.S. § 501.203(8). Consumers are defined as "an individual; ... business; firm; association; joint venture; partnership; ... or any other group or combination." F.S. § 501.203(7). The purpose of the Act is to "protect the consuming public ... from those who engage in ... unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." F.S. § 501.202(2). Violations of the Act may be based on violations of "any law, statute, rule, regulation, or ordinance which proscribes...unfair, deceptive, or unconscionable acts or practices." F.S. § 501.203(3)(c).

Florida Rules of Civil Procedure, Rules 1.610 and 1.620, authorize the appointment of a receiver under appropriate circumstances. The Plaintiff is statutorily authorized to seek appointment of a receiver pursuant to Section 501.207(3), Florida Statutes (2007).

Generally, "injunctive relief is an extraordinary remedy to preserve the status quo, pending a final hearing, which ordinarily should not be granted absent a showing of irreparable harm; a clear legal right to the relief requested or substantial likelihood of success on the merits; an inadequate remedy at law; and considerations of the public interests. ... (citations omitted) ... However, because section 501.207... expressly authorizes the Department to seek injunctive relief on behalf of the state, the Department does not have to establish irreparable harm, lack of an adequate legal remedy or public interest. ... (citations omitted) ... The Department's sole burden at a temporary injunction hearing under FDUTPA is to establish that it has a clear legal right to a temporary injunction." Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs, 761 So. 2d 1256, 1260 (Fla. Dist. Ct. App. 3rd Dist. 2000).

The foregoing principles expressly refer to injunctive relief but the principles are equally applicable to the appointment of a receiver. Florida Rule of Civil Procedure, Rule 1.620(a). ("The provisions of rule 1.610 as to notice shall apply to applications for the appointment of

receivers.") In <u>Insurance Management, Inc. v. McLeod</u>, 194 So.2d 16, 17 (Fla. Dist. Ct. App. 3rd

Dist. 1967), the court stated that the "power to appoint a receiver is inherent in equity jurisdiction

and its exercise lies in the sound discretion of the chancellor to be granted or withheld according

to the facts and circumstances of the particular case." The <u>McLeod</u> court further acknowledged

that "a temporary receiver is appointed only to preserve the property and to protect the rights of

all parties therein." <u>Id</u>. at 18.

In <u>State v. Beeler</u>, 530 So. 2d 932 (1988), the Supreme Court reviewed both the issuance

of a temporary injunction and the appointment of a receiver. In its opinion the Court enunciated

the following standard:

> "A temporary injunction without notice is an extraordinary remedy and
> should be granted sparingly. ... (citations omitted) ... The allegations verified
> by the presenter must be strong and clear, and the trial judge should raise in
> his or her own mind all possible responses a defendant could raise if present.
> Because the incursion upon precious due process rights is facilitated by issuance
> of ex parte orders, trial courts should issue them only where an immediate threat of
> irreparable injury 'which forecloses opportunity to give reasonable notice' exists.
> ... (citation omitted) ... In such circumstances the trial court must balance the harm
> sought to be prevented against the rights of notice and hearing." <u>Id</u>. at 933-934.

The Supreme Court in <u>Beeler</u> felt "compelled to mention the sufficiency of the

allegations" in language which is germane to the instant application. The Court said:

> "The state's complaint is replete with averments of fraud and
> misrepresentations against Beeler, including the creation of bogus
> mortgage paper, concealing funds, and inflating property values. Sworn
> affidavits reveal that Beeler had to continuously seek out new investors
> to avoid the collapse of his scheme. In light of the evidence of an ongoing
> course of fraud and deception the trial court did not abuse its discretion
> when it issued the temporary injunction. ... (citation omitted) ... The
> legislature enacted chapters 517 and 494 to protect the public from fraud
> and deceit in the investment in securities. The laws are especially concerned
> with inexperienced investors who may be duped by unscrupulous brokers.
> Because of the statutes' public importance, the state should not be unduly
> restricted in its attempt to enforce them." <u>Id</u>. at 934.

14

2. *Additional Deceptive Trade Practices.* Plaintiff has uncovered facts establishing that Defendants have engaged in conduct that constitutes deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501 Part II, Florida Statutes (2007).

First, in regard to the Defendants' deceptive trade practices under FDUTPA, the court in State v. Beeler, supra, discusses the defendant's continuously seeking new investors [consumers] to avoid the collapse of the scheme in an ongoing course of fraud and deception. Id. at 934. Similarly, the Defendants herein have consumers continuously sign up for debt settlement services and make monthly payments into the Defendants' Bank Atlantic and Bank of America accounts. [Ex. 30, Hess dep. 41-42; Ex. 31, Cherry dep. 70-73] In order to keep the scheme going, Defendants undoubtedly make some payments to various creditors of their "clients".

