IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHASE BANK USA N.A,                    :
                                       :
          Plaintiff,                   :
                                       :
     v.                                : Civil Action No. 08-121-JJF
                                       :
HESS KENNEDY CHARTERED LLC,            :
et al.,                                :
                                       :
          Defendants.                  :

---

David H. Pittinsky, Esquire; Alan S. Kaplinsky, Esquire and Mark
J. Levin, Esquire of BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP,
Philadelphia, Pennsylvania.
Beth Moskow-Schnoll, Esquire of BALLARD, SPAHR, ANDREWS &
INGERSOLL, LLP, Wilmington, Delaware.

Attorneys for Plaintiff Chase Bank USA N.A.

David J. Feingold, Esquire of FEINGOLD & KAM, Palm Beach Gardens,
Florida.
Robert K. Beste, Jr., Esquire of COHEN, SEGLIAS, PALLAS,
GREENHALL AND FURMAN, P.C., Wilmington, Delaware.

Attorneys for Defendants Hess Kennedy Chartered, LLC; Laura L.
Hess; Laura Hess & Associates, P.A.; Hess Kennedy Holdings, LTD;
Hess Kennedy Company Chartered BWI; The Consumer Law Center, LLC;
The Campos Chartered Law Firm; Jeff Campos, P.A.; and Jeffery
Campos.

---

**O P I N I O N**

December 12, 2008
Wilmington, Delaware

Farman, District Judge

Presently before the Court is Defendants' Motion to Dismiss For Lack of Personal Jurisdiction, Improper Venue And/Or In The Alternative Forum Non-Conveniens. (D.I. 5.) Also before the Court are Plaintiff's Motion For Leave To File Sur-Reply In Opposition to Defendants' Motion To Dismiss (D.I. 10) and Plaintiff's Motion To Strike Defendants' May 5 Memorandum. (D.I. 12.) For the reasons discussed, The Court will deny Defendant's Motion To Dismiss, grant Plaintiff's Motion For Leave To File Sur-reply, and deny Plaintiff's Motion To Strike.

## BACKGROUND

### I.  Procedural Background

On February 9, 2008 Chase Bank USA, N.A. ("Chase") filed this action, alleging that Defendants caused Chase credit card members to withhold outstanding debt by operating an unlawful debt elimination scheme. (D.I. 1.) On April 25, 2008, a group of nine Defendants (collectively, "the moving Defendants") moved to dismiss for lack of personal jurisdiction, improper venue and/or to transfer to the Southern District of Florida. (D.I. 5.) Identifying a number of alleged misrepresentations in the moving Defendants' Reply Brief in support of their Motion To Dismiss, Chase moved for leave to file a sur-reply brief. (D.I. 10.) Alleging that the moving Defendants' response to Chase's Motion For Leave contained yet additional misrepresentations,

2

Chase moved to strike the moving Defendants' response to the Motion For Leave and also for the costs associated with preparing the Motion To Strike.  (D.I. 12.)

## II.  Factual Background

Chase is a national banking association that extends credit to consumers and has its main office in Newark, Delaware.  As a result of a merger on October 1, 2004, Chase is also the successor to Bank One, Delaware, N.A., a national banking association.  (D.I. 1 ¶ 6.)  Defendants are entities that provide legal services to clients wishing to challenge credit card company billing practices, including those of Chase.  (D.I. 5 at 2.)

Excluding unknown "John Doe" defendants, there are a total of 13 defendants in this case, nine of which have joined the Motion To Dismiss.  Three moving Defendants are Florida corporations with their principal place of business in Coral Springs, Florida: Laura Hess & Associates, P.A.; The Campos Chartered Law Firm and Jeff Campos, P.A.  (D.I. 1 ¶¶ 10, 16, 18.)  Three moving Defendants are Florida limited liability companies with their principal place of business in Coral Springs, Florida: Hess Kennedy Chartered, L.L.C.; Hess Kennedy Holdings, LTD. and The Consumer Law Center, L.L.C.  (Id. ¶¶ 7, 11, 13.)  Two moving Defendants are citizens and residents of the state of Florida: Laura L. Hess and Jeffery S. Campos.  (Id. ¶¶ 8, 18.)  The

3

remaining moving Defendant, Hess Kennedy Company Chartered BWI, is a corporation with its principal place of business in the Cayman Islands. (Id. ¶ 12.) None of these nine defendants have offices or telephone numbers in Delaware, and none of them travel to Delaware. (D.I. 5 at 8.) Defendants further allege that they have never "conducted any provision of legal services or any other business related services" in Delaware. (Id. at 3.) Collectively, Defendants have nearly one hundred employees and service providers who also reside within the boundaries of the Southern District of Florida. (Id. at 5.)

