**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CHASE BANK USA, N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 08-121-LPS-MPT |
| | : | |
| LAURA L. HESS, | : | |
| EDWARD CHERRY a/k/a EDWARD T. | : | |
| KENNEDY, | : | |
| ERIC SILVERSEN, | : | |
| HOME PLATE CONSULTANTS, LLC, | : | |
| SELF MADE, LLC, | : | |
| THE CONSUMER LAW CENTER OF | : | |
| DELRAY BEACH, LLC, and | : | |
| THE CONSUMER LAW CENTER OF | : | |
| BOCA RATON, INC., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

The court now considers plaintiff Chase Bank's ("Chase") motion to dismiss

defendant Edward Cherry's ("Cherry") counterclaim.  For the reasons set forth below,

the court recommends plaintiff's motion be granted.

**II.   BACKGROUND**

Defendant Cherry engaged in various willful, deceptive, and unfair trade

practices in violation of Chapter 501, Part II, Florida Statues (2007).[1]  Although the

exact commencement of his activities is unknown, Cherry began soliciting and procuring

distressed consumers across the United States by representing himself as an expert in

---

[1] D.I. 146, Ex. C.

the field of debt settlement and debt reduction on or around May 23, 2005.[2]  In addition to securing these consumers as clients of the Receivership Entities, Cherry organized various legal entities and registered several fictitious names in conjunction with the operation of the Receivership Entities.[3]

Cherry operated as the principal signatory of the checks written from the Bank Atlantic and Bank of America accounts of the Receivership Entities.[4]  After a consumer signed a services contract with one of the Receivership Entities, the consumer began making monthly payments, which were wired or otherwise deposited into the Bank Atlantic and Bank of America accounts of the Receivership Entities to supposedly pay the consumers' credit card debts to creditors or legal fees.[5]  From early 2006 to November 2007, however, Cherry issued checks from one account at Bank Atlantic to persons and entities that were neither creditors nor lawyers.[6]  Specifically, Cherry issued checks totaling more than $12 million and distributed them to his wife, his former wife, his brothers-in-law, himself as the Consumer Recovery Team and Global Payment Processing, and illegal client solicitors.[7]  From May 2006 through April 9, 2008, Cherry also effected wire transfers from a Bank of America account to The Credit Exchange Corp. and Coastal Credit Solutions, which totaled more than $8 million and were used for illegal client solicitations.[8]

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

On or about September 30, 2007, Cherry registered three fictitious names with the Florida Department of State, Division of Corporations, which imitated the names of established and reputable banks.[9]  Specifically, Cherry registered the following three fictitious names:  Capital One, Chase Card Services, and Discover Financial.[10]  On or after September 30, 2007, Cherry issued several checks payable to Capital One and Chase Card Services, which were then deposited into Cherry's accounts at BankUnited, F.S.B.[11]  It is estimated that Cherry issued checks totaling more than $4 million from these Receivership Entities to his personal accounts at BankUnited, F.S.B.[12]  Additionally, Cherry issued Receivership Entities' checks of an indeterminate amount to American Express for family expenditures.[13]

The actions of Cherry and the co-defendants caused Chase cardmembers, who were responsible for more than 12,000 credit card accounts, to withhold payments owed on more than $75 million of outstanding debt due to Chase.[14]  This, in turn, caused Chase cardmembers to do the following:  cease making payments on their outstanding credit card debts; assert sham billing error disputes under the Fair Credit Billing Act; bring frivolous lawsuits against Chase; and raise meritless dilatory defenses in collections actions brought by Chase to recover on defaulted credit card balances.[15]  Therefore, Chase initiated the instant matter, asserting claims for following:  tortious

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] D.I. 82 ¶ 1.
[15] D.I. 146, Ex. C ¶ 4.

interference with contract; unjust enrichment; abuse of process; conspiracy and violations of the Delaware Deceptive Trade Practices Act and the Delaware Consumer Fraud Act; and declaratory, injunctive, and monetary relief.

On February 29, 2008, Chase filed the original complaint in this action against Cherry and the co-defendants.  On April 1, 2008, Laura Hess and several other co-defendants moved to dismiss the original complaint for lack of personal jurisdiction, improper venue, or *forum non conveniens*, or in the alternative, for transfer to Florida.[16] This court, however, denied the parties' motion to dismiss.[17]

On January 5, 2009, the Florida Circuit Court of the Seventeenth Judicial Circuit in and for Broward County approved a Consent Judgement Entering Injunctive Relief ("Florida Injunction") against Cherry.[18]  The Florida Injunction permanently enjoined Cherry from the following:

> a.    engaging in consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law;
>
> b.    representing and/or soliciting through advertisement and/or oral communication, either directly or indirectly, that they offer, provide or otherwise render consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business entity that is not a law office, law

---

[16] D.I. 5.

