## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CHASE BANK USA, N.A.,                    :
                                          :

                Plaintiff,      :

v.                                       :   C. A. No. 08-121-LPS-MPT

LAURA L. HESS, et al.,                   :

              Defendants.    :

*(right margin, vertical:)* 2013 MAR -7   PH 5: 07   FILED CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE

## REPORT AND RECOMMENDATION

### I.   Introduction

Plaintiff Chase Bank USA, N.A. ("Chase"), a national banking association,

brought this action against Defendant Laura Hess, and companies she controlled

("Hess"),[1] alleging tortious interference with contractual relations, unjust enrichment,

abuse of process, violation of the Delaware Deceptive Trade Practices Act and the

Delaware Consumer Fraud Act, and conspiracy.[2]  Currently before the court is Chase's

motion for summary judgment on all counts alleged against Laura Hess.[3]

### II.   Background[4]

---

[1] Those entities are Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, and The Consumer Law Center, LLC.  D.I. 213, Ex. 7 (November 25, 2008 Florida Consent Judgment) at ¶ 7.  The claims brought by Chase against the Hess entities were resolved through a Consent Judgment ordered by this court on July 20, 2009, in which injunctions were entered against the Hess entities.  D.I. 71.

[2] D.I. 82.

[3] D.I. 213.

[4] This opinion relies on facts contained in the Florida and Delaware Consent Judgments, unless otherwise indicated.  Laura Hess was a signatory to the Florida Consent Judgment.  Under ¶ 7, she admitted "[a]t all times material [Hess] *knew of and controlled the activities of* Laura Hess & Associates, P.A., Hess Kennedy Chartered LLC, and The Consumer Law Center, LLC." D.I. 213, Ex. 7, ¶ 7 (emphasis added).  Because she undisputedly controlled those companies, Laura Hess and her corporations will be referenced as "Hess" in this opinion, unless otherwise indicated.  Laura Hess was not a signatory or a party to the Delaware Consent Judgment.

Hess, an attorney, operated "law firms" for debt settlement, which were part of several inter-related debt elimination/settlement companies.  The companies were composed of two components:  the law firms responsible for debt settlement, which Hess operated, and a company for processing payments, managed by a non-lawyer Edward Cherry, also known as Edward T. Kennedy.  Hess organized numerous legal entities and registered a number of fictitious names, which she used in conjunction with her business.

Hess offered and advertised to clients debt relief by representing she could convince creditors to accept significantly reduced amounts as full payment for unsecured debts.[5]  Hess directed clients, including thousands of Chase cardmembers, to discontinue payments on their credit card debt, and instead send monthly payments to Hess.[6]  As a result, clients who were Chase cardmembers, stopped making payments to Chase.[7]

Hess never advised her clients that settlement or reduction of any debt would only occur after payment for legal fees.  Hess collected attorneys' fees ranging from 15 to 20% of the amount of debt each client invested in the programs, in addition to monthly processing fees for "services."  A significant portion of the attorneys' fees were diverted to marketers and advertisers for referring consumers to Hess in violation of state law.[8]  Hess also failed to maintain any consumer escrow payments in client trust

---

[5] D.I. 71; D.I. 213, Ex. 2 (various former Hess' clients' affs.), Ex. 4 (Laura Hess Depo. Aug 18, 2010) at 38:12-15.
[6] *Id.*
[7] *Id.*
[8] D.I. 71; D.I. 213, Ex. 9 (Eric Siverson Depo.) at 35:1-5, 36:21-25.

2

accounts, despite advising clients their payments would accrue in such accounts.[9]

During this time when fees were being paid to Hess and the advertisers and marketers, Chase continued seeking payment from its cardmembers.[10]  Because of their debt settlement arrangement with Hess, the debt problems for some clients became significantly worse.[11]  Hess also illegally diverted and used millions of dollars of clients' funds for personal expenses and payments to others not entitled to those funds.[12]

Hess, on behalf of clients, initiated actions under the Fair Credit Billing Act ("FCBA"), 15. U.S.C. §§ 1666 *et seq.*, for purported "billing error disputes" against Chase, in which the cardholder clients challenged their entire Chase credit card account balances and withheld any and all payments to Chase.  Furthermore, Hess drafted legally insufficient form letters, and encouraged cardmembers to send them (by the thousands) to Chase, as well as assert frivolous claims and counterclaims, which bear Hess' signature as counsel, against Chase in legal actions initiated by it to collect on delinquent credit card balances.[13]  Hess never advised clients that issuing dispute letters under the FCBA did not toll or relieve liability for payments due on their credit card accounts.  Hess also confirmed that Chase was one of many creditors with whom she dealt.[14]

