IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHASE BANK USA N.A., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 08-121-LPS |
| | : | |
| CONSUMER LAW CENTER OF | : | |
| DELRAY BEACH LLC, et al., | : | |
| | : | |
| Defendants. | : | |

Beth Moskow-Schnoll and Paul J. Koop, Esquires, Ballard Spahr LLP, Wilmington, Delaware.
Counsel for Plaintiff.

Edward Cherry, a/k/a Edward T. Kennedy, Parkland, Florida. Pro Se Defendant.

MEMORANDUM OPINION

July 29, 2015
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

**I.    Introduction**

Plaintiff Chase Bank USA, N.A. ("Chase"), a national banking association, filed its original complaint against Defendant Edward Cherry a/k/a Edward T. Kennedy ("Cherry"),[1] as well as Hess Kennedy Chartered, LLC, Laura L. Hess ("Hess"), Laura Hess & Associates, P.A., Hess Kennedy Holdings, Ltd., Hess Kennedy Company Chartered BWI, the Consumer Law Center, LLC, The Campos Chartered Law Firm, Legal Debt Center, LLC, Jeffrey S. Campos, and Jeff Campos, P.A. (collectively "Hess Kennedy Entities"). (D.I. 1) Upon amendment, Eric Siversen, Home Plate Consultants, LLC, and Self Made, LLC (collectively Siversen entities) were added as defendants and Cherry, who has several aliases, was again named as a defendant. (D.I. 82) Chase alleges tortious interference with contractual relations, unjust enrichment, abuse of process, violation of the Delaware Deceptive Trade Practices Act and the Delaware Consumer Fraud Act, and conspiracy.[2] (D.I. 82) Presently before the Court is Plaintiff's unopposed Motion for Summary Judgment against Cherry on the following counts in the Amended Complaint: Count I, tortious interference with contractual relations; Count III, abuse of process; and Count VI, conspiracy. (D.I. 255) Cherry did not file an opposition to the motion despite the Court's entry of a scheduling order. (D.I. 258)

---

[1] Recently, Cherry legally changed his name to Edward Gregory Steadman. (D.I. 256 Ex. 2)

[2] Plaintiff indicates that only claims against Cherry remain pending. (*See* D.I. 71 and 73 entry of consent judgment and dismissing with prejudice Hess Kennedy Chartered, LLC, Laura Hess & Associates, P.A., Hess Kennedy Holdings, Ltd., Hess Kennedy Company Chartered BWI, the Consumer Law Center, LLC, The Campos Chartered Law Firm, and Legal Debt Center, LLC; D.I. 75 dismissing with prejudice Jeffrey S. Campos and Jeff Campos, P.A.; D.I. 197 dismissing with prejudice Eric Siversen, Home Plate Consultants, LLC, and Self Made, LLC; and D.I. 249 entering judgment in favor of Chase and against Hess. The Court docket does not reflect the dismissal of either Defendant Consumer Law Center of DelRay Beach LLC or Defendant Consumer Law Center of Boca Raton Inc. The Court will direct Plaintiff to advise the Court of the status of its claims against these Defendants.

1

## II. Background[3]

On July 20, 2009, this Court signed a consent judgment granting declaratory and permanent injunctive relief to Chase against the Hess Kennedy entities. (*See* D.I. 71) On May 14, 2014, the Court signed an Order granting permanent injunctive relief to Chase against the Siversen entities. (*See* D.I. 197) On September 30, 2013, the Court entered an Order granting declaratory and permanent injunctive relief to Chase against Hess. (*See* D.I. 233)

Cherry was the owner, officer, manager, member, and/or director of three of the Hess Kennedy Entities. (*See* D.I. 71 at § I., ¶¶ D, F, H) The Hess Kennedy entities operated several interrelated debt elimination/settlement companies. (*Id.* at § II) The companies were composed of law firms responsible for debt settlement, which Hess, a lawyer, operated, and a company for processing payments, managed by non-lawyer Cherry. (*Id.*) The Hess Kennedy entities organized numerous legal entities and registered a number of fictitious names, which they used in conjunction with their business. (*Id.*)