Consumers become clients of the Defendants to avail themselves of Defendants' advertised expertise in debt settlement (also called "debt negotiation"). [Ex. 2, bate stamp 0124-0127] Defendants represent that money of consumers beyond the Defendants' legal fee "goes into an escrow account. ... and once we've received a settlement that corresponds with what they have in their escrow account, we released funds to the debt ÷ the creditor." [Ex. 30, Hess dep. 42] Thus, Defendants' bank accounts should reflect only two types of disbursements from the funds that consumers transfer to the Defendants for debt settlement: money to the Defendants for legal services and money to creditors to pay the consumers' indebtedness. Edward Cherry confirmed this in response to a question about how the law firm gets its fee: "Some of the moneys are legal fees, and then some of the moneys are earmarked for escrow." [Ex. 31, Cherry dep. 73]

Notwithstanding their representations, the Defendants have devised an unscrupulous scheme to divert funds. Defendants have diverted millions of dollars to themselves and a coterie

15

of family and associates who were not creditors of consumers.  Any costs of doing business that

Defendants incurred should have been paid from an operating account into which the legal fees

went after the fees were separated from the commingled escrow funds of the consumers. Edward

Cherry confirmed this as follows: "a report would come out identifying what the total escrows

would be versus legal fees, and then the escrows would be separated." [Ex. 31, Cherry dep. 75]

Accordingly, it is submitted that the Defendants diversion of millions of dollars to themselves

and a coterie of family and associates who were not creditors of consumers as hereinafter set

forth constitutes deceptive trade practices.

Plaintiff submits that the following disbursements from Bank Atlantic account no.

0059893048 are illicit diversions of consumer money to entities and individuals who are not

creditors and who had no right to the disbursement.

*Attorney Network.*  The Attorney Network received at least $3,342,856.00. The

Attorney Network is ostensibly an attorney referral service operated by various individuals,

including Attorney Michael Parks. [Ex. 27]   Attorney Parks has represented Edward Cherry on

various matters, including the transfer of ownership of Mr. Cherry's residence to Mr. Cherry

through a trust using Mr. Cherry's brother, Eric, as trustee. [Ex. 11] Despite Defendants'

aforesaid representations that they do not pay referral fees for debt settlement clients, the facts

establish the falsity of those statements as to the Attorney Network.  Moreover, the facts

establish a violation of F.S. § 877.02 which makes it a misdemeanor of the first degree for both

the Defendants and the principals of the Attorney Network to solicit or procure legal business,

either directly or indirectly, or to make it a business to solicit or procure legal business.

*Consumer Credit Counseling of America.*  Consumer Credit Counseling of America

received at least $1,927,333.00. Eric Nabydoski, the principal of Consumer Credit Counseling

16

of America, has a connection to Attorney Hess, Edward Cherry and the Hess Kennedy entities as evidenced by the joint registration and ownership of the fictitious entity named Debt Settlement of America, notwithstanding Attorney Hess' denial in testimony to the Florida Bar. [Ex. 25; Ex. 28; Ex. 30, Hess dep. 15] Despite Defendants' aforesaid representations that they do not pay referral fees for debt settlement clients, the facts establish the falsity of those statements as to Consumer Credit Counseling of America. Moreover, the facts establish a violation of F.S. § 877.02 which makes it a misdemeanor of the first degree for both the Defendants and the principals of Consumer Credit Counseling of America to solicit or procure legal business, either directly or indirectly, or to make it a business to solicit or procure legal business.

*Consumer Debt Solutions.* Consumer Debt Solutions received at least $199,316.00. Despite Defendants' aforesaid representations that they do not pay referral fees for debt settlement clients, the facts establish the falsity of those statements as to Consumer Debt Solution. Moreover, the facts establish a violation of F.S. § 877.02 which makes it a misdemeanor of the first degree for both the Defendants and the principals of Consumer Debt Solutions to solicit or procure legal business, either directly or indirectly, or to make it a business to solicit or procure legal business.

*Consumer Recovery Team.* Consumer Recovery Team received at least $132,696.00. Consumer Recovery Team is a fictitious entity owned by Edward Cherry and is the named payee on one of the accounts, namely account no. 0579001962, at Bank United controlled by Edward Cherry. [Ex. 22; Ex. 29D]

*Hess Kennedy Holdings.* Hess Kennedy Holdings received at least $798,000.00. While Attorney Hess testified to the Florida Bar that Hess Kennedy Holdings "is really the division that we operate under our payroll company" [Ex. 30, Hess dep. 13], the Defendants operating

17

expenses should be paid from the Defendants' independent operating account into which its fees are separated per Edward Cherry's admission. [Ex. 31, Cherry dep. 75]

*Jessica Jacucci.* Jessica Jacucci received at least $418,534.55. As Edward Cherry's wife, Jessica Jacucci is certainly not a creditor and thus not entitled to any of the consumers' funds. Moreover, Defendants attempt to hide the payments through notations on the checks such as PIP, pain and suffering, refund, etc. [Ex. 12, checks numbered 2038, 2137, 2650, 2826, 2902, bate stamp pp. HK.FL.AG. 03810, 03791, 03666, 03631, 03612]

*Joseph Jacucci.* Joseph Jacucci received at least $130,455.00. As Joseph Jacucci is the brother-in-law of Edward Cherry and an employee of Defendants, he is certainly not a creditor and thus not entitled to any of the consumers' funds. Moreover, Defendants attempt to hide the payments through notations on the checks such as PIP, reimbursement, etc. [Ex. 13, checks numbered 2257, 2281, 2300, 2980, bate stamp pp. HK.FL.AG. 03759, 03747, 03753, 03748, 03593, 03595]

*Monster Media Delray, Inc., Palm Beach Marketing Partners, LLC and Westchester Marketing Consultants, LLC.* Monster Media Delray, Inc., Palm Beach Marketing Partners, LLC and Westchester Marketing Consultants, LLC received at least $1,417,847.00. The principals of these three entities, Jeff Gombos, Neil Carlsen and Joel Carlsen, all have connections to Edward Cherry and the Defendants.