Defendants are involved in numerous litigations across the country related to their debt counseling business. On February 22, 2008, the State Attorney General for the State of Florida initiated the first such litigation, alleging numerous violations of the Florida deceptive and unfair trade practices statute. (D.I. 1, Exh. C.) The Attorney General for the state of North Carolina instituted a similar action at roughly the same time. (Id.) On February 29, 2008, Chase initiated the instant action, and one week later Capital One Bank initiated a similar action in the United States District Court for the Eastern District of Virginia. (D.I. 5 at 4.) Finally, on March 7, 2008, Defendants initiated their own action in the Southern District of Florida, seeking a judgment confirming the legality of their services. (Id.) Notably, in the Eastern District of Virginia action,

4

Defendants brought a motion seeking to dismiss for lack of
personal jurisdiction, improper venue, and/or in the alternative
forum non conveniens, the exact relief sought by the instant
Motion.  The Virginia court denied that motion, noting that
Defendants had sent over one thousand letters to plaintiffs in
Virginia and had thus purposefully availed themselves of the
privilege of conducting business activities in Virginia.  (See
D.I. 16, Exh. 1 at 6.)

**THE PARTIES' CONTENTIONS**

## I.  Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction, Improper Venue, And/Or Forum Non Conveniens

The moving Defendant's contend – relying mainly on Virginia
district court authority – that because they do not have
offices, residences, or transact business in Delaware, they have
no contacts with Delaware that would support personal
jurisdiction in this Court.  (D.I. 5 at 6-7.)  Defendants
further contend that Chase has failed to include any allegations
in their Complaint identifying any contact that they may have
with Delaware.  (Id. at 7.)  To the extent Chase may have
received a letter or telephone call in Delaware from one of
Defendants, the moving Defendants contend that such contact is
too sparse to establish personal jurisdiction.  (Id.)  With
respect to venue, the moving Defendants claim that Chase has
failed to allege any substantial event or omission in Delaware
that would give rise to their claims and hence establish venue

5

pursuant to 28 U.S.C. § 1391(b)(2). (Id. at 8.) As to forum

non conveniens, the moving Defendants, citing to 28 U.S.C. §

1404, contend that litigation in the Southern District of

Florida "seems most appropriate" because all Defendants reside

there and this is where all forms of evidence are located. (Id.

at 9.) On the specific issue of venue transfer, the moving

Defendants contend that the Court should transfer the case

pursuant to the forum non conveniens doctrine. (Id.)

Defendants do not engage in the multi-factor analysis commonly

used in considering venue transfer under 28 U.S.C. § 1404 or

dismissal under the forum non conveniens doctrine. See Jumara

v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Gulf

Oil Corp. v. Gilbert, 330 U.S. 501 (1947).

        In response, Chase alleges that the Defendants have had the

following key contacts with Delaware:

- The moving Defendants have sent over 7,600
  billing dispute letters to Chase's offices in
  Delaware. (D.I. 7 at 11.)
- The moving Defendants marketed their services to
  Delaware residents via an Internet website. The
  website included a pull down menu inviting
  Delaware residents to identify themselves so that
  a representative of Defendants' could contact
  them at a later time. (Id.)
- The moving Defendants purported to represent at
  least 30 Delaware residents in billing disputes
  with Chase. (Id.)