[17] *Chase Bank USA, N.A. v. Hess Kennedy Chartered LLC*, 589 F.Supp.2d 290 (D. Del. 2008).

[18] D.I. 143-5 at 12-16.

firm or engaged in the practice of law; and

   c.   accepting, receiving or otherwise obtaining payment from consumers for consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business entity that is not a law office, law firm or engaged in the practice of law.[19]

On July 13, 2009, Chase entered into a settlement and release agreement with the defendants via the court-appointed receiver then managing these entities.[20]  On September 30, 2009, Chase filed a motion for leave to amend its complaint in this action to add additional defendants, including Cherry, also known as Edward T. Kennedy.[21] On November 16, 2009, this court granted Chase's request, and Chase filed its amended complaint the following day.[22]  On November 23, 2009, Cherry filed a motion to dismiss Chase's amended complaint.[23]  On January 6, 2011, however, this court denied Cherry's motion to dismiss.[24]

On January 31, 2011, Cherry answered Chase's amended complaint and filed a counterclaim, seeking a declaratory judgment related to his behavior outside Florida state lines.[25]  Cherry argues the Florida Injunction does not preclude him from "drafting or assisting in drafting pleadings, correspondence and the like or lecturing publishing or otherwise providing attorneys and non-attorneys with information relating to the rights afforded under the Fair Credit Billing Act or the common law of the states of Delaware

---

[19] D.I. 145-3.
[20] D.I. 84, Ex. A.
[21] D.I. 76.
[22] D.I. 81; D.I 82.
[23] D.I. 84.
[24] D.I. 131; D.I. 132.
[25] D.I. 137.

or Florida."[26]  Specifically, Cherry claims neither his lecture at a Florida Bar Approved

CLE seminar on or around April 30, 2010, nor the dispute letters sent to Chase and

lawsuits filed based upon those dispute letters were explicitly delineated as precluded

activities by the Florida Injunction.[27]  Therefore, Cherry asserts the court has subject

matter jurisdiction and an actual controversy exists.  Basing his counterclaim on FED. R.

CIV. P. 57 and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Cherry

seeks the following declaratory relief as support that his activities did not violate federal

law:

1.    A Declaration that this Court has jurisdiction fo a real and active justiciable controversy between these parties;
2.    A Declaration that notices to creditors only need to meet the timeliness and content requirements of [the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA")] in order to trigger a billing dispute;
3.    A Declaration that a creditor's error of legal judgment with respect to a person's obligation under TILA is not a bona fide error;
4.    A Declaration that one or more of the dispute letters attached to Chase's complaint satisfy the TILA notice requirements;
5.    A Declaration that one or more of the dispute letters attached to Chase's [complaint] commences a valid credit card billing dispute if transmitted to Chase within 60 days from Chase transmitting a period billing statement to a cardmember; and
6.    A Declaration that one or more of the dispute letters attached to Chase's account [sic] if transmitted to Chase within 60 days form Chase transmitting a periodic billing statement to a cardmember would require Chase to comply with procedures set forth in TILA.[28]

Presently before this court is Chase's motion to dismiss Cherry's counterclaim,

which was filed on March 7, 2011.[29]

## III.   LEGAL STANDARDS

---

[26] D.I. 146 at 6.
[27] *Id.* at 9-10.
[28] *Id.* at 10; D.I. 147 at 4.
[29] D.I. 144.

### A.      Motion to Dismiss Standard for Failure to State a Claim under Rule 12(b)(6)

FED. R. CIV. P. 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[30]  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[31]  A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[32]  While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[33]

To survive a motion to dismiss, the factual allegations must be sufficient to "raise

---

[30] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[31] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[32] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[33] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

a right to relief above the speculative level . . . ."[34]  Plaintiffs are, therefore, required to

provide the grounds of their entitlement to relief beyond mere labels and conclusions.[35]

Although heightened fact pleading is not required, "enough facts to state a claim to relief

that is plausible on its face" must be alleged.[36]  A claim has facial plausibility when a

plaintiff pleads factual content sufficient for the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.[37]  Once stated adequately, a

claim may be supported by showing any set of facts consistent with the allegations in

the complaint.[38]  Courts generally consider only the allegations contained in the

complaint, exhibits attached to the complaint, and matters of public record when

reviewing a motion to dismiss.[39]

### B.   Motion to Dismiss Standard for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

When jurisdiction is challenged, the party asserting subject matter jurisdiction has

the burden of proving its existence.[40]  Under Rule 12(b)(1), the court's jurisdiction may

---

[34] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[35] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[36] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[37] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[38] *Twombly*, 550 U.S. at 563 (citations omitted).