This court determined the form letters created and used by Hess and her Chase

---

[9] D.I. 71; D.I. 213, Ex. 2, Ex. 7.
[10] D.I. 213, Ex. 2.
[11] *Id.*
[12] D.I. 213, Ex. 10 (Financial Investigator Ama-Louise Douglas Aff.) at ¶¶ 1-21.
[13] D.I. 71, D.I. 82, Exs. J, K, L, M, N, O, P.
[14] D.I. 213, Ex. 4 at 38:12-15.

cardmember clients to be a "sham and do not assert valid billing error disputes" under

the FCBA, and the billing error disputes did not provide any legal or valid basis for

withholding payments to Chase.[15]  The court further held the claims and counterclaims

asserted against Chase as frivolous and legally insufficient to prevent Chase from

collecting delinquent balances due on credit card accounts under the terms of its

Cardmember Agreements.[16]

In the Florida Consent Judgment, Hess admits she was "an owner, officer,

manager, member and/or director" and "knew of and controlled the activities of" the

Hess entities.[17]  The Consent Judgment additionally found that Hess and the entities

she controlled violated Part II of the Florida Deceptive and Unfair Trade Practices Act.[18]

Hess was subsequently disbarred in the state of Florida as a result of her actions

herein.[19]

## III.   Discussion

### A.   Standard on Motion for Summary Judgment

Summary judgment is appropriate if the "movant shows that there is no genuine

issue as to any material fact and the movant is entitled to a judgment as a matter of

law."[20]  Once there has been adequate time for discovery, FED. R. CIV. P. 56(a)

mandates judgment against the party who "fails to make a sufficient showing to

establish the existence of an element essential to that party's case, and on which that

---

[15] D.I. 71, at 7.
[16] D.I. 71; D.I. 82, Ex. I.
[17] D.I. 213, Ex. 7 at 2.
[18] D.I. 213, Ex. 7 at 4.
[19] D.I. 82, Ex. D at 11.
[20] FED. R. CIV. P. 56(a).

4

party will bear the burden of proof at trial."[21]  When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[22]  The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[23]  A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[25]  However, a party may move for summary judgment with or without supporting affidavits.[26]  Therefore, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[27]

If the moving party demonstrates an absence of material fact, the nonmoving party must then show "that the fact cannot be or is genuinely disputed" through appropriate evidence."[28]  If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[29]

---

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[22] *Id.* at 323.
[23] *Id.*
[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[25] *Celotex*, 477 U.S. at 323.
[26] *Id.*
[27] *Id.* at 325.
[28] FED. R. CIV. P. 56(c).
[29] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).

That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[30] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[31] Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[32] The threshold inquiry therefore is "determining whether there is a need for trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[33]

## B.    Count I: Tortious Interference With Contractual Relations

Hess maintains summary judgment is inappropriate for any intentional tort because determination of intent is a question of fact to be decided by the trier of fact or jury.[34] Hess' argument applies to other intentional tort claims raised by Chase. To avoid repetition, the court will initially address Hess' contention on the application of summary judgment for intentional tort claims in this section, and incorporates its findings herein when addressing other claims involving intentional torts in subsequent sections of this decision.

Nothing in the relevant case law in this circuit mandates summary judgment as inherently inappropriate to resolve claims of intentional torts. As the case analyses show, contrary to Hess' argument, there is no absolute requirement of a jury trial where

---

[30] *Anderson*, 477 U.S. at 248.
[31] *Id*. at 249.
[32] *Id*.
[33] *Id*. at 250.
[34] D.I. 219 at 3-4.

the applicable facts of an intentional tort claim are sufficient to support judgment in favor of the moving party–that is, when there is absence of any *genuine* issue of *material* fact. [35]

Count I alleges tortious interference with contractual relations under Delaware law against Hess.[36]  To establish a claim for tortious interference with contractual relations under Delaware law, a plaintiff must show there is 1) a contract, 2) about which the defendant knew, 3) an intentional act that is a significant factor in causing the breach of the contract, 4) without justification, and 5) which causes injury.[37]

Chase has presented adequate evidence to support each element.  The contracts are the cardmember agreements between cardmembers and Chase, which obligated payment for debts incurred by use of a Chase credit card.[38]  In light of the businesses she operated (dealing with debt relief and consolidation), Hess clearly was aware of the terms and conditions of those contracts to be able to negotiate modification of the contractual obligations and/or institute legal action for alleged violations.[39]  Further, she admitted Chase was a creditor with whom she dealt.[40]  Hess, whether individually or through her entities, directed clients (Chase cardmembers) to