The Hess Kennedy entities promised consumers debt relief by representing they could convince creditors to accept significantly reduced amounts as full payment for unsecured debts. (*Id.*; D.I. 256 Ex. 3, affs. of Chase cardholders) Cherry knew of, managed, and controlled the activities of the Hess Kennedy entities, which included controlling the Hess Kennedy entities' finances. (*See* D.I. 8 Exs. C-J, O, P; D.I. 118 Ex. B at 24, 31-32, 36, 47, 53, 83, 84, Ex. D at 33, 110, 111, 126, 127; D.I. 256 Ex. 1 at 46, 57, 73, Ex. 6 at 103, Ex. 8 at 52, 53, Ex. 9 at ¶¶ 2, 3, 19) Cherry described himself as the business manager for the Hess Kennedy entities and testified that he was the "go-to" person for the Hess Kennedy entities. (D.I. 256 Ex. 1 at 173; Ex. 10 at 31-32) The marketers and

---

[3] The Court relies on facts set forth in the Florida and Delaware consent judgments. (*See* D.I. 71; D.I. 256 Ex. 4)

2

advertisers that referred consumers to the Hess Kennedy entities directed the consumers, including thousands of Chase cardmembers, to discontinue payments on their credit card debt, and instead to send monthly payments to the Hess Kennedy entities. (D.I. 71, § II) As a result, consumers who were Chase cardmembers stopped making payments to Chase. (D.I. 71 at § II)

For their services, the Hess Kennedy entities received attorneys' fees ranging from 15 to 20 per cent of the amount of debt each client invested in the programs, in addition to monthly processing fees. (D.I. 71, § II) A significant portion of the attorneys' fees were diverted to marketers and advertisers for referring consumers to the Hess Kennedy entities (in violation of state law). (*Id.*) The Hess Kennedy entities did not maintain any consumer escrow payments in client trust accounts, despite advising clients their payments would accrue in such accounts. (*Id.*) The Hess Kennedy entities never explained to consumers that it would take a year or longer before consumers would accrue money to pay toward any settlements with creditors. (D.I. 256 Ex. 1 at 109) Cherry testified that the Hess Kennedy entities probably acted deceptively by using a confusing contract and that its customers relied upon misrepresentations made on behalf of the Hess Kennedy entities. (*Id.* at 113).

During the time consumers paid monthly fees to the Hess Kennedy entities, their advertisers, and marketers, Chase continued seeking payment from its cardmembers. (*Id.* at Ex. 3) Because of their debt settlement arrangement with the Hess Kennedy entities, the debt problems for some clients became significantly worse. (*See id.*) In addition, during the same time-frame, Cherry and the Hess Kennedy entities illegally diverted and used millions of dollars of clients' funds for personal expenses and payments to others not entitled to those funds. (*Id.* at Ex. 8 at 112-115)

Cherry admitted to the scheme's fee structure, testifying that referral agencies would refer clients to the Hess Kennedy entities for debt settlement. (*Id.* at Ex. 1 at 27-28). Once the clients

3

were referred, "[c]orrespondence would go out to the banks and then [Hess Kennedy's clients would] make payments to the law firm, first legal fees. And then once they exhausted their legal fees, the rest would be for the debt settlement plan." (*Id.* at 28) Cherry explained that the referral agencies would get a processing fee per client for each month that the consumer remained in the program, which ranged from $29 through $49 per month. (*Id.* at 42-45) After the referral agencies were paid and the remaining expenses were covered from the client fees, Cherry split the remaining net operating income with his brother-in-law. (*See id.* at 46-48, 52-53) From 2006 through the middle of 2008, Cherry testified that he "took home" $6.5 million. (*Id.* at Ex. 1 at 48)

The Hess Kennedy entities initiated actions under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666 *et seq.*, on behalf of their clients for purported "billing error disputes" against Chase, wherein the cardholder clients challenged their entire Chase credit card account balances and withheld any and all payments to Chase. (D.I. 71, § II) The Hess Kennedy entities drafted legally insufficient form letters, and encouraged cardmembers to send them to Chase, as well as to assert frivolous claims and counterclaims. (*Id.*) Cherry testified that he drafted legal memoranda and pleadings. (D.I. 256 Ex 5 at 118) The Hess Kennedy entities never advised clients that issuing dispute letters under the FCBA did not toll or relieve liability for payments due on their credit card accounts. (*Id.*) Cherry testified that Chase was a creditor with whom he dealt while operating the debt settlement scheme. (D.I. 256 Ex. 1 at 115, 133)