Jeff Gombos and Joel Carlsen are the principals of Monster Media Delray, Inc. which was incorporated on June 9, 2004. Jeff Gombos and Joel Carlsen are also principals of First Consumer Debt Consolidation, Inc. with Edward Kennedy. [19] In addition, HESS | KENNEDY, LLC registered the fictitious name First Consumer Debt Consolidation on August 23, 2004 with the same business address in Delray Beach, FL as First Consumer Debt

18

Consolidation, Inc. [20]  Attorney Hess testified to the Florida Bar that First Consumer Debt

Consolidation is a principal source of referrals to Defendants.  [Ex. 30, Hess dep. 30]

Joel Carlsen organized Palm Beach Marketing Partners, LLC on 5/23/06 using the same

business address in Delray Beach, FL as First Consumer Debt Consolidation, Inc. (n.b. 2006

Annual Report changes address to 4257 East Main Street, Jupiter, FL).  [Ex. 23]

Neil Carlsen and Joel Carlsen organized Westchester Marketing Consultants, LLC on

3/8/07 using the business address of Palm Beach Marketing Partners, LLC (4257 East Main

Street, Jupiter, FL).  [Ex. 23]  Neil Carlsen is also the Director of Business Development for

Defendants' Consumer Law Center. [Ex. 14, Letter dated 2/8/08]

The Defendants' disbursement of such substantial sums to associates for putative

marketing cannot be justified, in view of Jeff Gombos', Joel Carlsen's and Neil Carlsen's

involvement in generating business for the Defendants.   Moreover, any disbursements to

Monster Media Delray, Inc., Palm Beach Marketing Partners, LLC and Westchester Marketing

Consultants, LLC for advertising should been paid from the Defendants' independent operating

account into which its fees are separated per Edward Cherry's admission. [Ex. 31, Cherry dep.

75]

Despite Defendants' aforesaid representations that they do not pay referral fees

for debt settlement clients, the facts establish the falsity of those statements as to Monster Media

Delray, Inc., Palm Beach Marketing Partners, LLC and Westchester Marketing Consultants,

LLC.  Moreover, the facts establish a violation of F.S. § 877.02 which makes it a misdemeanor

of the first degree for both the Defendants and the principals of Monster Media Delray, Inc.,

Palm Beach Marketing Partners, LLC and Westchester Marketing Consultants, LLC to solicit or

19

procure legal business, either directly or indirectly, or to make it a business to solicit or procure legal business.

*Raquel Sabio-Cherry*. Raquel Sabio-Cherry received at least $226,915.00. As the former wife of Edward Cherry, Raquel Sabio-Cherry is certainly not a creditor and thus not entitled to any of the consumers' funds.

*Barbara Roussin*. Barbara Roussin received at least $90,000.00. As an acquaintance of Edward Cherry, Barbara Roussin is certainly not a creditor and thus not entitled to any of the consumers' funds.

*Eric Siversen*. Eric Siversen, through his companies (Self Made, LLC and Home Plate Consultants, LLC) received at least $4.3 million. Eric Siversen is connected to Attorney Hess, Edward Cherry and the Defendants through his employment as their accountant. Accordingly, Eric Siversen is certainly not a creditor and thus not entitled to any of the consumers' funds. Moreover, Moreover, Defendants attempt to hide the payments by making the transfers payable to Eric Siversen's entities but one transfer on 2/16/07 for $34,500.00 was inadvertently issued with the payee named as "Eric Siversen". [Ex. 15, bate stamp p. HK.FL.AG. 03180] This transfer was returned on 2/21/07 and a new transfer for the same amount was issued on 2/21/07 to Self Made, LLC. [Ex. 15, bate stamp p. HK.FL.AG. 03181]

*Corey Tyler*. Corey Tyler received at least $96,000.00. As Corey Tyler is employed by the Defendants, he is certainly not a creditor and thus not entitled to any of the consumers' funds. Moreover, Defendants attempt to hide the payments through notations on the checks such as PIP, recoupment, etc. [Ex. 16, checks numbered 2280, 2298, bate stamp pp. HK.FL.AG. 03754, 03748]

20

*Rescue Debt, Inc.* Rescue Debt, Inc. received at least $89,795.02. Despite Defendants' aforesaid representations that they do not pay referral fees for debt settlement clients, the facts establish the falsity of those statements as to Rescue Debt, Inc. Moreover, the facts establish a violation of F.S. § 877.02 which makes it a misdemeanor of the first degree for both the Defendants and the principals of Rescue Debt, Inc. to solicit or procure legal business, either directly or indirectly, or to make it a business to solicit or procure legal business.