Chase contends that these contacts establish jurisdiction under

both § 3104(c)(1) of the Delaware long-arm statute, which

creates jurisdiction over parties that transact business in

6

Delaware, and § 3104(c)(4) of the long-arm statute, which confers general jurisdiction. Chase further contends that the above contacts satisfy the Constitutional prong of the personal jurisdiction standard. (Id. at 16-18). To the extent the above contacts cannot be attributed to a particular one of the nine moving Defendants, Chase contends that jurisdiction may nonetheless be established over all Defendants through a "conspiracy theory" of jurisdiction. (Id. at 12-15.) As to venue, Chase argues that Defendants' representation of 30 Delaware Chase cardmembers along with the sending of thousands of dispute letters to Delaware establishes that a substantial part of the events giving rise to their claim occurred in Delaware. (Id. at 18.) With regard to forum non conveniens, Chase alleges that, given Defendants' Delaware contacts and the overall national reach of their business activities, Defendants cannot show that it is "out of all proportion" to Defendants' convenience to litigate in Florida. (Id. at 22 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 251 (1981).) Chase notes specifically that Defendants solicit customers nationally via their Internet website, have sent dispute letters on behalf of individuals residing in forty-nine states and the District of Columbia and Puerto Rico, and boast of having "hand-picked" affiliate attorneys "throughout the country." (Id. at 21-22.) With respect transfer pursuant to 28 U.S.C. § 1404, Chase

analyzes the public and private interest factors that govern the transfer analysis and contends that they militate against transfer.

In reply, the moving Defendants state, for the first time, that they sent letters to Delaware only because Chase's Florida legal counsel informed them that billing dispute letters must be directed to Delaware. (D.I. 9 at 6.) According to the moving Defendants, by giving such instructions, Chase was "attempting to manufacture" jurisdiction in Delaware. (Id. at 3.) The moving Defendants further contend that even if these letters established personal jurisdiction, only one Defendant, Hess Kennedy Holdings, was responsible for sending the letters, such that jurisdiction still would not be established over the remaining defendants. (Id. at 7-8.) With regard to their Internet website, the moving Defendants contend that it does not establish jurisdiction because it was not used to sell products or sign up clients, but was only passively used to distribute information. (Id. at 6.) Finally, the moving Defendants note that all of their Delaware clients changed their billing address to Defendants' Florida offices, demonstrating an intent to do business in Florida. (Id. at 3.)

## II. Chase's Motion For Leave To File A Sur-Reply And Motion To Strike Defendants' May 5 Memorandum

Both of these motions stem from the moving Defendants' Reply Brief in support of their Motion To Dismiss and shall thus

8

be handled together.  In brief, Chases alleges in its Motion For
Leave that the Reply Brief contains "highly questionable" -
possibly "perjurious" - statements and is "replete with legal
error" such that a sur-reply is necessary (D.I. 10, Exh. 2 at
1.)  Furthermore, according to Chase, the moving Defendants' May
5 opposition to the Motion For Leave contains additional
mischaracterizations and must be stricken.

     The issue of greatest contention raised in Chase's Sur-
reply is whether, in May of 2008, Defendants' only offices were
in Coral Springs, Florida, which the moving Defendants alleged
to be the case in their April 26, 2008 Reply Brief.[1]  (D.I. 9 at
6, 9.)  As Chase notes in its Motion For Leave, however, on
March 10, 2008, Defendant Laura Hess filed a "Response to Order
to Show Cause" with the Supreme Court of Florida stating that
the Hess Kennedy law firm maintains offices in New York,
California, and the Cayman Islands.  (D.I. 10, Exh. 2 at 2.)  In

---

[1] For the purposes of deciding whether this Court has
jurisdiction over Defendants, the core issue is whether
Defendants have contacts with Delaware.  Whether Defendants
merely have offices in states other than Florida is largely
immaterial, unless those offices are in Delaware.  However, in
arguing that this case should be dismissed for lack of personal
jurisdiction, Defendants alleged that "all of [them] are located
in the State of Florida," (D.I. 5 at 2), prompting Chase to rebut
this assertion by pointing to evidence suggesting the existence
of a number of non-Florida offices.  Because none of these
offices were in Delaware, this does not necessarily help the
Court determine whether it has personal jurisdiction over
Defendants.  Nevertheless the Court is troubled by the moving
Defendants' handling of this dispute, and thus believes a full
discussion is warranted.

their May 5, 2008 Opposition to Chase's Motion For Leave, however, the moving Defendants contend that they had clarified the Florida Supreme Court filing to make clear that they actually had no offices outside of Florida. (D.I. 11 at 2.) According to Defendants, Chase's failure to present this "clarification" to the Court was a "mislead[ing]" act "tantamount to hiding evidence." (D.I. 11 at 2.) This omission, Defendants say, "greatly questions the integrity of the filings by the Plaintiff." (Id.)