[39] *See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted).

[40] *See Carpet Group Int'l. v. Oriental Rug Importers Ass'n., Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

be challenged either facially, that is, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional facts.[41]  Where there is a facial attack on jurisdiction, the court must accept as true the allegations contained in the complaint. Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"[42]

When there is a factual attack, the court is not "confine[d] to the allegations in the . . . complaint, but [may] consider affidavits, depositions and testimony to resolve factual issues bearing on jurisdiction."[43]  Under that circumstance, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."[44]

Usually, subject matter jurisdiction is decided at the outset of a case, however, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation."[45]  A party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause

---

[41] 2 *Moore's Federal Practice* § 12.30[4] (3d ed. 1997).
[42] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).
[43] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortenson v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891-92 (3d Cir. 1977).
[44] *Carpet Group*, 227 F.3d at 69 (quoting *Mortenson*, 549 F.3d at 891).
[45] *Moore* at § 12.30[1].

9

of action, if the claim survives the jurisdictional objection)."[46]

### C.    Declaratory Judgment Counterclaim

"The Declaratory Judgment Act creates a remedy by which federal courts 'may declare the rights and other legal relations of any interested party seeking such declaration' when there is a 'case of actual controversy.'"[47]  "'It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"[48]  "The conflict between the parties must be ripe for judicial intervention; it cannot be 'nebulous or contingent,' but 'must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'"[49]

"A counterclaim for declaratory relief may be dismissed as redundant where 'there is complete identity of factual and legal issues between the complaint and the counterclaim.'"[50]  Further, "[d]ismissal is justified in such cases on the theory that the

---

[46] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995) (citations omitted).

[47] *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F.Supp.2d 562, 565 (D. Del. 2009) (quoting 28 U.S.C. § 2201).

[48] *Id.* (quoting *Wyatt v. Gov't of the V.I.*, 385 F.3d 801, 806 (3d. Cir. 2004) (internal citation omitted)).

[49] *Id.* (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).

[50] *Id.* at 566 (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975) (internal citation omitted)); *see also John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 190 (E.D.Pa. 1982) (stating "a counterclaim [that] 'merely serves to restate the controversy set forth in the complaint . . . may be stricken as redundant'") (quoting 5 James William Moore et at., Moore's Federal Practice ¶ 41.09).

counterclaim will become moot upon disposition of the complaint."[51]  "Considering the

difficulty in determining whether a declaratory judgment counterclaim is in fact

redundant prior to trial, however, authorities suggest that a court should dismiss such

counterclaims only when there is no doubt that they will be rendered moot by

adjudication of the main action."[52]

## III.   DISCUSSION

Cherry's counterclaim primarily concerns whether dispute letters sent to Chase of

behalf of Cherry's clients qualify as valid billing dispute notices under TILA.[53]  Cherry

argues the Florida Injunction does not preclude this activity, and the Florida Attorney

General "cannot regulate behavior that occurs outside its borders or behavior that is

otherwise lawful."[54]  As a result, Cherry claims his uncertainty regarding his rights under

TILA "as to the validity and legal effect of the [dispute] letters" has given rise to an

actual and justiciable controversy.[55]

However, Chase's amended complaint argues the dispute letters do not qualify

as valid billing disputes.[56]  Therefore, Chase maintains Cherry's declaratory relief

counterclaim is not only redundant, but would be rendered moot upon disposition of

Chase's amended complaint.[57]  Further, Chase contends Cherry's counterclaim should

be dismissed because he failed to respond to Chase's argument that his counterclaim

---

[51] *Id.* at 566 (citing *Packel,* 544 F.2d at 51-52).
[52] *Id.* at 566 (citations omitted).
[53] D.I. 137 ¶¶ 186-197.
[54] D.I. 146 at 6.
[55] D.I. 137 ¶ 199.
[56] D.I. 82 ¶ 46.
[57] D.I. 147 at 5.

was redundant.[58]

First, the Florida Injunction was intended to and does permanently enjoin Cherry from engaging in, providing or otherwise rendering, and obtaining payment for consumer-debt related services.[59]  Although Cherry argues the Florida Injunction was not drawn in precise terms, the Florida Injunction need not provide an exhaustive list of precluded activities in order to be enforceable.  Further, the Florida Attorney General intended to preclude a wide range of consumer-debt related activities, which is evidenced not only by the use of broad language, but also the Florida Attorney General's contempt action brought against Cherry on September 22, 2010.[60]  The contempt action alleges Cherry violated the terms of the Florida Injunction by soliciting, providing, and obtaining payment for consumer-debt related services; specifically, it claims Cherry organized and presented at CLE lectures and drafted a collection defense form book, both of which he accomplished through his own actions and the utilization of third parties.[61]  Cherry's behavior demonstrates a continued disregard for the Florida Injunction that cannot be justified by the injunction's alleged lack of specificity.  As a result, Cherry's argument must fail, and the declaratory judgment counterclaim should be dismissed as moot.[62]