---

[35]*Thomas v. Harford Mut. Ins. Co.*, C.A. No.01C-01-046 HDR, 2003 Del. Super. LEXIS 36, at *17-18 (Del. Super. Jan. 31, 2003) (granting summary judgment to defendant on claims of intentional infliction of emotional distress and violation of the Unfair Trade Practices Act); *Acorn United States Holdings LLC v. Premark Int'l, Inc.*, C.A. No. 00C-10-226 HLA. 2003 Del. Super. LEXIS 499, at *23-24 (Del. Super.1986) (granting summary judgment to defendant on intentional tort claim of tortious interference with contractual relations).  As demonstrated by these cases, depending on the facts, summary judgment is appropriate on matters involving intentional torts, and such actions do not mandate trial or denial of a motion under Rule 56.

[36]D.I. 82.

[37]*Johnson v. GEICO Cas. Co.*, 673 F. Supp. 2d 244, 250 (D. Del. 2009) (citing *Aeroglobal Capital Mgmt. V. Cirrus Indus.*, 871 A.2d 428, 437 n.7 (Del. 2005)).

[38]D.I. 82, Ex. I.

[39]D.I. 213, Ex. 7.

[40]D.I. 213, Ex. 4 at 38:12-15.

cease payment on their credit card debts, advice on which clients relied, which was a significant factor in causing breach of the contracts.[41]

The record shows Hess' conduct was unjustified.  This court found the form letters drafted by the Hess entities, under her direction and control, were shams, and failed to assert any valid dispute under the FCBA or any legitimate basis to withhold payment on credit card debt.[42]  The court further determined the claims and counterclaims against Chase by those entities on behalf of cardholders were baseless.[43]  Hess clients were unaware the letters and the billing dispute actions provided no protection from liability for discontinued payments.[44]  Since the Delaware and Florida Consent Judgments previously determined Hess' actions as unjustified (sham and frivolous), her argument regarding the seven factors necessary for justification is moot.[45]  Lastly, because cardholders stopped payment under the direction of the Hess-controlled entities, Chase was improperly denied compensation under the cardmember contracts.[46]

Hess fails to justify her improper and fraudulent conduct.  Her only argument is there is "no good faith requirement" to challenge credit card debt under the FCBA,[47] which does not address her conduct which caused breach of the cardholder agreements:  improperly advising and directing clients to forego payments to Chase,

---

[41] D.I. 213, Ex. 2, Ex. 7.
[42] D.I. 71; D.I. 213 at 12.
[43] D.I. 71.
[44] Id.
[45] D.I. 71; D.I. 213, Ex. 7 at 3-4, D.I. 219 at 6-7.
[46] D.I. 71.
[47] Hess' argument ignores the obligation of counsel under the ABA Rules of Professional Conduct, similar state ethics' rules, as well as the Federal Rules of Civil Procedure and the state procedural rules. See FED. R. CIV. P. 11(b).

and instead pay her and/or her corporations.

Lastly, Hess alleges a "sham issue of fact," by claiming she never advised clients to stop payment,[48] which directly contradicts her representations in the November 25, 2008 Florida Consent Judgment (admitting that at all material times to knowing and controlling the activities of the Hess entities). She further represented, in conjunction with her profession corporations, to violating Part II of the Florida Deceptive and Unfair Trade Practices Act.[49] These same entities, who *were parties* to the Delaware Consent Judgment of July 20, 2009, were found to have directed Chase cardmembers to stop payments to Chase. Her affidavit, therefore, is not sufficient to raise a genuine issue of material fact, and judgment should be entered in favor of Chase on the claim of tortious interference with contractual relations.

## C. Count II: Unjust Enrichment

Count II of Chase's complaint raises unjust enrichment.[50] To establish a claim for unjust enrichment, a plaintiff must prove 1) an enrichment, 2) an impoverishment, 3) a relation between the enrichment and impoverishment, 4) the absence of justification and 5) the absence of a remedy provided by law.[51]

---

[48] *Yatzus v. Appoquinimink School District*, 458 F. Supp. 2d 235, 246-47 (D. Del. 2006) (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241(3d Cir. 1991)). Though this case applies to depositions ("when, without a satisfactory explanation, a non-movant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists."), the "sham affidavit" doctrine is just as applicable, if not more, to affidavits contradicting the admitted facts in a consent judgment.