The Court determined that the form letters created and used by the Hess Kennedy entities and their Chase cardmember clients to be a "sham and do not assert valid billing error disputes" under the FCBA, and further that the billing error disputes did not provide any legal or valid basis for withholding payments to Chase. (D.I. 71, § IV, ¶¶ 1, 2) Cherry testified that he drafted the form letters. (D.I. 256 Ex. 5 at 113-114, 116, 118) The Court further held the claims and counterclaims

4

asserted against Chase were frivolous and legally insufficient to prevent Chase from collecting delinquent balances due on credit card accounts under the terms of its Cardmember Agreements. (D.I. 71, § IV, ¶ 3)

On January 5, 2009, in *Office of Attorney General v. Cherry*, Supp. Case No. 08-007686 CACE (08) (Broward County, Florida), the Florida Circuit Court approved a consent judgment and entered injunctive relief against Cherry, wherein Cherry was identified as "a participant in the activities of the [Hess Kennedy Entities]." (D.I. 145 Ex. A) Cherry was permanently enjoined from "engaging in consumer-debt related services, whether secured or unsecured, including debt settlement services, debt management services, or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law."

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be - or, alternatively, is - genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

5

Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Cherry did not file a response to Chase's motion. The Court, however, will not grant the entry of summary judgment without considering the merits of Chase's unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court should not have granted summary judgment solely on basis that motion for summary judgment was not opposed).

6

## IV. DISCUSSION

### A. Tortious Interference With Contractual Relations

Count I alleges tortious interference with contractual relations under Delaware law. To establish a claim for tortious interference with contractual relations under Delaware law, a plaintiff must show there is: (1) a contract, (2) about which the defendant knew, (3) an intentional act that is a significant factor in causing the breach of the contract, (4) without justification, and (5) which causes injury. *See Johnson v. GEICO Cas. Co.*, 673 F. Supp. 2d 244, 250 (D. Del. 2009) (citing *Aeroglobal Capital Mgmt. v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.7 (Del. 2005)).

Chase presented adequate evidence to support each element. The contracts are the cardmember agreements between cardmembers and Chase, which obligated payment for debts incurred by use of a Chase credit card. (D.I. 82 Ex I) In light of the businesses he operated (dealing with debt relief and consolidation), Cherry clearly was aware of the terms and conditions of those contracts, as evidenced by his efforts to negotiate modification of the contractual obligations and/or institute legal action for alleged violations. (D.I. 256 Ex. 4) Further, Cherry admitted Chase was a creditor with whom he dealt. (D.I. 256 Ex. 1 at 115, 133) Cherry, whether individually or through his entities, directed customers (Chase cardmembers) to cease payment on their credit card debts, advice on which they relied, which was a significant factor in causing breach of the contracts. (D.I. 71, § II)

The record shows Cherry's conduct was unjustified. The Court has already found the form letters drafted by the Hess Kennedy entities, under Cherry's direction and control, were shams, and failed to assert any valid dispute under the FCBA or any legitimate basis to withhold payment on credit card debt. (*See* D.I. 71) The Court further determined that the claims and counterclaims against Chase by those entities on behalf of cardholders were baseless. (*See id.*) The Hess Kennedy

7

entities' customers were unaware the letters and the billing dispute actions provided no protection from liability for discontinued payments. (*See id.*) Finally, because cardholders stopped payment under the direction of the Hess-controlled entities, Chase was improperly denied compensation under the cardmember contracts. (*See id.*)

Cherry did not respond to the motion for summary judgment and, thus, fails to provide any justification for his improper and fraudulent conduct. There are no genuine issues of material fact. Therefore, the Court will grant the motion for summary judgment on the claim of tortious interference with contractual relations.