*The Credit Exchange Corp. (TEC) and Coastal Credit Solutions.* The Credit Exchange Corp. and Coastal Credit Solutions received substantial sums from Bank of America account no. 5564384034. The Credit Exchange (TCE) received at least $7,500,000.00 and Coastal Credit Solutions received at least $800,000.00. Despite Defendants' aforesaid representations that they do not pay referral fees for debt settlement clients, the facts establish the falsity of those statements as to The Credit Exchange Corp. and Coastal Credit Solutions. Moreover, the facts establish a violation of F.S. § 877.02 which makes it a misdemeanor of the first degree for both the Defendants and the principals of The Credit Exchange Corp. and Coastal Credit Solutions to solicit or procure legal business, either directly or indirectly, or to make it a business to solicit or procure legal business.

Second, on and after September 30, 2007, Defendants, through checks signed by Edward Cherry, issued numerous checks payable to CAPITAL ONE and CHASE CARD SERVICES which checks were deposited into two accounts (account nos. 0579001970 and 0579001954) at BankUnited, F.S.B.

*CAPITAL ONE and CHASE CARD SERVICES.* Capital One Bank and Chase Bank issue credit cards to consumers. Capital One Bank and Chase Bank are federally chartered banks. Capital One Bank and Chase Bank do not maintain any accounts or have any relationship with

21

BankUnited, F.S.B. for the deposit of checks payable to Capital One Bank and Chase Bank for payment of credit card bills of customers. A sampling of checks has disclosed deposits since September 30, 2007 to the two aforesaid accounts at BankUnited, F.S.B. in a total amount in excess of $150,000.00. On September 30, 2007, Edward Cherry registered the fictitious names CAPITAL ONE and CHASE CARD SERVICES with the Florida Department of State, Division of Corporations for use in establishing the two aforesaid accounts which are titled to him. [Ex. 29D]

It is submitted that Defendants and Edward Cherry have no legitimate reason to register the fictitious names CAPITAL ONE and CHASE CARD SERVICES. Moreover, officers from the two banks, Capital One Bank and Chase Bank, have affirmed that their financial institutions do not have any interest in the two accounts controlled by Edward Cherry at BankUnited, F.S.B. standing in the name of CAPITAL ONE and CHASE CARD SERVICES. Finally, Defendants attempt to hide the diversion of money into accounts controlled by Edward Cherry through the ruse of issuing checks that appear intended for Capital One Bank and Chase Bank to pay consumer credit card debts when the money is really destined for the personal accounts of Edward Cherry, Attorney Hess and their associates. This conduct constitutes deceptive trade practices under FDUTPA.

Third, Defendants, through checks signed by Edward Cherry, issued at least eight checks payable to BANK UNITED to be credited to BankUnited account no.0531129160, the BankUnited mortgage account on Edward Cherry's residence.

*Payment of Edward Cherry's mortgage.* Payment of Edward Cherry's mortgage held by BankUnited should have been made from Edward Cherry's personal account with his personal funds, not from the funds of consumers reportedly earmarked for creditors. [Ex. 31, Cherry

22

dep.73] The issuance of these checks to pay the BankUnited mortgage loan on Edward Cherry's residence at 10985 NW 71st Court, Parkland, Florida constitutes deceptive trade practices. In addition, the use of funds reportedly earmarked for creditors of the Defendants' clients to pay Edward Cherry's mortgage constitutes "fraudulently secreting … property" to the detriment of Defendants' clients. F.S. § 76.05. Thus, this conduct uses the proceeds of fraud to purchase, invest in or improve real property.

## CONCLUSION

Plaintiff's exhibits filed in support of this motion clearly present prima facie evidence of violations of Chapter 501, Part II, Florida Statutes (2007). The language of the United States District Court for the Southern District of Florida in U.S. v. Sene X Eleemosynary Corp., Inc., 479 F.Supp. 970 (S.D.Fla., 1979) is germane to the Plaintiff's request for appointment of a receiver: "Where an injunction is authorized by statute, it is proper to issue such an order to restrain violations of the law if the statutory conditions are satisfied." Id. at 980. "Proof of irreparable harm . . . need not be established . . . ." and ". . . the government is not bound to prove the absence of an adequate remedy at law where a statute authorizes an injunction." Id. at 981.

A statutorily created right to equitable relief exists in this case. Therefore, the appointment of a receiver and injunctive relief without notice regarding **LAURA L. HESS, ESQ., LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC** is clearly in the public interest based upon the allegations contained in the motion and instant memorandum as supported by the exhibits filed herewith.

23

IT IS HEREBY CERTIFIED that a true and correct copy of this Memorandum of Law and accompanying Exhibits will be served with the Emergency Motion for Appointment of Receiver and Injunctive Relief Without Notice.