Responding to this accusation, Chase reviewed the Florida Supreme Court docket and, unable to identify any "clarification," demanded that Defendants produce the supposed clarifying document, which was not included as an exhibit to Defendants' opposition to Chase's Motion for Leave. (D.I. 12 at 3.) After some negotiation, Defendants eventually produced a May 16, 2007 transcript of testimony that Defendant Laura Hess gave to the Florida State Bar. Chase, however, immediately identified a number of issues. First, given that the testimony was given ten months before the filing it supposedly clarifies, Chase questions whether this can properly be viewed as a "clarification." (Id. at 4.) Second, Chase notes that the testimony was taken in connection with an investigation into the unlicensed law practice of one Walter Chen, and it is unclear how this investigation is connected to Laura Hess's Florida

State Supreme Court filing.  (Id.)  Third, Chase was unable to identify any record of this testimony having been filed in Hess's Florida Supreme Court matter.  (Id.)  Finally, Chase notes that the transcript apparently contradicts the notion that Defendants have only Florida offices.  Indeed, Hess testified that Hess Kennedy Chartered had offices in London, Singapore, the Cayman Islands, Chicago, South Carolina, California, New York, and New Jersey.  (Id., Exh. D at 21.)  Faced with these inconsistencies, Chase brought its Motion To Strike.

Chase raises three additional issues in their Motion For Leave.  First, Chase takes issue with the moving Defendants' argument that they sent dispute letters to Delaware only on the strict instruction of Chase's legal counsel.  According to Chase, Defendants had actually sent more than 3,000 dispute letters to Chase in Delaware prior to receiving any instruction directing them to send letters to Delaware instead of Florida. (D.I. 10 at 6-7.)  Second, Chase disputes the moving Defendants' position that their Internet website is only a "passive" information distribution mechanism.  On this issue, Chase notes that the moving Defendants' admit that their website "invite[s] a potential client to input personal information to allow a representative of Defendants to contact them at a future time." (D.I. 10, Exh. 2 at 7 (citing D.I. 9 at 3).)  Finally, Chase disagrees with the moving Defendants' assertions that their

Delaware clients were obtained through an attorney referral service without any marketing in Delaware. Here, Chase points out that Defendants' website has a drop-down menu allowing Delaware residents to identify themselves and that Defendants' boast of having "hand-picked" affiliate attorneys across the country. (Id. at 8.) In opposing Chase's Motion for Leave, the moving Defendants do not address these three issues, instead focusing on the alleged "clarification" regarding office location and alleging that Defendants' Motion For Leave is an attempt to evade the Court's briefing schedule. (D.I. 11 at 2-3.)

## DISCUSSION

## I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In order for personal jurisdiction to exist over a defendant, two requirements, one statutory and one constitutional, must be satisfied. First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed.R.Civ.P. 4(e). Therefore, the Court must determine whether there exists a statutory basis for finding jurisdiction under the Delaware long-arm statute. See 10 Del. C. § 3104. Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of

jurisdiction violates Defendants' constitutional right to due process. Int'l Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. Provident Nat'l Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987). To satisfy this burden, the plaintiff must establish either specific jurisdiction or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state, while general jurisdiction arises when the defendant has continuous and systematic contacts with the state, regardless of whether the defendant's connections are related to the particular cause of action. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

## A. Delaware Long-Arm Statute

The Delaware Supreme Court has construed the long-arm statute liberally to confer jurisdiction to the maximum extent possible in order "to provide residents a means of redress against those not subject to personal service within the State." Kloth v. Southern Christian University, 494 F.Supp.2d 273, 278

(D. Del. 2007) (quoting Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-1157 (Del. Super. 1997)).  The Delaware long-arm statute provides, in relevant part:

> (c) As to any cause of action brought by any person arising from any of the act enumerated in the section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
> (1) Transacts any business or performs any character of work or service in the state;
> . . . .

Del. Code Ann. tit. 10 § 3104(c)(1).  The Delaware Supreme Court has interpreted § 3104(c)(1) as a specific jurisdiction provision that requires a "nexus" between the plaintiff's cause of action and the defendant's "transaction of business or performance of work" used as the basis for jurisdiction.  See LaNuova D & B, S.p.A v. Bowe Co., 513 A.2d 764, 768 (Del. 1986). Furthermore, where, as here, jurisdiction is asserted on a transactional basis, "even a single transaction is sufficient if the claim has its origin in the asserted transaction."  Id.