Second, the District of Delaware must give full faith and credit to the Florida

---

[58] *Id.*
[59] D.I. 145-3.
[60] D.I. 145-2.
[61] *Id.*
[62] *Penn. Mut. Life Ins. Co. v. Barbara Glasser 2007 Ins. Trust,* No. 09-677-JJF, 2010 U.S. Dist. LEXIS 77445, *8-9 (D. Del. July 30, 2010) (noting declaratory judgment counterclaim failed for lack of actual controversy and, therefore, was not ripe for judicial adjudication).

Injunction.  Although Cherry contends the Florida Attorney General cannot regulate his behavior outside Florida state lines, this argument fails under 28 U.S.C. § 1738.  The Full Faith and Credit Statute provides states must recognize the legislative acts, public records, and judicial decisions of sister states.  However, it also "requires federal courts to give state court judgements the same preclusive effect that the state courts would give them."[63]  Therefore, Cherry's argument cannot prevail, and the declaratory judgment counterclaim should be dismissed for lack of subject matter jurisdiction.

Alternatively, Cherry's counterclaim is duplicative.  Disposition of Chase's amended complaint would render Cherry's counterclaim moot and, therefore, this court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine and pursuant to FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6).[64]  The Third Circuit has interpreted the *Rooker-Feldman* doctrine as barring the lower federal courts "from entertaining an action . . . if the relief requested effectively would reverse a state court decision or void

_____

[63] *Abulkhair v. Page-Hawkins*, 448 F. App'x 291, 293 (3d Cir. 2011) (citing 28 U.S.C. § 1738 and *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572-73 (3d Cir. 2002)).

[64] The *Rooker-Feldman* doctrine is named for two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Under that doctrine "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).  The Supreme Court recently clarified the scope of the *Rooker-Feldman* doctrine, holding that doctrine to be "confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

its ruling."[65]  Accordingly, the *Rooker-Feldman* doctrine creates a jurisdictional bar where the federal claim was "actually litigated" in state court or where the federal claim is "inextricably intertwined" with a previous state-court judgment.[66]  Here, Cherry's counterclaim is not only inextricably intertwined with Chase's amended complaint but also with the consumer-debt activities from which he was permanently enjoined under the Florida Injunction.  Because Cherry cannot attempt to circumvent these jurisdictional bars by feigning uncertainty of his rights under TILA, his counterclaim should be dismissed as moot.

Additionally, Cherry failed to respond to Chase's argument that his counterclaim was redundant.  Although Cherry alleges the Florida Injunction lacks specificity and has moved to dissolve the Florida Injunction, he has failed to provide legal support for these contentions.  Further, by failing to respond to Chase's argument, Cherry has failed to provide additional information to warrant the exercise of subject matter jurisdiction.[67]  As a result, Chase's motion to dismiss should be granted.

## ORDER

Consistent with the findings contained in the Report and Recommendation of the same date,

IT IS RECOMMENDED that Plaintiffs' Motion to Dismiss Defendant Edward

---

[65] *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006) (citing *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) (internal citation omitted)).

[66] *Id.* at 291 (citing *Parkview Assoc. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000) (internal citation omitted)).

[67] *See Grumbkow v. Walt Disney Co.*, No. 06-489-JJF, 2007 U.S. Dist. LEXIS 11975, at *6-7 (granting party's motion to dismiss because opposing party failed to respond to party's arguments and, therefore, sufficient evidence was not provided to court to warrant personal jurisdiction).

Cherry's Counterclaim (D.I. 144), pursuant to Rules 12(b)(1) and 12(b)(6), be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72 (b)(1), and D. Del. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same. Any response shall be limited to ten (10) pages.

The parties are directed to the Court's Standing Order in *Pro Se* Matters for Objections Filed under FED. R. CIV. P. 72 (dated November 16, 2009), a copy of which is found on the Court's website (www.ded.uscourts.gov.)

The Clerk of the Court is directed to cause a copy of the Report and Recommendation and this Order to be mailed to defendant, Edward Cherry.

Dated: April 17, 2012                    /s/ Mary Pat Thynge_____
                                          UNITED STATES MAGISTRATE JUDGE