[49] D.I. 71 at 2; D.I. 213, Ex. 7 at 3-4; Fla. Stat. Ann ch. 501.204 (Harrison 2005). Part II of the Florida Deceptive and Unfair Trade Practices Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The Florida findings correspond to the same fraudulent conduct and time frame addressed in the Delaware Consent Judgment which Hess admitted to in the Florida Consent Judgment.

[50] D.I. 82.

[51] *MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 512-13 (D. Del. 2012) (citing *Trevino v. Merscorp., Inc.*, 583 F. Supp. 2d 521, 533-34 (D. Del. 2008)).

In its briefs, Chase neglected to address the last element: the absence of legal a remedy, which Hess highlights in her opposition brief.[52] Although Chase adequately provided evidence of the first four elements,[53] it failed to demonstrate *all* required elements for unjust enrichment, and therefore, its motion for summary judgment is denied.[54]

### D.   Count III: Abuse of Process

Count III asserts abuse of process.[55] To prove that claim, a plaintiff must establish 1) an ulterior purpose, and 2) a wilful act in the improper use of process.[56] Accordingly, some definite act or threat, not consistent with process, or designed for an illegitimate objective in the use of process, is required.[57] Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must also be shown.[58]

Chase proffered evidence sufficient to support each element. Hess' wilful acts include filing baseless suits and asserting frivolous claims and counterclaims against Chase on behalf of her clients, thereby initiating court process against Chase.[59] Hess pursued sham proceedings to prevent or interfere with Chase's legitimate efforts to collect balances owed by her clients, who were directed to stop payments to Chase.[60]

---

[52] D.I. 219 at 8.
[53] D.I. 213 at 13.
[54] Since Chase failed to meet its burden, it is unnecessary to address Hess' remaining contentions.
[55] D.I. 82.
[56] *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. 1983) (quoting *Unit, Inc. v. Kentucky Fried Chicken Corp.*, 304 A.2d 320, 331 (Del. Super. 1973)).
[57] *Id.*
[58] *Id.*
[59] D.I. 71.
[60] D.I. 71; D.I. 213, Ex. 2.

This court found Hess' actions to be improper and without a legitimate objective, since the means employed were "frivolous and legally insufficient" in relieving clients' obligations to Chase.[61]  By improperly delaying and foreclosing Chase in its legitimate collection efforts, Hess used those fraudulent activities as leverage against Chase, and received monthly fees from clients in lieu of them making payments to Chase.[62]

Hess counters Chase failed to show that she used any "process" at all.[63]  By filing claims in court against Chase, Hess initiated legal process.[64]  She further maintains filing lawsuits does not constitute abuse of process; however, her citations to Delaware case law refute her argument.[65]  Hess' application of abuse of process requires a very narrow usage of the term process, as limited to writs of attachment or garnishment.[66]  Her approach, however, as evidenced by her cited references, misapplies the law.[67]  As noted in *Adams v. Aidoo*, abuse of process covers conduct which uses court action for an improper motive or purpose, or for which it was not intended.[68]  Therefore, contrary Hess' argument, instituting sham lawsuits is abuse of process.

Additionally, Hess argues she used no element of coercion or extortion to obtain

---

[61] *Id.*

[62] *Id.*

[63] D.I. 219 at 5.

[64] D.I. 213, Ex. P; *Adams v. Aidoo*, C.A. No. 07C-11-177 (MJB), 2012 WL 1408878, at *4 (Del. Super. Mar. 29, 2012) (finding abuse of process is "using the legal system to accomplish a purpose for which the system is not designed."); *Spence v. Spence*, C.A. No. K11C-06-035 JTV, 2012 WL 1495324, at *3 (Del. Super. Apr. 20, 2012) (determining abuse of process is merely "abusive litigation" involving a "perversion of the process after it is issued.").

[65] D.I. 213, Ex. P; D.I. 219 at 5-6; *Adams*, 2012 WL 1408878, at *4; *Spence*, 2012 WL 1495324, at *3.

[66] D.I. 219 at 5.

[67] *Id.* at 5-6.

[68] *Adams*, 2012 WL 1408878, at *4.

a collateral advantage.[69]  She ignores, however, the factual evidence to which she admitted in the Florida Consent decree, and similar factual findings which the corporations she managed and controlled, agreed to in the Delaware Judgment Order. The findings in these consent judgments demonstrate how litigation was improperly used by coercive litigation to prevent Chase from lawfully collecting on debts owed to it and provided collateral advantage to Hess.[70]  The lawsuits were manipulated to improperly prevent Chase from lawfully collecting money owed from its cardholders, operated to significantly delay payment to Chase, and diverted, in part, funds to pay monthly fees to Hess.[71]

Hess counters a "letter outside a lawsuit cannot give rise to a claim of 'abuse of process.'"[72]  The billing dispute form letters are not the sole issue; rather, the frivolous litigation employed to further an improper purpose (precluding Chase from legitimate payment) and for collateral advantage (leverage for settlement and the basis for monthly fees) are the issues.