### B. Abuse of Process

Count III asserts abuse of process. To prove that claim, a plaintiff must establish: (1) an ulterior purpose, and (2) a wilful act in the improper use of process. *See Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. 1983). Accordingly, some definite act or threat, not consistent with process, or designed for an illegitimate objective in the use of process, is required. *See id.* In addition, some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must also be shown. *See id.*

Chase proffered evidence sufficient to support each element. Cherry's wilful acts include filing baseless suits and asserting frivolous claims and counterclaims against Chase on behalf of his customers, thereby initiating court process against Chase. (*See* D.I. 71) Cherry researched and drafted the baseless affirmative defenses and counterclaims for the Hess Kennedy entities' lawyers. (*See* D.I. 256 Ex 1 at 135-38; Ex. 6 at 90) Cherry pursued sham proceedings to prevent or interfere with Chase's legitimate efforts to collect balances owed by its clients, who were directed to stop payments to Chase. (*See* D.I. 71)

8

The Court has previously found Cherry's actions to be improper and without a legitimate objective, since the means employed were "frivolous and legally insufficient" in relieving clients' obligations to Chase. (*See id.*) By improperly delaying and foreclosing Chase in its legitimate collection efforts, Cherry used those fraudulent activities as leverage against Chase, and received monthly fees from clients in lieu of them making payments to Chase. (*See id.*)

The findings in the consent judgments demonstrate how litigation was improperly used to prevent Chase from lawfully collecting on debts owed to it and provided collateral advantage to Cherry. (*See* D.I. 71, D.I. 256 Ex. 4) The lawsuits were manipulated to improperly prevent Chase from lawfully collecting money owed from its cardholders, operated to significantly delay payment to Chase, and diverted funds (in part) to pay monthly fees to Cherry. (*See id.*)

Chase has sufficiently sustained its burden and, there being no genuine issues of material fact, the Court will grant Chase's motion for summary judgment on the abuse of process claim.

## C. Conspiracy

Count VI of the Amended Complaint alleges conspiracy. Under Delaware law, to prevail on a conspiracy claim, a plaintiff must prove the combination of two or more persons or entities for an unlawful purpose, or for accomplishing a lawful purpose by unlawful means, resulting in damages. *See Nutt v. A.C. & S. Co.*, 517 A.2d 690, 694 (Del. Super. 1986). Civil conspiracy requires an underlying wrong which would be actionable absent the conspiracy; there is no independent action for civil conspiracy under Delaware law. *See Phoenix Canada Oil Co. v. Texaco, Inc.*, 560 F. Supp. 1372, 1388 (D. Del. 1983); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009).

Chase has proven the elements to support its claims of tortious interference with contractual relations and abuse of process, thereby demonstrating underlying wrongs or actionable conduct. As previously discussed, Cherry admittedly knew of and controlled the activities of the

9

Hess Kennedy entities, and agreed to engage in (and engaged in) fraudulent conduct with at least one, resulting in the denial to Chase of legitimate reimbursement on outstanding accounts. (*See* D.I. 71, D.I. 256 Ex. 4) Indeed, Cherry testified that he served as manager of the Hess Kennedy entities. Moreover, the Court previously found that Hess, another manager of the Hess Kennedy entities, engaged in a conspiracy to tortiously interfere with Chase's contractual relations with its customers and to abuse the litigation process. (*See* D.I. 226 at 14-15)

Chase has established its claim of conspiracy. There is no genuine dispute of material fact. Therefore, the Court will grant its motion for summary judgment on the conspiracy claim.

## V. Injunctive and Declaratory Relief

Chase maintains it is entitled to injunctive and declaratory relief. To obtain injunctive relief, a plaintiff must satisfy a four-factor test by showing: an irreparable injury; the remedies available at law are inadequate to compensate for that injury; considering the balance of hardships between the parties, an equitable remedy is warranted; and the public interest would not be disserved by the requested injunction. *See O'Hara v. Premcor Refining Group, Inc.*, 2011 WL 337951 at *4 (D. Del. Jan. 28, 2011) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Based upon numerous instances of egregious conduct by Cherry as previously discussed, the prior injunctions granted against him and his corporations for that conduct (*see* D.I. 71, D.I. 256 Ex. 4), and the significant number of Chase cardmembers involved with his various operations (*see id.*), the public interest would be greatly served by restricting his future conduct, in a way which cannot be addressed solely through monetary relief. Injunctive relief commensurate with the injury resulting from tortious interference with contract, abuse of process, and conspiracy is appropriate. The record does not support a finding that the balance of hardships disfavors injunctive relief.