Dated this /7 day of July, 2008

Respectfully Submitted,

**BILL McCOLLUM**
**Attorney General**
By: Fulvio Joseph Gentili

Assistant Attorney General
FL Bar No. 0037493
Office of the Attorney General
Department of Legal Affairs
110 S.E. 6th Street, Tenth Floor
Ft. Lauderdale, FL 33301
(954) 712-4600

24

# EXHIBIT C

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

OFFICE OF THE ATTORNEY GENERAL,
DEPARTMENT OF LEGAL AFFAIRS,
STATE OF FLORIDA,

TRUE COPY

Plaintiff,

vs.                                                        Case No. 08-007686 08

LAURA L. HESS, ESQ.,
LAURA HESS & ASSOCIATES, P.A.,
HESS KENNEDY CHARTERED LLC, and
THE CONSUMER LAW CENTER, LLC.

Defendants.

_____

EX- PARTE AJR

**ORDER APPOINTING RECEIVER**

This matter came on before the Court, on July 1_X_, 2008, upon the Plaintiff's

EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER AND INJUNCTIVE RELIEF

WITHOUT NOTICE, pursuant to section 501.207(3), Florida Statutes, and Fla.R.Civ.P., Rules

1.610 and 1.620.  Good cause exists to protect the assets of the named Defendants from being

sold, transferred, alienated or otherwise dissipated until the resolution of the instant proceeding

and likewise good cause exists to refrain from giving notice to Defendants LAURA L. HESS,

ESQ., LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE

CONSUMER LAW CENTER, LLC because of the likelihood that they would dissipate the

assets of the business if notified of this motion.

The Court has reviewed the motion and other pleadings, and, accordingly, the Court does

hereby:

ORDER AND ADJUDGE the following:

1

1. DANIEL J. STERMER is appointed the Receiver of LAURA HESS &
ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW
CENTER, LLC and all other entities operated, controlled or otherwise associated with the
Defendants' activities, including but not limited to HESS KENNEDY COMPANY
CHARTERED, CONSUMER RECOVERY TEAM, HESS KENNEDY HOLDINGS LTD.,
LEGAL DEBT CENTER, HESS KENNEDY COMPANY,  LAURA HESS, INC., HESS
KENNEDY, LEGAL DEBT CENTER, LLC, HESS KENNEDY FLORIDA, HESS KENNEDY
CHARTERED, HESS | KENNEDY, LLC, HESS KENNEDY PAYMENT, HESS KENNEDY
TRUST COMPANY, THE CONSUMER LAW CENTER, LC, HESS | KENNEDY FLORIDA,
HESS KENNEDY TRUST ACCOUNT, GLOBAL PAYMENT PROCESSING, LLC and
CAMPOS CHARTERED LAW FIRM, which entities shall be deemed to be included in the term
"Defendants" and shall serve until further Order of this Court.

2. <u>Oath</u>: Within ten (10) business days of the date of this Order, the Receiver shall file
with this Court an Oath of Receiver accepting the appointment and agreeing to faithfully
discharge his duties, any subsequent directives by this Court, and applicable law.

3. <u>Bond</u>: Within twenty (20) days of entry of this Order, the Receiver shall file proof
of the existence of his fidelity bond in the amount of $50,000.00 to secure the faithful
performance of his duties.

4. <u>Duties of Receiver</u>: The Receiver shall marshal, preserve, protect, maintain, manage
and safeguard the Assets of Defendants in a reasonable, prudent, diligent, and efficient
manner. Property in the custody of the Receiver or property to which the Receiver has the right
to custody shall not be subject to execution or similar process. The Receiver shall be vested with
the usual powers and duties of equity Receivers in like cases, and is hereby authorized and

2

instructed to take possession of and control over the Assets; and, without limitation of any kind as to his general duties, the Receiver shall have at least the following specific duties and responsibilities:

    a. <u>Business Offices</u>. The Receiver shall take possession of all Assets, bank accounts, including but not limited to accounts at BANK ATLANTIC, BANK OF AMERICA, BANKUNITED and SIGNATURE BANK, offices, and the contents of such offices where the business of Defendants has been conducted.

    b. <u>Revenues</u>. Commencing immediately, the Receiver shall collect all receipts, revenues, deposits, receivables, notes and other funds generated by, from or due to Defendants. All sums marshaled shall be deposited with a state or federally chartered financial institution. Defendants shall immediately turn over to the Receiver any monies belonging to or otherwise generated from consumers or Defendants' clients in their possession. Defendants shall refrain from any further collection of receipts or revenues generated by Defendants from consumers or Defendants' clients, except as the Receiver might direct. Any funds of Defendants received by any party shall be forthwith delivered to the Receiver without further Order of this Court. The Receiver shall have the exclusive right to pursue, collect and control all monies belonging to or otherwise generated by Defendants, and shall have the exclusive right to make payments and disbursements from Defendants' bank accounts, including rents, accounts payable, expenses, costs of merchandise or equipment, and payroll.

    c. <u>Insurance</u>. The Receiver shall maintain appropriate insurance for Defendants, its premises and/or its merchandise, if appropriate in the Receiver's sole discretion.