As Chase notes, Defendants sent roughly 7,600 form letters asserting billing error disputes to Chase in Delaware and represented at least 30 Delaware residents in billing disputes against Chase in Delaware.  In addition, Defendants maintained a nationally accessible website with a pull-down menu allowing Delaware residents to identify themselves "to allow a representative of the Defendants to contact them at a future time."  (D.I. 9 at 3.)  Based on these acts – in particular,

14

Defendants' representation of about 30 Delaware residents – the Court concludes that Defendants transacted business and performed work in Delaware within the meaning of § 3104(c)(1). See American Bio Medica Corp. v. Peninsula Drug Analysis Co., No. 99-218-SLR, 1999 U.S. Dist. LEXIS 12455, at *12 (D. Del. Aug. 3, 1999) (finding that a party that sold no products in Delaware nevertheless "transacted business" in Delaware when it sent approximately 60 postcards to Delaware residents, maintained a nationally accessible marketing website, and conducted out-of-state negotiations with a Delaware resident). Furthermore, given that these actions constitute the very conduct giving rise to Chase's claims, there is a clear "nexus" between Defendants' conduct and Chase's cause of action.[2]

As to whether this conduct may be used to establish jurisdiction over all nine of the moving Defendants, Chase alleges that it is immaterial whether each of the them individually performed acts impacting Delaware, for jurisdiction may be established over all defendants through a "conspiracy theory" of jurisdiction. Under the conspiracy theory of jurisdiction (recognized in Delaware), a conspirator who is absent from the forum state is subject to the jurisdiction of

---

[2] Given the Court's conclusion that jurisdiction is proper under § 3104(c)(1) of the Delaware Long Arm statute, the Court need not consider Chase's arguments that jurisdiction may be found under §§ 3104(c)(2) or 3104(c)(4) of the long arm statute.

15

the Court, assuming he is properly served under state law, if it can be demonstrated that: (1) a conspiracy to defraud existed; (2) defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. Istituto Bancario Italiano SpA v. Hunter Eng'g, Co., 449 A.2d 210, 225 (Del. 1981). All five of the above elements must be satisfied in order to establish personal jurisdiction under the conspiracy theory. Ruggiero v. FuturaGene, PLC., 948 A.2d 1124, 1136 (Del. Ch. 2008). Plaintiff must assert specific factual evidence to show that the nonresident defendant was a conspirator and that a substantial wrongful act in furtherance of the conspiracy took place in Delaware in order to establish jurisdiction. Marketing Products Mgmt., LLC v. HealthandBeautyDirect.com, Inc., No. 02C-04-256 CLS, 2004 Del. Super. LEXIS 26 (Del. Super. Ct. Jan. 28, 2004).

Here, Chase alleges in Count VI of its Complaint that Defendants engaged in a conspiracy designed to damage Chase by asserting sham billing error disputes on behalf of Chase cardmembers, (D.I. 1 ¶¶ 87-93), at least 30 of whom resided in

16

Delaware. According to the Complaint, Chase was harmed when cardmembers chose to stop making payments on their account balances, which Chase alleges was a result of Defendants' actions. (D.I. 1 ¶¶ 41, 88.) In support of these allegations, Chase alleges in its complaint that, in furtherance of the conspiracy, Defendants drafted and/or disseminated documents to Chase in Delaware raising illegitimate billing error disputes. (D.I. 1 ¶ 88.) Chase attached as exhibits to their complaint multiple examples of such dispute letters, and Defendants concede in their briefing that Defendant Hess Kennedy Holdings sent these letters on behalf of the other Defendants as the "designated mailer/processor." (D.I. 9 at 2.) Count VI and paragraph 22 of the Complaint further allege that Defendants took payment and provided services interchangeably and as alter egos for one another, such that all Defendants would then be aware of the conspiracy. Along these lines, the Court again notes that Defendants concede that Hess Kennedy Holdings was acting as a "designated mailer/processor" on behalf of the other Defendants. Further, the Complaint alleges – and Defendants do not deny – that seven of the nine moving Defendants all have a principal places of business with the same address. (D.I. 1, ¶¶ 7-21.) Likewise, the Complaint includes detailed factual allegations regarding the intertwined relationships among Defendants. (Id.) In these circumstances, the Court concludes