Since Chase has sufficiently sustained its burden, in the absence of any genuine issues of material fact demonstrated by Hess, judgment is granted in favor of Chase on abuse of process.

### E.    Count IV: Delaware Deceptive Trade Practices Act

In count IV, Chase raises violation of the Delaware Deceptive Trade Practices Act ("DTPA") against Hess.[73]  The DTPA provides in pertinent part:  "[a] person

---

[69] D.I. 219 at 5-6; *Spence*, 2012 WL 1495324, at *3.
[70] D.I. 219 at 5.
[71] D.I. 71; D.I. 213, Ex. 2.
[72] D.I. 219 at 6.
[73] D.I. 213 at 15.

12

engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person . . . [e]ngages in any . . . conduct which . . . creates a likelihood of confusion or misunderstanding."[74] The DTPA's precedential application only applies where a "person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another."[75] A "horizontal" business relationship is required, which exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors.[76] A classic application of the DTPA occurs where one business unfairly trades on the name of another.[77] The DTPA does not apply to the factual situation between Chase and Hess. They are neither competitors nor providers of similar products or services, nor is Hess engaging in an unfair trade practice covered by the DPTA.

Since Chase has not demonstrated a horizontal business relationship, and thus cannot succeed on its motion, it is unnecessary to address Chase's argument regarding injunctive relief or Hess' contentions.[78] Chase's motion for summary judgment on its DTPA claim is denied.

## F.   Count V: Delaware Consumer Fraud Act

Under this count, Chase maintains Hess violated the Delaware Consumer Fraud

---

[74] 6 Del. C. § 2532(a)(12).
[75] *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993) (holding, after analyzing the statute, its legislative intent, and the purpose of the DTPA, in the absence of any "horizontal" business or trade, there is no cause of action under the DTPA); *Don's Hydraulics, Inc. v. Colony Ins. Co.*, 417 F. Supp. 2d 601, 612 (D. Del. 2006).
[76] *Black's Law Dictionary* 1010 (8th ed. 2004).
[77] *Grand Ventures*, 632 A.2d at 70.
[78] D.I. 213 at 15.

13

Act ("DCFA") in her dealings with Chase cardmember clients.[79]  The DCFA states:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission, in connection with the sale, lease, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.[80]

Precedential application of the DCFA "provides remedies for violations of the 'vertical' relationship between a consumer and a seller of services . . . ."[81]  A "vertical" relationship is "between businesses occupying different levels of operation for the same product, such as between a manufacturer and a retailer" or "buyer and seller."[82]  No evidence has been presented that a vertical relationship akin to buyer and seller existed between Chase and Hess.  Although there may have been such a relationship between Chase and its cardmembers and those same cardholders as clients to Hess, that does not extrapolate to a vertical business relationship between Chase and Hess.  Since a vertical business relationship is required element under the DCFA, which Chase has not shown, its motion for summary judgment on Count V is denied.

### G.   Count VI: Conspiracy

Count VI of the complaint alleges conspiracy.[83]  For a claim of conspiracy under Delaware law, a plaintiff must prove the combination of two or more persons or entities for an unlawful purpose, or for accomplishing a lawful purpose by unlawful means, resulting in damages.[84]  Civil conspiracy requires an underlying wrong, which would be

---

[79] *Id.* at 15-16.
[80] 6 Del. C. § 2513(a).
[81] *Worldspan, L.P. v. Ultimate Living Group, LLC*, 390 F. Supp. 2d 412, 414-15 (D. Del. 2005) (citing *Grand Ventures*, 632 A.2d at 70).
[82] *Black's Law Dictionary* 1010 (8th ed. 2004).
[83] D.I. 82.
[84] *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 694 (Del. Super.1986).

14

actionable absent the conspiracy; there is no independent action for civil conspiracy under Delaware law.[85]

Chase has proven the elements to support its claims of tortious interference with contractual relations and abuse of process, thereby demonstrating underlying wrongs or actionable conduct. As previously noted herein, Hess admittedly knew of and controlled the activities of her corporations, and agreed and engaged in fraudulent conduct with at least one, which denied Chase legitimate reimbursement on outstanding accounts.[86]

Hess fails to counter beyond merely reciting the relevant law for conspiracy and arguing Chase failed to show any underlying wrong with no further elaboration.[87]

In establishing underlying wrongs (tortious interference with contract and abuse of process) upon which to predicate the conspiracy, Chase's motion for summary judgment for conspiracy is granted.