The Declaratory Judgment Act creates a remedy allowing federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201; *see also Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 565 (D. Del. 2009). The controversy must be real and substantial, "admitting of specific relief through a decree of a conclusive character," and ripe for judicial intervention. *Wyatt v. Government of the V.I.*, 385 F.3d 801, 806 (3d Cir. 2004) (citations omitted); *see also Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

As this Court has previously granted declaratory relief against the relevant Hess Kennedy entities, as well as against Hess, Chase seeks the same declaratory relief against Cherry. (*See* D.I. 71, D.I. 233) Based upon the proven fraudulent and improper conduct and Cherry's admitted control over the operations against whom the same declaratory relief was already granted (*see id.*), the Court finds the requested declaratory relief by Chase appropriate, and will grant its motion in this regard.

## VI. STATUS

Plaintiff's most recent status report (D.I. 257) indicates that Cherry is the only remaining defendant. The Court docket, however, does not reflect the dismissal of Defendant Consumer Law Center of DelRay Beach LLC or Defendant Consumer Law Center of Boca Raton Inc.[4]

Further, the Court notes that Counts II, IV, and V remain pending against Cherry, Chase having moved for summary judgment only as to Counts I, III, and VI. Plaintiff will be directed to advise the Court further of the status of the case.

---

[4] A Clerk's entry of default was entered against both Defendants on February 18, 2009. (D.I. 47) Thereafter, an amended complaint (D.I. 82) was filed that included both Defendants. Summonses were reissued for both Defendants. The Court docket does not reflect any involvement by either Defendant following reissuance of the summonses.

11

## VII. CONCLUSION

For the above reasons, the Court will grant Chase's motion for summary judgment (D.I. 255) as to Count I, tortious interference with contractual relations; Count III, abuse of process; and Count VI, conspiracy. In addition, the Court will grant Chase's request for injunctive relief limited to Counts I, III, and VI. Cherry will be permanently enjoined from: (1) engaging in consumer debt-related services, whether secured or unsecured, including debt settlement services, debt management services or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law; (2) representing and/or soliciting through print, electronic or verbal advertising or communication, either directly or indirectly, that he offers, provides or otherwise renders consumer debt-related services, whether secured or unsecured, including debt settlement services, debt management services or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law; (3) accepting, receiving or otherwise obtaining payment from consumers for consumer debt-related services, whether secured or unsecured, including debt settlement services, debt management services or any other service related to the consolidation, invalidation, reduction or dispute of consumer debts, either directly or indirectly, whether as the practice of law through a law office or law firm or as a business through any type of business or entity that is not a law office, law firm or engaged in the practice of law; (4) sharing, publishing, selling or otherwise disseminating the methods or processes of Hess Kennedy Company, Inc., The Consumer Law Center, LLC, or Legal Debt Center and/or any related

12

or successor entities, or selling, training or educating any other person or entity regarding debt settlement or elimination, including, without limitation, credit or unsecured debt elimination; and (5) interfering in any way with the contractual relationships and obligations between Chase and its cardmembers, including, without limitation, advising, encouraging, or suggesting to cardmembers that they not make payments to Chase.

In addition, the Court will grant Chase's request for declaratory relief as follows: (1) the billing error disputes asserted by Chase's cardmembers who, at all times material, were represented or assisted by Edward Cherry, a/k/a Edward T. Kennedy and n/k/a Edward Gregory Steadman, or his business entities are shams and do not assert valid billing error disputes under the terms of the Fair Credit Billing Act, 15 U.S.C. §§ 1666 *et seq.* (the "FCBA"), or impose any duties on Chase under the FCBA; (2) the billing error disputes asserted by Chase's cardmembers who, at all times material, were represented or assisted by Edward Cherry, a/k/a Edward T. Kennedy and n/k/a Edward Gregory Steadman, or his business entities do not provide any legal or valid basis for these cardmembers to cease making payments to Chase; and (3) the claims, counterclaims, and other defenses interposed against Chase by cardmembers who, at all times material, were represented or assisted by Edward Cherry, a/k/a Edward T. Kennedy and n/k/a Edward Gregory Steadman, or his business entities are frivolous and legally insufficient to prevent Chase from collecting delinquent balances due on its credit card accounts under the terms of its cardmember agreements.

An appropriate Order follows.