    d. <u>Bank Accounts</u>. As the Receiver may deem necessary, and effective immediately upon entry of this Order, the Receiver shall establish and maintain, at a bank or banks whose deposits

3

are federally insured, operating accounts for the Receivership into which the Receiver shall

deposit all receipts or revenues from Defendants. Amounts on deposit in all accounts, including

but not limited to in a financial institution, brokerage account, and/or as a retainer previously

paid, and/or in bank accounts at BANK ATLANTIC, BANK OF AMERICA, BANKUNITED

and SIGNATURE BANK, of Defendants shall be transferred to the Receiver without further

Order of this Court. All safety deposit boxes shall be transferred to the Receiver without further

Order of this Court. The Receiver is authorized to disburse regularly and punctually (to the

extent available), all amounts hereafter due and payable as reasonable, necessary and proper

operating expenses of the Receivership, subject to the terms of this Order.

     e. <u>Expenses</u>. The Receiver shall pay from the estate's of Defendants' funds the expenses

incurred by him in the conservation, protection and management of the Assets.

     f. <u>Maintenance of Assets</u>. The Receiver shall enter into any and all service contracts

reasonably necessary to keep, maintain and protect the Assets.

     g. <u>Checks</u>. The Receiver shall endorse all checks and drafts now or hereafter made

payable to Defendants concerning such accounts receivables, deposits, rents, income, profits, and

revenues.

     h. <u>Mail</u>. The Receiver shall open all mail in connection with the Assets or businesses of

Defendants.

     i. <u>Recovery and Liquidation of Assets</u>. The Receiver shall collect and reduce to money

the Assets either by suit, in any court of competent jurisdiction, or by public or private sale. The

Receiver is specifically authorized and empowered to file suit against any person(s) or entity(s)

to recover property of Defendants including, but not limited to, fraudulent conveyances and other

claims and causes of actions of Defendants.

4

j. <u>Claims</u>. The Receiver shall establish a procedure for creditors of Defendants to file claims. The Receiver shall examine the validity and priority of all claims against Defendants, which claims shall be finally determined by this Court.

k. <u>Abandonment of Assets</u>. The Receiver may abandon Assets to duly perfected secured or lien creditors where, after due investigation and notice to parties in interest, he determines that Defendants have no equity in such assets or such assets are burdensome to the estate or are of inconsequential value and harmful to Defendants.

l. <u>Supplemental Proceedings</u>. The Receiver is specifically authorized, empowered, and has standing to bring Supplemental Proceedings as follows:

(i) Any action to recover money or other assets of Defendants;

(ii) Any action to determine the validity, priority, or extent of a lien or other interest in property or to subordinate or avoid an unperfected security interest;

(iii) Any action to pursue claims and/or causes of action on behalf of Defendants and/or any creditor of Defendants, including but not limited to negligence;

(iv) Any action to avoid any conveyance or transfer void or voidable by applicable law; and

(v) Any other action or actions as may be authorized or directed by further Order of this Court.

A supplemental proceeding is an action of the type designated in paragraphs (i), (ii), (iii) and (iv) above and shall be brought as follows:

(1) The Florida Rules of Civil Procedure shall apply to supplemental proceedings, except where inconsistent with the provisions of this order.

5

(2) The Clerk of the Court shall docket a supplemental proceeding under this

matter's case number, and a separate supplemental proceeding number, and shall

assign such supplemental proceeding to this Court's division.

(3) All pleadings and other papers filed in a supplemental proceeding shall

contain a separate sub-caption and the supplemental proceeding number in

addition to the caption and the case number applicable to the main case.

By this authorization and empowerment, this Court specifically determines that the Receiver

is not prohibited and shall not be barred from bringing any supplemental proceeding due to the

doctrine in pari delicto.

m. Discovery. The Receiver is authorized to set depositions and demand production of

documents on five (5) business days' notice. Any objections to documents requested by the

Receiver may be stated at the deposition and reserved for hearing.

n. General Powers. The Receiver shall exercise all other powers and rights necessary to

manage, protect and preserve the Assets and the businesses of Defendants.

5. Cooperation: Defendants, and their officers, agents, partners, servants, employees and

transferees shall cooperate fully with Receiver and comply with Receiver's requests for

information, records and documentation so that Receiver may perform his duties with full

information and knowledge. Defendants, and their officers, agents, partners, servants, employees

and transferees shall not interfere with or hinder the operations of Receiver, but shall maintain

their legal rights with respect to this action, the Receiver and the Receivership.