17

that Chase has alleged facts adequate to establish jurisdiction over all known Defendants under a "conspiracy theory" of jurisdiction.[3]

As to the moving Defendants' argument that Chase was attempting to "manufacture" jurisdiction in Delaware by forcing Defendants to send dispute letters to Delaware, the Court notes that Defendants had sent roughly 3,000 dispute letters directly to Chase in Delaware prior to the date on which Chase's outside counsel first informed Defendants that dispute letters needed to be sent to Delaware. (See D.I. 10, Exh. 3 at 6.) In these circumstances, Defendants' protestations that they sent letters to Delaware only on Chase's instructions must be rejected. Thus, although Defendants are physically centered in Florida, the Court concludes that jurisdiction is proper under the Delaware long arm statute.

## B. Due Process Clause

Having determined that the Court has jurisdiction over the moving Defendants under Delaware law, the Court must now determine whether the assertion of jurisdiction under § 3104 comports with federal due process. "Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and

---

[3] Chase includes 50 unknown "John Doe" Defendants in its complaint. Jurisdiction over those Defendants shall be considered if and when they are identified.

18

substantial justice." Thorn EMI North Am., Inc. v. Micron Tech., Inc., 821 F.Supp. 272, 275 (D.Del. 1993) (quotations omitted). The purpose of this requirement is to ensure that "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "Courts should also consider the burden imposed on the defendant by having to litigate in a foreign forum, as well as the interest of the plaintiff and the forum state." Thorn EMI, 821 F.Supp. at 275. Specific jurisdiction is proper where (1) a defendant has purposefully directed its activities at residents of the forum state, and (2) the alleged injuries arise out of those activities. Id. at 821 F.Supp. at 275-76 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

Here, Defendants have directed roughly 7,600 dispute letters to Chase in Delaware, and have represented at least 30 Delaware residents in billing disputes with Chase. The Court concludes that, in light of these actions, Defendants have purposefully directed their activities at Delaware residents. Furthermore, "subjecting nonresident defendants to jurisdiction based on the conspiracy theory comports with due process because, when a defendant voluntarily participates in a conspiracy with knowledge of its acts in or effects in the forum state, he can be said to have purposefully availed himself of

19

the privilege of conducting activities in the forum state,
thereby fairly invoking the benefits and burdens of its laws."
G & G LLC v. White, 535 F. Supp. 2d 452, 465 (D. Del. 2008)
(citations omitted). Accordingly, the Court concludes that
jurisdiction over all moving Defendants comports with due
process.

## II.    MOTION TO DISMISS FOR IMPROPER VENUE

In a Rule 12(b)(3) motion, the moving party bears the
burden of proving that venue is improper. See Myers v. American
Dental Assn., 695 F.2d 716, 724-25 (3d Cir. 1982). According to
28 U.S.C. § 1391(a)(2), venue is proper in "a judicial district
in which a substantial part of the events or omissions giving
rise to the claim occurred . . . ." As noted above, Defendants
have directed approximately 7,600 dispute letters to Chase in
Delaware and have represented at least 30 Delaware residents in
billing disputes with Chase. Acts such as these, which reflect
a decision on the part of Defendants to do business in Delaware,
are at the root of the harm alleged by Chase. Accordingly, the
Court concludes that a substantial part of the events giving
rise to the claim occurred in Delaware, and that venue is thus
proper under 28 U.S.C. 1391(a)(2).

## III. MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

In determining whether to transfer a case pursuant to §
1404(a), courts in the Third Circuit apply the public and

private interest factors outlined in <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873 (3d Cir. 1995). With regard to the private interests, courts consider: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. <u>Id.</u> at 879. With regard to the public interests, courts consider: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law. <u>Id.</u> at 879-80.

The Plaintiff's choice of forum is entitled to "paramount consideration." <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970). "[I]f the plaintiff's choice of forum relates to its legitimate, rational concerns then the plaintiff's choice of forum is . . . accorded substantial weight." <u>Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.</u>, 775 F.Supp. 759, 764 (D. Del. 1991). Chase's decision to litigate in Delaware reflects a reasonable decision to litigate near its headquarters in Newark, Delaware. Thus, to prevail on its Motion, Defendants

must prove that the public and private interest factors strongly favor transfer.