## IV. Declaratory and Injunctive Relief

Chase maintains it is entitled to declaratory and injunctive relief. To obtain injunctive relief, a plaintiff must satisfy the four-factor test by showing an irreparable injury; the remedies available at law are inadequate to compensate for that injury; considering the balance of hardships between the parties, an equitable remedy is warranted; and the public interest would not be disserved by a permanent injunction.[88]

---

[85] *Phoenix Canada Oil Co. v. Texaco, Inc.*, 560 F. Supp. 1372, 1388 (D. Del. 1983); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009).

[86] D.I. 71; D.I. 213 at 16, Ex. 7 at 2.

[87] D.I. 219 at 7.

[88] *O'Hara v. Premcor Refining Group, Inc.*, C.A. No. 09-500 (RBK/JS), 2011 U.S. Dist. LEXIS 8370, at *12-13 (D. Del. Jan. 28, 2011) (citing *eBay Inc. v. MercExchange, LLC*, 126 S. Ct. 1837, 1838-39 (2006)).

Based upon numerous instances of egregious conduct by Hess outlined above, the previous injunctions granted against her and her corporations for that conduct,[89] the suspension of her Florida license to practice law,[90] and the significant number of Chase cardmembers represented by her various operations,[91] the public interest would be greatly served by restricting her future conduct, which cannot be addressed solely through monetary relief.  Injunctive relief commensurate with the injury resulting from tortious interference with contract, abuse of process, and conspiracy is appropriate, but not overly broad injunctive relief inconsistent with the previous summary judgment findings in this opinion.

The Declaratory Judgment Act creates a remedy allowing federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy."[92]  The controversy must be real and substantial, "admitting of specific relief through a decree of a conclusive character," and ripe for judicial intervention.[93]

As this court has previously granted declaratory relief against the relevant Hess operations, Chase seeks the same declaratory relief against Hess.[94]  Based upon the proven fraudulent and improper conduct and her admitted control over the operations involved against whom the same declaratory relief was granted,[95] the court finds the

---

[89] D.I. 71at 5-7.
[90] D.I. 82, Ex. D at 11.
[91] D.I. 71; D.I. 213, Ex. 2, Ex. 4 at 38:12-15.
[92] 28 U.S.C. § 2201; *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 565 (D. Del. 2009).
[93] *Wyatt v. Gov't. of the V.I.*, 385 F.3d 801, 806 (3d Cir. 2004) (citations omitted); *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952).
[94] D.I. 71 at 7; D.I. 213 at 3.
[95] D.I. 71 at 7; D.I. 213, Ex. 7 at 2.

16

requested declaratory relief by Chase appropriate, and grants its motion in this regard.

## VII.   Motion to Strike Answer to Amended Complaint

Before filing its motion for summary judgment, Chase moved to strike Hess'

answer to its amended complaint.[96]  That motion was filed on June 4, 2012.  Previously,

after leave to amend the complaint was granted, Chase and Hess entered into a

stipulation giving Hess until March 1, 2010 to respond, which was entered as an order

on February 12, 2010.[97]  Subsequently, Hess filed a motion to dismiss this action

against her under Rule 12(b)(2), *res judicata* and improper venue.[98]  Hess' motion was

denied on January 6, 2011.[99]  As a result, consistent with FED. R. CIV. P. 12(a)(4)(A),

Hess had 14 days, or until January 24, 2011 in which to serve her responsive

pleading.[100]  Hess filed her answer with affirmative defenses on May 11, 2012,[101] more

than 15 months after it was due.

After the due date in late January 2011 for Hess' answer passed, Chase

remained silent on that matter.  In the interim, the court entered a scheduling order on

---

[96] *See* D.I. 204.  Chase moved to amend its complaint and add defendants on September 30, 2009, which was granted on November 16, 2009.  *See* D.I. 76; Oral Order of November 16, 2009.  The first amended complaint was file November 17, 2009.  D.I. 82.

[97] *See* D.I. 102, 104.

[98] D.I. 105.  The action against the Hess-Kenney entities had been resolved through a settlement agreement and release between Chase and the court-appointed receiver, who was then managing these corporations.  *See* D.I. 84, Ex. A.

[99] *See* D.I. 131, 132.