6. Possession of Property: The Receiver shall immediately take possession and control of

all of the assets in the possession or under the control of Defendants whether such property is

held by Defendants directly, beneficially or otherwise. The term "assets" shall include files,

records, documents, monies, leases, mortgages, securities, investments, contracts, effects, lands, agreements, judgments, bank accounts, books of accounts, rents, chooses in action, goods, chattels, rights, credits, claims both asserted and unasserted, pending court actions and appeals, files and documents in the possession of attorneys and accountants for Defendants, and all other property, whether real, personal or mixed or previously belonging to Defendants, or which, in the case of records, documents and other papers, pertain to property belonging now or previously to Defendants, or obligations of Defendants (hereafter defined as "Assets"). The Receiver shall retain custody and control of all of the foregoing pursuant to the terms of this Order. The Receiver shall file an inventory of the property Assets within 60 days of the date of this Order. The parties, their attorneys and accountants, and all other persons, entities or corporations now or hereafter in possession of any of the foregoing Assets, records or documents, or any part thereof, or any other of the items intended by the Court to be entrusted to the Receiver, shall forthwith and without further Order of the Court surrender said items to the Receiver. The Receiver shall maintain custody of the records, computers, computer files and documents, which shall be available for inspection as this Court may direct. The Receiver is hereby authorized to employ agents, servants and employees, and to enter into contracts and take all actions as necessary for the purpose of taking possession of the Assets and carrying out the terms of the Receivership and the orders of this Court.

7. Turnover: All persons, corporations, or other entities now or hereafter in possession of the Assets, or any part thereof, including, but not limited to, intangibles, bank accounts, operating statements, service agreements, management agreements, contracts, licenses, leases, and permits, revenues, and profits collected or derived from the Assets and all assets, papers, files, records, documents, monies, securities, choses in action, books of account, bank accounts,

rents, accounts receivables, leases, permits, licenses, down payments, marketing plans and materials, servicing agreements, management agreements, or any and all other contracts, or any other items entrusted to Receiver, shall forthwith and without further Order of this Court surrender such possession to the Receiver.

8. Discovery: The Receiver is authorized to set depositions and demand production of documents on five (5) days notice. Any objection to documents requested by the Receiver may be stated at the deposition and reserved for hearing.

9. Outside Professionals: The Receiver is specifically empowered, in his discretion, to hire and employ legal counsel, accountants, investigators and consultants ("Outside Professionals"), including entities of which Receiver is a principal/shareholder, to furnish legal, accounting and other advice to the Receiver for such purposes as may be reasonable and necessary during the period of receivership. The Receiver is authorized to pay from the receivership estate's funds eighty (80%) percent of the ordinary and reasonable fees and one hundred (100%) percent of the costs of such Outside Professionals upon receipt of a bill from the Outside Professional. The remaining 20% of fees shall be withheld (the "holdback") pending final application to the Court for approval of all fees and expenses of such Outside Professional, including the Holdback.

10. Receiver's Fees: The Receiver shall be entitled to payment of fees from the estate's funds for his services at his standard rate of $250.00 per hour, plus such other amounts as may be awarded by the Court after a hearing upon notice to the parties and all counsel of record.

11. Quarterly Report: The Receiver is directed to prepare a full and complete report, certified to be correct by the Receiver, setting forth all receipts and disbursements, cash flow, activities of Defendants, and reporting all changes in the Assets in his charge, or claims against

the Assets, that have occurred during the period covered by the report. The Receiver shall include in the report the status of any taxes, lien claims or pending litigation. The report shall be filed by the twentieth day of the month following the reporting period. The Receiver shall serve notice of filing of the report on the attorneys of record for each of the parties herein and parties in interest. The notice of filing shall advise that the report is available upon request made to the Receiver. To the extent any portion of the report is deemed privileged, the Receiver is authorized to file his report and/or portions of his report under seal.

12. Additional Funds: The balance of any funds beyond the monies deemed necessary for his operating account received by the Receiver shall be placed in an interest-bearing bank or trust account.

13. Receiver's Certificates: The Receiver is hereby authorized to obtain receiver's certificates as is reasonably required and/or necessary to carry out and fulfill the Receiver's duties and obligations herein.

14. Notices: All written notices called for under this Order shall be effective upon hand delivery to counsel of record of the parties or to the parties, or twenty-four (24) hours after delivery to a private expedited delivery service, or 48 hours after deposit into the mail, postage paid, addressed to counsel of record or the parties or to the parties.

15. Reserve Right For Additional Powers: The Receiver may, at any time upon prior notice to all parties to this action, apply to this Court for further or other instructions or powers, whenever such instructions or additional powers shall be deemed necessary in order to enable him to perform properly and legally the duties of the office of Receiver and to maintain, operate, preserve and protect the Receivership Estate.

16. The Plaintiff, **OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA**, is an agency of the State of Florida and, in recognition of the public interest served by this action, no bond shall be required with respect to the relief granted herein.

17. Any and all law enforcement authorities, including but not limited to the Broward Sherriff's Office for said locations in Broward County, are authorized to take any and all necessary steps to assist the Receiver in the securing of the assets, business offices, and contents of such business offices of Defendants LAURA L. HESS, ESQ., LAURA HESS & ASSOCIATES, P.A., HESS KENNEDY CHARTERED LLC, and THE CONSUMER LAW CENTER, LLC located at 210 N. University Drive, Suite 900, Coral Springs, FL 33071 and any and all other locations of the Receivership Defendants HESS KENNEDY COMPANY CHARTERED, CONSUMER RECOVERY TEAM, HESS KENNEDY HOLDINGS LTD., LEGAL DEBT CENTER, HESS KENNEDY COMPANY, LAURA HESS, INC., HESS KENNEDY, LEGAL DEBT CENTER, LLC, HESS KENNEDY FLORIDA, HESS KENNEDY CHARTERED, HESS | KENNEDY, LLC, HESS KENNEDY PAYMENT, HESS KENNEDY TRUST COMPANY, THE CONSUMER LAW CENTER, LC, HESS | KENNEDY FLORIDA, HESS KENNEDY TRUST ACCOUNT, GLOBAL PAYMENT PROCESSING, LLC and CAMPOS CHARTERED LAW FIRM, which entities shall be deemed to be included in the term "Defendants."