Here, Defendants have not detailed the individual public and private interest factors. Rather, Defendants have simply asserted generally that they are all located in Florida and that all tangible evidence is also located there such that litigation in Florida "seems most appropriate." (D.I. 5 at 9.) Chase responds first with respect to the private interest factors, noting that the accounts and contracts affected by Defendants' actions are located in Delaware, and that Delaware is where the claims at issue arose. (D.I. 7 at 23.) Furthermore, to the extent Defendants would be inconvenienced by litigating in Delaware, Chase contends that it would be equally inconvenienced by litigating in Florida. (Id.) With regard to the availability of evidence, Chase argues that Defendants have made no showing that records or witnesses would actually be unavailable in Delaware. (Id. at 23-24.) As to the public interest factors, Chase contends that Delaware law governs the contracts between Chase and its cardmembers, and that this Court is more familiar with this law than a Florida federal judge. (Id.) The Court further notes that, because Chase has its main offices in Delaware, any injury arising from Defendants' conduct is felt most strongly in Delaware, and that

Delaware thus has a significant local interest in this controversy.

In light of the foregoing, the Court cannot conclude that the public and private interest factors weigh strongly in favor of a transfer such that Chase's choice of forum should be disturbed.

## IV. MOTION TO DISMISS BASED ON DOCTRINE OF FORUM NON CONVENIENS

A court may dismiss a case based on the doctrine of forum non conveniens "when an alterative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] appropriate because of considerations affecting the court's own administrative and legal problems." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981) (quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947)). Ordinarily, dismissal will be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. Id. at 249. If a foreign country is selected as the alternative forum, the entire case and all of the parties must be deemed to come within the jurisdiction. Id. at 254.

The Supreme Court has concluded certain factors are relevant to making a determination on forum non conveniens grounds, which include private interests affecting convenience of the litigants, along with public interests affecting the convenience of the chosen forum.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509, 91 L. Ed. 1055, 67 S. Ct. 839 (1947).  To a large degree, these factors parallel those used in considering transfer under 28 U.S.C. § 1404 and need not be repeated here. Given the Court's conclusion that transfer under 28 U.S.C. § 1404 is inappropriate, the Court cannot conclude that it is appropriate for to take the more extraordinary step of dismissing the case outright because Delaware is an allegedly inconvenient forum.  See infra Part. III.  Indeed, given that Defendants use their Internet website to solicit customers nationally, have accepted clients in forty-nine states and the District of Columbia and Puerto Rico, and boast of being "associate[d] with . . . hand-picked affiliate attorneys located throughout the country," (D.I. 1, Exh. G), it would be very difficult for the Court to conclude that it would be "oppressive," "vexatious," or "out of all proportion to [Defendants'] convenience" to require them to litigate in Delaware.

## V. CHASE'S MOTION FOR LEAVE AND MOTION TO STRIKE

With respect to Chase's Motion For Leave And Motion To Strike, the Court agrees with Chase that the moving Defendants' conduct in connection with the briefing of the instant Motions has been troubling. Most troubling are a number of meritless arguments raised by the moving Defendants in their reply brief in support of their Motion To Dismiss and their opposition to Chase's Motion For Leave. A brief summary of the moving Defendants' most disconcerting litigation stances is provided below.

First, Defendants allege that they sent roughly 7,600 dispute letters to Delaware only because Chase's legal counsel demanded this. (D.I. 9 at 2-3.) In light of the fact that Defendants had sent over 3,000 letters to Delaware prior to any such instruction from Chase, (see D.I. 10, Exh. 2 at 6), Defendants' reliance on this argument is disingenuous.

Second, the moving Defendants allege that Laura Hess had clarified an earlier statement to the Supreme Court of Florida to make clear that Defendants had no non-Florida offices. (D.I. 11 at 2.) Yet the moving Defendants never produced any clear evidence of such a clarification, providing at most a transcript of earlier testimony from a completely unrelated dispute that actually tends to confirm the existence of a number of non-Florida offices, including offices in Singapore and the Cayman

Islands.  (See D.I. 12, Exh. D at 21.)  In these circumstances, Defendants are on soft ground when they question Chase's integrity and accuse them of misleading the Court by hiding evidence pertaining to this issue.