[100] Under Rule 12(a)(4)(A), after the court denies a motion to dismiss, "the responsive pleading must be served within 14 days after notice of the court's action."  Pursuant to Rule 6(a)(1)(A), the first "day of the event that triggers the period" is excluded, and under Rule 6(a)(1)(C) when the last day of the period lands on a holiday or weekend, the time is extended to the next business day.  Further, under Rule 6(d), if notice of the decision and order were mailed, an additional "3 days are added after the period would otherwise expire under Rule 6(a)."  Since the official contact information for Hess on the court's docket is her address, its decision and order would have been mailed to her.

[101] D.I. 196.  As indicated on the record, her responsive pleading was docketed on May 14, 2012.  Chase argues to the extent that Hess' certificate of service implies she e-mailed her answer to counsel for Chase, it denies any notification was received in that fashion, and Chase was not aware of the filing of her answer until it was entered on the docket.

February 9, 2011, requiring any amendments to pleadings be filed by April 1, 2011.[102]
Nothing in the scheduling order addressed Hess' failure to file an answer to the
amended complaint.  On February 22, 2011, an answer to the amended complaint was
filed by the Siverson defendants.[103]  In the interim status report filed by Chase on April
29, 2011, there is no mention of Hess having failed to answer.[104]  Chase filed a notice
of service and written discovery on Hess respectively on May 23 and 24, 2011.[105]
Chase moved for court intervention on July 21, 2011 regarding the failure of the
Siverson defendants to respond to discovery.  That letter does not mention any failure
on the part of Hess to answer the amended complaint or respond to written
discovery.[106]

Thereafter, this matter was referred to Judge Burke for ADR, who scheduled a
teleconference to discuss mediation on August 31, 2011.[107]  Three dates for mediation
were scheduled for November 8 (between Chase and defendant Cherry), 9 (between
Chase and Hess) and 15, 2011 (between Chase and the Siverson defendants).[108]  Prior
to the scheduled mediations, Chase noticed and scheduled the depositions of Hess, as
well as the other co-defendants.[109]  Only the mediation involving Hess was cancelled at
the request of the parties; the remaining mediations occurred as scheduled.[110]

---

[102] D.I. 140.
[103] D.I. 143
[104] D.I. 148.  If paragraph 2 of the February scheduling order operated as an "amended" due date
for Hess' answer (April 1), by the time of the interim status report that due date had passed.
[105] D.I. 149, 152, 153.
[106] D.I. 159.  On July 18, 2011, the court scheduled a teleconference to address those discovery
issues, which was canceled on July 26, 2011 by Chase since the matters were resolved.  D.I. 158, 164.
[107] D.I. 167-68.
[108] D.I. 169-171.
[109] See D.I. 172-74.
[110] See minute entries for November 8 and 15, 2011.

On October 6, Chase responded to defendant Cherry's written discovery.[111]  On November 1, 2011, Chase filed a propose stipulated protective order between Chase and the Siverson defendants.[112]  Thereafter, efforts to settle this matter continued between Chase and defendant Siverson.[113]  Those continued efforts were eventually successful.

A teleconference concerning mediation occurred with Judge Burke involving Chase and Hess on May 18, 2012.[114]  Thereafter, consistent with this court's standard order for discovery matters, Chase filed its letter on May 16, 2012 regarding discovery and scheduling issues involving Hess.[115]  On May 21, 2012, those matters were addressed during a teleconference with the parties, and a June 22, 2012 deadline was set for Hess to respond to interrogatories, with the case dispositive motion date set for July 31, 2012.[116]  During that teleconference, the matter of Hess' failure to answer the amended complaint was not raised.[117]  Chase filed a letter which included a proposed scheduling order memorializing the teleconference of May 21.[118]  That order was executed by the court on May 22, 2012.[119]  Defendant Cherry filed a letter on May 30, 2012, requesting this magistrate judge be recused, to which Chase responded on

---

[111] D.I. 176-77.

[112] D.I. 178.

[113] See D.I. 186, oral order for February 8, 2012 and minute entry for February 14, 2012.

[114] See Oral Order entered May 16, 2012, and minute entry on May 18, 2012.

[115] D.I. 195 ( Chase's motion), 198 (Chase's letter).  The transcript of that teleconference is found at D.I. 207.

[116] See minute entry for May 21, 2012

[117] D.I. 207 (Trans. of the May 21, 2012 teleconference).

[118] See D.I. 199. The original entry was deleted at the request of Chase's counsel, and a revised proposed order was filed on May 22, 2012.

[119] See D.I. 200.