18. Financial Statement: IT IS FURTHER ORDERED, within three (3) business days after service of this Order, each Defendant shall prepare and serve to the Receiver a complete and accurate corporate financial statement, signed under penalty of perjury, on the form appended to this Order.

10

19. <u>Repatriation of Foreign Asset and Documents</u>: IT IS FURTHER ORDERED

that within five (5) business days following the service of this Order, each Defendant shall:

      a.    Provide the Receiver and the Office of the Attorney General with a full

accounting of all funds, documents, and assets located outside of the United States

which are (1) titled in the name, alias, or fictitious "doing business as" name,

individually or jointly, of any Defendant; or (2) held by any person or entity for

the benefit of any Defendant; or (3) under the direct or indirect control, of any

Defendant;

      b.    Transfer within the State of Florida all funds, documents, and assets located

outside of the United States which are (1) titled in the name, alias, or fictitious

"doing business as" name, individually or jointly, of any Defendant; or (2) held

by any person or entity for the benefit of any Defendant; or (3) under the direct or

indirect control, of any Defendant;

      c.    Hold and retail all repatriated funds, documents and assets, and prevent any

transfer, disposition, or dissipation whatsoever of any funds or assets except as

required by this Order; and

      d.    Provide the Receiver and the Office of the Attorney General access to all

records of funds, documents, or assets of any Defendant held by financial

institutions or other entities or individuals located outside the United States by

signing any and all necessary forms to permit such access

20. <u>Interference With Repatriation</u>: IT IS FURTHER ORDERED that the Defendants

are hereby temporarily restrained and enjoined from taking any action, directly or indirectly,

which may result in the encumbrance or dissipation of funds, documents, or assets held outside

11

of the United States, or in the hindrance of the repatriation required by the preceding paragraph of this Order, including, but not limited to:

    a.    Sending any statement, letter, fax, e-mail or wire transmission, telephoning, text messaging, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to the preceding paragraph of this Order; and

    b.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to the preceding paragraph of this Order.

    DONE AND ORDERED in Chambers, at Broward County, Florida, on this _18t_ day of July, 2008.

                        RONALD J. ROTHSCHILD
                        BROWARD CIRCUIT COURT JUDGE

12

# EXHIBIT D

# Supreme Court of Florida

### WEDNESDAY, JULY 23, 2008

### CASE NO.: SC08-1389
### Lower Tribunal No(s).: 2008-51,723(17H)FES

THE FLORIDA BAR      vs.     LAURA L. HESS

---

Complainant(s)                 Respondent(s)

     The Petition for Emergency Suspension filed pursuant to Rule 3-5.2 of the Rules Regulating The Florida Bar is approved and it is hereby ordered that the respondent is suspended from the practice of law until further order of this Court, and respondent is ordered:

     a. To accept no new clients from the date of this Court's order and to cease representing any clients after thirty days of this Court's order.

     b. To immediately furnish a copy of respondent's suspension order to all clients, opposing counsel and courts before which respondent is counsel of record and to furnish Staff Counsel of The Florida Bar with the requisite affidavit listing all clients, opposing counsel and courts so informed within thirty days of this Court's order.

     c. In the event that respondent regains control of her bank accounts, respondent is ordered to refrain from disbursing or withdrawing any monies from any trust account without approval of the Florida Supreme Court or a referee appointed by the Florida Supreme Court or order of the circuit court in which an inventory attorney has been appointed.

     d. In the event that respondent regains control of her bank accounts, respondent is ordered to deposit into a specified trust account, all sums received from the practice of law, whether as fees, costs, deposits, or trust funds, within thirty days of this Court's order and thereafter, and to immediately advise Bar Counsel of the receipt and location of said funds.

     e. To immediately notify in writing all financial institutions in which respondent maintains trust accounts of the provisions of respondent's suspension and to provide said financial institutions with a copy of this Court's order, and furthermore, to provide Bar Counsel with a copy of the notice sent to each financial institution.



EXHIBIT

_B_

Case No. SC08-1389
Page Two


        Not final until time expires to file motion for rehearing, and if filed,
determined.  The filing of a motion for rehearing shall not alter the effective date of
this suspension.

QUINCE, C.J., and WELLS, PARIENTE, CANTERO, and BELL, JJ., concur.

A True Copy
Test:


Thomas D. Hall
Clerk, Supreme Court

cic
Served:

KENNETH LAWRENCE MARVIN
JUAN CARLOS ARIAS
D. CULVER SMITH, III