Third, the moving Defendants argue that only one Defendant, Hess Kennedy Holdings, actually sent letters to Delaware and therefore the sending of dispute letters may not be used as a basis for finding jurisdiction over Defendants other than Hess Kennedy Holdings.  (See D.I. 9 at 2-3.)  However, Chase has already produced in this action dispute letters printed on the letterhead of other Defendants, including The Campos Chartered Law Firm, The Consumer Law Center, and Hess Kennedy Company Chartered.  (See, e.g., D.I. 1, Exhs. I, K.)  Thus, the moving Defendants' argument appears to lack factual foundation.  To the extent there is some truth to Defendants' assertion, the moving Defendants concede in their reply that Hess Kennedy holdings was acting as the "designated mailer/processor for the other Defendants," (D.I. 9 at 2), leaving the Court to question the jurisdictional relevance of whether only one Defendant was engaged in the actual mailing process.

Fourth, Defendants allege that dispute letters were sent not in Defendants' names, but in the cardholders' names, who had changed their billing addresses to Defendants' Florida offices. (D.I. 9 at 2-3.)  Apparently, Defendants position is that these

events minimize or eliminate the importance of the dispute
letters to the question of personal jurisdiction. They do not.
And, in any event, Chase has produced dispute letters printed on
Defendants' letterhead, (see D.I. 1, Exh. K), which clearly
contradict Defendants' assertions that dispute letters were sent
solely in cardholders' names.

Fifth, with respect to their Internet website, Defendants
contend that it was only "'passively' used to distribute
information." (D.I. 9 at 6.) However, there is no dispute that
the website included a pull-down menu allowing Delaware
residents to identify themselves and enter personal information
so that Defendants could contact them at a future time. (See
D.I. 9 at 3; D.I. 1, Exh. G.) The Court understands that the
recent trend among district courts is to not confer jurisdiction
based solely on the presence of a "drop-down" or "pull-down"
menu on a website. See, e.g., Hershey Co. v. Pagosa Candy Co.,
No. 07-CV-1363, 2008 U.S. Dist. LEXIS 29410, at *20-*21 (M.D.
Pa. Apr. 10, 2008); Lindgregn v. GDT, LLC, 312 F. Supp. 2d 1125,
1130 (S.D. Iowa 2004); Swarovski Optik N. Am. Limited v. Euro
Optics, Inc., No 03-090ML, 2003 U.S. Dist. LEXIS 14881, at
*23-*24 (D.R.I. Aug. 25, 2003); but see Directory Dividends,
Inc. v. SBC Communs., Inc., No. 01-CV-1974, 2003 U.S. Dist.
LEXIS 12214 (E.D. Pa. July 2, 2003) (with regard to a pull-down
menu and zip code search function, explaining that such

"specifically intended internet contact with Pennsylvania is sufficiently systematic and continuous that the website alone may be used as the basis for a finding of general personal jurisdiction"). However, the website at issue here further allows users to input questions and comments. (D.I. 1, Exh. G.) Where, as here, the product purveyed via the website is legal services, the Court finds it difficult to conclude, as Defendant's contend, that this constitutes the mere "passive" use of a website for information distribution.

In the Court's view, all of the above arguments were either raised for the first time or re-asserted vigorously in Defendants' Reply Brief. Nevertheless, Defendants, in their opposition to Chases's Motion For Leave, criticize as "gamesmanship" Chase's decision to address these issues through a sur-reply. (D.I. 11 at 1-2.) Given the extent of the apparent misrepresentations in Defendants briefing, the Court believes allowing a sur-reply brief is warranted. Thus, the Court will grant Chase's Motion For Leave.

With respect to Chase's Motion To Strike, the Court will deny the Motion. While Defendants' May 5 memorandum is unfairly critical of Chase's conduct and character, the Court does not find that these are adequate reasons to strike the moving Defendants' brief from the record. As to Chase's request for the costs of preparing its Motion To Strike, the Court will also

deny the Motion. This case is still in its early stages, so the Court will refrain at this juncture from awarding fees. However, the Defendants and their counsel must be careful to avoid the type of conduct the Court has addressed in this Opinion.

## CONCLUSION

For the reasons discussed the Court will deny the moving Defendants' Motion To Dismiss, grant Chases's Motion For Leave To File A Sur-reply, and deny Chase's Motion To Strike the moving Defendants' May 5 Memorandum.

An appropriate Order will be entered.