July 7, 2012.[120]  As noted previously above, on June 4, 2012 the present motion under consideration was filed by Chase, to which Hess has not responded.  Subsequently, Chase filed a stipulation on June 29, 2012 to extend the time for filing cases dispositive motions, moving the date to August 16, 2012,[121] and filed its motion and opening brief for summary judgment on this August date.[122]

In support of its present speaking motion, Chase maintains Hess cannot "provide just cause for the delay in filing her answer to the [a]mended [c]omplaint," and due to her untimely answer, asserts prejudice because discovery closed, and it would be denied the opportunity to investigate Hess' averments and affirmative defenses.[123]

As indicated above, considerable court involvement occurred after January 2011. When the opportunity existed, such as in the scheduling order and the status report, Chase never indicated a concern over the lack of any answer by Hess.  In fact, it proceeded with written and oral discovery against her.  Between late January 2011 and June 4, Chase never suggested to the court that the absence of an answer from her was problematic.  Rather, its conduct evidences the opposite.  Further, in light of the court's decision on Chase's motion for summary judgment, the defenses raised by Hess in her answer are most likely moot, especially if they were directly or indirectly addressed in this opinion, or she failed to raise them in response to Chase's arguments.  Although the court recognizes Hess never sought or moved for any

---

[120] *See* D.I. 202 (Cherry's letter), 206 (Chase's response).  Cherry's letter motion was denied on July 25, 2012. *See* D.I. 212.

[121] *See* D.I. 210.  The order was entered the same day. *See* D.I. 211.

[122] D.I. 213.

[123] D.I. 204 at ¶¶ 15-16 n.3.  Chase notes Hess is required to respond to Chase's discovery requests by June 22, 2012; its requests were served in late May 2011. *See* D.I. 152-53.

extension of time to file an answer to the amended complaint, for the reasons stated herein, Chase's motion to strike Hess' answer is denied as moot with leave to renew if necessary.

## Order and Recommended Disposition

For the reasons contained herein, it is recommended that:

1. Plaintiff's motion on summary judgment (D.I. 213) be GRANTED as to Count I tortious interference with contractual relations, Count III abuse of process, and Count VI conspiracy, and DENIED as to Count II unjust enrichment, Count IV Delaware Deceptive Trade Practices Act, and V Delaware Consumer Fraud Act.

2. Plaintiff's request for injunctive relief is GRANTED, but limited to those counts in ¶ 1 for which summary judgment is granted in favor of Chase.  Defendant Laura L. Hess shall be permanently enjoined from:

     a)     sharing, publishing, selling, or otherwise disseminating the methods or processes of The Consumer Law Center, LLC, or selling, training, or educating any other person or entity regarding debt settlement or elimination, including, without limitation, credit or unsecured debt elimination; and

     b)     interfering in any way with the contractual relationships and obligations between Chase and its cardmembers, including, without limitation, advising, encouraging, or suggesting to cardmembers that they not make payments to Chase.

3. Plaintiff's request for declaratory relief be granted as follows:

     a)     the billing error disputes asserted by Chase's cardmembers

21

who, at all times material, were represented or assisted by
Hess or her business entities are sham and do not assert
valid billing error disputes under the terms of the Fair Credit
Billing Act, 15 U.S.C. §§ 1666 *et seq.* ("FCBA"), or impose
any duties on Chase under the FCBA;

b)      the billing error disputes asserted by Chase's cardmembers
who, at all times material, were represented or assisted by
Hess or her business entities do not provide any legal or
valid basis for these cardmembers to cease making
payments to Chase; and

c)      the claims, counterclaims, and other defenses interposed
against Chase by cardmembers who, at all times material,
were represented or assisted by Hess or her business
entities are frivolous and legally insufficient to prevent Chase
from collecting delinquent balances due on its credit card
accounts under the terms of its cardmember agreements.

4.  Plaintiff's motion to strike defendant Laura L. Hess' answer (D.I. 204) is
DENIED, as moot with leave to renew, if necessary.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR
72.1, any objections to the Report and Recommendation shall be filed within fourteen
(14) days limited to ten (10) pages after being served with the same.  Any response
shall be limited to ten (10) pages.

The parties are direct to the Court's Standing Order in *Pro Se* Matters for

Objections Filed under FED. R. CIV. P. 72 (dated November 16, 2009), a copy of which

is found on the Court's website, www.ded.uscourts.gov.

A copy of the Report and Recommendation and Order was mailed to defendant,

Lauren L. Hess on March 8, 2013.

Dated: March 7, 2013                /s/ Mary Pat Thynge_____
                                    UNITED STATES MAGISTRATE JUDGE